1  GOLDBERG, STINNETT, DAVIS & LINCHEY
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   44 Montgomery Street, Suite 2900
3  San Francisco, CA  94104
   Telephone: (415) 362-5045
4  Facsimile:  (415) 362-2392

5  Attorneys for Appellant, Jeffrey E. Hoffman

6

7                    IN THE UNITED STATES DISTRICT COURT

8               FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

11 JEFFREY E. HOFFMAN,                    No. 3:07-CV-2417 MHP

12                 Plaintiff,

13 vs.

14 THOMAS   R.   LLOYD,   an   individual,
   EDWARD  L.  BLUM,  an  individual,  and
15 DOES 1 through 20, inclusive,,

16                 Defendants.

17 ─────────────────────────────────────

18 THOMAS LLOYD,

                   Cross-Plaintiff,
19
   vs.
20
   JEFFREY   E.   HOFFMAN,   dba   H&B
21 PROPERTIES; H&B PROPERTIES, LLC;
   J.  EDWARDS  INVESTMENT  GROUP,
22 INC., and NORCAL FINANCIAL, INC.,

23                 Cross-Defendants.

24 ─────────────────────────────────────

25

26                    **APPELLANT'S OPENING BRIEF**

27

28

# TABLE OF CONTENTS

I.      STATEMENT OF THE BASIS OF APPELLATE JURISDICTION .................................1

II.     STATEMENT OF THE ISSUES PRESENTED AND .....................................................1

III.    FACTUAL BACKGROUND ..........................................................................................1

IV.     PROCEDURAL BACKGROUND..................................................................................3

V.      ARGUMENT ................................................................................................................6

      A.      The Court Erred In Finding The General Release Unenforceable...........................6

            1.      Settlement of Litigation is Favored...........................................................7

            2.      Releases of Civil Code Section 1542 Claims Are Uniformly
                    Upheld.......................................................................................................7

            3.      Waiver of Legal Rights is Not The Same as Settlement of
                    Claims. ....................................................................................................10

            4.      The Bankruptcy Court Erred in Finding Only Known Claims
                    Could Be Waived. ...................................................................................10

      B.      The Bankruptcy Court Erred In Determining Issues Without A Full Record .......13

            1.      An Issue Of Fact Existed As To Whether Lloyd Executed A
                    Notice Of Right To Cancellation ............................................................13

      C.      The Court's Ruling Of January 24, 2007 Went Beyond The Issues Presented
          To It And Proven At The Summary Judgment Hearing. .......................................16

VI.     CONCLUSION............................................................................................................19

1

## TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505,
91 L.Ed.2d 202 ............................................................................................14

4

5

*In re Frontier Properties, Inc.*, 979 F.2d at 1362 ........................................1

6

*Driscoll v. United States*, 525 F.2d 136 (9th Cir. 1975) ............................16

*Fuller v. City of Oakland, Calif.*, 47 F.3d 1522 (9th Cir. 1995) ................18

7

*Gibbons v. Interbank Funding Group*, 208 F.R.D. 278 (N.D. Cal. 2002) ....................14

8

*Gummo v. Village of Depew, New York*, 75 F.3d 98 (2nd Cir. 1996) ............14

9

*Mills v. Home Equity Group, Inc.*, 871 Fed.Supp. 1482,
1485-86 (D.D.C. 1994) ................................................................................12

10

*Pardi v. Kaiser Foundations Hospital*, 389 F.3d 840 (9th Cir. 2004) ..................12, 13

11

*Pepper v. Tanner, Inc.*, 563 F.2d 391 (9th Cir. 1977) ................................16

12

*Safeco Credit Co., Inc. v. U.S. Bancorp Leasing & Financial, Inc.*,
833 F.Supp. 833 (Dist. Or. 1993)................................................................14

13

14

*United States v. Diebold Inc.*, 369 U.S. 654, 82 S.Ct. 993,
8 L.Ed.2d 176 (1962) ..................................................................................16

15

*Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1981) .....................14

16

*Wade v. New York Telephone Co.*, 500 F.Supp. 1170 (D.C. N.Y. 1980) ....................14

17

18

## STATE CASES

19

*Casey v. Proctor*, 59 Cal.2d 97, 378 P.2d 579, 28 Cal.Rptr. 307 (1963) ........................7

20

*Cathay Bank v. Lee*, 14 Cal.App.4th 1533, 18 Cal.Rptr.2d 420 (1993) ................11, 12

21

*San Diego Hospice v. County of San Diego*, 31 Cal.App.4th 1048,
37 Cal.Rptr.2d 501 ..................................................................................9, 13

22

*Winet v. Price*, 4 Cal.App.4th 1159, 6 Cal.Rptr.2d 554 (1963)...........7, 8, 9, 10

23

## FEDERAL STATUTES

24

11 U.S.C. §101 ..............................................................................................1

25

28 U.S.C. §158(a) .........................................................................................1

Fed. R. Civ. P. 56 ........................................................................................13

26

Evidence Code §901(b)................................................................................15

27

28

1

## **STATE STATUTES**

2

Cal. Civ. Code § 1542................................................................1, 2, 6, 7, 8, 9, 11, 12
Civil Code Section 1695 ...................................................................................1, 2
3

Civil Code Section 1695.10 .................................................................................10

4

## **MISCELLANEOUS**

5

1 Cal. Jur. 3rd, *Accord And Satisfaction*, §1 .....................................................10
6

30 Cal. Jur. 3rd, *Estoppel And Waiver*, §32......................................................10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

1.    Subject matter jurisdiction in the Bankruptcy Court was based on the filing of a case under the Bankruptcy Code.  11 U.S.C. §101, *et seq.*

2.    Jurisdiction in this Court is proper under 28 U.S.C. §158(a)(1) (jurisdiction of the district courts over final judgments, orders, and decrees of bankruptcy judges).

## II.    STATEMENT OF THE ISSUES PRESENTED AND APPLICABLE STANDARD OF APPELLATE REVIEW

1.    Whether the clear and unambiguous release of known and unknown claims given by Lloyd to Hoffman, with the full benefit of counsel of his choice, as part of a Settlement and Mutual Release Agreement that expressly included a waiver of rights under Civil Code Section 1542 barred Lloyd's claims for rescission and other relief under Civil Code Section 1695, *et seq.*, regulating Home Equity Sales Contracts ("HESCA").  The standard of review is de novo.  *In re Frontier Properties, Inc.*, 979 F. 2d at 1362 (9th Cir. 1992) ("We review conclusions of law of the bankruptcy court and the district court de novo.")

2.    Whether the record supports the Bankruptcy Court's Findings that the Purchase Sale Agreement did not substantially comply with HESCA and that Lloyd received "no net benefit" from the transaction.

## III.    FACTUAL BACKGROUND

1.    On May 28, 2003, Thomas Lloyd entered into a real estate purchase contract with Jeffrey Hoffman pursuant to which Hoffman purchased property located at 940 Elizabeth Street, San Francisco, California for the sum of $900,000.  At the same time, Hoffman leased the property back to Lloyd and entered into an option agreement to allow Lloyd to buy back the property during a 2-year option period (Opinion at 2:18-24; Excerpts of Record page [hereinafter "EOR"] 368).  Lloyd earned a Ph.D. from Harvard's School of Business in 1975 and before that he earned an MBA from Indiana University (TT 196:6-197:3; EOR 285-86).

2.    Lloyd soon fell behind in his lease payments, and H & B Properties (an entity affiliated with Hoffman) filed an Unlawful Detainer action against Lloyd on June 2, 2004. (Opinion at 3:21-23; EOR 369).

-1-

3.      Lloyd, through his attorney Edward Blum, filed an Answer to the Unlawful Detainer action. In the Answer, Blum alleged that Lloyd "continues to be the owner of the subject property", that "Hoffman sought title to Defendant's property as a form of disguised security interest" and that the "transaction by which Plaintiff claims to have become owner of record title is void and illegal, and Plaintiff is not entitled to possession of the subject property; rather Defendant is entitled to remain in possession." (Lloyd Trial Exhibit 10; EOR 1-4).

4.      At trial, Lloyd's attorney Blum testified in response to a question as whether he knew about HESCA at the time he prepared the Answer: "I knew the concepts that apparently are in – stated in that act, as I indicated in the answer. But I had not [sic] familiarity with the act." (Trial Transcript ("TT") 155:16-20; EOR 244). Blum admitted discussing his defense with plaintiffs' counsel, but complained that "I don't recall him telling me that [Civil Code Section] 1695 provided me with a better remedy than what I was talking about." (TT 158:16-22; EOR 244).

5.      The Unlawful Detainer action was scheduled for trial on July 19, but a few days before trial, Blum learned from his client Lloyd that the parties had agreed on a compromise (TT 160:1-13; EOR 249). Blum then communicated with Hoffman concerning the settlement negotiations (TT 160:14-163:7; EOR at 249). In his conversation with Hoffman, Blum testified that he told Hoffman "I don't understand how you're allowed to stay in business doing what you're doing." (TT 165:8-12; EOR 254). Despite Blum's strong feelings on the matter, a settlement was reached.

6.      The settlement of the unlawful detainer action was memorialized in a Settlement and Mutual Release Agreement dated August 3, 2004 (the "Settlement Agreement"). As the Bankruptcy Court noted, the "Settlement Agreement contained broad mutual releases, because the parties expressly waived the protections of California Civil Code Section 1542." (Opinion at 4:9-12; EOR 370). The general release between Lloyd and Hoffman provides as follows:

> "Lloyd, H&B, HOFFMAN and J. EDWARDS, and each of them, expressly waive the provisions of California Civil Code Section 1542, which provides as follows:
>
> A general release does not extend to claims which the creditor does not know or suspect to exists in his favor at the time of executing the release, which if known by

-2-

him must have materially affected his settlement with the debtor."

(EOR 606-07).

7.     Attorney Edward Blum represented Lloyd in the litigation and in the settlement process.  There was no evidence of fraud or impropriety in the settlement process and the Bankruptcy Court did not suggest that any fraud or unfair conduct was involved in the negotiation of the Settlement Agreement.  Edward Blum executed the Settlement Agreement, approving it as to form (EOR 009).

8.     On October 18, 2004, notwithstanding the Settlement Agreement, Lloyd recorded a notice of rescission and litigated his right to rescind in the state court (EOR 370).

## IV.     PROCEDURAL BACKGROUND

1.     On April 5, 2005, Jeffrey Hoffman filed a complaint in Superior Court seeking cancellation of Lloyd's Notice of Rescission, and for damages (EOR 010).

2.     On June 16, 2005, Lloyd filed a cross-complaint for declaratory relief, avoidance of fraudulent conveyances and other theories.  The cross-complaint does not allege that Hoffman failed to give Lloyd notice of a right of cancellation (EOR 030).

3.     On October 15, 2005, Lloyd filed a chapter 11 bankruptcy proceeding.  Thereafter, debtor removed the pending Superior Court case to the Bankruptcy Court, where it was assigned Adversary Proceeding No. 05-03328.

4.     On December 22, 2005, the Bankruptcy Court's Trial Scheduling Order was filed, ordering that Phase 1 of trial of the matter "concerning the enforceability of the settlement" commence on January 10, 2006 (EOR 445).

5.     On January 20, 2006, Lloyd filed a motion for summary judgment, scheduling the hearing for February 17, 2006 (EOR 061).

6.     On February 21, 2006, the Bankruptcy Court entered its Order Denying Motion For Summary Judgment (EOR 057).

7.     On February 28, 2006, a trial was held on the Phase I issue concerning the enforceability of the settlement agreement.

-3-

8.    On March 20, 2006, the Bankruptcy Court issued its "Decision After Trial (Phase 1)". The Decision recites that the Phase 1 Trial "concerned the affect of a general release executed by Lloyd upon his claims under Section 1695, et seq., of the California Civil Code" and, the Court determined that the "release does not bar Lloyd's claims for rescission and other relief under section 1695." The Court made no finding with respect to whether Lloyd was provided with a notice of right to cancel the contract, nor does the Decision suggest that the notice issue had been raised, considered or determined (EOR 059).

9.    On March 24, 2006, Lloyd served a notice scheduling his prior motion for summary judgment for another hearing on April 28, 2006.

10.    On April 13, 2006, Hoffman filed opposition papers to the re-noticed motion for summary judgment, including a declaration of Jeffrey Hoffman, which stated in part that the "Purchase Contract between the parties included a Notice of Cancellation". A copy of the Notice of Cancellation was attached to the declaration (EOR 416; 429).

11.    On May 15, 2006, the Bankruptcy Court entered its order granting Lloyd's motion for summary judgment, as modified on the record by Lloyd (i.e., limiting the scope of the motion), dismissing Hoffman's slander of title and "cancellation of cloud on title" causes of action and entering judgment in favor of Lloyd on his cross-complaint on his quiet title cause of action. Furthermore, the Court quieted title to the Elizabeth Street property to Thomas Lloyd subject to the monetary claims, if any, of Hoffman and the other cross-defendants, "which claims shall be determined at trial in this Adversary Proceeding." The Court's order is silent as to the issue of the notice of cancellation  (EOR 083).

12.    On June 1, 2006, the Bankruptcy Court issued a Trial Scheduling Order in the Adversary Proceeding 05-03328, which provided that trial would commence on October 30, 2006.

13.    The matter did not proceed to trial on October 30, 2005 as scheduled. Instead, the Court decided to first decide the issue of restitution. On November 8, 2006, the Court issued a "Tentative Ruling Re Rescission Payment" reciting that it "held a hearing regarding the amount (if any) that Lloyd must return to Hoffman (the "Rescission Payment") as a condition of judicial enforcement of Lloyd's rescission", noting, among other things, that "Lloyd must return any

consideration received from Hoffman." (EOR 095).

14.    Thereafter, on January 24, 2007, the Bankruptcy Court issued a second Tentative Ruling Re Terms For Cancellation Of Deed in which it recited that it had "previously determined that Lloyd was not provided the notice of right to cancel the contract" and that because no such notice was given, that Lloyd's right to rescission remained open to the present time (EOR 345).

15.    On February 13, 2007, Hoffman filed Plaintiff's Brief Relating To Court's Tentative Ruling Of January 24, 2007, arguing that an issue of fact existed relating to whether Hoffman substantially complied with HESCA, that the issue concerning whether Hoffman gave notice of right of cancellation was never properly determined, and that the Court's summary judgment ruling overlooked the existence of disputed issues of fact (EOR 400).

16.    On April 30, 2007, the Bankruptcy Court filed its Opinion, confirming its earlier ruling that the general release of the Settlement Agreement was "not applicable to Lloyd's rights under HESCA if he was unaware of those rights at the time he executed that release."  The Court found Hoffman was "unaware" of his rights under HESCA only if they arose in the context of a "ripe controversy in which those rights had become apparent" and also that there was a "knowing and intelligent" waiver of those rights.  (Opinion 6:1-20; EOR 372).  The Bankruptcy Court also found that Hoffman had not substantially complied with the HESCA requirement of notice of right of rescission, because "actual compliance with the Next-to-Signature Notice requirement is essential to the purpose of HESCA".  (Opinion 19:1-2; EOR 385).  The Court also ruled that Lloyd had no obligation to provide restitution to Hoffman for Hoffman's payment of debt service and operating expenses he had carried while the owner of the property.  The Bankruptcy Court provided a formula suggesting that there was no net benefit conveyed (Opinion 23:17-24:12; EOR 389-90).  As a result, the Bankruptcy Court ordered that Lloyd had the right to rescind the contract notwithstanding the Settlement Agreement release, and that Lloyd need not provide restitution as a condition of returning the property to him.

17.    The Bankruptcy Court entered judgment as to some claims against Hoffman only, and certified the issues for immediate appeal (EOR 117).

////

-5-

# V.    ARGUMENT

Lloyd and Hoffman entered into a Settlement Agreement which included a broad general release, including the release of unknown claims.  Lloyd is a sophisticated investor, who holds a masters degree and doctorate in business.  Both parties were represented by counsel and there is no suggestion or finding of fraud or undue influence in the negotiation of the Settlement Agreement.  The Bankruptcy Court refused to give effect to the General Release, but instead, found that in the very narrow circumstances involving release of claims under HESCA, general releases do not have their usual affect.  The Bankruptcy Court ignored well established law to come to this conclusion.  There was no legal basis for overriding the parties' explicit agreement to waive all legal claims in a settlement entered into without undue influence.

Additionally, even if the Court were to find that a general release does not extend to release of claims under HESCA concerning which a party is not fully aware, the trial court record does not support the Bankruptcy Court's finding that Hoffman did not substantially comply with HESCA or that Lloyd did not receive any net benefit from the transaction.

## A.    The Court Erred In Finding The General Release Unenforceable.

It is uncontested that on August 3, 2004, Lloyd executed the Settlement Agreement with Hoffman and others, which included a general release and an express waiver of the provisions of California Civil Code Section 1542.  In other words, Lloyd agreed to settle all claims against Hoffman, including those claims he did not know about or fully appreciate.  The general release was negotiated in the context of litigation seeking (by affirmative defense) to avoid Hoffman's ownership of the subject property and to return it to Lloyd.  The settlement was made on Lloyd's behalf by an attorney who admitted he knew about the "concepts" of HESCA, but he claimed at trial that he did not fully appreciate them.

The Bankruptcy Court found that settlements including Section 1542 waivers could be upset if the significance of rights being released had not become "apparent", and there was not a knowing and intelligent waiver of those rights.  Given the fact that Lloyd's attorney settled litigation in which he had raised the affirmative defense that Hoffman's title was "void and illegal", the "knowing and intelligent waiver," referred to by the Bankruptcy Court can only be interpreted to mean that the

-6-

enforceability of the release depends entirely on the defendant's attorney's powers of appreciation. Unless the defense attorney admits a full understanding and appreciation of HESCA, such settlements are always capable of being abandoned, if the defendant hires a new lawyer with a better appreciation of HESCA.

The Bankruptcy Court's decision flies in the face of well established California law which favors settlement of litigation, unless the settlement can be shown to have been induced by fraud or breach of fiduciary duty. The California Courts do not recognize a sliding-scale exception to the sanctity of general releases based on a party's appreciation of the settled issues. Indeed, the case law is uniform in rejecting such challenges based on the settling parties state of mind.

### 1.    Settlement of Litigation is Favored.

The California Supreme Court has stated that "the policy of the law is to encourage out-of-court settlements." *Casey v. Proctor,* 59 Cal.2d 97, 378 P.2d 579, 28 Cal.Rptr. 307 (1963). To further this policy, "the parties to a dispute should be encouraged to negotiate settlements and to enter into releases. In the absence of unfair conduct on the part of the releasee, the law should extend its protection to the stability of the transaction by holding the parties to the express terms of the release." 28 Cal.Rptr. 307, 315.

As in *Casey,* here there is "no evidence of any fraud, misrepresentation, deception, overreaching, or other unfair conduct on the part of [any party] in obtaining the release." 28 Cal. Rptr. At 311. The Bankruptcy Court in this case upset a settlement of legal claims not because Hoffman obtained the settlement by fraud but because Lloyd hired a lawyer who did not fully appreciate the claims he was settling.

### 2.    Releases of Civil Code Section 1542 Claims Are Uniformly Upheld.

Although California Civil Code Section 1542 provides that a general release does not automatically release unknown claims, the law is well established that the parties may release such claims if they specifically contract to waive the protections of Civil Code Section 1542.

In *Winet v. Price*, 4 Cal.App.4th 1159, 6 Cal.Rptr.2d 554, a general release specifically waiving the provisions of Cal. Civ. Code § 1542 was found to be enforceable, and an effective bar to

-7-

1    later asserted claims.  There, the appellate court affirmed the trial court's grant of summary judgment,

2    concluding that the release barred the client's malpractice claims against the attorney.  *Id.* at 562.  In

3    reaching its decision, at the outset, the court noted that, "It is the outward expression of the

4    agreement, rather than a party's unexpressed intention, which the court will enforce."  *Id.* At 558.

5         In *Winet*, the original dispute arose between an attorney and his client over collection of legal

6    fees in connection with the drafting of a partnership agreement.  *Winet v. Price*, 6 Cal.Rptr.2d 554,

7    555.  As part of the settlement reached by the attorney and the client, the parties agreed to release

8    each other from "any and all claims, damages and causes of action whatsoever, of whatever kind or

9    nature, *whether known or unknown, or suspected or unsuspected* against any other Party."  *Winet v.*

10   *Price*, 6 Cal.Rptr.2d 554, 555 (emphasis in the original).  Additionally, the release recited that "upon

11   advice of legal counsel, all Parties do hereby waive any and all rights under California Civil Code §

12   1542, which section has been duly explained and reads as follows: 'A general release does not extend

13   to claims which the creditor does not know or suspect to exist in his favor at the time of executing the

14   release. . . .'"  *Id.* at 556.  Almost 15 years after the initial fee dispute, the client was sued by the

15   partnership, and the client cross-complained for contribution and indemnity against this former

16   attorney, asserting malpractice claims in drafting the partnership agreement.  *Id.*

17        To support his contention that the release did not bar his later malpractice claims, the client

18   submitted a declaration stating that when he signed the release, he did not intend to waive all possible

19   disputes with the attorney over the attorney's legal services, and that he was unaware at the time he

20   signed the release of the possibility of the present action.  *Id.*  The court applied the parol evidence

21   rule to determine whether evidence of the client's uncommunicated subjective intent should be

22   admitted.  However, the court stated, "parol evidence is admissible only to prove a meaning to which

23   the language is 'reasonably susceptible' . . ., not to flatly contradict the express terms of the

24   agreement."  *Id.* At 558. (citations omitted).  The court found that the client's proffered evidence

25   violated the parol evidence rule,

26        because it seeks to prove that a release of unknown or unsuspected claims was *not*
        intended to include unknown or unsuspected claims.  If an argument such as this were
27       given currency, a release could never effectively encompass unknown claims.  A
        releaser would simply argue that a release of unknown or unsuspected claims applied
28

-8-

only to known or suspected claims, making it ineffective as to unknown or unsuspected claims.

*Id.* At 558-559 (emphasis in the original).

Still, even considering parol evidence of the circumstances at the time the release was entered into, the court remained convinced that the "release was designed to extinguish all claims extant among the parties[,]" where the client was represented by independent counsel and aware at the time he entered into the release of possible malpractice claims against the attorney. *Id.* at 559. Thus, the court found that with this knowledge, and the advice of counsel concerning the language of and the ramifications of Section 1542, the client "expressly assumed the risk of unknown claims." *Id.* The court found that upholding the unambiguous waiver of Civil Code Section 1542 rights was "in harmony, we believe, with a beneficial principle of contract law: that general releases *can* be so constructed as to be completely enforceable." *Id*. at 562.

Similarly, in *San Diego Hospice v. County of San Diego*, 31 Cal.App.4th 1048, 37 Cal.Rptr.2d 501 (1995), a general release incorporating a waiver of Cal. Civ. Code Section 1542 was found enforceable to bar damage claims arising from the later discovery of a second tank of hazardous waste located on real property that was sold by the defendant to the plaintiff. In the first lawsuit between the parties, involving damages arising from the discovery of one tank of hazardous waste, the parties negotiated a settlement that recited that was to encompass all claims "past, present and future, known or unknown, suspected or unsuspected, with respect to the site" and expressly waived Section 1542 protections. *San Diego Hospice*, 37 Cal.Rptr.2d 501, 503. Following discovery of the second tank, the plaintiff commenced a second action seeking to rescind the release and to recover damages for the cost of remediation.

Applying *Winet*, the *San Diego Hospice* court found that the parties' release was "intended and designed to cover precisely the eventuality of an unknown source of contamination. . . .[and] [t]o eliminate any doubt as to the scope of the release, the parties recited and expressly waived the protections afforded by Civil Code section 1542." *Id.* at 504. The court found that a clear statement in the settlement agreement waiving unknown claims is enforceable absent fraud in the inducement to execute the settlement agreement or misrepresentation by a fiduciary. *Id*. at 505.

There was no suggestion by Lloyd or the Bankruptcy Court that Lloyd was induced to execute

the Settlement Agreement by fraud. Hoffman was not Lloyd's fiduciary. Lloyd was represented by counsel who raised the very claims he pursued after settling them --- claims that Hoffman's title was void and that the transaction was rescindable or void.

The <u>sole</u> basis for ruling that these claims survive the settlement appears to be that Lloyd's counsel was not a HESCA scholar. Furthermore, the Bankruptcy Court reached this conclusion by considering parol evidence of Lloyd's intentions. The language of the Settlement Agreement is clear about Lloyd's release of all claims, known and unknown. The Bankruptcy Court erred in considering parol evidence that Lloyd did not intend to waive his Civil Code Section 1695 rights. The Court found that those rights were involved in the settled litigation but that the "language of the [settlement] agreement does not preclude parole evidence" about the parties intentions (EOR 087). As stated in *Winet*, such use of parole evidence is not allowed. The Bankruptcy Court strayed from well settled law to make the release provision unenforceable by resorting to parol evidence and a public policy argument.

### 3.    Waiver of Legal Rights is Not The Same as Settlement of Claims.

Waiver is not a term interchangeable with settlement or release. Waiver is the intentional relinquishment or abandonment of a known right, or privilege, with knowledge of the facts. 30 Cal. Jur. 3rd, *Estoppel And Waiver*, §32. A settlement, on the other hand, is a compromise by mutual concession and an adjustment of conflicting claims, arising in instances where there is some dispute as to either the facts or the extent of the right asserted. 1 Cal. Jur. 3rd, *Accord And Satisfaction*, §1.

### 4.    The Bankruptcy Court Erred in Finding Only Known Claims Could Be Waived.

The Bankruptcy Court conceded that it did not "believe that the Legislature meant to bar *settlement* of ripe claims arising under section 1695" but went on to find that the provision of Civil Code Section 1695.10 "suggests" that any such settlement should be attended with "adequate safeguards." (Opinion at page 6, fn. 3; EOR 372). However, Section 1695.10 does not regulate settlements. It bars waiver of the "provisions" of HESCA, not settlement of claims arising from those provisions.

The Bankruptcy Court found that the general release was not applicable to Lloyd's rights under the HESCA if Lloyd was unaware of his rights at the time he executed the settlement agreement. The Bankruptcy Court left open how much "awareness" Lloyd needed, given the defenses raised in Lloyd's Answer and the testimony of Lloyd's attorney.

The Bankruptcy Court identified the two legal authorities for its "awareness" decision. Neither of these cases, however, dealt with settlement agreements where parties agreed to give up legal claims, known or unknown, under California law.

First, citing *Cathay Bank v. Lee*, 14 Cal. App. 4th 1533, 1539, 18 Cal.Rptr.2d 420 (1993), the Court noted that California courts have held that any waiver of an important statutory right must be knowing and intelligent.

In *Cathay Bank*, the court considered whether the defendant had explicitly waived the so-called "*Gradsky* defense" – essentially an estoppel defense – which would bar a deficiency action against him by the secured lender. 18 Cal.Rptr.2d at 420. The waiver at issue was contained in a guaranty agreement that the defendant had executed in favor of the bank, and the key language of the release read in part as follows: "Guarantor shall be liable to Bank for any deficiency resulting from the exercise by it of any such remedy, even though any rights which Guarantor may have against others might be destroyed." *Id.* at 421.

Examining the principles of waiver, the *Cathay Bank* court stated that, "Waiver is the intentional relinquishment of a *known* right. . . . Waiver requires sufficient awareness of the relevant circumstances and likely consequences. . . . These principles emphasize actual knowledge and awareness of what is being waived, and require resolution of doubts against waiver." *Id.* at 423 (citations and internal quotations omitted). Applying these principles, the court concluded that the guaranty's language was not an effective waiver of the guarantor's defense against the bank because they were "insufficiently specific about the *precise* rights that are being waived." *Id.*

The Bankruptcy Court's reliance on *Cathay Bank* was misplaced. *Cathay Bank* involved a waiver of a party's legal rights contained in an agreement that formed the basis of the parties relationship, *ie.* the guaranty agreement. *Cathay Bank* did not involve a settlement agreement containing a general release and waiver of Civil Code Section 1542, or any similar provision, such as

the Settlement Agreement that was before the Bankruptcy Court, and therefore, *Cathay Bank* is not dispositive of the issue that was before the Bankruptcy Court. The issue was not whether Lloyd could waive his legal rights in advance. Clearly he could not. The issue here is whether his settlement rights may have been infringed, and that issue was not decided in *Cathay Bank*.

Second, the Court relied upon a decision in *Mills v. Home Equity Group, Inc.*, 871 Fed.Supp. 1482, 1485-86 (D.D.C.1994) for the proposition that a general release that does not specifically acknowledge waiver of a right to rescind under the Truth in Lending Act ("TILA") does not constitute an effective waiver (Opinion at p. 6, fn. 3). In *Mills*, the court held that a statutory right conferred upon a private party, but affecting the public interest, may not be waived or released if such waiver or release is against the statutory or public policy. *Id.* at 1486. However, that case is also factually distinguishable from the case herein, in that the settlement agreement did <u>not</u> involve a release of unknown claims. There, after the defendant lender initiated a collection action against the plaintiff borrower, the parties executed a settlement agreement purportedly releasing the borrower's rights against the lender for any violation of TILA, "or any other violation of law knowingly or unknowingly committed." *Id.* at 1484. Significantly in *Mills*, the disputed settlement agreement did <u>not</u> contain any express waiver of Cal. Civ. Code Section 1542, nor did it involve an interpretation of California law. Thus, to the extent that the Bankruptcy Court found *Mills* persuasive, the Bankruptcy Court erred, as the enforceability of a section 1542 waiver was not before the Mills Court.

The Bankruptcy Court, in effect, has legislated that HESCA claims are so unique that the whole body of California case law upholding settlements, unless they are induced by fraud, is not applicable HESCA claims. In fact, the California laws have many consumer protection statutes and other statutes enacted to protect individuals and the public good. No California Court has ever established special rules for the settlement of these cases.

To the contrary, such cases are settled all the time without such a rule ever having been articulated. A good example is the case of *Pardi v. Kaiser Foundations Hospital*, 389 F.3d 840 (9th Cir. 2004). In that case, a former employee of Kaiser alleged that Kaiser had discriminated against him and denied him his rights under the Americans with Disabilities Act ("ADA"). He brought multiple grievances relating to discrimination and harassment. The court noted that pursuing one's

rights under the ADA constitutes a protected activity. *Id*. at 850. Pardi entered into a settlement agreement with Kaiser and later attempted to bring new claims against Kaiser. The court held that the settlement agreement was enforceable as to any acts which occurred prior to the settlement agreement, which included a settlement of unknown claims. The test articulated by the Ninth Circuit was that unless Pardi established that the settlement agreement was procured by fraud, duress, failure of informed consent, or any other basis that would render it invalid, the waiver of unknown claims was enforceable. *Id*. at 840. Neither the *Pardi* Court, or any other appellate court applying California law, has ever applied the Bankruptcy Court's test for determining the enforceability of a settlement agreement. See also, *San Diego Hospice v. County of San Diego*, 31 Cal.App. 4th 1048 (involving settlement of damages from hazardous wastes, where public policy considerations were not raised to trump a settlement).

**B.**   **The Bankruptcy Court Erred In Determining Issues Without A Full Record**

The trial record below is convoluted. First, there was a "Phase I" trial which involved only the enforceability of the Settlement Agreement. Summary judgment was first denied and then granted on several other issues. The issue of whether Hoffman gave Lloyd a proper notice of right to cancel was never raised in the pleadings or placed before the court, except upon the re-noticing of a motion for summary judgment, at which point it was decided over conflicting versions of what happened – largely it appeared based on the unsupported and inflammatory accusations of Lloyd's counsel. Finally, the Bankruptcy Court first found that Hoffman was entitled to restitution, then decided Hoffman was not entitled to restitution, a factually based analysis reached without trial.

**1.**   **An Issue Of Fact Existed As To Whether Lloyd Executed A Notice Of Right To Cancellation**

Summary judgment is appropriate when there is no genuine issue of material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

> Material facts are those that might affect the outcome of the case. . . A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party.

1   *Gibbons v. Interbank Funding Group,* 208 F.R.D. 278, 281 (N.D. Cal. 2002) (citing *Anderson v.*

2   *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

3   Further,

4   Where the moving party will have the burden of proof at trial, it must affirmatively
    demonstrate that no reasonable trier of fact could find other than for the moving party.
5   On an issue where the nonmoving party will bear the burden of proof at trial, the
    moving party can prevail merely by pointing out to the district court that there is an
6   absence of evidence to support the nonmoving party's case. . . . If the moving party
    meets its initial burden, the opposing party must then set forth specific facts showing
7   that there is some genuine issue for trial in order to defeat the motion. . . . Regardless
    of whether plaintiff or defendant is the moving party, each party must "establish the
8   existence of the elements essential to its case, and on which it will bear the burden of
9   proof at trial."

10  *Id.* at 281-282 (citations omitted).  "In ruling on a motion for summary judgment, it is not the

11  function of the court to resolve existing factual issues through a 'trial by affidavits.'"  586 F.2d 1315,

12  1318 (9th Cir. 1978) (citations omitted).  Notably, unsupported allegations of counsel may be

13  disregarded in determining whether genuine issues of act exist to be tried.  *Wade v. New York*

14  *Telephone Co.*, 500 F.Supp. 1170 (D.C.N.Y. 1980).

15  Moreover, "inferences drawn from underlying facts must be viewed in the light most

16  favorable to the party opposing the motion."  *Safeco Credit Co., Inc. v. U.S. Bancorp Leasing &*

17  *Financial, Inc.*, 833 F.Supp. 833, 834 (Dist.Or. 1993) (citing *Valandingham v. Bojorquez*, 866 F.2d

18  1135, 1137 (9th Cir. 1981)).  "If, as to the issues on which summary judgment is sought, there is any

19  evidence in the record from which a reasonable inference could be drawn in favor of the opposing

20  party, summary judgment is improper."  *Gummo v. Village of Depew, New York*, 75 F.3d 98, 107

21  (2nd Cir. 1996) (citations omitted).

22  On January 20, 2006, defendant Lloyd filed a motion for summary judgment, supported by his

23  declaration in which he stated that he executed the Purchase Agreement, the Lease and Option

24  Agreement, but asserted that those "were the only documents I signed in connection with the

25  transaction with Mr. Hoffman, other than various closing documents I signed later at the title

26  company" (EOR 062).  Lloyd did not identify which documents he signed at the title company.

27  Furthermore, his declaration makes no specific reference to the notice of cancellation document and

28

1  <u>he</u> (as opposed to his attorney) never specifically denied under oath that he signed it.  Lloyd did not

2  deny that his signature appears on the Notice of Cancellation, nor did he explain why the Notice of

3  Cancellation was dated May 28, the same date as the other documents he admits he signed on May

4  28.  On the other hand, Hoffman filed a declaration in which he testified that the "purchase included a

5  Notice of Cancellation" and attached the notice to his declaration, showing Lloyd's signature and a

6  date of May 28, 2003 (EOR 416).

7       At the April 28, 2006 hearing on the motion for summary judgment, Lloyd's attorney Jeffrey

8  Goodrich argued that the Notice of Cancellation was not properly authenticated (EOR 305) because

9  "Mr. Hoffman could not tell us whose handwriting that was" (EOR 308).  Goodrich continues that

10 "Mr. Lloyd thinks this is a forgery" (EOR 310) although no such evidence was offered.  Goodrich

11 goes on to state that he "objected to its admissibility, and Mr. Pahl withdrew it" (EOR 311) although

12 the objection and withdrawal do not appear in the trial transcript, or elsewhere in the record.

13      The Bankruptcy Court's finding that Hoffman failed to authenticate Lloyd's signature was

14 wrong as a matter of law.  Lloyd's signature on the Notice of Cancellation **appears** to be the same

15 signature as that on the other Purchase Agreement documents he <u>admits</u> are authentic.  One way to

16 authenticate the genuineness of handwriting is for the trier of fact to compare a contested writing with

17 an authenticated specimen.  Evidence Code §901(b)(3).  That was sufficient to authenticate the

18 signature of Thomas Lloyd on the Notice of Cancellation.  Additionally, Hoffman's sworn testimony

19 that the Purchase Agreement included a notice of cancellation, and that the Notice of Cancellation is

20 part of the packet of documents he normally submits was, if not the most eloquent or complete

21 evidence, certainly enough to overcome the vague testimony of Lloyd.

22      Furthermore, Asher Robertson (Lloyd's broker) testified that Lloyd <u>did</u> in fact execute the

23 Notice of Cancellation along with the other purchase documents on May 28, 2003.  Robertson

24 explained the delay of about six weeks between the time Lloyd signed the documents and the time

25 escrow closed was a function of Lloyd's stalling, trying to see if he could get a better deal from

26 another lender (Robertson declaration ¶4; EOR at 348-49).

27 / / / /

28 / / / /

APPELLANTS' OPENING BRIEF
10329.705/112629.DOC

**C.    The Court's Ruling Of January 24, 2007 Went Beyond The Issues**
**Presented To It And Proven At The Summary Judgment Hearing.**

It is clear that, "The trial court may not enter a summary judgment which rests on a chain of inferences from subsidiary facts not conclusively established in the record." In *Pepper v. Tanner, Inc.*, 563 F.2d 391, 393 (9th Cir. 1977). Applying this principle, the Court in *Pepper* found that the lower court's entry of summary judgment in favor of the defendant was in error where it necessarily implied a determination that the plaintiff was in fact transacting business in the state of Arizona at the time when the contracts at issue were entered into, and also implied a determination that the Arizona statute in question did not violate the commerce clause as applied to the disputed contracts. *Id.*

These issues, as stated by the Court, ultimately depended upon a precise and detailed factual inquiry. *Id.* However, on a motion for summary judgment, trial courts are not permitted to weigh the evidence, pass upon credibility, or "speculate as to ultimate findings of fact." *Id.* (quoting *Fortner Enterprises, Inc. v. United States Steel*, 394 U.S. 495, 496, 89 S.Ct. 1252, 1260, 22 L.Ed.2d 495 (1969)). The Court found that there were not enough facts shown to support the lower court's conclusion that the plaintiff was constantly in Arizona and to conclude from that that the plaintiff was transacting business there. *Id.* at 395. "While suitable inferences may be drawn by the trial in ruling on a motion for summary judgment, all such inferences are to be drawn against the moving party." *Id.* (citing *United States v. Diebold Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); *Driscoll v. United States*, 525 F.2d 136 (9th Cir. 1975)).

The history of Lloyd's litigation against Hoffman illustrates the chaotic nature of this litigation. The issue of whether Lloyd signed the Notice of Cancellation acknowledgement on May 28, 2003, was not raised in Lloyd's summary judgment motion, nor was it necessary to the Bankruptcy Court's summary judgment decision. Furthermore, the issue of whether the signature was not authenticated was not established by clear, unequivocal sworn testimony, but by argument and exaggeration of counsel.

Lloyd initiated his litigation against Hoffman by the filing of a cross-complaint on June 16, 2005, in which he sought to avoid fraudulent transfers, quiet title, obtain an accounting, for a determination of the validity, extent and priority of liens and to object to Hoffman's claims. That

-16-

Case 3:07-cv-02417-MHP    Document 10    Filed 07/13/2007    Page 21 of 23

dispute proceeded to a "Phase I" trial <u>on the limited issue of the enforceability of the settlement</u> <u>agreement between Lloyd and Hoffman</u>.  The trial transcript from February 28, 2006, reflects that no exhibits were placed in evidence (TT 3; EOR 092), and the transcript reflects that no one ever formally offered any exhibits into evidence, although both sides freely referred to them. Notwithstanding the vagueness of the record, it is clear that the issue of whether Hoffman gave Lloyd written notice of the right to cancel the contract (the "Cancellation Notice Issue") was not placed before the court or decided by the court in the "Phase I" trial.

Similarly, the record on summary judgment is confusing the whether the Cancellation Notice issue was properly decided by the court, on evidence as opposed to argument of counsel.  After the first hearing on the summary judgment motion, the court entered an order denying the motion on February 21, 2006, because there existed disputed issues of fact (EOR 86).  The court's ruling is silent on the Cancellation Notice issue.  The Bankruptcy Court <u>did</u> find that Lloyd's Civil Code Section 1695 rights "were at least potentially involved in the litigation settled" (EOR 087).

On March 24, 2006, Lloyd re-noticed his motion for summary judgment, which had been denied, for another hearing on April 28, 2006.  In response, Hoffman filed new papers, including a declaration of Jeffrey Hoffman.  In that declaration, Hoffman attached a copy of the cancellation notice signed by Lloyd and dated March 28, 2003 (EOR at 429).

The motion for summary judgment was heard on April 28, 2006.  At the hearing, attorney Goodrich argued that Lloyd's signature on the cancellation notice was not properly authenticated that "Mr. Lloyd thinks this is a forgery" and states that "we objected to its admissibility, and Mr. Pahl withdrew it."  However, no such withdrawal is found in the transcript of the April 28 hearing, and the April 28 hearing.  The court observed that "you don't have anybody that said, 'I sent these papers to him on May 28th. This is what I got back and it had a signature on it.'" (EOR 322)  The court also observed that it was "undisputed that he did not sign this paper on May 28th . . . " (EOR 324).  This observation is not supported by the record.  Hoffman never conceded the point, and the issue was disputed based on the declarations.  Only if one draws inferences from the Lloyd declaration in a light most favorable to Lloyd, could such a conclusion be drawn.

On May 15, 2006, the court entered its Order Granting Defendant Thomas Lloyd's Motion

-17-

APPELLANTS' OPENING BRIEF
10329.705/112629.DOC

1  For Summary Judgment" as "modified at the time of hearing", dismissing Hoffman's Slander of

2  Title and Cancellation of Cloud of Title claims, and quieting title to the subject property in Lloyd,

3  "subject to the monetary claims, if any, of Hoffman and the other cross-defendants."

4  On January 24, 2007, the Court issued a second Tentative Ruling Re Terms For Cancellation

5  Of Deed in which it recited that it had "previously determined that Lloyd was not provided the notice

6  of right to cancel the contract" prior to the time he "cancelled that contract" (EOR 339).

7  While courts have the power to grant summary judgment *sua sponte*, it is "proper only when

8  1) no material dispute of fact exists, and 2) the losing party has had an adequate opportunity to

9  address the issues involved, including adequate time to develop any facts necessary to oppose

10 summary judgment." *Fuller v. City of Oakland, Calif.*, 47 F.3d 1522, 1533 (9th Cir. 1995) (citations

11 omitted). Accordingly, in *Fuller*, the Ninth Circuit held that the district court erred in granting

12 summary judgment *sua sponte* against the plaintiff on her sexual discrimination claim in connection

13 with the conduct of a police internal affairs investigation upon completion of a bench trial on her

14 Title VII sexual harassment claim. *Id.* at 1535. Viewing the record in the light most favorable to the

15 plaintiff, the Court found it conceivable that a jury could reasonably infer that the underlying internal

16 affairs investigation was performed in a sexually-biased manner. *Id.* at 1535. Moreover, the Court

17 found that the record was not fully developed on the issue because the district court had made clear

18 that the issue being tried was sexual harassment, and not the conduct of the internal affairs

19 investigation, and consequently, questioning of one of the chief witnesses at trial focused on issues

20 unrelated to the investigation. *Id.*

21 Here, the issues that were being presented on the summary judgment motion appeared to be a

22 moving target. Lloyd's motion for summary judgment, dated January 20, 2006, does not articulate

23 Lloyd's argument that he did not sign the Notice of Cancellation on May 28 (EOR 449-72).

24 The legal discussion in Lloyd's memorandum ignored the existence of the Notice of

25 Cancellation. Then, in his reply brief, Lloyd refers to the document as a "crude forgery" based on

26 nothing more than the fact that Mr. Pahl "miraculously" produced the document in response to the

27 motion for summary judgment and because the signature appears underneath the printed line. Lloyd

28 jumped to the conclusion that it must be a "cut and paste" forgery because the signature appears

-18-

1 below the line (ignoring the fact that a forger, spending more time to make a document look correct,

2 would be **less** likely to put the signature out of place).  Lloyd argued generically in the brief that the

3 document is "inadmissible under Rule 901", notwithstanding that Rule 901 allows the trier of fact to

4 compare the challenged signature with authenticated specimens (EOR 473).  The only "evidence" of

5 these facts relating to an alleged forgery were attorney Goodrich's declaration reflecting that Mr.

6 Hoffman, who was not present when Lloyd signed the documents did not actually witness Lloyd's

7 signature (EOR 486).

8       Yet there was nothing at all miraculous about the existence of the signed acknowledgement of

9 Notice of Cancellation.  Lloyd's own real estate agent knew about its existence.  What is surprising is

10 that so much was decided, not on uncontested facts, but on counsel's articulation of unsupported facts

11 and baseless accusations.

### VI.    CONCLUSION

12

13       The Bankruptcy Court's Judgment should be reversed.  The Claims on which Lloyd was

14 granted relief had been released in the Settlement Agreement.

15

16 DATED:  July 13, 2007

                                    GOLDBERG, STINNETT, DAVIS & LINCHEY
17                                  A Professional Corporation

18

19                                  By:    /s/ Dennis D. Davis
                                           Attorneys for Jeffrey E. Hoffman

20

21

22

23

24

25

26

27

28

APPELLANTS' OPENING BRIEF
10329.705/112629.DOC