1  GOLDBERG, STINNETT, DAVIS & LINCHEY
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   44 Montgomery Street, Suite 2900
3  San Francisco, CA 94104
   Telephone: (415) 362-5045
4  Facsimile: (415) 362-2392

5  Attorneys for Appellant, Jeffrey E. Hoffman

6

7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10 JEFFREY E. HOFFMAN,                      No. 3:07-CV-2417 MHP

11              Plaintiff,

12 vs.

13 THOMAS   R.   LLOYD,   an   individual,
14 EDWARD L. BLUM, an individual, and
   DOES 1 through 20, inclusive,,

15              Defendants.

16 _____

17 THOMAS LLOYD,

18              Cross-Plaintiff,

19 vs.

20 JEFFREY  E.   HOFFMAN,   dba   H&B
   PROPERTIES; H&B PROPERTIES, LLC;
21 J. EDWARDS INVESTMENT GROUP,
   INC., and NORCAL FINANCIAL, INC.,
22
                Cross-Defendants.
23 _____

24

25       **APPELLANT'S EXCERPTS OF RECORD ON APPEAL**

26                       **VOLUME III**

27

28

|  |  | Bktcy Ct Docket No. | Pages |
|---|---|---|---|
| 1. | Answer – Unlawful Detainer (Trial Exhibit 10) |  | 1-4 |
| 2. | Settlement and Mutual Release Agreement (Trial Exhibit G) |  | 5-9 |
| 3. | Complaint for Damages and to Cancel Instrument (filed April 5, 2005) |  | 10-29 |
| 4. | Cross-Complaint for (1) Declaratory Relief; (2) Avoidance of Fraudulent Conveyances and/or Obligations; (3) Transferee Liability; (4) Quiet title; (5) an Accounting; (6) Determination of Validity, Extent and Priority of Liens; and (7) Objection to Claim (filed June 16, 2005) |  | 30-60 |
| 5. | Declaration of Thomas Lloyd in Support of Motion for Summary Judgment (filed 1/20/06) | 39 | 61-82 |
| 6. | Tentative Ruling Re Plaintiff's Motion for Summary Judgment (filed February 16, 2006) | 55 | 83-85 |
| 7. | Order Denying Motion for Summary Judgment (filed February 21, 2006) | 57 | 86-89 |
| 8. | Trial Transcript (filed February 28, 2006) |  | 90-294 |
| 9. | Decision After Trial (Phase One) (filed March 20, 2006) | 59 | 295-297 |
| 10. | Hearing Transcript of Defendant's Motion for Summary Judgment (filed April 28, 2006) |  | 298-330 |
| 11. | Order Granting Defendant Thomas Lloyd's Motion for Summary Judgment (filed May 15, 2006) | 83 | 331-338 |
| 12. | Tentative Ruling Re Rescission Payment (filed November 9, 2006) | 95 | 339-344 |
| 13. | Tentative Ruling Re Terms for Cancellation of Deed (filed 1/24/07) |  | 345-347 |
| 14. | Declaration of Asher Robertson (filed 2/13/07) | 108 | 348-366 |

APPELLANTS' OPENING BRIEF
10329.705/113204.DOC

| | | | |
|---|---|---|---|
| 15. | Opinion (filed April 30, 2007) | 116 | 367-392 |
| 16. | Judgment and Rule 54(b) Certification (filed April 30, 2007) | 117 | 393-396 |
| 17. | Order Denying Stay Pending Appeal (filed May 7, 2007) | 125 | 397-399 |
| 18. | Plaintiff's Brief Relating to Court's Tentative Ruling of January 24, 2007 | 108 | 400-414 |
| 19. | Declaration of Jeffrey E. Hoffman in Support of Plaintiff's Opposition to Defendant Lloyd's Motion for Summary Judgment. | 75 | 415-444 |
| 20. | Trial Scheduling Order. | 29 | 445-448 |
| 21. | Memorandum of Points and Authorities in Support of Defendant Thomas Lloyd's Motion for Summary Judgment. | 42 | 449-472 |
| 22. | Reply Memorandum of Points and Authorities in Support of Defendant Thomas Lloyd's Motion for Summary Judgment. | 78 | 473-485 |
| 23. | Declaration of Jeffrey Goodrich in Reply to Plaintiff's Opposition to Defendant Thomas Lloyd's Motion for Summary Judgment. | 80 | 486-510 |

DATED: July 13, 2007

GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation


By:      /s/ Dennis D. Davis
         Attorneys for Appellant Jeffrey E. Hoffman

APPELLANTS' OPENING BRIEF
10329.705/113204.DOC

**DOCUMENT 9**

3/20/06

**Entered on Docket**
**March 20, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



Signed and Filed: March 20, 2006

_____
THOMAS E. CARLSON
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No: 04-32921 TEC |
| THOMAS LLOYD, | |
| | Chapter 11 |
| Debtor. | |
| JEFFREY E. HOFFMAN, | |
| Plaintiff, | |
| vs. | Adv. Proc. No. 05-3328 TC |
| THOMAS R. LLOYD, an individual, EDWARD L. BLUM, an individual, and DOES 1 through 20, inclusive, | |
| Defendants. | |
| THOMAS LLOYD, | |
| Cross-Plaintiff, | **DECISION AFTER TRIAL** **(Phase One)** |
| vs. | |
| JEFFREY E. HOFFMAN, dba H & B PROPERTIES; H & B PROPERTIES, LLC,; J. EDWARDS INVESTMENT GROUP, INC., and NORCAL FINANCIAL, INC., | Date: February 28, 2006 Time: 9:30 a.m. Ctrm: Hon. Thomas E. Carlson 235 Pine Street San Francisco, CA |
| Cross-Defendants. | |

Decision After Trial
(Phase One)

-1-

Plaintiff's EOR-295

1    The court conducted phase one of the trial of this action on
2  February 28, 2006 at 9:30 a.m.  Phase one concerned the effect of a
3  general release executed by Lloyd upon his claims under
4  Section 1695 et seq. of the California Civil Code (hereinafter
5  Section 1695).  For the reasons set forth below, I determine that
6  the release does not bar Lloyd's claims for rescission and other
7  relief under Section 1695.

8    I find that neither Lloyd nor his counsel was aware of the
9  provision of Section 1695 at the time Lloyd executed the release.
10 Thus, I find that the release did not represent a knowing and
11 intelligent waiver of Lloyd's rights under Section 1695.  I find
12 that at the time of the release there was a ripe controversy
13 between Hoffman and Lloyd in which the importance of Lloyd's rights
14 under Section 1695 would have been apparent, had Lloyd or his
15 counsel known of that statute.

16    I conclude that the release was effective with respect to
17 Lloyd's rights under Section 1695 only if: (1) the release occurred
18 in the settlement of a ripe controversy in which the significance
19 of those rights had become apparent; and (2) the release
20 constituted a knowing and intelligent waiver of those rights.  In
21 so concluding, I note the following.  First, the California
22 Legislature expressly provided that rights under Section 1695
23 cannot be waived.  Cal. Civ. Code § 1695.10.  Although I do not
24 believe that the Legislature meant to bar *settlement* of ripe claims
25 arising under Section 1695, the anti-waiver provision suggests that
26 any such settlement should be attended with adequate safeguards.
27 Second, California courts have held that any waiver of an important
28 statutory right must be knowing and intelligent.  Cathay Bank v.

Decision After Trial
(Phase One)

-2-

Plaintiff's EOR-296

1  Lee, 14 Cal.App. 4th 1533, 1539 (1993); accord In re Acosta, 182

2  B.R. 561, 566-67 (N.D.Cal. 1994).    Third, Section 1695 is important

3  consumer protection legislation, much like the Federal Truth-in-

4  Lending Act.    Thus, I find both persuasive and pertinent a decision

5  in which a general release that did not specifically acknowledge

6  the right to rescind under TILA was held not to bar the later

7  exercise of that right.    Mills v. Home Equity Group, Inc., 871

8  F.Supp. 1482, 1485-86 (D.D.C. 1994).

9      The court will conduct a status conference on March 30, 2006

10 at 9:30 a.m. to schedule further proceedings in this action.

11                    **END OF DECISION**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Decision After Trial
(Phase One)
                            -3-

Plaintiff's EOR-297

**DOCUMENT 10**

COPY

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THOMAS E. CARLSON, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 04-32921 TEC |
| | ) Chapter 11 |
| THOMAS LLOYD, | ) |
| | ) |
| Debtor. | ) |
| ——————————————— | ) |
| | ) |
| JEFFREY E. HOFFMAN, | ) Adv. No. 05-03328 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THOMAS R. LLOYD, an individual; | ) DEFENDANT'S MOTION for |
| EDWARD L. BLUM, an individual; | ) SUMMARY JUDGMENT |
| and DOES 1 through 20 inclusive, | ) |
| | ) |
| Defendants. | ) |
| ——————————————— | ) |
| | ) |
| AND RELATED CROSS-ACTION, | ) |
| | ) |
| Cross-Defendants. | ) Friday, April 28, 2006 |
| ——————————————— | ) San Francisco, California |

Appearances:

For the Plaintiff:      Pahl & Gosselin, P.C.
                        By:  Catherine Robertson, Esq.
                        160 West Santa Clara Street, 14th Floor
                        San Jose, California  95113-1700

For Defendant           Goodrich & Associates
Thomas R. Lloyd:        By:  Jeffrey J. Goodrich, Esq.
                        336 Bon Air Center, Suite 335
                        Greenbrae, California  94904

Digital Court           United States Bankruptcy Court
Recorder:               Jane L. Galvani
                        235 Pine Street, 23rd Floor (94104)
                        Post Office Box 7341
                        San Francisco, California  94120-7341
                        (415) 268-2366

Certified Electronic    Palmer Reporting Services
Transcriber:            P. O. Box 30727
                        Stockton, California  95213-0727

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

Plaintiff's EOR-298

*Motion for Summary Judgment*                                        2

1   <u>Friday, April 28, 2006</u>                    <u>10:07 o'clock a.m.</u>

2                    P R O C E E D I N G S

3        THE CLERK:  Line number 10, the matter of Hoffman

4   versus Lloyd.

5        MR. GOODRICH:  Good morning, Your Honor.  Jeff

6   Goodrich appearing for Thomas Lloyd.

7        MS. ROBERTSON:  Good morning, Your Honor.  Catherine

8   Robertson for Mr. Hoffman.

9        THE COURT:  Okay.  Let me give you some comments.

10       There are various requirements of Section 1695 that

11  Mr. Lloyd has said have been violated here.  There are differing

12  degrees of certainty as to whether there is indeed a violation.

13  The — if there is any sort of doctrine of substantial

14  compliance, I think it, at minimum, requires that the — that the

15  debtor have — not the debtor — he is the debtor here — but that

16  the equity seller have gotten very, very clear notice of the —

17  of the right to rescind at the time he signed the contract.

18       Now the — the statute also requires that the — that

19  there be basically two statements of recitals of this right to

20  rescind:  One in the contract itself near the signature line

21  and, second, that there be a notice given and that the first

22  recital refer to the notice which is attached.

23       From the papers I have, it appears to me, unless I'm

24  missing something, beyond any dispute that there is — the

25  contract does not contain that first recital near the signature

Plaintiff's EOR-299

*Motion for Summary Judgment*                                    3

1   line for the contract.  There are all sorts of other questions
2   that arise here.  One is whether these three contracts together
3   can be considered *the* contract, the qualifying contract.  If
4   that were so, it would be possible for, perhaps possible, for
5   this warning to be in any one of those — by any one of those
6   three signature lines.  Although I think it would logic — the
7   better view would be, though, would have to be the one, the
8   purchase sale part of it, but it's not in any of them.

9          The notice would also have to have been attached to
10  the contract at the time the contract was signed.  It's part of
11  the contract.

12         Now there is a notice here which may or may not be
13  authentic and which — for which a copy may or may not have been
14  given to Mr. Lloyd.  And if it was given to him, we have no
15  indication of what time that was.  There's his declaration, Mr.
16  Lloyd's declaration said on May 28th, at the time he signed the
17  contract he dealt with only three documents:  The purchase sale
18  agreement, the lease, and the option.  Any other documents he
19  dealt with were only presented by the title company at closing.

20         There is no — if one — if one admits this notice
21  prepared with respect to this transfer and purportedly signed by
22  Mr. Lloyd, as being an authentic document, it may constitute
23  some evidence that it was received at the time he signed the
24  contract.  That's a very slender read.  But, in any case, even
25  if that were so, it seems that we still have the problem that we

*Motion for Summary Judgment*                                    4

1   don't have this required recital in the contract itself separate

2   from the notice near the signature line.

3          So I don't — and then the statute makes very clear

4   that until a complying contract has been provided to the — to

5   the equity seller, the — the rescission period doesn't start to

6   run.  And it doesn't appear that a complying contract has ever

7   been provided to the — to the seller.

8          Now there are all sorts of questions I have.  When did

9   this close, by the way?  Was that at the end of June?  It was

10  supposed to be a closing date of June 30th.

11          MR. GOODRICH:  Correct.  I believe the actual closing

12  was in late August.

13          THE COURT:  Oh, okay.  Because I note that there was a

14  — that there was — it was recorded in late August.  That's

15  mentioned.

16          MR. GOODRICH:  Right.

17          THE COURT:  So this waited a long time.

18          MR. GOODRICH:  In the proof of claim on file there's

19  an escrow closing statement that I think references August 28th.

20  I believe Mr. Hoffman agreed that was about the date that the

21  escrow closed.

22          THE COURT:  Now Mr. Hoffman's been deposed.  Has Mr.

23  Lloyd been deposed?

24          MR. GOODRICH:  No.

25          THE COURT:  And where was the closing?

Plaintiff's EOR-301

*Motion for Summary Judgment*                                        5

1          MR. GOODRICH:  At a title company called Alliance

2    Title in the South Bay.

3          THE COURT:  And when — when the first three documents

4    were signed on May 28th, was that — where did that happen?

5          MS. ROBERTSON:  Your Honor, —

6          MR. GOODRICH:  I can't — I can't — I don't know

7    because Mr. Hoffman apparently received these documents from an

8    Asher Robertson, who's mentioned in the purchase contract as, I

9    think, a broker.  I have not deposed Mr. Robertson.  His

10   testimony was not relevant to the issue that was set for phase

11   1.  And Mr. Hoffman objected to any discovery beyond the phase 1

12   issues.

13         Obviously if my client had signed such a document and

14   it was part of the escrow, that would show notice of 1695 and so

15   I would have thought that Mr. Hoffman would have deposed my

16   client or obtained title records.

17         THE COURT:  Yeah.  I have no idea how you retrigger

18   this thing again.

19         MR. GOODRICH:  Right.

20         THE COURT:  Whether notice at some later period, what

21   it has to be.  Now the notice in the contract itself by the

22   signature line was designed by the Legislature to hit the seller

23   in the face as much as it could.

24         MR. GOODRICH:  Right.

25         THE COURT:  And what — what — you know, when we talked

*Motion for Summary Judgment*                                              6

1   about the waiver issue, —

2          MR. GOODRICH:  Right.

3          THE COURT:  — that was that district court case that

4   said at some point you have to have your opportunity to rescind

5   and only when it really passes, after you know it, can you

6   really be said to waive it.

7          MR. GOODRICH:  Right.

8          THE COURT:  I don't know if the statute allows this

9   right —

10         MR. GOODRICH:  Subsequent performance.

11         THE COURT:  — basically to say, 'Okay, you got a right

12  to rescind.  You still have a right to rescind.  You know, do

13  you want to do it.  You've got five days.'

14         MR. GOODRICH:  Right.

15         THE COURT:  Presumably one could not at that point, at

16  the point when really had that put one in front of one's nose,

17  say, no, it just continues indefinitely.

18         MR. GOODRICH:  Right.  And that's the position we took

19  in phase 1, was that you can settle these kinds of cases by, you

20  know, clearly offering the full five days again.

21         THE COURT:  Well, it's not really a settlement.  It's

22  just a —

23         MR. GOODRICH:  Right.

24         THE COURT:  — belated compliance of —

25         MR. GOODRICH:  Right.

Plaintiff's EOR-303

1              THE COURT:  — giving him the five days.

2              MR. GOODRICH:  Right.

3              THE COURT:  And I don't think if it's lost it's lost

4    forever.

5              MR. GOODRICH:  Correct.

6              THE COURT:  And I don't think you contended otherwise.

7              MR. GOODRICH:  Right.

8              MS. ROBERTSON:  Well, Your Honor, I'm a little

9    confused because the way I'm reading the statute is the statute

10   is defined — the contract is defined in 1695.1 as "Any

11   document," basically document, "that's incident to the sale of

12   the residence."  This notice of rescission is incident to the

13   sale of this purchase — I'm sorry — incident to the sale of the

14   residence.  And the notice itself provides for all of the

15   requirements of 1695.3 and .5.  And, yes, it is under one

16   document.

17             But, to use the Court's own words, it is in the face.

18   I mean there's — you know, it is one document that provides all

19   of the notices that he wants and it's signed by Mr. Lloyd.  And

20   it's dated on May 28th.  It's not signed as received on May

21   28th, but it's dated on May 28th with the specific date and on

22   which he can cancel the transaction.

23             And I understand the Court's concern about substantial

24   compliance, but I'm not sure that the intent was, you know, to

25   put specific language at the bottom of a contract really

Plaintiff's EOR-304

*Motion for Summary Judgment*                                               8

1   provides any more notice than a separate piece of document with

2   a big old notice, you know, on it attached thereto.

3            MR. GOODRICH:  Well, Your Honor, as we point out in

4   our papers, first of all, the statute is not what counsel just

5   suggested.  It says it has to be an agreement, an offer, or a

6   term thereof.  Not a document that's incident to it.  A contract

7   doesn't include all documents incident to the sale.  It includes

8   the arrangement, purchase, the offer.  This is a notice.  It's

9   not an offer, it's not an arrangement, it doesn't include terms

10  of a sale.  It is a notice of statutory right.  So it does not

11  fit the statutory definition.

12           And, second of all, again counsel's argument is not

13  evidence.  There is no evidence, and they've had 18 months from

14  the date that they first got this notice of rescission to find

15  and support their argument, which is all it is right now is

16  argument, that that is Lloyd's signature and that it was

17  delivered to Lloyd.  So they haven't met their burden which they

18  have in opposing a motion for summary judgment that is properly

19  submitted of showing that this document, as defective as it may

20  be, was in fact signed by Lloyd and delivered to him.

21           Now the Court had suggested that this may be some

22  evidence.  I think the Court —

23           THE COURT:  I guess — let me just say this.

24           MR. GOODRICH:  But it's not properly authenticated.

25           THE COURT:  Let me just say this.  If this document,

*Motion for Summary Judgment*                                             9

1   if there were four things that the debt- — that Mr. Lloyd signed

2   on May 28th, under the doctrine that you — this definition that

3   you noted, that anything having to do with the transaction, and

4   obviously if they're all done on the same day may have to do

5   with the transaction here.  It's a single transaction.  If he

6   had signed that on May 28th, because he signed it, because

7   there's a signature line, it might be construed as satisfying

8   that requirement because it wasn't simply a notice, but he

9   signed it.  You might have a double duty.  Because it's in big

10  print and it — you know, it says:  Look out.  Okay.

11          I think that if it wasn't done on May 28th, if it was

12  in fact signed but only signed with a whole bunch of other

13  closing documents, then it doesn't satisfy being part of the

14  contract because the statute says quite clearly this notice

15  period is to run before there's to be a closing, okay?

16          I think that I — just as a very practical person, one

17  — one has to allow if there's a mistake, the notice to be

18  essentially given for the first time later and say, 'You have

19  another chance.'  But including it in a closing document down at

20  the end of August where they don't come up and say, where it

21  says that 'You have until early June to rescind' and where they

22  don't say, 'You know there was a mistake.  You should have been'

23  — I mean they would really have to be — they'd really have to,

24  you know, slow you down and say, 'There was a mistake.  You had

25  a right to rescind.  You didn't get notice of that.  You still

*Motion for Summary Judgment*                                      10

1    have the right to rescind by five days.'

2           Notwithstanding he should have done it earlier, where

3    — and 'We would have liked you to exercise any right early

4    before we close.  You do have that right.  Do it now in five

5    days or we will insist that you don't have that right after the

6    five days.'  That clearly didn't happen here.

7           Now the problem — so everything depends I think on

8    this rescission or this notice having actually been signed by

9    Mr. Lloyd on May 28th.  I think you've got a decent argument

10   under the statute if that happened.

11          The trouble is we have from Mr. Lloyd a comment or a

12   declaration saying, 'The only things I signed on May 28th were

13   A, B, and C.'  This is D.  Okay.  He said, "I signed.  But I

14   signed the purchase sale agreement.  I signed the option.  I

15   signed the lease."  He said, "I signed some other things at

16   closing."

17          Now you could possibly come up with evidence —

18   evidence controverting that, but I don't know where it is.

19          MS. ROBERTSON:  As I recall, Your Honor, —

20          THE COURT:  I'm trying to apply the statute —

21          MS. ROBERTSON:  Yeah.

22          THE COURT:  — in a common sense way, but as I — you

23   know, even a common sense way, the statute is clear enough that

24   he needs to have this notice when he signs the contract.  He

25   needs to have this warning.  And he needs to sign his name near

Plaintiff's EOR-307

1    the warning when he signs the contract.

2         And given his declaration, I don't know what you have

3    to controvert that, to show that, no, there is a question as to

4    whether he signed this on May 28th.

5         The fact that it's dated May 28th means absolutely

6    nothing.  It means somebody filled it in, filled that date in,

7    because that was the date that was originally contemplated.

8         MR. GOODRICH:  Then Mr. Hoffman could not tell us

9    whose handwriting that was.  We have no evidence of who prepared

10   this, when it was prepared.

11        THE COURT:  But it needs to be — we need evidence as

12   to more than when it was prepared.  We need evidence to when it

13   was set to Mr. Lloyd and did somebody receive it with the other

14   documents on — after May 28th.

15        MS. ROBERTSON:  Well, Your Honor, I agree with the

16   Court that if it wasn't signed on May 28th, then I don't think

17   it's part of the contract.  But what Mr. Lloyd has said is, "I

18   signed the lease, the purchase agreement, and the option,

19   period."  We've —

20        THE COURT:  And the lease.

21        MS. ROBERTSON:  Yeah.  I'm sorry.  The lease.  I

22   thought I included it.  Three documents.

23        THE COURT:  Yeah, right.  Correct.

24        MS. ROBERTSON:  So he said, "I signed three documents,

25   period."

Plaintiff's EOR-308

*Motion for Summary Judgment*                                        12

1    We then presented evidence that as part of the

2    business records is this notice that's dated May 28th with his

3    signature on it.  It's a business record.  I think the logical

4    response would have been for Mr. Lloyd to then prepare a

5    declaration that went with his reply to say, 'I've never seen

6    that,' and he certainly didn't sign it on May 28th, but he

7    didn't do that.

8    As a result of that I think that we have a triable

9    issue of fact as to whether this was his signature and when it

10   got signed.  If we can demonstrate to the Court's satisfaction

11   with testimony that somebody got up and then — when somebody

12   gets up and says, you know, 'I watched him sign this, and it was

13   May 28,' then I think we win.  If we can't find somebody or the

14   Court doesn't believe him, then I think Lloyd wins.

15   MR. GOODRICH:  Well, Your Honor, if the Court wants

16   him to state that for the record we'll submit a declaration to

17   that effect.  I view summary judgment as not a battle of who's

18   telling the truth, but is there a genuine issue of material

19   fact.

20   I didn't submit his declaration because if the Court's

21   going to find that this is sufficient, then we have to have a

22   trial on who's telling the truth.  You know, you don't raise —

23   you don't win summary judgment by saying 'That's not my

24   signature.'  You raise summary judgment by saying, 'Regardless

25   of what this is, it's not enough.'  And we raised it on two

*Motion for Summary Judgment*                                    13

1  grounds, one, that this is not authentic and therefore we don't

2  even have to respond to it.  But, second of all, it's not

3  sufficient, as the Court is now focusing on, regardless of whose

4  signature.  But I don't want any misunderstanding here and I

5  don't think counsel's aware of conversations that I've had with

6  Mr. Pahl.

7          There's no question, Mr. Lloyd thinks this is a

8  forgery.  This is way it didn't come into evidence in phase 1.

9  If Mr. Pahl was confident that he could withstand our attack on

10 forgery he would have put this in as evidence that my client

11 knew his rights under 1695.  So, no, we —

12         THE COURT:  I know.  I was well aware of that and —

13         MR. GOODRICH:  We had an objection —

14         THE COURT:  — I notice that your appeal or what you've

15 said in your — you gave us a copy of your request for basically

16 an interlocutory appeal, —

17         MS. ROBERTSON:  Um-hum.

18         THE COURT:  — a stay of this proceeding, an

19 interlocutory appeal.  And you say this is like the — what is

20 it, the *Mills* case?

21         MS. ROBERTSON:  Yes.

22         THE COURT:  It's not like the *Mills* case because he

23 had a notice, but I specifically found that he had no such

24 knowledge of the statute, and this would have been very relevant

25 to his knowledge of the statute.  It was not offered at that

*Motion for Summary Judgment*                                    14

1   trial.  And I remembered that because I know it came up before

2   the trial.

3           MR. GOODRICH:  Right.

4           THE COURT:  And I was waiting and it didn't come in.

5           MR. GOODRICH:  We objected to its admissibility, and

6   Mr. Pahl withdrew it.

7           MS. ROBERTSON:  Well, I don't necessarily think that's

8   an admission.  I think that that's simply —

9           THE COURT:  I'm just noting that, —

10          MS. ROBERTSON:  Yes.

11          THE COURT:  — you know, to — for you to claim that

12  there has been this on your interlocutory appeal is a little bit

13  — I don't know what the word I want to use here is, that it — it

14  doesn't say everything about this matter because that would have

15  been an obvious thing to introduce with the — an obvious

16  document to introduce with respect to the question of Mr.

17  Lloyd's knowledge of the statute.

18          And as I have indicated in my tentative ruling, if he

19  knew about it at the time he waived it, I was going to — because

20  it was in litigation, because the controversy was very much

21  ripe, I think I would have upheld the waiver, notwithstanding

22  your arguments that there was no such thing.

23          MR. GOODRICH:  Right.

24          THE COURT:  I would have upheld it as a settlement; if

25  not, a waiver.  But that didn't come in.

Plaintiff's EOR-311

*Motion for Summary Judgment*                                              15

1    I guess on this narrow motion we have two things.  One

2    is your — your argument depends on a doctrine of substantial

3    compliance because this is not perfect compliance, in any event.

4    Because this is not the regular signature line for the contract.

5    This is just an acknowledgement of receipt.  That's all it is.

6    Although if it really happened at the same time and if he

7    acknowledged this fairly bold document, it would be as good a

8    case for a substantial performance — it would be good facts for

9    a substantial performance.

10    But then we have the declaration that this — this — he

11    did not receive this document.  That he only signed four things

12    — three things at the — on May 28th.  That if he ever — if he

13    ever did sign this, it's obvious that he didn't sign it on May

14    28th.  Maybe he signed it later.  But the declaration to the

15    contrary that this is in the file contains no evidence

16    whatsoever as to when it was signed.

17    MR. GOODRICH:  That's correct.  And every time Mr.

18    Hoffman has submitted the purchase contract, the lease, and the

19    option in his proof of claim, in a motion for relief from stay,

20    at trial, this notice isn't attached.  And every time he said

21    that's a true and correct copy and there's nothing more to it.

22    And I on cross-examination asked him point blank, "Is there

23    anything missing from that purchase contract?"

24    He said, "No."

25    So there's no genuine issue that this notice, whatever

1    its authenticity, is never part of the contract at the time the

2    contract and perhaps never.  I mean there's no evidence that it

3    was ever attached.

4            And, again, we're trying to — we're trying to view

5    these facts in a light most favorable to the plaintiff and make

6    all reasonable inferences.  And just the fact that it was in

7    their file, produced late in the case, doesn't raise any

8    inference.

9            THE COURT:  If I grant this motion, what's left?

10           MR. GOODRICH:  We asked for relief on the three claims

11   for relief that were in the plaintiff's removed state court

12   action.  I may have been a little aggressive there, and I looked

13   at the third claim for relief.  It's for breach of contract.  I

14   don't know what other breaches the plaintiff had.  They only

15   mentioned the breach of contract, meaning notwithstanding the

16   settlement, we filed this suit, and that's a breach.  But the

17   first two claims we want judgment on.  One is for slander of

18   title on the theory that the notice of rescission slandered Mr.

19   Hoffman's title.  Obviously if we have a right to rescind, then

20   it's not slander.

21           On the second claim for relief, which was cancellation

22   of a cloud on title, similarly it's based on the recordation of

23   the notice of rescission.  If that's valid then that should be

24   dismissed with prejudice as well.

25           THE COURT:  I'm sorry.  What was the second?

Plaintiff's EOR-313

1         MR. GOODRICH:  Cancellation of cloud on title.  One
2    was slander of title.
3         THE COURT:  Okay.  So they're related?
4         MR. GOODRICH:  Yeah, they're related.
5         And the third was breach of contract on the idea that
6    recording the notice of rescission breached the —
7         THE COURT:  Okay.
8         MR. GOODRICH:  — settlement agreement.  Since — I
9    don't know if there are any —
10        THE COURT:  Do you have — do you have counterclaims?
11        MR. GOODRICH:  Yes.  We have seven counterclaims.  We
12   only asked for relief on Number 1, which was for declaratory
13   relief.  I think the Court basically has already declared the
14   parties' rights under the settlement agreement insofar as he
15   doesn't include 1695 as a waiver.
16        There's still a substantial issue for trial on whether
17   the whole settlement agreement can be avoided for material
18   breach; and that's the issue of the NorCal lien and the demand
19   at the close of the auction period where Mr. Hoffman gave us a
20   demand for NorCal and NorCal was not a loan that was on the
21   property at the time of the settlement.  Mr. Hoffman wants to
22   claim that that's an amount he's entitled to demand.  Our
23   position is that was a material breach.
24        The Court will have to have a trial as to what the
25   parties meant under the settlement agreement, assuming the

*Motion for Summary Judgment*                                              18

1   settlement agreement, you know, is not avoidable —

2           THE COURT:  Well, what is — forget that there was a

3   settlement agreement for a moment.

4           MR. GOODRICH:  Right.

5           THE COURT:  His remedy under the — if somebody buys

6   one of these properties, okay, I think you acknowledged that if

7   he — if somebody steps in and buys it — let's take a real simple

8   scenario.

9           MR. GOODRICH:  Right.

10          THE COURT:  There's a hundred thousand dollar balance

11  on a deed of trust that's in default.

12          MR. GOODRICH:  Right.

13          THE COURT:  The property's worth $200,000.  The equity

14  purchaser pays $20,000 to the person, or something like that,

15  and then pays off the mortgage.  This is a concept of — there's

16  a concept of rescission and there's also a possible claim for

17  damages.

18          MR. GOODRICH:  Right.

19          THE COURT:  So the conditions of the rescission and

20  the allocation of the damages would not allow the debtor to get

21  a windfall from the retiring of the existing deed of trust.

22          MR. GOODRICH:  Correct.  That's my — that's my —

23          THE COURT:  On the other hand, there would be damages

24  to the extent that a new deed of trust for 150, - was put on that

25  didn't exist at the time the — the property was sold.

*Motion for Summary Judgment*                                    19

1              MR. GOODRICH:  Right.

2              THE COURT:  In other words, you can't suck all the

3     cash out of it and say, 'Well, I'm willing to give you back the

4     property cum owner.'

5              MR. GOODRICH:  Right.

6              THE COURT:  So there are all these kinds of questions.

7              MR. GOODRICH:  Yeah.  There's basically an accounting

8     case left.

9              THE COURT:  But there's not — there isn't any concept

10    of complete forfeiture as against the — against the equity

11    purchaser.  You just try to put the equity seller back where he

12    or she should have been.

13             MR. GOODRICH:  With one caveat.  Ed Blum, who is the

14    prior counsel, when he gave the case to me felt that there was

15    under antideficiency caselaw a penalty that could be imposed.

16    I'm not seeing it.  I don't want to be standing here waiving it.

17    But my view is the Court's view, that in a rescission we look at

18    1691 and 1692, which are the standard rescission —

19             THE COURT:  Equitable remedy.

20             MR. GOODRICH:  Right.  And it's an equitable remedy.

21    The parties go back to where they started.  There often have to

22    be adjustments.  For example, if the house comes back to Mr.

23    Lloyd and it's damaged, then we're entitled to damages to bring

24    it back to the condition it was in.  For example, we know it's

25    been rented out.  There have been some modifications without

*Motion for Summary Judgment*                                    20

1    permits.  We don't know what's going to come back to us.

2           On the other hand, Mr. Hoffman paid $640,000 with

3    borrowed funds to pay off Mr. Lloyd's existing debt.  And unless

4    Mr. Blum is correct, I think that we have to give him credit for

5    that.

6           But as title comes back today at least, the amount of

7    debt on it is substantially greater than the amount debt when

8    Mr. Hoffman first acquired it.  So we believe netting of that

9    means we get the property back, we're going to have to deal with

10   that Greenpoint mortgage.  That's a third-party lender who is

11   not a part of this.  And Mr. Hoffman's going to have to pay us

12   to take care of the lien he put on there without our consent.

13   And where that money did not go to Mr. Lloyd —

14           THE COURT:  But it may be fairly complicated, though,

15   because you have appreciation.  But you have at least implied

16   interest on the amount of debt that was on the property that —

17   at the time of the sale that Mr. Lloyd never paid.

18           MR. GOODRICH:  Well, it's interesting.  I've not

19   completed my research, but it appears that the plaintiff has an

20   option of rescission or damages, and an election is not made

21   early on in the case.  I think the two reported decisions were

22   in a period of down markets, where an election was made for

23   damages as opposed to rescission because the house was not

24   worth —

25           THE COURT:  I see, okay.

*Motion for Summary Judgment*                                21

1          MR. GOODRICH:  — what it was before.

2          I don't believe Mr. Hoffman will get a credit for

3   appreciation.  I think we get our house back.  If it's gone up —

4   he actually owes my client for the rental value.  To the extent

5   he's rented it, that's probably his money.

6              To the extent he made payments on the mortgage, that's

7   going to be a closer call.  My view is he's not going to get

8   that.

9          THE COURT:  Okay.  I get it.

10         MR. GOODRICH:  But there are a lot of — there are a

11  lot of issues there.

12         THE COURT:  All right.

13         MR. GOODRICH:  So as far as today our remedy that

14  we've asked for is simply dismissal with prejudice of the first

15  and second claims for relief.  I think, to be fair to Mr.

16  Hoffman, if he has some other breach-of-contract theory, we

17  ought to just let that breach-of-contract claim sit there.

18             As far as declaratory relief, I don't think we really

19  can dispose of all of that since there's continuing issues

20  concerning non1695 interpretations of —

21         THE COURT:  Are you — if you —

22         MR. GOODRICH:  — of the contract.

23         THE COURT:  — get a determination that you had a right

24  to rescind, —

25         MR. GOODRICH:  Right.

*Motion for Summary Judgment*                                    22

1          THE COURT:  — or which is also a determination that

2    there was a violation, —

3          MR. GOODRICH:  Right.

4          THE COURT:  — have you elected to rescind at this

5    point by filing the rescission, as opposed to damages?

6          MR. GOODRICH:  No.  You can — you can rescind but

7    retain your option until there's a substantial reliance one way

8    or the other.  And right now both parties are kind of in a

9    status quo.

10         One thing I've mentioned to counsel this morning is it

11   occurred to me looking at the settlement agreement, even if they

12   prevail on appeal the settlement agreement has in it a provision

13   saying that if Mr. Lloyd doesn't exercise his option, the

14   property shall be immediately sold for fair value.  And after

15   payment of secured debt, Mr. Lloyd will be repaid anything

16   that's left.

17         So if Mr. Lloyd now wants to sell the house, and I

18   believe that is the case, that that's one area of complete

19   agreement here, that we ought to sell it and then fight over the

20   proceeds.

21         If the Court were to grant our motion today and give

22   us quiet title, I think the Court's judgment will have to say

23   something to the effect that judgment quiet in title in the name

24   of Thomas Lloyd is entered subject to the monetary claims, if

25   any, of the defendants.  For example, NorCal has a lien.

*Motion for Summary Judgment*                     23

1   Obviously it's going to be subject to that lien.  We have our

2   rights to set it aside or have Mr. Hoffman pay it off.

3           Mr. Hoffman has his counterclaims for whatever he's

4   out of pocket.  You know, his rescission monetary claims.

5           And if that judgment were entered and Mr. Hoffman

6   doesn't want to agree to a joint sale, it is my intention to

7   seek a sale down the road here free and clear —

8           THE COURT:  Under 363(f).

9           MR. GOODRICH:  Right.  With those monetary claims

10  attaching.  So I mean I think we can work that out, but if not

11  that's a remedy I think it's important for the estate to have so

12  we can pay off the creditors.

13          MS. ROBERTSON:  It does seem like a practical

14  solution, and I can convey it up.

15          THE COURT:  Well, if the debtor doesn't have a job, —

16          MR. GOODRICH:  Right.

17          THE COURT:  — the debtor is going to have to sell this

18  because it's quite clear it's going to come back with a

19  considerable amount of debt on it.

20          MR. GOODRICH:  Right.

21          THE COURT:  Because there was a considerable amount of

22  debt before.

23          MR. GOODRICH:  Right.

24          THE COURT:  And I do think that if I were to grant

25  this motion, they can convey good title whether you agree or

*Motion for Summary Judgment*                                    24

1   not.  It would just be a question of going through some hoops.

2              MR. GOODRICH:  Right.

3              THE COURT:  Because the title would — the ownership —

4   your claim for ownership would be in dispute.  And under, what

5   is it, *Rodeo Canyon*, —

6              MR. GOODRICH:  Um-hum.

7              THE COURT:  — the circuit has — the Court has to make

8   a determination that if it does in fact be property of the

9   estate, but the trial on this would be as much determination —

10  it would be such a determination that the title resides in the

11  debtor.  So it's as much as one could do at the trial court

12  level.

13             MR. GOODRICH:  Right.

14             THE COURT:  Well, I'm still — I'm still back to this

15  question that I — he — we have a very explicit declaration

16  saying, "I signed only three things on May 28th, that this

17  matter"; this notice does not satisfy the contract unless he

18  also signed it on May 28th, because otherwise it's just a

19  separate notice.  It conceivably could do double duty as the

20  proviso next to the signature, if it is also signed.  But he

21  says, "I only signed it on May 28th."  He says, "I signed some

22  other unspecified documents on other dates."  And there's

23  nothing to the contrary to controvert his statement that "I

24  signed" — "I signed only these three things on May 28th."

25             MS. ROBERTSON:  But if he signed —

*Motion for Summary Judgment*                                    25

1      THE COURT:  You don't have anybody that said, 'I sent

2  these papers to him on May 28th.  This is what I got back and it

3  had a signature on it.'

4      MS. ROBERTSON:  I — I can't argue with that, Your

5  Honor.  I — I understand the Court's point.

6      THE COURT:  But that's quite apart from the —

7      MS. ROBERTSON:  But, on the other hand, —

8      THE COURT:  — from the question that nobody — nobody

9  at all said, 'I saw him sign it.'

10     MS. ROBERTSON:  But if he had —

11     MR. GOODRICH:  Right.

12     MS. ROBERTSON:  But if he had signed this document in

13  late June with other title documents, it seems to me odd that he

14  would have signed this document with a date that's already

15  passed.  And it seems more logical that he signed this

16  document —

17     THE COURT:  Well, but you don't have anybody that says

18  he ever signed it, that they submitted it to him and he signed

19  it.

20     MS. ROBERTSON:  Well, no, Your Honor, we don't at this

21  summary judgment motion.  We — that's why we're asking that it

22  be denied.

23     THE COURT:  So there's — you know, there's no case for

24  the — there's sort of a general statement here that, 'Well, this

25  was in my file.  And it obviously relates to the transaction and

*Motion for Summary Judgment*                                    26

1   it was in the file, relating to this transaction.'  That's the

2   sum and substance of the testimony.  Nothing about when it was

3   signed, whether it's authentic, whether anybody saw him sign it.

4        MR. GOODRICH:  And I do note for the record that Mr.

5   Hoffman was given the option of the 56(f) continuance and turned

6   it down, and this case has been pending since —

7        THE COURT:  Yeah.

8        MR. GOODRICH:  — the notice was recorded in October of

9   2004.  Since this is a document that he says was in his file and

10  he was part of the transaction, he could have authenticated it

11  by now if he could have authenticated it.

12       THE COURT:  Now in your motion I don't — you asked for

13  a determination that the right of rescission is still good.  It

14  was never — never expired because the proper contractual form

15  and notices were not provided.

16       MR. GOODRICH:  Correct.

17       THE COURT:  I don't think you specified all the — what

18  this means with respect to all the claims.

19       MR. GOODRICH:  Right.  And basically — yeah.

20       THE COURT:  In any case there's no final judgment on

21  all claims at this point.

22       MR. GOODRICH:  Right.

23       THE COURT:  So if there was to be any appeal, the — it

24  would have to be — I'd either have to certify it or you would

25  have to get — have you seen Judge Patel?

*Motion for Summary Judgment*                                      27

1          MS. ROBERTSON:  Yes.  Well, Mr. Pahl has seen Judge

2    Patel.

3          THE COURT:  Yeah.  Well, that — I mean you had —

4          MS. ROBERTSON:  Right.

5          THE COURT:  It's Judge Patel.

6          MS. ROBERTSON:  Right.

7          THE COURT:  That was — I didn't — I wasn't trying to

8    identify which one —

9          MS. ROBERTSON:  Right.

10          THE COURT:  — of you were there.  I thought it was

11    next week — right?

12          MR. GOODRICH:  Correct.

13          MS. ROBERTSON:  It's Monday.

14          THE COURT:  Monday, okay.

15          Well, I'm going to grant the motion with respect to

16    summary judgment with respect to the lack of compliance with the

17    provisions that the — that provision in the contract next to the

18    signature was not satisfied and that there's — it is for summary

19    judgment purposes undisputed that he did not sign this paper on

20    May 28th and it would take that and a generous reading of the

21    statute too to find that that requirement was satisfied.

22          Now in terms of the actual order, we need to get you

23    to list these specific claims that have been resolved.  And you

24    haven't done that yet.  But, in any case, it doesn't resolve all

25    claims as to all parties.

*Motion for Summary Judgment*                                              28

1              MR. GOODRICH:  Right.

2              THE COURT:  So Judge Patel is still sitting there with

3     an appeal that is not soon going to be a regular —

4              MR. GOODRICH:  Right.  There's nothing we can really —

5              THE COURT:  — 13 — or what is it?  What's the section?

6     1409, 1408?

7              MR. GOODRICH:  Right.  Right.

8              THE COURT:  Whatever the jurisdictional provision is,

9     this is not the final judgment.  This is would be an

10    interlocutory appeal —

11             MR. GOODRICH:  Correct.

12             THE COURT:  — granted by leave.  Okay.

13             Now so you need to prepare a form of order which

14    grants this motion, and you can specify, subject to counsel's

15    review, what claims have been resolved here, but it clearly

16    doesn't resolve all claims as to all parties.

17             MR. GOODRICH:  Right.

18             THE COURT:  Now what I urge you to do is if the debtor

19    — you've got troubles with the U.S. Trustee in this case.

20             MR. GOODRICH:  Right.

21             THE COURT:  You've got all sorts of problems with the

22    other owners.  Putting this property on the market may be kind

23    of good leverage with the other owners.

24             MR. GOODRICH:  Right.

25             THE COURT:  It's only one that I think you need

1  leverage with.

2          MR. GOODRICH:  Right.

3          THE COURT:  I urge you to, under the circumstances, to

4  get this property listed, to get a stipulation for the sale of

5  the property.

6          MR. GOODRICH:  Um-hum.

7          THE COURT:  And with all rights reserved as to the

8  proceeds.

9          MR. GOODRICH:  Certainly.

10          THE COURT:  It's probably a good time of year to sell

11  it.  You know, so I think it's in every — all of your interests

12  to cooperate as to maximizing the fund that is going to be split

13  up.

14          MR. GOODRICH:  I agree.

15          THE COURT:  It's evident at this point, from at least

16  a trial level, that Mr. Hoffman and his company cannot keep the

17  property, that it's going to have to be sold.  And even if you

18  appeal this, he's going to be able to sell it in the meantime.

19  He's going to be able to sell subject to your interests in the

20  proceeds.

21          MS. ROBERTSON:  I understand.

22          THE COURT:  So you might as well — you know, you might

23  as well do it in a cooperative manner at a time of year that's

24  probably going to be better and without the cost, because what —

25  basically if you read 363(f), you know, there's been a

1   determination here that it is a right of rescission upon which

2   time — the deed's no good.  And the — so it's their property

3   again.

4         Now you have a claim against it, but that's disputed.

5   And under 363(f) they can convey good title.  They can —

6         MS. ROBERTSON:  Right.

7         THE COURT:  — basically give title to somebody who has

8   a BFP unless you get the order stayed pending appeal, which is

9   hard to do.  There is a limitation on this in the case of the

10  *Rodeo Canyon* case, but that limitation I think is satisfied in

11  this manner by the trial.  So I think it's really in your — you

12  can — obviously you have an appointment with Judge Patel Monday,

13  but I think right after that, if you don't get what you want,

14  you really need to — you probably ought to turn to selling this

15  property.  And you can work up the order at the same time I

16  think.

17        MR. GOODRICH:  Right.

18        THE COURT:  Okay.

19        MR. GOODRICH:  Good.

20        THE COURT:  Now we need to have a status conference in

21  this.

22        MR. GOODRICH:  Yes.

23        THE COURT:  I need you folks to — and I don't want to

24  do it today, but I need you folks to — first of all, you want to

25  see what happens Monday.

1       MS. ROBERTSON:  Right.

2       THE COURT:  You need to discuss the sale, but you're

3  also going to need to figure out what you need to do next with

4  respect to the — to these accounting questions.  In that regard

5  you may just — if you do agree upon a sale, you may just sort of

6  want to collect information and then have the — you may want to

7  have the sale first, I don't know.

8       MR. GOODRICH:  Right.

9       THE COURT:  You got to think about that, though.

10      MR. GOODRICH:  Yes.

11      THE COURT:  Think about what you want to do next.  So

12  we need to set up a status conference.

13      MR. GOODRICH:  Yes.

14      THE COURT:  Any suggestions?

15      MS. ROBERTSON:  No, Your Honor.

16      THE COURT:  I think you ought to wait at least — you

17  know, it's going to take you at least probably 30 days to figure

18  out whether you can agree on a sale and everything else.

19      MR. GOODRICH:  That's fine, Your Honor.

20      THE COURT:  So that would be sort of the end of May,

21  something like that.

22      MR. GOODRICH:  Right.

23      THE COURT:  Could do it the — I think probably the

24  29th is Memorial Day, right?  Or the 26th, would that make

25  sense?

*Motion for Summary Judgment*                                    32

1           MS. ROBERTSON:  The 26th is fine on my calendar.

2           THE COURT:  I mean it's right before the holiday.  I

3    don't know whether you folks have plans or not.  I'm very

4    flexible.  You know within reason I'll do what you want here.

5           MR. GOODRICH:  May 26, what time?

6           THE COURT:  9:30.

7           MS. ROBERTSON:  That's fine, Your Honor.

8           MR. GOODRICH:  That's fine.

9           MS. ROBERTSON:  I don't anticipate plans —

10          THE COURT:  Now if something does come up and you want

11   to move this a little bit, you know, just agree on a date and

12   let Mr. Hom know and it'll be okay.

13          MR. GOODRICH:  Great.

14          THE COURT:  Okay?

15          MR. GOODRICH:  Thank you.

16          THE COURT:  All right.

17          MS. ROBERTSON:  Thank you, Your Honor.

18          THE COURT:  Now and prepare a form of order regarding

19   today and serve it on Ms. Robertson.

20          MR. GOODRICH:  Right.  Thank you.

21          THE COURT:  Thank you.

22          Going to take a short break.

23          THE CLERK:  All rise.

24      (The hearing was adjourned at 10:53 a.m.)

25                              —o0o—

State of California            )
                               )    SS.
County of San Joaquin          )


       I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

       I further certify that I am not a party to nor in any way interested in the outcome of this matter.

       I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.


                          Susan Palmer
                          Palmer Reporting Services

                          Dated February 7, 2007

Plaintiff's EOR-330

**DOCUMENT 11**

**Entered on Docke.**
**May 15, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: May 15, 2006

THOMAS E. CARLSON
U.S. Bankruptcy Judge

1    Jeffrey J. Goodrich (SBN 107577)
2    GOODRICH & ASSOCIATES
     336 Bon Air Center, Suite 335
3    Greenbrae, CA 94904
     (415) 925-8630  VOICE
4    (415) 925-9242  FAX
5
     Attorneys for Debtor and
6    Debtor in Possession
7
8                    UNITED STATES BANKRUPTCY COURT
9                    NORTHERN DISTRICT OF CALIFORNIA
10                   SAN FRANCISCO DIVISION
11
12
13                                    CHAPTER 11
14   In re:                           Case No. Case No. 04-32921-TEC
15   THOMAS LLOYD,
16        Debtor
17   JEFFREY E. HOFFMAN,              Adv. No. 05-03328
18        Plaintiff,
                                      ORDER GRANTING DEFENDANT
19   v.                               THOMAS LLOYD'S  MOTION FOR
                                      SUMMARY JUDGMENT
20   THOMAS R. LLOYD, an individual, EDWARD
     L. BLUM, an individual, and DOES 1 through
21   20, inclusive,
22        Defendants
23   AND RELATED CROSS-ACTION,
24
25        Cross-Defendants
26
27
28

ORDER GRANTING DEFENDANT THOMAS
LLOYD'S MOTION FOR SUMMARY JUDGMENT      1

1  The motion of Thomas Lloyd, Defendant herein ("Lloyd") for summary judgment

2 ("Motion") came on regularly for hearing before the Honorable Thomas E. Carlson, United State

3 Bankruptcy Judge, on April 28, 2006. Lloyd appeared by and through his counsel, Jeffrey J.

4 Goodrich, Esq. Plaintiff Jeffrey E. Hoffman ("Hoffman") appeared by and through his counsel of

5 record, Pahl & Gosselin, by Catherine Robertson, Esq.

6  At the time of hearing, Lloyd orally modified the scope of relief requested in the Motion to

7 request judgment in favor of Lloyd and against Hoffman on the First and Second Causes of Action

8 of Hoffman's Complaint and the Fourth Cause of Action of Lloyd's Cross-Complaint. The Court

9 having made its findings of fact and conclusions of law on the record in open court, and good cause

10 appearing:

11  IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

12  1. Lloyd's motion, as modified at the time of hearing, is granted.

13  2. Judgment in favor of Lloyd and against Hoffman shall be entered on the First and

14 Second Causes of Action of Hoffman's Complaint, and said Causes of Action are hereby dismissed

15 with prejudice.

16  3. Judgment in favor of Lloyd and against Hoffman shall be entered on the Fourth

17 Claim for Relief [Quiet Title] of Lloyd's Cross-Complaint.

18  4. Title to the real property located at and commonly known as 940 Elizabeth Street,

19 San Francisco, California ("Subject Property") is hereby quieted in the name of Thomas Lloyd,

20 debtor and debtor-in-possession herein, subject to the monetary claims, if any, of Hoffman and the

21 other cross-defendants in this Adversary Proceeding, which claims shall be determined at trial in

22 this Adversary Proceeding.

23 APPROVED AS TO FORM:

24

25 /s/ Catherine Robertson

26 Catherine Robertson, Esq.

27        * * *

28       END OF ORDER

ORDER GRANTING DEFENDANT THOMAS
LLOYD'S MOTION FOR SUMMARY JUDGMENT  2

Plaintiff's EOR-332

1

## SERVICE LIST

2

3  **ATTORNEYS FOR PLAINTIFF AND CROSS-DEFENDANTS:**

4  Pahl & Gosselin
5  Stephen D. Pahl, Esq.
   225 West Santa Clara Street
6  Fourteenth Floor
   San Jose, California 95113-1700
7

8  **ATTORNEYS FOR DEFENDANT AND CROSS-PLAINTIFF THOMAS LLOYD:**

9
   Goodrich & Associates
10 Jeffrey Goodrich
   336 Bon Air Center, #335
11 Greenbrae, CA 94904

12
   **ATTORNEYS FOR DEFENDANT EDWARD BLUM:**
13

14 Jerry R. Hauser
   Phillips, Greenberg & Hauser
15 4 Embarcadero Center, 39th floor
   San Francisco, CA 94111
16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT THOMAS
LLOYD'S MOTION FOR SUMMARY JUDGMENT     3

Plaintiff's EOR-333

3425-002
BK

Entered on Docket
June 02, 2006
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: June 01, 2006

_____
THOMAS E. CARLSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 04-32921 TEC 11 |
| THOMAS LLOYD, | Chapter 11 |
|             Debtor. | |
| JEFFREY E. HOFFMAN, | |
|         Plaintiff, | |
|    vs. | Adv. Proc. No. 05-03328 TC |
| THOMAS R. LLOYD, an individual, EDWARD L. BLUM, an individual, and DOES 1 though 20, inclusive, | |
|         Defendants. | |
| THOMAS LLOYD, | |
|         Cross-Plaintiff, | |
|    vs. | **TRIAL SCHEDULING ORDER** |
| JEFFREY E. HOFFMAN, dba H & B PROPERTIES; H & B PROPERTIES, LLC,; J. EDWARDS INVESTMENT GROUP, INC., and NORCAL FINANCIAL, INC., | B.R. 7016<br>Fed. R. Civ. P. 16 |
|         Cross-Defendants. | |

TRIAL SCHEDULING ORDER                           -1-

Plaintiff's EOR-334

1       The court held a status conference in this adversary

2    proceeding on May 26, 2006.  Catherine Schlomann Robertson appeared

3    for Plaintiff.  Jeffrey J. Goodrich appeared for Defendant.  Upon

4    due consideration, and for the reasons stated on the record at the

5    status conference, the court hereby establishes the following

6    schedule:

7       (1) All discovery shall be completed by September 29, 2006.

8       (2) A pretrial conference shall be held on October 12, 2006 at

9    9:30 a.m., United States Bankruptcy Court, 235 Pine Street, Twenty-

10   Third Floor, San Francisco, CA 94104.  The deadline for filing and

11   serving a pretrial conference statement is October 10, 2006 at

12   12:00 p.m.  The parties are directed to meet and confer regarding

13   settlement and pretrial conference statements before the deadline

14   for filing such statements.

15       The pretrial conference statement shall address: (a) the

16   substance of the action; (b) undisputed facts; (c) disputed facts;

17   (d) disputed legal issues; (e) witnesses to be called by each

18   party; (f) an estimate of trial time required; (g) whether separate

19   trial of specific issues is appropriate; and (h) whether it is

20   appropriate to introduce the direct testimony of any witnesses by

21   declaration (subject to oral cross examination).

22       (3) Trial will commence on October 30, 2006 at 9:30 a.m. at

23   the United States Bankruptcy Court, 235 Pine Street, Twenty-Third

24   Floor, San Francisco, CA.  Seven calendar days before the trial

25   date counsel shall inform the courtroom deputy (Gordon Hom (415)

26   268-2362) whether the parties have settled and, if not, how much

27   time the trial will require.  During the week prior to the trial

28   date the court may reschedule the trial to a later day during the

TRIAL SCHEDULING ORDER              -2-

Plaintiff's EOR-335

1 week of the trial date.  Counsel should be prepared to go to trial
2 at any time during the week of the trial date.

3       (4)   Seven calendar days before the scheduled trial date,
4 counsel shall: (a) serve and file trial briefs (briefs shall not
5 exceed twenty-five pages without **prior** permission of the court);
6 (b) exchange copies of all exhibits to be offered, other than those
7 to be used for impeachment or rebuttal; (c) serve and file
8 statements designating excerpts from depositions, answers to
9 interrogatories and requests for admission, other than those to be
10 used for impeachment or rebuttal; and (d) exchange a list of
11 expected witnesses, other than those to be called for impeachment
12 or rebuttal, including a brief summary of each witness' expected
13 testimony.

14       (5)   Counsel shall also: (a) premark all exhibits **before** trial
15 (Plaintiff's exhibits should be marked by number, Defendant's
16 exhibits should be marked by letter); (b) bring sufficient copies
17 of exhibits for all counsel, the witness, and the court; (c) in any
18 case in which the party expects to offer more than ten exhibits,
19 place the exhibits in a three-ring binder with an appropriate tab
20 attached to each exhibit; (d) number the pages of any exhibit that
21 has more than one page; (e) promptly advise the opposing party of
22 any objections to the introduction of the opposing party's proposed
23 testimony or exhibits; and (f) meet **before** trial to attempt to
24 reach agreement regarding admissibility of testimony and exhibits.

25    The court may exclude evidence, postpone trial, or impose
26 monetary sanctions for failure to comply with this order.

27       IT IS SO ORDERED.

28                          **END OF ORDER**

TRIAL SCHEDULING ORDER                    -3-

Plaintiff's EOR-336

1                 <u>Court Service List</u>

2

3 Catherine Schlomann Robertson, Esq.
   Law Offices of Pahl and Gosselin
4 225 West Santa Clara Street
   Suite 1500
5 San Jose, CA 95113

6 Jeffrey J. Goodrich, Esq.
   Law Offices of Goodrich and Associates
7 336 Bon Air Center, Suite 335
   Greenbrae, CA 94904

8
   Office of the U.S. Trustee
9 235 Pine Street
   Suite 700
10 San Francisco, CA 94104

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's EOR-337

**BAE SYSTEMS**

Bankruptcy Noticing Center
2525 Network Place, 3rd Floor
Herndon, Virginia 20171-3514

# CERTIFICATE OF SERVICE

| District/off: 0971-5 | User: awong2 | Page 1 of 1 | Date Rcvd: Jun 01, 2006 |
|---|---|---|---|
| Case: 05-59261 | Form ID: pdfeoc | Total Served: 1 | |

The following entities were served by first class mail on Jun 03, 2006.
db         +Johnny Ray Richardson,    2235 Mattison Lane,    Santa Cruz, CA 95062-1821

The following entities were served by electronic transmission.
NONE.                                                                    TOTAL: 0

***** BYPASSED RECIPIENTS *****
NONE.                                                                    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Jun 03, 2006                    Signature:    _Joseph Speetjens_

**Plaintiff's EOR-338**

**DOCUMENT 12**





Entered on Dockr
November 09, 200
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: November 08, 2006

_____
THOMAS E. CARLSON
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re | ) Case No. 04-32921 TEC |
| THOMAS LLOYD, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| _____ | ) |
| JEFFREY E. HOFFMAN, | ) |
| Plaintiff, | ) |
| vs. | ) Adv. Proc. No. 05-3328 TC |
| THOMAS R. LLOYD, an individual, | ) |
| EDWARD L. BLUM, an individual, and | ) |
| DOES 1 through 20, inclusive, | ) |
| Defendants. | ) |
| _____ | ) |
| THOMAS LLOYD, | ) |
| Cross-Plaintiff, | ) |
| vs. | ) |
| JEFFREY E. HOFFMAN, dba H & B | ) |
| PROPERTIES; H & B PROPERTIES, LLC,; | ) |
| J. EDWARDS INVESTMENT GROUP, INC., | ) |
| and NORCAL FINANCIAL, INC., | ) |
| Cross-Defendants. | ) |
| _____ | ) |

## TENTATIVE RULING RE RESCISSION PAYMENT

TENTATIVE RULING RE
RESCISSION PAYMENT

-1-

016529

Plaintiff's EOR-339

1    On October 30, 2006, the court held a hearing regarding the
2 amount (if any) that Lloyd must return to Hoffman (the Rescission
3 Payment) as a condition of judicial enforcement of Lloyd's
4 rescission of his transfer of the Elizabeth Street Property to
5 Hoffman.   The court hereby issues a tentative ruling re the
6 Rescission Payment, and establishes procedures for finally
7 determining the Rescission Payment.

8 **PART I:   PRINCIPLES FOR DETERMINING RESCISSION PAYMENT**

9    In determining the Rescission Payment, the court is inclined
10 to apply the following general principles.

11    1.   Lloyd must return any consideration received from Hoffman.

12    2.   Calculation of that amount is not affected by settlement
13 agreement (which is rescindable because it was a product of mistake
14 of law and/or fact for which Hoffman was responsible).

15    3.   Calculation of the Rescission Amount must properly take
16 account of the following facts:

17    (a)   The cash purchase price paid by Hoffman.

18    (b)   Lloyd's debt retired or carried by Hoffman (less any new
19        debt Lloyd now subject to).

20    (c)   Debt service on the amount of Lloyd's debt carried by
21        Hoffman.

22    (d)   Improvements and expenses paid by Hoffman.

23    (e)   Real property taxes paid by Hoffman.

24    (f)   Rental value received by Hoffman and by Lloyd.

25    (g)   Prejudgment interest.

26    Applying the principles set forth above, the court
27 tentatively determines the Rescission Payment to be the amount set
28 forth in the RESCISSION PAYMENT TABLE, below.

**TENTATIVE RULING RE**
**RESCISSION PAYMENT**

-2-

Plaintiff's EOR-340

1 | PART II:    RESCISSION PAYMENT TABLE

| ITEM | CREDITS TO HOFFMAN | DEBITS TO HOFFMAN |
|---|---|---|
| A.   Cash purchase price paid by Hoffman | $20,000 | |
| B.   Balance on loan existing at time of Hoffman's purchase | $591,738 | |
| C.   Balance on current loans Lloyd now subject to | | $640,000 w/Norcal: $754,455 |
| D.   Interest Hoffman paid on loan existing at time of purchase | $95,587 | |
| E.   Loan broker fees for Hoffman's purchase loan | $0 | |
| F.   Brokerage commission on Hoffman's purchase from Lloyd | $0 | |
| G.   Transfer taxes upon Hoffman's purchase from Lloyd | $0 | |
| H.   Closing costs upon Hoffman's purchase from Lloyd | $0 | |
| I.   Improvements made by Hoffman | $14,498 | |
| J.   Maintenance and insurance paid by Hoffman | $11,445 | |
| K.   Property taxes paid by Hoffman | $55,825 | |
| L.   Rental value while Hoffman had use of property | | $136,610 |
| M.   Rental value while Lloyd occupied property | $57,520 | |
| N.   Lease Management fees paid by Hoffman | $0 | |
| Total | $846,613 | $776,065 w/Norcal: $891,065 |

**TENTATIVE RULING RE
RESCISSION PAYMENT**

-3-

Plaintiff's EOR-341

1 | **PART III:  NOTES RE RESCISSION PAYMENT TABLE**

2 |     1.  The court believes that both the amount and propriety of

3 | the adjustments listed as **items A and B** are undisputed.

4 |     2.  **Item C** may vary with time and according to whether the

5 | Norcal lien is released.

6 |     3.  The court is inclined to hold that **item D** should be

7 | calculated at the rate of interest Lloyd would have paid under the

8 | loan in place before the Transfer.  The parties should brief this

9 | issue.  There remain questions of fact re this issue under

10 | whatever standard is adopted.

11 |     4.  The court is inclined not to include any adjustment for

12 | the amounts spent by Hoffman under **items E-H and N**, because Lloyd

13 | would not have had to make those payments if the Transfer had not

14 | occurred.  The parties should brief this issue.

15 |     5.  Regarding **items I and J**, the court is inclined to hold

16 | that any improvements and maintenance should be allowed as an

17 | addition to the Rescission Payment only to the extent that Lloyd

18 | realized an actual benefit.  The parties should brief this issue.

19 | There remains a question of fact as to the amount of any adjustment

20 | under whatever standard is adopted.

21 |     6.  There remains an issue under **item K** of fact regarding how

22 | much property tax Hoffman actually paid.

23 |     7.  There remains an issue of fact under **items L and M** as to

24 | the actual rental value of the property.

25 | **PART IV:  PROCEDURE FOR FUTURE HEARINGS**

26 |     1.  The parties shall file and serve simultaneous opening

27 | briefs on December 20, 2006.

28 |     2.  The parties shall file and serve simultaneous reply briefs

TMG

TMG

**TENTATIVE RULING RE**
**RESCISSION PAYMENT**

-4-

Plaintiff's EOR-342

1 | on January 19, 2007.

2 | 3. The court will hold a hearing on January 26, 2007 at 10:30

3 | a.m..

4 | 4. The court will resolve only limited factual issues at the

5 | January 26, 2007 hearing. The Norcal deed of trust will be

6 | considered a lien that Lloyd takes subject to, unless proof of its

7 | release is provided with Hoffman's opening brief. Regarding taxes

8 | paid by Hoffman, the court will allow on a final basis only those

9 | amounts stipulated to or for which satisfactory documentary proof

10 | is provided with Hoffman's opening brief. Regarding all other

11 | factual issues that cannot be resolved by stipulation, the court

12 | will enter an order that reserves those disputes for resolution at

13 | the damage phase of the trial and provides for an appropriate

14 | reserve to be set aside by Lloyd pending completion of the damage

15 | phase of the trial.

16 | **END OF TENTATIVE RULING**

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**TENTATIVE RULING RE
RESCISSION PAYMENT**

Plaintiff's EOR-343

<u>**Court Service List**</u>

1

2

3  Jeffrey J. Goodrich, Esq.
   Law Offices of Goodrich and Associates
4  336 Bon Air Center, Suite 335
   Greenbrae, CA 94904
5
   Stephen D. Pahl, Esq.
6  Ginger L. Sotelo, Esq.
   Pahl and Gosselin
7  160 West Santa Clara Street
   Suite 1500
8  San Jose, CA 95113-1752

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DOCUMENT 13**



'07 01/24 WED 15:00 FAX 415 ⌐  2383      BKRPTCY CRT NDCA                          @002

1/24/07

3.25.052

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 04-32921 TEC |
| THOMAS LLOYD, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| JEFFREY E. HOFFMAN, | ) |
| Plaintiff, | ) |
| vs. | ) Adv. Proc. No. 05-3328 TC |
| THOMAS R. LLOYD, an individual, EDWARD L. BLUM, an individual, and DOES 1 through 20, inclusive, | ) TENTATIVE RULING RE TERMS FOR CANCELLATION OF DEED |
| Defendants. | ) |
| THOMAS LLOYD, | ) |
| Cross-Plaintiff, | ) |
| vs. | ) Date: January 26, 2007 |
| | ) Time: 10:30 a.m. |
| JEFFREY E. HOFFMAN, dba H & B PROPERTIES; H & B PROPERTIES, LLC,; J. EDWARDS INVESTMENT GROUP, INC., and NORCAL FINANCIAL, INC., | ) Ctrm: Hon. Thomas E. Carlson<br>235 Pine Street<br>San Francisco, CA |
| Cross-Defendants. | ) |

TENTATIVE RULING

-1-

Plaintiff's EOR-345

### TENTATIVE RULING RE TERMS FOR CANCELLATION OF DEED

1    (1)  Upon further review of the relevant provisions, the court
2  is inclined to hold that Lloyd is entitled to have his title to the
3  property immediately restored without tendering the return of any
4  consideration he received.

5        (a)  The court has previously determined that Lloyd was
6             not provided the notice of right to cancel the
7             contract, required under sections 1695.3 and 1695.5,
8             prior to the time he cancelled that contract.

9        (b)  Lloyd's cancellation of the contract was timely
10            under section 1695.4.

11       (c)  Until Lloyd's right to cancel the sale agreement
12            lapsed, which never happened, Hoffman was prohibited
13            under section 1695.6(b) from accepting the executed
14            deed from Lloyd, recording that deed, paying any
15            consideration to Lloyd, or encumbering the property.
16            Because the payment of consideration and the
17            refinancing of the existing loan never should have
18            occurred, Lloyd is not required as a condition of
19            having the deed set aside to restore to Hoffman any
20            benefit he received as a result of those acts.

21   (2)  Any benefit that Lloyd received might have a bearing on
22  the calculation of Lloyd's damages, and should be reserved for the
23  trial re damages.

24   (3)  The court is inclined to order, pursuant to Rule 54(b),
25  that judgment be entered immediately cancelling the deed and
26  declaring Lloyd to be the fee owner.

                    **END OF TENTATIVE RULING**

TENTATIVE RULING
                              -2-

Plaintiff's EOR-346

<u>**Court Service List**</u>

1

2

3  Jeffrey J. Goodrich, Esq.
   Law Offices of Goodrich and Associates
4  336 Bon Air Center, Suite 335
   Greenbrae, CA 94904
5
   Stephen D. Pahl, Esq.
6  Ginger L. Sotelo, Esq.
   Pahl and Gosselin
7  225 West Santa Clara Street
   Suite 1500
8  San Jose, CA 95113-1752

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's EOR-347

**DOCUMENT 14**

GOLDBERG, STINNETT, MEYERS & DAVIS
A Professional Corporation
DENNIS D. DAVIS, ESQ. CA Bar #070591
44 Montgomery Street, Suite 2900
San Francisco, CA 94104
Telephone: (415) 362-5045
Facsimile: (415) 362-2392

Attorneys for Plaintiff Jeffrey E. Hoffman

E-FILED ON 2 / 13 / 07
DOCUMENT NO: 108
COPY FOR PAPER FILE
INITIAL: PJ

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THOMAS LLOYD,<br><br>      Debtor. | Case No. 04-32921-TEC<br><br>Chapter 11 |
| JEFFREY E. HOFFMAN,<br><br>      Plaintiff,<br><br>vs.<br><br>THOMAS R. LLOYD, an individual,<br>EDWARD L. BLUM, an individual, and<br>DOES 1 through 20, inclusive,,<br><br>      Defendants. | A.P. No. 05-03328<br><br>Date:     February 26, 2007<br>Time:    10:30 a.m.<br>Place:   235 Pine Street<br>          23rd Floor<br>          San Francisco, CA<br>Judge:   The Hon. Thomas E. Carlson |

### DECLARATION OF ASHER ROBERTSON

I, ASHER ROBERTSON, declare:

1.    I am a licensed real estate broker and make this declaration of my own personal knowledge. If called as a witness, I could and would competently testify to the facts set forth hereinafter.

2.    I understand that Mr. Lloyd has thrown doubt upon the authenticity and timing of his signature on a Notice of Cancellation executed by him with respect to a contract with Jeff Hoffman. I

1  was the agent of Thomas Lloyd in the transaction with Mr. Hoffman and I was personally in the room

2  with Mr. Lloyd on May 28, 2003, when he executed the documents relating to his transaction with

3  Mr. Hoffman.

4        3.    Attached hereto as **Exhibits "A"** through **"D"** are true and correct copies of the

5  documents reflecting the transaction between Mr. Lloyd and Mr. Hoffman consisting of a Real Estate

6  Purchase Contract between Mr. Hoffman and Mr. Lloyd (Exhibit "A"), an Option Agreement

7  (Exhibit "B"), a Notice of Cancellation (Exhibit "C"), and a Residential Lease Agreement

8  (Exhibit "D").  Mr. Lloyd executed the Notice of Cancellation along with the other documents on

9  May 28, 2003.

10        4.    The reason that escrow on the Hoffman transaction did not close until August was

11  because Mr. Lloyd was also pursuing other financing, which he eventually cancelled before moving

12  forward with the Hoffman transaction.

13      I declare under penalty of perjury that the foregoing is true and correct.

14      Executed this 8th day of February, 2007 at San Jose, California.

15

16                          /s/    *Asher Robertson*

17

18

19

20

21

22

23

24

25

26

27

28

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

2

DECLARATION OF ASHER ROBERTSON
10329/110226.DOC

1  GOLDBERG, STINNETT, MEYERS & DAVIS
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   44 Montgomery Street, Suite 2900
3  San Francisco, CA  94104
   Telephone: (415) 362-5045
4  Facsimile:  (415) 362-2392

5  Attorneys for Plaintiff Jeffrey E. Hoffman

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

               FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
                     SAN FRANCISCO DIVISION
10

11
   In re:                          Case No. 04-32921-TEC
12
   THOMAS LLOYD,                    Chapter 11
13
            Debtor.
14

15
   JEFFREY E. HOFFMAN,             A.P. No. 05-03328
16
            Plaintiff,
17                                 Date:    February 26, 2007
   vs.                             Time:    10:30 a.m.
18                                 Place:   235 Pine Street
   THOMAS R. LLOYD, an individual,          23rd Floor
19 EDWARD L. BLUM, an individual, and       San Francisco, CA
   DOES 1 through 20, inclusive,,  Judge:   The Hon. Thomas E. Carlson
20
            Defendants.
21

22           **EXHIBITS "A" THROUGH "D" TO
            DECLARATION OF ASHER ROBERTSON**
23

24

   DATED: February 13, 2007
25
                              GOLDBERG, STINNETT, MEYERS & DAVIS
26                            A Professional Corporation

27                            By   /s/ Dennis D. Davis
                                   Attorneys for Plaintiff Jeffrey E. Hoffman
28

EXHIBITS TO DECLARATION OF ASHER ROBERTSON                    1
I0329/110307.DOC

                                                    **Plaintiff's EOR-350**


REALTOR®

# PRDS® REAL ESTATE PURCHASE CONTRACT
### (THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT, READ IT CAREFULLY.)



The undersigned, _____ JE Hoffman _____ *as individual* _____ ("**Buyer**") hereby offers to purchase, for the sum

of $ _____ 900,000.00 _____ ; the real property located at _____ 940 Elizabeth St _____

City of _____ San Francisco _____, County of _____ San Francisco _____, California, ("**Property**") on the terms contained

in this Real Estate Purchase Contract ("**Contract**"), dated _____ 05/28/2003 _____ (for reference purposes only):

## 1. FINANCING TERMS:

**A. $** _____ 0.00 _____ **DEPOSIT, by personal check, shall be held uncashed until mutual execution ("Acceptance") of this** Contract, then deposited in Escrow Holder's account (see Para. 15.A.) [or □ *Broker's Trust account*] on or before _____

**B. $** _____ 0.00 _____ **ADDITIONAL DEPOSIT,** by personal check, shall be deposited in Escrow Holder's account (see Para. 15.A.) [or □ *Broker's Trust account*] on or before _____. If Liquidated Damages (Para. 5) is initialed, Seller and Buyer shall sign a Receipt for Increased Deposit (RID-11) upon deposit increase.

**C. $** _____ 250,000.00 _____ **BALANCE OF DOWN PAYMENT** shall be deposited in Escrow in time to close escrow. Buyer's ability to obtain the down payment *is not* a contingency of this Contract.

**D. $** _____ 650,000.00 _____ **LOAN:** This Contract ☒ *is* □ *is not* contingent upon Buyer's obtaining a loan secured by a First Deed of Trust payable to Lender at approximately $ _____ 3,595.00 _____ per month to include: ☒ *principal and interest* □ *interest only* at not more than _____ 5 1/8 _____ % ☒ *fixed* □ *adjustable* per annum for no fewer than _____ 30 _____ years with a lifetime maximum rate of _____ N/A _____ % and an origination fee not to exceed _____ 2 _____ % of this loan. If this Contract is contingent upon Buyer's obtaining a loan, Buyer shall, within 5 or □ _____ days of Acceptance, provide Lender's written confirmation that Buyer has submitted a completed loan application, or this Contract may be cancelled at Seller's option.

**E. $** _____ 0.00 _____ **SELLER OR ADDITIONAL FINANCING:** See attached PRDS® Seller and Other Financing Addendum.

**F. $** _____ 900,000.00 _____ **TOTAL PURCHASE PRICE ("Purchase Price"),** not including closing costs.

**2. SOURCE OF FUNDS:** Buyer represents that the funds required for the initial deposit, additional deposit, cash balance, and closing costs are readily available. Obtaining these funds is not a contingency of this Contract.

**3. INTENT TO OCCUPY:** Buyer ☒ *does* □ *does not* intend to occupy the Property as Buyer's residence.

**4. FIXTURES AND PERSONAL PROPERTY:** ALL EXISTING fixtures and fittings that are attached to the Property are (if owned by Seller and unless excluded below) INCLUDED IN THE PURCHASE PRICE and shall be transferred free of liens. These shall be deemed to include, but are not limited to, the following: existing electrical, lighting, plumbing and heating fixtures, fireplace inserts and attached fireplace equipment, solar systems, built-in appliances, screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes and related equipment, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, water softeners, security systems/alarms, keys to all exterior locks, garage door openers/remote controls, mailbox, and in-ground landscaping.

**A. ITEMS EXCLUDED:** _____

**B. ITEMS INCLUDED:** The following items of personal property, free of liens and without warranty of condition (unless so provided in Para.12):
_____

**5. LIQUIDATED DAMAGES:** By placing their initials here, Buyer ( _____ / _____ ) and Seller ( _____ / _____ ) agree that, in the event failure to complete this purchase is due to Buyer's breach of the Contract and not by reason of a default by Seller, (a) Seller is released from the obligation to sell to Buyer, (b) Seller shall retain Buyer's deposit paid *as Seller's only recourse*, and (c) if the Property contains one to four units, one of which Buyer intends to occupy, then any deposit retained by Seller shall not exceed 3% of the Purchase Price, with any excess promptly returned to Buyer.

**6. MEDIATION OF DISPUTES:** Buyer and Seller (collectively "**Parties**") agree to mediate any dispute between them arising out of this transaction prior to any court action or arbitration. Mediation is a non-binding process in which Parties to a dispute meet with a neutral mediator (selected by the Parties) who will try to work out a mutually acceptable resolution. The mediator does not impose a settlement on the Parties. If the Parties cannot agree on a mediator, the Superior Court shall appoint a mediator. The mediator may conduct more than one session and mediation fees shall be paid equally by participating Parties. Matters excluded from arbitration (Para. 7) are also excluded from mediation. A buyer or seller who refuses or resists mediation shall not be entitled to recover prevailing party attorneys' fees (Para. 17.C.).

**7. ARBITRATION OF DISPUTES:**

**A. Explanation:** Arbitration is a private dispute resolution process in which Parties (by themselves or through their attorneys) submit disputes to a neutral arbitrator who is charged with rendering a fair and im~~~~~~~~~~~~ ented. When arbitration is selected, the Parties give up their rights to trial by judge or jury and to f~~~~~~~ : discovery rights (e.g., depositions, document production) are provided for under California law. Rul~~~~~ s rigid than in trial court. Arbitration fees are typically on an hourly basis. The decision of the arbitr~~~~ rties to the arbitration agreement (Para. 7.B.). The arbitrator can award compensatory damages, pun~~~~~ performance, injunctive~~~~

EXHIBIT A

Buyer's initials ( _____ ) ( _____ )                    Seller's initials ( _____ ) ( _____ )

Plaintiff's EOR-351

Subject Property Address: 940 Elizabeth St San Francisco CA 94114          Date: 05/28/2003

relief and declaratory relief. No trial or other court process is available to re-try the case or to appeal the merits of the arbitrator's ruling. This means that even when a party claims the arbitrator made a clearly wrong decision, based on a misunderstanding of fact or of law or an unwillingness to follow the law, that decision nevertheless remains final and unappealable. Only in cases of actual fraud in the arbitration process, corruption, bias, lack of due process or jurisdiction, or arbitrator's computation error, can an award be vacated or modified. The Parties are advised to confer with legal counsel before committing to binding arbitration.

B.   **Arbitration Process, Election to Arbitrate:** Any dispute arising out of this transaction shall be decided by neutral binding arbitration (in accordance with Chapter 3, Title 9 of the California Code of Civil Procedure (CCP §1283.05) including, but not limited to, the right of discovery), and not by court action, except as provided by California law for judicial review of arbitration proceedings. The arbitrator shall be a retired Superior Court judge or a licensed California attorney with at least 5 years real estate experience. If the Parties cannot agree on an arbitrator, the Superior Court shall appoint the arbitrator. The filing of an action in a court of competent jurisdiction to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the right to mediation or arbitration under this Contract, regardless of whether the said complaint includes causes of action not necessary to the recordation of the notice of pending action. The Parties agree that, in the event of such court filing, it would be appropriate for the court to issue an order staying proceedings therein, pending the completion of mediation or arbitration under this Contract. The filing of such judicial action shall not constitute a waiver of mediation or arbitration rights or the prevailing party's right to receive attorney's fees and costs. The losing party shall pay the arbitrator's fees. Exclusions from arbitration: unlawful detainer, foreclosure-related actions, matters within Small Claims Court jurisdiction and matters to which CCP §§337.1 or 337.15 apply. By electing arbitration, Buyer and Seller also agree to submit to mediation and binding arbitration such claims as they intend to make against the brokers or agents related to or arising out of this transaction, so long as, within 10 days after receipt of such claims, the brokers and agents responding thereto shall have committed to participation in such mediation and arbitration. An election by brokers or agents to mediate or arbitrate as provided herein shall not be deemed to make them Parties to this Contract.

**"NOTICE: BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW, YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THIS 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials (_____) (_____).                    Seller's Initials (_____) (_____)

8.   **REAL ESTATE TRANSFER DISCLOSURE STATEMENT ("TDS"), LEAD BASED-PAINT HAZARD DISCLOSURE ("Lead Disclosure"), PRDS® SUPPLEMENTAL SELLER CHECKLIST DISCLOSURE ("SSC"), NATURAL HAZARD DISCLOSURE STATEMENT ("NHDS"):** Unless the transaction is exempt by law, Seller, Listing Agent (if any) and Selling Agent (if any, and if such signature is required by law) shall duly complete a TDS, a Lead Disclosure and an NHDS, and Seller shall duly complete an SSC. *Buyer has, prior to Acceptance, received, read and acknowledged in writing Buyer's receipt of the following:* ☒ TDS, ☒ Lead Disclosure, ☒ SSC and ☒ NHDS; *and/or Seller shall, within 5 or* ☐ _____ *days of Acceptance, deliver to Buyer the following:* ☐ TDS, ☐ Lead Disclosure, ☐ SSC and ☐ NHDS. If the TDS, Lead Disclosure and/or NHDS are delivered to Buyer after Acceptance, Buyer shall have the right to terminate the Contract by giving written notice to Seller within 3 days after such delivery (if delivery has been made in person) or 5 days after such delivery (if delivery has been made by mail). Lead Disclosures sent by mail must be sent certified mail or registered mail, with return receipt requested. Unless Buyer elects to terminate the Contract based thereon, Buyer shall sign and return the TDS, Lead Disclosure, NHDS and SSC to Seller within 5 or ☐ _____ days after delivery thereof to Buyer. If Buyer fails to sign and return the foregoing disclosure documents within the times required, Seller shall have the right to terminate the Contract. ALTERATIONS: Seller is obligated to disclose any property additions or alterations made by or known to Seller and whether permits and final approvals have been obtained. Where Buyer has been given timely and sufficient notice that improvements on the Property have been made without necessary permits or approvals, Buyer shall assume all risk, liability and expense for bringing such improvements into legal compliance.

9.   **PROPERTY DISCLOSURES:** Seller shall pay for and provide to Buyer the following: Earthquake Safety and Environmental Hazard (including lead) booklet, Natural Hazards Disclosure report, Mello-Roos disclosure, environmental disclosure report (limited to filed governmental reports), smoke detector and water heater compliance statements, FIRPTA and California non-resident withholding disclosures, and _____

10.  **PROPERTY CONDITION, LEAD DISCLOSURE, INSURANCE CONTINGENCIES:** Unless said contingencies are otherwise waived, this Contract is contingent upon Buyer's approval of the condition of the Property and of other factors, including, but not limited to, Lead Inspection (if legally required), that may affect its value and desirability, and on Buyer's ability to obtain property insurance. (Even where not legally required, Buyer shall have the right to make this Contract contingent on Lead Inspection by so designating in Para. 16.B.) If Buyer finds any conditions that are unacceptable to Buyer, then Buyer shall be entitled to cancel this Contract. Buyer has a duty to inspect the Property thoroughly for its present or planned use and shall have the right to hire, at Buyer's expense, qualified professionals to conduct such inspections. Buyer's failure to exercise this right of inspection is against the advice of the real estate licensees and Buyer acknowledges that the consequences of such failure are at Buyer's own peril. Seller shall make the Property reasonably available for such inspections. No inspections may be made by any building department inspector or government employee without the prior written consent of Seller. Upon receipt, Buyer shall furnish to Seller, at no cost, copies of all reports. Buyer shall repair all damage to the Property arising out of Buyer's inspections and shall keep the Property free of liens and indemnify Seller from and against any liability, claim or damage arising out of the inspections.

Buyer's Initials (_____) (_____)                    Seller's Initials (_____) (_____)

Copyright© 2000 Advanced Real Estate Solutions, Inc.          Page 2 of 6                    Form RDS   Revised 10/20/00

Plaintiff's EOR-352

Subject Property Address: 940 Elizabeth St San Francisco CA 94114     Date: 05/28/2003

**STRUCTURAL PEST CONTROL ("SPC") CERTIFICATION:**

A. ☐ *Buyer* ☐ *Seller* shall, within 10 or ☐ _____ days of Acceptance, provide, at ☐ *Buyer's* ☐ *Seller's* expense, a current inspection report ("Report") by a licensed SPC operator of the main building and ☐ decks *(attached or otherwise)*, ☐ detached garage(s)/carport(s) and ☐ *the following other structures on the Property:* _____

B. Seller shall pay for Section 1 work as described in the Report and shall, prior to Close of Escrow (defined in Para. 19.A), provide a certification from a licensed SPC operator that the Property is free from active infestation or infection as described in the Report, which certification complies with the SPC Board requirements. Seller shall be responsible for (1) Section 1 items that are the responsibility of the Homeowner's Association pursuant to Covenants, Conditions and Restrictions ("CC&Rs") and/or rules and regulations (see Common Interest Development documentation) or (2) Section 1 items that may be otherwise included elsewhere in this Contract.

C. If inspection of inaccessible areas is recommended in the Report, Buyer shall have the right to such inspections if requested within 5 or ☐ _____ days from receipt of the Report. Buyer's failure to request additional inspections shall constitute a waiver of this right. If additional inspections reveal no further Section 1 findings, the supplemental report and entry and closure costs shall be paid by Buyer.

D. If Seller's personal property renders areas inaccessible, then Seller shall make such areas accessible and shall pay for any recommended supplemental repairs and for additional Section 1 repairs, if any.

E. If fumigation is required, Seller shall comply with fumigation guidelines, including those relating to landscape preservation. Buyer acknowledges that there may be damage caused to landscaping due to tenting of the house and Buyer agrees to take Property subject to any such damage. Upon completion of fumigation, Seller shall ensure that all utilities and services (e.g., electric, gas and water) on the Property are fully restored and rendered operational.

12. **SELLER'S REPAIR/MAINTENANCE OBLIGATIONS:** Seller's repair obligations pursuant to this Para. 12 are limited to deficiencies known or discovered before Close of Escrow. Unless otherwise agreed, Seller shall not be required to repair or replace items not covered by this Paragraph. TDS and other disclosures do not eliminate Seller's repair obligations unless otherwise agreed in writing. Seller shall deliver the Property at Close of Escrow as follows: A: (1) Roof/skylights (not including gutters) shall be water tight; (2) Built-in appliances, plumbing, heating, air conditioning, electrical, solar, security/alarm, water, sprinkler, septic, well and pool/spa systems, if any, shall be operative ("operative" shall not necessarily mean in compliance with building codes); (3) All plumbing systems, shower pans, and shower enclosures shall be free of leaks; (4) Structural defects in chimneys and fireplaces, including dampers, shall be repaired by Seller; (5) All broken or cracked glass (not including seal-failure of thermopane windows) and (6) rights) shall be replaced. B: (1) The remainder of the Property shall be maintained in the same general condition as of Acceptance; (2) Debris and personal property not included in the sale shall be removed by Seller prior to Close of Escrow. C: RISK OF LOSS: If the land or improvements are materially damaged prior to Close of Escrow, Buyer shall have the right to terminate this Contract, recover the full deposit and obtain from Seller reimbursement for inspection and financing fees incurred. If Buyer elects to complete the purchase, Buyer shall be entitled to an assignment from Seller of all insurance proceeds covering the loss.

13. **REPAIRS/WALK-THROUGH INSPECTION:** All repairs shall be made prior to Close of Escrow by a licensed contractor, using materials of comparable quality, done in a workmanlike manner and in compliance with all applicable building codes and permit requirements. Buyer shall be entitled to a "walk-through" inspection of the Property prior to Close of Escrow, not as a contingency of sale, but solely to confirm that all repairs have been completed and that the Property, including landscaping, is in the same general condition as of the date of Acceptance.

14. **HOME PROTECTION PLAN:** A home protection plan shall be ordered by ☒ *Buyer* ☐ *Seller* or ☐ is waived. Such plan shall be at a cost not to exceed $ 525.00 _____ and shall be paid for by ☐ *Buyer* ☒ *Seller* ☐ *Buyer* (50%) / *Seller* (50%). Options shall be selected by persons ordering the plan, or ☐ *options shall include:* _____

15. **CONDITIONS RELATING TO TITLE:**

A. TITLE: ☐ *Buyer* ☒ *Seller* shall pay escrow fees and the cost of an ALTA homeowners or CLTA homeowners policy of title insurance issued by or through New Century Title _____ ("Escrow Holder"). If a lender's policy is required, Buyer shall pay its cost. Title shall be clear and marketable, subject only to assumed liens, CC&Rs and easements of record, and current taxes. This Contract is contingent upon Buyer's approval of a current preliminary report and CC&Rs (if any). (A preliminary report is only an offer of title insurance coverage and may not identify every exception affecting title.)

B. PUBLIC IMPROVEMENT BONDS & ASSESSMENTS: Such bonds and assessments of special assessment districts (including Mello-Roos bonds) that are now a lien shall be paid current by Seller at Close of Escrow. Payments not yet due shall be assumed by Buyer.

C. PROPERTY TAXES: The Property will be reassessed upon change of ownership. Upon Buyer's request, Seller shall provide a current tax bill. Supplemental taxes shall be paid as follows: (1) for periods after Close of Escrow, by Buyer, and (2) for periods prior to Close of Escrow, by Seller.

16. **CONTINGENCY REMOVAL: FAILURE TO REMOVE ALL CONTINGENCIES IN WRITING WITHIN THE TIME PERIODS SPECIFIED BELOW SHALL MAKE THIS CONTRACT SUBJECT TO CANCELLATION, AT SELLER'S OPTION. IF THE TIME PERIOD SPECIFIED IS "0" DAYS, THEN THE CONTINGENCY IS DEEMED WAIVED.**

A. FINANCING CONTINGENCY: If financing is a contingency (Paragraphs 1.D. and/or 1.E.), such contingency shall be removed on or before N/A days from Acceptance. Buyer agrees to verify all loan terms directly with Lender prior to removing contingency.

B. LEAD INSPECTION CONTINGENCY: If a Lead Disclosure is legally required, Buyer's Lead Inspection contingency shall be removed within 10 or ☐ _____ days of Acceptance. *If a required Lead Disclosure is not delivered to Buyer until after Acceptance, the time within which Buyer may exercise termination rights shall not be less than 3 days from personal delivery thereof (5 days for delivery by mail).*

C. The following contingencies shall be removed on or before 0 days from Acceptance, unless extended by Para. 16.E.

| | |
|---|---|
| 1) Property Disclosures (Para. 9) | 4) _____ |
| 2) Property Condition & Insurance (Para. 10) | 5) _____ |
| 3) Title Documents (Para. 15.A.) | 6) _____ |

Buyer's Initials ( _____ ) ( _____ )                                                                   Seller's Initials ( _____ ) ( _____ )

Plaintiff's EOR-353

Subject Property Address: 940 Elizabeth St San Francisco CA 94114 _____ Date: 05/28/2003

D. Documents to be provided by Seller necessary to remove Buyer's contingencies in Paragraphs 16.A., 16.B., and/or 16.C. shall be delivered to Buyer within 5 or ☐ _____ days of Acceptance.

E. If Buyer requests that Seller make repairs or corrections not otherwise required by this Contract, then Buyer shall, within the respective time frames in Para. 16.C., deliver to Seller written notice of such items and Seller shall have 5 or ☐ _____ days from receipt of such notice within which to respond in writing. If Seller agrees in writing to Buyer's requests, Buyer shall thereupon remove the Property Condition contingency. If Seller's response indicates that Seller is unwilling or unable to repair or correct such items, or if Seller does not respond within the time frame in this Para. 16, Buyer shall have 3 or ☐ _____ days (after receipt of Seller's response, or after the expiration of the time for Seller to respond, whichever occurs first) to remove these contingencies or cancel this Contract. If Buyer does not give such written notice of cancellation or fails to remove the contingency within the time frame in this Para. 16, Seller shall have the right to cancel this Contract by giving written notice of such cancellation to Buyer.

F. If Buyer properly exercises a right of cancellation under this Contract, Buyer shall be entitled to a refund of Buyer's deposit, less any non-reimbursable fees and costs, and the Parties agree to sign mutual escrow instructions to this effect.

## 17. LEGAL NATURE OF AGREEMENT:

A. ENTIRE AGREEMENT: This Contract is intended by the Parties to be the full and final expression of their agreement. It shall not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The captions in this Contract are for reference only. This Contract may not be amended, modified, altered or changed in any respect whatsoever except by a further agreement in writing executed by Buyer and Seller. Unless otherwise agreed or required by Escrow Holder, all documents transmitted by facsimile shall be regarded as valid substitutes for original documents. Buyer and Seller understand that real estate licensees are not Parties to this Contract and are not responsible or liable for any inability or failure by Buyer or Seller to perform fully the terms hereof.

B. BINDING AGREEMENT; ASSIGNMENT: This Contract is binding upon the heirs, executors, administrators, successors and assigns of Buyer and Seller and shall survive Close of Escrow. Buyer may not assign any rights hereunder without the prior written consent of Seller. Seller assigns to Buyer all of Seller's rights of action against providers of materials or services relating to the Property.

C. ATTORNEYS' FEES: In event of any legal action, arbitration, or other proceeding between Buyer and Seller arising out of this Contract, the prevailing Buyer or Seller shall be awarded reasonable attorneys' fees and court or arbitration costs in addition to any other judgment or award.

D. DISSEMINATION OF INFORMATION: Both Parties authorize brokers to disseminate information concerning sales price, terms, and financing of this transaction after recordation.

E. LEGAL, TAX AND OTHER ADVICE: Buyer and Seller understand that real estate licensees are providing real estate advice only in this transaction. If the Parties desire legal, tax or other advice, they must consult an attorney, accountant, or other appropriate professional.

F. GOVERNING LAW: This Agreement and all other instruments referred to herein shall be governed by, and shall be construed according to, the laws of the state of California. For the purpose of all disputes arising out of or under this Agreement, the Parties agree that the venue for any judicial or arbitration proceedings shall rest in the county in which the Property is located.

## 18. DEFAULT AND REMEDIES:

A. BUYER'S DEFAULT: Should escrow not close due to a default by Buyer, Seller's entitlement to damages shall be limited pursuant to Para. 5 (if such provision has been initialed by both Parties). If such provision is not initialed by both Parties, Buyer may be liable to Seller for additional damages including, but not limited to, consequential damages (e.g., PITI, etc.). In either case, the defaulting Buyer may be liable for payment of the brokerage fee.

B. SELLER'S DEFAULT: Should escrow not close due to a default by Seller, or if Seller does not otherwise perform under this Contract, Seller may be liable for Buyer's damages including, but not limited, to consequential damages (e.g., temporary housing arrangements, storage costs, etc.) and for payment of the brokerage fee.

C. OTHER NON-PERFORMANCE: If either Buyer or Seller fails to perform pursuant to this Contract, the defaulting party may be liable for the other party's damages (e.g., consequential damages, including but not limited to, "PITI", etc.).

## 19. ESCROW CONDITIONS AND INSTRUCTIONS:

A. CLOSE OF ESCROW: Recordation of the transfer of title ("Close of Escrow") and delivery of keys shall occur on 06/30/2003 _____ (Date). Possession shall be no later than 5 PM or ☒ 12: AM/PM on the same date or ☐ _____ (possession date), subject to provisions of an executed residential lease after sale agreement (or equivalent). If Seller retains possession after Close of Escrow, a minimum of one set of keys shall be given to Buyer at Close of Escrow.

B. PRORATIONS and TRANSFER TAX: Property taxes for the fiscal year, interest on any loan assumed by Buyer, Homeowners Association dues, rents, and premiums on insurance assumed by Buyer shall be prorated as of the Close of Escrow. Seller shall pay the cost of county real property transfer tax. ☒☒☒☒☒☒ Seller shall ☒☒☒☒☒☒☒☒☒☒☒☒ pay the cost of any city transfer tax and transfer fee.

C. ESCROW INSTRUCTIONS: This Para. 19 and Para. 27, together with any additional escrow instructions, shall constitute Joint escrow instructions to Escrow Holder. The Parties shall execute such additional escrow instructions requested by Escrow Holder that are not inconsistent with the provisions of this Contract. In the event of any alleged failure of performance of either Buyer or Seller, nothing in this Paragraph 19 shall impose any duty on Escrow Holder to concern itself with other provisions of this Contract or to make any determination as to the ownership of, or interest in, any funds deposited. Funds placed in the Escrow/Trust account will not be released unless agreed to in writing by both Parties or pursuant to court or arbitrator's order.

Buyer's Initials ( _____ ) ( _____ )                      Seller's Initials ( _____ ) ( _____ )

Plaintiff's EOR-354

bject Property Address: 940 Elizabeth St San Francisco CA 94114 _____ Date: 05/28/2003

20. **ADDITIONAL CONTRACT DOCUMENTS:** The PRDS® Advisory Disclosure (Page 6), along with the following addenda, if checked below and submitted herewith, are made part of this Contract.

☐ A. PRDS® Seller and Other Financing Addendum
☐ B. PRDS® Common Interest Development Addendum
☐ C. Interim Occupancy Agreement (Buyer in possession)
☐ D. Residential Lease After Sale (Seller in possession)

☐ E. Sale of Property Contingency
☒ F. "AS-IS" Addendum
☐ G. Other: _____
☐ H. Other: _____

21. **OTHER TERMS AND CONDITIONS:**
   1) Seller shall pay all cost/fees associated with this transaction.

22. **AGENCY DISCLOSURE AND CONFIRMATION: BUYER AND SELLER ACKNOWLEDGE THEIR PRIOR RECEIPT OF AGENCY DISCLOSURE FORMS. AGENCY CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

Listing Agent: N/A _____ (Print Company Name) is the agent of (check one): ☐ Seller exclusively; or ☐ both Buyer and Seller

Selling Agent: Asher Robertson _____ (Print Company Name) (if not the same as the Listing Agent) is the agent of (check one): ☒ Buyer exclusively; or ☐ Seller exclusively; or ☐ both Buyer and Seller

23. **TIME: TIME IS OF THE ESSENCE IN THIS CONTRACT.** Extensions, if any, must be agreed to in writing by both Parties.

24. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state, and local anti-discrimination laws.

25. **BUYER'S DUTY OF CARE:** Buyer has, and acknowledges, a duty to exercise reasonable care to protect himself or herself, including those facts that are known to or within the diligent attention or observation of a buyer or prospective buyer.

26. **OFFER:** This is an offer to purchase the Property. Unless this offer is accepted by Seller and a signed copy personally received by Buyer or by _____, who is authorized to receive it, by _____ at _____ AM/PM, this offer shall be deemed revoked and the deposit shall be returned. Buyer has read and acknowledges receipt of a copy of this offer. This Contract may be signed in counterparts.

Date: _____ Time: _____ Buyer: JE Hoffman    Signature: _____
                                      (Print Name)
Date: _____ Time: _____ Buyer: _____    Signature: _____
                                      (Print Name)
Date: _____ Selling Office: _____ by: _____
Address: _____
TEL: _____ FAX: _____ Email: _____

27. **BROKERAGE FEE:** Seller agrees to pay Listing Agent a brokerage fee pursuant to the listing or commission agreement. Listing Agent hereby assigns to Selling Agent _____ % of the sales price (or the amount of $ _____) from said brokerage fee and instructs Escrow Holder to disburse said amount to Selling Agent. From the proceeds of the sale herein, Seller irrevocably assigns to Listing Agent the entirety of the brokerage fees provided in this transaction, and irrevocably instructs Escrow Holder to disburse said fees to the respective Agents at the Close of Escrow.

28. **COUNTER OFFER:** When Seller's initials are placed here ( _____ / _____ ), Seller's acceptance is made conditional upon Buyer's written acceptance of the attached Counter Offer.

29. **ACCEPTANCE:** Seller accepts the foregoing offer and agrees to sell the Property to Buyer based on and subject to the terms and conditions set forth and referenced herein. Seller acknowledges receipt of a copy hereof and authorizes Broker to deliver a signed copy to Buyer. All paragraphs with spaces provided for initials by Buyer and Seller are incorporated herein only if the spaces are initialed by both Parties. If one party initials and the other party does not, no contract is formed between the Parties unless and until a counter offer resolving the inconsistency is executed by both Parties.

Date: _____ Time: _____ Seller: Thomas R. Lloyd    Signature: Thomas R. Lloyd
                                      (Print Name)
Date: _____ Time: _____ Seller: _____    Signature: _____
                                      (Print Name)
Date: _____ Listing Office: _____ by: _____
Address: _____
TEL: _____ FAX: _____ Email: _____

**ESCROW RECEIPT:** Escrow agent acknowledges receipt of this page as additional escrow instructions.

Date: _____ Escrow Company: _____
By: _____ Title: _____

Advanced Real Estate Solutions, Inc. makes no representations as to the legal validity or adequacy of any provision of this form or any deletions, additions, or modifications thereof, nor of its use in a particular transaction.

--- OFFICE USE ONLY ---
Reviewed by Broker _____ Date _____

Plaintiff's EOR-355

Subject Property Address: 940 Elizabeth St San Francisco CA 94114      Date: 05/28/2003

**RDS®ADVISORY DISCLOSURE**

**INVESTIGATION OF PROPERTY CONDITION:** The purchase of a home is one of the most important decisions a buyer will make, and demands careful investigation of all aspects of the Property that affect its value and desirability. Correction of some conditions may be required by law and may involve extensive costs. The TDS, SSC, NHDS and Lead Disclosure are not intended to, and do not, substitute for securing inspection reports and other required disclosures. Buyer is encouraged to attend the inspections so as to enable Buyer to discuss property condition issues directly with the inspectors. Buyer is urged to carefully consider ordering such additional reports and investigations as are recommended by inspectors. Consistent with Buyer's legal duty to exercise reasonable care to protect himself or herself regarding facts that are known to or within the diligent attention or observation of a buyer, Buyer is urged to investigate, without limitation, the following:

A.    CONDITION OF SYSTEMS: Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, energy efficiency, security, appliances/personal property. pool/spa, and all other systems and components should be investigated.

B.    SIZE AND AGE: Any square footage, room dimension, use of Property improvements or lot size figures provided have not been and will not be verified, may not be accurate and should not be relied upon.

C.    PROPERTY LINES AND BOUNDARIES: Fences, hedges, walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. Property lines may be verified only by survey.

D.    SEWER AND SEPTIC SYSTEM: Type, size, adequacy, capacity, conditions and components should be inspected for present and future use, and for any eventual expansion of structure. Property may not be connected to sewer and applicable fees may not have been paid. Septic tank may need to be pumped and leach field should be inspected.

E.    BUILDING PERMITS/NON-PERMITTED CONSTRUCTION: There are risks in purchasing property on which unpermitted work has been done. These risks include, without limitation: (1) the risk that a city or County may require, at Buyer's expense, the remediation or removal of the unpermitted work, may prohibit its use as "habitable living space," or may deny permits for other, unrelated building projects at the Property; (2) the risk that the Property may be in violation of zoning, use and/or occupancy limit ordinances (e.g., by existence of an illegal "in-law" unit), requiring removal or discontinued use; (3) the risk that a possible hazardous condition could be caused by a non-conforming or unpermitted construction; (4) the risk that a lender's appraisal of the Property and the decision to extend financing could be adversely affected; and (5) the risk that Homeowner's insurance coverage may not be available or that, even if coverage is obtained, homeowner claims might be denied and/or coverage cancelled. Buyer understands that many homes do not comply with all current building codes (which are subject to periodic amendment). *Buyer should analyze the Property's building permit file,* the contents of which may indicate whether structural modifications and other items of construction were done with benefit of properly issued building permits, including written final inspection by an appropriate City or County official. *Buyer is strongly advised not to give up this right.* Since permit documentation and requirements vary among cities and counties, entries made in building files are subject to interpretation. Buyer should rely only on a construction professional and not on the real estate licensees for analysis of the permit file's contents. Buyer understands that some building permit file documentation may be incomplete, illegible, incorrect or missing. Permit history or status is often impossible to establish.

F.    BUILDING RESTRICTIONS: Buyer is alerted that all cities, counties and certain other governmental agencies (e.g., FEMA) continually impose limitations and restrictions regarding house size, configuration, design, materials and other matters affecting home construction. If Buyer intends ever to expand or alter the Property, Buyer should consult with the appropriate professionals and governmental agencies.

G.    RENT AND OCCUPANCY CONTROL: Governmental agencies may impose restrictions limiting the amount of rent that can be charged, specifying a minimal lease term and/or the maximum number of persons who can occupy the Property.

H.    WATER AND WELL SYSTEMS: Buyer should check water source regarding the quantity and quality of water. Well systems and components should be inspected. The Property is subject to water rationing at times of drought.

I.    TOXIC HAZARDS: The Property should be inspected for such toxic hazards as asbestos, formaldehyde, radon, methane, other gases, lead-based paint, fuel tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields and other substances, materials, products or conditions. Remediation costs may be extensive.

J.    SOILS: Soils native to the greater Bay Area are historically expansive in nature and inconsistent and unreliable in behavior and performance. Property may be subject to earth movement, drainage, and structural/foundation problems not visible upon inspection by Buyer or real estate licensees. Moreover, a general physical inspection of Property will not suffice as a current soils report (old soils reports may not account for current soils conditions).

K.    NEIGHBORHOOD CONDITIONS: Buyer should investigate the neighborhood or area conditions including, but not limited to, schools, proximity and adequacy of law enforcement, fire protection and other governmental services, proximity to major entertainment venues (e.g., Shoreline Amphitheater), commercial, industrial, or agricultural activities; criminal activity; transportation issues; construction and development that may affect view or increase traffic; noise or odor from any source; wild and domestic animals; and conditions and influences significant to certain cultures/religions.

L.    IMPACTED PUBLIC SCHOOLS: Due to burgeoning enrollments in Bay Area public schools, many local districts are unable to guarantee that incoming students will be admitted to the schools closest to their family homes. Buyer is advised to consult directly with local school districts for information regarding available classroom space.

M.    NOISE: The Bay Area is served by three international airports, several municipal airports and Moffet Field. Virtually all residential areas are overflown by jet and propeller aircraft at noise and frequency levels that vary depending on aircraft size, route and altitude, on weather and on the Property's proximity to flight paths and airports. Similarly, noise produced by train, bus, light rail, freeways and other causes can be an annoyance or intrusion, depending on the individual. Buyer should inquire of transportation agencies and visit the Property and vicinity at various times to witness noise levels first hand and determine whether they are acceptable.

N.    MEGAN'S LAW (Sex Offender Database): Notice: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a database of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The database is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

O.    FURTHER INQUIRIES: Buyer is advised to make further inquiries and inspections and to consult government agencies, lenders, insurance agents, architects and other appropriate persons and entities concerning the use of the Property under applicable building, energy, electrical, plumbing, mechanical, zoning, fire, health and safety codes and for evaluation of potential hazards.

     VERIFICATION: Brokers have not verified and will not personally verify any of the items above, unless otherwise agreed in writing.

Buyer's Initials (      ) (      )          Seller's Initials (      ) (      )

Plaintiff's EOR-356



## PRDS® AS-IS ADDENDUM

 

THIS "AS-IS" ADDENDUM is hereby made part of the Real Estate Purchase Contract ("Contract") dated

05/28/2003 _____ made by the Buyer: JE Hoffman _____ for the purchase of

940 Elizabeth St _____ City of San Francisco _____

County of San Francisco _____, CA ("Property").

1. In further consideration of the price and terms of the sale of the Property, Buyer agrees that Buyer is purchasing the Property in its present, existing condition, "AS-IS" and "WHERE-IS," without any obligation of Seller to make any repairs or changes, and without any warranties or representations, expressed or implied, regarding its condition.

2. Buyer and Seller agree that this ADDENDUM shall supersede and render without force or effect (a) any and all provisions in the Contract that would otherwise make Seller responsible to make repairs or for inspections, certifications or work relating to Structural Pest Control and (b) any and all provisions in the Contract under which Seller warrants that the Property's components, systems and appliances are operative, in working order, and free of damage or defect.

3. Buyer acknowledges the importance of making a thorough inspection of the Property, including both the land and all improvements located thereon. Buyer acknowledges that Buyer has been provided the opportunity to perform such inspections as well as to obtain information regarding zoning regulations, other governmental requirements, site and physical conditions, and other matters affecting the use and condition of the Property. Buyer takes responsibility for obtaining full and comprehensive inspections of the Property by competent, professional contractors, inspectors and other experts.

4. Seller agrees to permit Buyer and Buyer's representatives reasonable access to the Property to complete Buyer's inspections; provided, however, that no inspections may be made by any building department inspector or other government employee without the prior written consent of Seller, which shall not be unreasonably withheld or delayed.

5. Buyer warrants and represents that, with respect to the condition of the Property, Buyer will rely entirely on Buyer's own investigation and information, if any, and not on any information or representations made by Seller or anyone acting on Seller's behalf.

6. Unless otherwise provided to the contrary in the Contract, (a) Buyer shall retain all contingency rights (including those of physical inspection of the Property) provided in the Contract; (b) Seller shall keep and maintain the Property and its improvements in substantially the same condition they were in as of the date of "Acceptance" (as defined in the Contract); and (c) Seller shall remove all Seller's personal property and debris from the Property prior to close of escrow and shall leave the Property in broom clean condition.

7. Nothing contained in this ADDENDUM shall relieve or be deemed to relieve Seller of the duty to disclose or otherwise notify Buyer of conditions known by Seller to exist on or about the Property as required pursuant to applicable law, or to relieve Seller of Seller's obligations with respect to smoke detectors and the water heater.

8. Buyer and Seller agree there are ☒ *no exceptions* ☐ *following exceptions:*

Upon its execution by both parties, the above terms are made an integral part of the aforementioned agreement:

Date: _____        Date: _____

Buyer: _____        Seller: _____

Buyer: _____        Seller: _____

Copyright© 2000 Advanced Real Estate Solutions, Inc.

Form RAIA    Revised 4/00

Plaintiff's EOR-357

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**ADDENDUM**

(C.A.R. Form ADM, Revised 10/01)

No. _1_

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Residential Purchase Agreement,
☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental
Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property
Purchase Agreement, ☐ other _____

dated ____ _May 28, 2003_____ , on property known as _940 Elizabeth St._____

in which _____ _Thomas R. Lloyd_____ is referred to as ("Buyer/Tenant")
and _____ _J E Hoffman_____ is referred to as ("Seller/Landlord").
1)Tenant agrees to pay any and all expenses associated with said property including but not
limited to property taxes, repairs of any nature, property insurance, etc.

2)The property taxes will be billed out to tenant upon receipt. Tenant must pay taxes to JE
Hoffman 15 days prior to due date. Property insurance must be paid by tenant to JE Hoffman
upon billing. If tenant does not pay taxes and insurance as billed by the specified due
dates, the amount due will accrue interest at the rate of 1% per month. Not paying either
taxes or insurance by specified due date shall constitute a default.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____

Buyer/Tenant _____
_Thomas R. Lloyd_

Buyer/Tenant _____

Date _____

Seller/Landlord _____
_J E Hoffman_

Seller/Landlord _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means,
including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark
which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
25 South Virgil Avenue, Los Angeles, California 90020
ADM-11 REVISED 10/01 (PAGE 1 OF 1)

| Reviewed by | | |
| Broker or Designee | Date | |

**ADDENDUM (ADM-11 PAGE 1 OF 1)**

Plaintiff's EOR-358





**CALIFORNIA ASSOCIATION OF REALTORS®**

## OPTION AGREEMENT
### To be used with a purchase agreement. May also be used with a lease.

Date __May 28, 2003__ , at __Fresno__ , California

__JE Hoffman__ , ("Optionor"), grants to
__Thomas R. Lloyd__ , ("Optionee"),
an option ("Agreement") to purchase the real property and improvements situated in (city) __San Francisco__ , County of __San Francisco__
California, described as __940 Elizabeth St.__ ("Property") as specified in the
attached: ☐ Real Estate Purchase Agreement ☐ Other _____ , which is incorporated
by this reference as a part of this Agreement, on the following terms and conditions.

1. **OPTION CONSIDERATION:**
   A. __Fifteen Thousand Dollars and 00/99__ Dollars $ __15,000.00__
      ☐ (if checked) and/or (circle one), the amount specified in paragraph 6B.
   B. By ☐ cash, ☐ cashier's check, ☐ personal check, or ☒ __To be paid in Escrow__

      made payable to __JE Hoffman__
   C. ☐ Payable upon execution of this Agreement.
   OR ☐ Payable within _____ days after acceptance of this Agreement, by which time Optionee shall have completed a
      due diligence investigation and accepted the condition of the Property. At least 5 (or _____ ) days before expiration of this time
      period, Optionor shall provide to Optionee (i) any mandatory disclosures (such as those required by paragraph 7), (ii) a
      preliminary title report, and (iii) _____
   OR ☒ __All Disclosures provided w/in 10 days of Optionee exercising Option__
   D. If payment is not made by the time specified in paragraph 1C above, this Agreement shall become immediately null and void.
   E. If this Option is exercised, ☐ all, or ☒ $ __0__ , of the Option Consideration shall be applied toward
      Optionee's down payment obligations under the terms of the attached purchase agreement, upon close of escrow of this
      agreement. Optionee is advised that the full amount of the option consideration applied toward any down payment may not be
      counted by a lender for financing purposes.
2. **OPTION PERIOD:** The Option shall begin on (date) __June 30, 2003__ , and shall end at 11:59 p.m
   (or at ☐ _____ ), on (date) __June 30, 2005__
3. **MANNER OF EXERCISE:** Optionee may exercise the Option only by delivering a written unconditional notice of exercise, signed
   by Optionee, to Optionor, or __JE Hoffman__ , who is authorized to receive it, no earlier than
   _____ and no later than __April 15, 2005__
   A copy of the unconditional notice of exercise shall be delivered to the Brokers identified in this Agreement.
4. **EFFECT OF DEFAULT ON OPTION:** Optionee shall have no right to exercise this Option if Optionee has not performed any
   obligation imposed by, or is in default of, any obligation of this Agreement, any addenda, or any document incorporated by
   reference.
5. **NON-EXERCISE:** If the Option is not exercised in the manner specified, within the option period or any written extension thereof, or
   if it is terminated under any provision of this Agreement, then:
   A. The Option and all rights of Optionee to purchase the Property shall immediately terminate without notice; and
   B. All Option Consideration paid, rent paid, services rendered to Optionor, and improvements made to the Property, if any, by
      Optionee, shall be retained by Optionor in consideration of the granting of the Option; and
   C. Optionee shall execute, acknowledge, and deliver to Optionor, within 5 (or _____ ) calendar days of Optionor's request, a
      release, quitclaim deed, or any other document reasonably required by Optionor or a title insurance company to verify the
      termination of the Option.

   Optionee and Optionor acknowledge receipt of copy of this page, which constitutes Page 1 of 3 Pages.
   Optionee's Initials ( _____ ) ( _____ ) Optionor's Initials ( _____ ) ( _____ )

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means,
including facsimile or computerized formats. Copyright© 1998, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

REVISED 10/98

OFFICE USE ONLY
Reviewed by Broker
or Designee
Date _____

**OPTION AGREEMENT (OA-11 PAGE 1 OF 3)**

Lisa Grisafa
Keller Williams-Silicon Valley 2342 S. Bascom Avenue · Campbell       CA 95008

JH

EXHIBIT B

Fax (408)401770

Property Address: _940 Elizabeth St., San Francisco, CA  94114_                    Date: _May 28, 2003_

6. ☑ **LEASE (If checked):**

The attached lease agreement, dated _____ May 28, 2003 _____ , between Optionee as Tenant and Optionor as Landlord, is incorporated by reference as part of this Agreement.

B. $_____0_____ per month of rent actually paid by Optionee shall be treated as Option Consideration pursuant to paragraph 1.

C. The lease obligations shall continue until termination of the lease. If the Option is exercised, the lease shall continue until the earliest of (i) the date scheduled for close of escrow under the purchase agreement, or as extended in writing, (ii) the close of escrow of the purchase agreement, or (iii) mutual cancellation of the purchase agreement.

D. In addition to the reason stated in paragraph 4, Optionee shall have no right to exercise this Option if Optionor, as landlord, has given to Optionee, as tenant, two or more notices to cure any default or non-performance under the terms of the lease.

7. ~~**DISCLOSURE STATEMENTS:** Unless exempt, if the Property contains one-to-four residential dwelling units, Optionor must comply with Civil Code §1102 et seq., by providing Optionee with a Real Estate Transfer Disclosure Statement and Natural Hazard Disclosure Statement.~~

8. **RECORDING:** Optionor or Optionee shall, upon request, execute, acknowledge, and deliver to the other a memorandum of this Agreement for recording purposes. All resulting fees and taxes shall be paid by the party requesting recordation.

9. **DAMAGE OR DESTRUCTION:** If, prior to exercise of this Option, by no fault of Optionee, the Property is totally or partially damaged or destroyed by fire, earthquake, accident or other casualty, Optionee may cancel this Agreement by giving written notice to Optionor, and is entitled to the return of all Option Consideration paid. However, if, prior to Optionee giving notice of cancellation to Optionor, the Property has been repaired or replaced so that it is in substantially the same condition as of the date of acceptance of this Agreement, Optionee shall not have the right to cancel this Agreement.

10. **PURCHASE AGREEMENT:** All of the time limits contained in the attached purchase agreement, which begin on the date of Acceptance of the purchase agreement, shall instead begin to run on the date the Option is exercised. After exercise of this Option, if any contingency in the attached purchase agreement, including but not limited to any right of inspection or financing provision, is not satisfied or is disapproved by Optionee at any time, all option consideration paid, rent paid, services rendered to Optionor, and improvements to the Property, if any, by Optionee, shall be retained by Optionor in consideration of the granting of the Option.

11. **NOTICES:** Unless otherwise provided in this Agreement, any notice, tender, or delivery to be given by either party to the other may be performed by personal delivery or by registered or certified mail, postage prepaid, return receipt requested, and shall be deemed delivered when mailed (except for acceptance of the offer to enter into this Agreement, which must be done in the manner specified in paragraph 16). Mailed notices shall be addressed as shown below, but each party may designate a new address by giving written notice to the other.

12. **DISPUTE RESOLUTION:** Optionee and Optionor agree that any dispute or claim arising between them out of this Agreement shall be decided by the same method agreed to for resolving disputes in the attached purchase agreement.

13. **OTHER TERMS AND CONDITIONS,** including attached supplements: _____

> 1) Residential Lease After Sale Agreement
>
> 2) Option shall remain in full force unless the terms and conditions set forth in the "Residential Lease After Sale Agreement" is in breach. Any breach under the terms of the "Residential Lease After Sale Agreement" shall make the Option null and void.

14. **ATTORNEY'S FEES:** In any action, proceeding, or arbitration between Optionee and Optionor arising out of this Agreement, the prevailing Optionee or Optionor shall be entitled to reasonable attorney's fees and costs from the non-prevailing Optionee or Optionor.

Optionee and Optionor acknowledge receipt of copy of this page, which constitutes Page 2 of ___3___ Pages.

Optionee's Initials ( _____ ) ( _____ )        Optionor's Initials ( _____ ) ( _____ )

| OFFICE USE ONLY |
| --- |
| Reviewed by Broker or Designee _____ |
| Date _____ |

**REVISED 10/98**

**OPTION AGREEMENT (OA-11 PAGE 2 OF 3)**

JH

T3791899.23

135

Plaintiff's EOR-360

Property Address: _940 Elizabeth St., San Francisco, CA  94114_ _____ Date: _May 28, 2003_

15. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete, and exclusive expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement may not be extended, amended, modified, altered, or changed, except in writing signed by Optionee and Optionor.

16. **OFFER:** This is an offer for an Option to purchase Property on the above terms and conditions. Unless Acceptance of Offer is signed by Optionor, and a signed copy delivered in person, by mail, or facsimile, and personally received by Optionee, or by _Asher Robertson_ , who is authorized to receive it, by (date) _June 30, 2003_ , at , _5:00_ ☐ AM ☒ PM , the offer shall be deemed revoked. Optionee has read and acknowledges receipt of a copy of the offer. This Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

OPTIONEE _[signature]_

OPTIONEE
Address _____

Telephone _____ Fax _____

17. **BROKER COMPENSATION:** Optionor agrees to pay compensation for services as follows:
_____ , to _____ , Broker, and
_____ , to _____ , Broker,
payable upon execution of this Agreement.

18. **ACCEPTANCE OF OPTION:** Optionor warrants that Optionor is the owner of the Property or has the authority to execute this Agreement. Optionor accepts and agrees to grant an Option to purchase the Property on the above terms and conditions.

Checked: ☐ SUBJECT TO ATTACHED COUNTER OFFER, DATED _____ .

OPTIONOR _[signature]_

OPTIONOR
Address _____

Telephone _____ Fax _____

Real Estate Brokers are not parties to the Agreement between Optionee and Optionor.

Broker _____ By _____ Date _____

Address _____

Telephone _____ Fax _____

Broker _____ By _____ Date _____

Address _____

Telephone _____ Fax _____

form is available for use by the entire real estate industry. It is
intended to identify the user as a REALTOR®. REALTOR® is a
registered collective membership mark which may be used only by
members of the NATIONAL ASSOCIATION OF REALTORS® who
subscribe to its code of Ethics.

Page 3 of _3_ Pages.

┌─ OFFICE USE ONLY ─┐
│ Reviewed by Broker │
│ or Designee _____ │
│ Date _____  │
└────────────────────┘

OPTION AGREEMENT (OA-11 PAGE 3 OF 3)

Plaintiff's EOR-361

Plaintiff's EOR-362

 **CALIFORNIA ASSOCIATION OF REALTORS®**

# RESIDENTIAL LEASE AFTER SALE
### Seller In Possession After Close of Escrow



JE Hoffman _____ ("Landlord") ar
Thomas R. Lloyd _____ ("Tenant") agree as follow

**1. PROPERTY:**

A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as
940 Elizabeth St., San Francisco, CA 94114

B. The following personal property is included None _____ ("Premises

**2. SALE AGREEMENT:** Landlord as Buyer, and Tenant as Seller, have entered into a purchase and sale agreement for the real property describ
above. Close of escrow for that agreement is scheduled to occur on (date) _____ June 30, 2003 _____.

**3. TERM:** The term begins on the date that escrow closes on the purchase and sale agreement ("Commencement Date") (Check A or B):

☒ A. Month-to-month and continues as a month-to-month tenancy. Either party may terminate the tenancy by giving written notice to the other
least 30 days prior to the intended termination date, subject to any applicable local laws. Such notice may be given on any date.

☐ B. Lease and shall terminate on (date) _____ at _____ ☐ AM/☐ PM.
Any holding over after the term of this Agreement expires, with Landlord's consent, shall create a week-to-week tenancy that either party ir
terminate on 7 days written notice. Rent shall be at a rate equal to the prorated rent for the immediately preceding period and unless otherw
notified by Landlord is payable in advance. All other terms and conditions of this Agreement shall remain in full force and effect.

**4. RENT:**

A. Tenant agrees to pay rent at the rate of $ 2,595.64 _____ per month for the term of the Agreement.

B. Rent is payable in advance on the 1st ☐ or ☐ _____ of each calendar month, (or if checked ☐ in full for the entire rental period at cl
of escrow on the purchase and sale agreement) and is delinquent on the next day.

C. If Commencement Date falls on any day other than the 1st of the month, rent shall be prorated based on a 30-day period. If Tenant has paid o
full month's rent in advance of Commencement Date, rent for the second calendar month shall be prorated based on a 30-day period.

D. **PAYMENT:** The rent shall be paid to (name) _____ JE Hoffman _____, at (address) _5332 N. Palm Ave._
Suite 103  Fresno, CA 93704 _____, or at any other location specified by Landlord in writing to Tena

**5. SECURITY DEPOSIT:**

A. Tenant agrees to pay $ _____ as a security deposit. Security deposit will be: ☐ given to the Landlord of the Premises; ☐ held
Landlord's Broker's trust account; or ☐ held in escrow to be used for the purchase and sale agreement and released to Landlord upon the cl
of escrow under the purchase and sale agreement.

B. All or any portion of the security deposit may be used, as reasonably necessary, to: (1) cure Tenant's default in payment of rent, Late Charg
non-sufficient funds (" NSF") fees, or other sums due; (2) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest
licensee of Tenant; (3) clean Premises, if necessary, upon termination of tenancy; and (4) replace or return personal property or appurtenanc
SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of
security deposit is used during tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered
Tenant. Within three weeks after Tenant vacates the Premises, or immediately upon cancellation of the purchase and sale agreement, Landl
shall: (1) furnish Tenant with an itemized statement indicating the amount of any security deposit received and the basis for its disposition, and
return any remaining portion of security deposit to Tenant.

C. No interest will be paid on security deposit unless required by local ordinance.

D. If security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If security deposit is held in Owner's Broker's tr
account, and Broker's authority is terminated before expiration of this Agreement, and security deposits are released to someone other tl
Tenant, then Broker shall notify Tenant, in writing, where and to whom security deposit has been released. Once Tenant has been provided st
notice, Tenant agrees not to hold Broker responsible for security deposit.

E. Landlord and Tenant are advised that release of funds from escrow requires separate written instructions.

The copyright laws of the United States (Title 17 U.S. Code) forbid the
unauthorized reproduction of this form, or any portion thereof, by
photocopy machine or any other means, including facsimile or
computerized formats. Copyright© 1995-2000, CALIFORNIA
ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

**REVISION DATE 10/2000**
**RLAS-11 (PAGE 1 OF 4)**

Landlord and Tenant acknowledge receipt of copy of this page.
Landlord's Initials ( _____ ) ( _____ )
Tenant's Initials ( _____ ) ( _____ )

| Reviewed by |
| Broker or Designee _____ Date _____ |

### RESIDENTIAL LEASE AFTER SALE (RLAS-11 PAGE 1 OF 4)

Lisa Grimshin
Keller Williams-Silicon Valley 2542 S. Bascom Avenue , Campbell      CA 95008
Phone:

**EXHIBIT D**

JH

130

Plaintiff's EOR-363

Premises: _940 Elizabeth St., San Francisco, CA 94114_                              Date: _May 28, 2003_

6. MOVE-IN COSTS RECEIVED/DUE:

| Category | Total Due | Payment Received | Balance Due | Date Due |
|---|---|---|---|---|
| Rent from _06/30/2003_ to _07/31/2003_ (date) | $3,715.49 | | $3,715.49 | 06/30/2003 |
| *Security Deposit | | | | |
| Other | | | | |
| Other | | | | |
| Total | $3,715.49 | | $3,715.49 | |

*The maximum amount that Landlord may receive as security deposit, however designated, cannot exceed two month's rent for an unfurnished premises, and three month's rent for a furnished premises.

7. PARKING: (Check A or B)
   [X] A. Parking is permitted as follows: _As per city and county ordinances_
   OR [ ] B. Parking is not permitted on the Premises.

8. STORAGE: (Check A or B)
   [X] A. Storage is permitted as follows: _As per city and county ordinances_
   The right to storage space [ ] is, [ ] is not, included in the rent charged pursuant to paragraph 3. If not included in rent, storage space shall be an additional $ _____ per month. Tenant shall store only personal property that Tenant owns, and shall not store property that is claimed by another or in which another has any right, title, or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, or other inherently dangerous material.
   OR [ ] B. Storage is not permitted on the Premises.

9. LATE CHARGE/NSF CHECKS: Tenant acknowledges that either late payment of rent or issuance of a non-sufficient funds ("NSF") check may cause Landlord to incur costs and expenses, the exact amount of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of rent due from Tenant is not received by Landlord within 5 (or [ ] _____ ) calendar days after due date, or if a check is returned NSF, Tenant shall pay Landlord, respectively, an additional sum of $ _235.74_ as a Late Charge and $25.00 as a NSF fee, either or both of which shall be deemed additional rent. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date rent due under paragraph 3, or prevent Landlord from exercising any other rights and remedies under this Agreement, and as provided by law.

10. CONDITION OF PREMISES: Tenant has examined Premises, all furniture, furnishings, appliances, landscaping, if any, and fixtures, including smoke detector(s) and acknowledges that these items are clean and in operative condition, with the following exception _No Exceptions_

11. UTILITIES: Tenant agrees to pay for all utilities and services, and the following charges: _____ except_____ _No Exceptions_ _____, which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined by Landlord.

12. OCCUPANTS: The Premises are for the sole use as a personal residence by the following named persons only: _Thomas R. Lloyd_

13. PETS: No animal or pet shall be kept on or about the Premises without Landlord's prior written consent, except _____

14. RULES/REGULATIONS: Tenant agrees to comply with all rules and regulations of Landlord that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant shall not, disturb, annoy, endanger, or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing, transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

15. CONDOMINIUM/PLANNED UNIT DEVELOPMENT: [ ] (If checked) The Premises is a unit in a condominium, planned unit, or other development governed by an owner's association. The name of the homeowner's association ("HOA") is _____
Tenant agrees to comply with all covenants, conditions and restrictions, bylaws, rules, regulations and decisions of HOA. Landlord shall provide Tenant copies of rules and regulations, if any. Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1995-2000, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

REVISION DATE 10/2000
RLAS-11 (PAGE 2 OF 4)

Landlord and Tenant acknowledge receipt of copy of this page.
Landlord's Initials ( ) ( )
Tenant's Initials ( ) ( )

Reviewed by _____
Broker or Designee _____ Date _____

RESIDENTIAL LEASE AFTER SALE (RLAS-11 PAGE 2 OF 4)

JH

Plaintiff's EOR-364

Premises: 940 Elizabeth St., San Francisco, CA 94114                          Date: May 28, 2003

**16. MAINTENANCE:**

A. Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings, and appliances, and all mechanical, electrical, gas and plumbing fixtures, and keep them clean and sanitary. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage. Tenant shall pay for all repairs or replacements caused by Tenant, or guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall pay for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall pay for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

B. ☐ Landlord, ☒ Tenant, shall water the garden, landscaping, trees and shrubs, except No Exceptions

C. ☐ Landlord, ☒ Tenant shall maintain the garden, landscaping, trees and shrubs, except No Exceptions

**17. ALTERATIONS:** Tenant shall not make any alterations in or about the Premises without Landlord's prior written consent, including painting wallpapering, adding or changing locks, installing antenna or satellite dish, placing signs, displays or exhibits, or using screws, fastening devices large nails or adhesive materials.

**18. KEYS/LOCKS:**

A. Tenant acknowledges possession of ____ key(s) to Premises; ____ remote control device(s) for garage door/gate opener(s); ____ key(s) to mailbox; ____ key(s) to common area(s); and All Keys / Openers tenant currently possesses

B. If Tenant rekeys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

**19. ENTRY:** Tenant shall make Premises available to Landlord or representative for the purpose of entering to make necessary or agreed repairs decorations, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers tenants, mortgagees, lenders, appraisers, or contractors. Landlord and Tenant agree that 24 hours notice (oral or written) shall be reasonable and sufficient notice. In an emergency, Landlord or representative may enter Premises at any time without prior notice.

**20. SIGNS:** Tenant authorizes Landlord to place For Sale/Lease signs on the Premises.

**21. ASSIGNMENT/SUBLETTING:** Tenant shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without prior written consent of Landlord. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy by voluntary act of Tenant, operation of law or otherwise, shall be null and void, and at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval, and, if approved sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease, and does not release Tenant of Tenant's obligation under this Agreement.

**22. ☐ LEAD PAINT (CHECK IF APPLICABLE):** Premises was constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (such as C.A.R. Form FLD-14) and a federally approved lead pamphlet.

**23. TENANT'S OBLIGATIONS UPON VACATING PREMISES:** Upon termination of Agreement, Tenant shall: (a) give Landlord all copies of all keys opening devices to Premises, including any common areas; (b) vacate Premises and surrender it to Landlord empty of all persons; (c) vacate any parking and/or storage space; (d) deliver Premises to Landlord in the same condition as referenced in paragraph 10; (e) clean Premises, including professional cleaning of carpet and drapes; (f) give written notice to Landlord of Tenant's forwarding address; and (g) ____

All improvements installed by Tenant, with or without Landlord's consent, become the property of Landlord upon termination.

**24. BREACH OF CONTRACT/EARLY TERMINATION:** In addition to any obligations established by paragraph 23, in event of termination by Tenant prior to completion of the original term of Agreement, Tenant shall also be responsible for lost rent, rental commissions, advertising expenses, and painting costs necessary to ready Premises for re-rental.

**25. DAMAGE TO PREMISES:** If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty, which render Premises uninhabitable, either Landlord or Tenant may terminate Agreement by giving the other written notice. Rent shall be abated as of date of damage. The abated amount shall be the current monthly rent prorated on a 30-day basis. If Agreement is not terminated Landlord shall promptly repair the damage, and rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonable use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in rent shall be made.

**26. INSURANCE:** Tenant's personal property and vehicles are not insured by Landlord or, if applicable, HOA, against loss or damage due to fire, theft vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is to carry Tenant's own insurance (renter's insurance) protect Tenant from any such loss.

**27. WATERBEDS:** Tenant shall not use or have waterbeds on the Premises unless: (a) Tenant obtains a valid waterbed insurance policy; (b) Tenant increases the security deposit in an amount equal to one-half of one month's rent; and (c) the bed conforms to the floor load capacity of Premises.

**28. WAIVER:** The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

**29. NOTICE:** Notices may be served at the following address, or at any other location subsequently designated:

Landlord: JE Hoffman
5332 N. Palm Ave. Suite 103
Fresno, CA 93704

Tenant: Thomas H. Lloyd
940 Elizabeth St.
San Francisco, CA 94114

Landlord and Tenant acknowledge receipt of copy of this page.
Landlord's Initials ( ) ( )
Tenant's Initials ( ) ( )

Reviewed by
Broker or Designee _____ Date _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1995-2000, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

REVISION DATE 10/2000
RLAS-11 (PAGE 3 OF 4)

RESIDENTIAL LEASE AFTER SALE (RLAS-11 PAGE 3 OF 4)

JH

132

Premises: 940 Elizabeth St., San Fra___co, CA  94114                                      Date: May 28, 2003

30. **TENANCY STATEMENT (ESTOPPEL CERTIFICATE):** Tenant shall execute and return a tenancy statement (estoppel certificate) delivered to Tenant by Landlord or Landlord's agent within 3 days after its receipt. The tenancy statement acknowledges that this Agreement is unmodified and in full force, or in full force as modified, and states the modifications. Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenancy statement is true and correct, and may be relied upon by a lender or purchaser.

31. **JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

32. ☐ **MILITARY ORDNANCE DISCLOSURE:** (If applicable and known to Landlord) Premises is located within one mile of an area once used for military training, and such area may contain potentially explosive munitions.

33. **OTHER TERMS AND CONDITIONS/SUPPLEMENTS:** See Addendum #1 _____

_____

The following ATTACHED supplements are incorporated in this Agreement: _____

34. **ATTORNEY'S FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled t reasonable attorney's fees and costs.

35. **ENTIRE CONTRACT:** Time is of the essence. All prior agreements between Landlord and Tenant are incorporated in this Agreement whic constitutes the entire contract. It is intended as a final expression of the parties' agreement, and may not be contradicted by evidence of any pri agreement or contemporaneous oral agreement. The parties further intend this Agreement to constitute the complete and exclusive statement of i terms, and that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving this Agreement. An provision of this Agreement that is held to be invalid shall not affect the validity or enforceability of any other provision in this Agreement.

36. **AGENCY:**

    A. **Confirmation:** The following agency relationship(s) are hereby confirmed for this transaction:

        Listing Agent: (Print firm name) _____ is the agent

        (check one): ☐ the Tenant exclusively; or ☐ the Landlord exclusively; or ☐ both the Tenant and Landlord.

        Selling Agent: (Print firm name) _____ (if not same as Listing Agent) is the agent

        (check one): ☐ the Landlord exclusively; or ☐ both the Landlord and Tenant.

    B. **Disclosure:** ☐ (If checked): The term of this lease exceeds one year. An agency disclosure form has been provided to Landlord and Tena who each acknowledge its receipt.

Landlord and Tenant acknowledge and agree that Brokers: (a) do not guarantee the condition of the Premises; (b) cannot verify representations mad by others; (c) cannot provide legal or tax advice; (d) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: (e) do not decide wha rental rate a Tenant should pay or Landlord should accept; and (f) do not decide upon the length or other terms of tenancy. Landlord and Tenan agree that they will seek legal, tax, insurance, and other desired assistance from appropriate professionals.

Tenant _____   Date _____
       Thomas R. Lloyd

Tenant _____   Date _____

Landlord _____   Date _____
(owner or agent with authority to enter into this lease)

Landlord _____   Date _____
(owner or agent with authority to enter into this lease)

Agency relationships are confirmed as above. Real estate brokers not acting as Landlord in this Agreement are not a party to the Agreement betw Landlord and Tenant.

Real Estate Broker _____   By _____   Date _____
(Selling Firm Name)

Address _____   Telephone _____   Fax _____

Real Estate Broker _____   By _____   Date _____
(Listing Firm Name)

Address _____   Telephone _____   Fax _____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL EST. TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by |
| Broker or Designee _____ Date _____ |

**REVISION DATE 10/2000**
**RLAS-11 (PAGE 4 OF 4)**

**RESIDENTIAL LEASE AFTER SALE (RLAS-11 PAGE 4 OF 4)**

T379199.

JH

Plaintiff's EOR-366