1  GOLDBERG, STINNETT, DAVIS & LINCHEY
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   44 Montgomery Street, Suite 2900
3  San Francisco, CA 94104
   Telephone: (415) 362-5045
4  Facsimile: (415) 362-2392

5  Attorneys for Appellant, Jeffrey E. Hoffman

6

7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10 JEFFREY E. HOFFMAN,                      No. 3:07-CV-2417 MHP

11              Plaintiff,

12 vs.

13 THOMAS  R.  LLOYD,  an  individual,
   EDWARD L. BLUM, an individual, and
14 DOES 1 through 20, inclusive,,

15              Defendants.

16 _____

17 THOMAS LLOYD,

18              Cross-Plaintiff,

19 vs.

20 JEFFREY  E.  HOFFMAN,  dba  H&B
   PROPERTIES; H&B PROPERTIES, LLC;
21 J. EDWARDS INVESTMENT GROUP,
   INC., and NORCAL FINANCIAL, INC.,
22
                Cross-Defendants.
23 _____

24

25        **APPELLANT'S EXCERPTS OF RECORD ON APPEAL**

26                        **VOLUME IV**

27

28

| | | Bktcy Ct Docket No. | Pages |
|---|---|---|---|
| 1. | Answer – Unlawful Detainer (Trial Exhibit 10) | | 1-4 |
| 2. | Settlement and Mutual Release Agreement (Trial Exhibit G) | | 5-9 |
| 3. | Complaint for Damages and to Cancel Instrument (filed April 5, 2005) | | 10-29 |
| 4. | Cross-Complaint for (1) Declaratory Relief: (2) Avoidance of Fraudulent Conveyances and/or Obligations; (3) Transferee Liability; (4) Quiet title; (5) an Accounting; (6) Determination of Validity, Extent and Priority of Liens; and (7) Objection to Claim (filed June 16, 2005) | | 30-60 |
| 5. | Declaration of Thomas Lloyd in Support of Motion for Summary Judgment (filed 1/20/06) | 39 | 61-82 |
| 6. | Tentative Ruling Re Plaintiff's Motion for Summary Judgment (filed February 16, 2006) | 55 | 83-85 |
| 7. | Order Denying Motion for Summary Judgment (filed February 21, 2006) | 57 | 86-89 |
| 8. | Trial Transcript (filed February 28, 2006) | | 90-294 |
| 9. | Decision After Trial (Phase One) (filed March 20, 2006) | 59 | 295-297 |
| 10. | Hearing Transcript of Defendant's Motion for Summary Judgment (filed April 28, 2006) | | 298-330 |
| 11. | Order Granting Defendant Thomas Lloyd's Motion for Summary Judgment (filed May 15, 2006) | 83 | 331-338 |
| 12. | Tentative Ruling Re Rescission Payment (filed November 9, 2006) | 95 | 339-344 |
| 13. | Tentative Ruling Re Terms for Cancellation of Deed (filed 1/24/07) | | 345-347 |
| 14. | Declaration of Asher Robertson (filed 2/13/07) | 108 | 348-366 |

-1-

| 15. | Opinion (filed April 30, 2007) | 116 | 367-392 |
|---|---|---|---|
| 16. | Judgment and Rule 54(b) Certification (filed April 30, 2007) | 117 | 393-396 |
| 17. | Order Denying Stay Pending Appeal (filed May 7, 2007) | 125 | 397-399 |
| 18. | Plaintiff's Brief Relating to Court's Tentative Ruling of January 24, 2007 | 108 | 400-414 |
| 19. | Declaration of Jeffrey E. Hoffman in Support of Plaintiff's Opposition to Defendant Lloyd's Motion for Summary Judgment. | 75 | 415-444 |
| 20. | Trial Scheduling Order. | 29 | 445-448 |
| 21. | Memorandum of Points and Authorities in Support of Defendant Thomas Lloyd's Motion for Summary Judgment. | 42 | 449-472 |
| 22. | Reply Memorandum of Points and Authorities in Support of Defendant Thomas Lloyd's Motion for Summary Judgment. | 78 | 473-485 |
| 23. | Declaration of Jeffrey Goodrich in Reply to Plaintiff's Opposition to Defendant Thomas Lloyd's Motion for Summary Judgment. | 80 | 486-510 |

DATED:  July 13, 2007

GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation


By:      /s/ Dennis D. Davis
Attorneys for Appellant Jeffrey E. Hoffman

**DOCUMENT 15**



Signed and Filed: April 30, 2007

**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 04-32921 TEC |
| THOMAS LLOYD, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| _____ | ) |
| JEFFREY E. HOFFMAN, | ) |
| Plaintiff, | ) |
| vs. | ) Adv. Proc. No. 05-3328 TC |
| THOMAS R. LLOYD, an individual, | ) |
| EDWARD L. BLUM, an individual, and | ) |
| DOES 1 through 20, inclusive, | ) |
| Defendants. | ) |
| _____ | ) |
| THOMAS LLOYD, | ) |
| Cross-Plaintiff, | ) |
| vs. | ) O P I N I O N |
| JEFFREY E. HOFFMAN, dba H & B | ) |
| PROPERTIES; H & B PROPERTIES, LLC,; | ) |
| J. EDWARDS INVESTMENT GROUP, INC., | ) |
| and NORCAL FINANCIAL, INC., | ) |
| Cross-Defendants. | ) |
| _____ | ) |

Thomas E. Carlson, Bankruptcy Judge.

-1-

Plaintiff's EOR-367

1   The principal question presented is whether a homeowner who
2   sells his home while facing foreclosure may cancel that sale long
3   after the fact, because the sale contract omitted one of two
4   notices of the right to cancel required under section 1695.5 of the
5   California Home Equity Sales Contracts Act.  Because the sale
6   contract failed to provide notice of the right to cancel "in
7   immediate proximity to the space reserved for the equity seller's
8   signature," the contract did not substantially comply with the
9   requirements of section 1695.5 and, as a consequence, the time to
10  cancel the sale never expired.

11  FACTS

12  Thomas Lloyd owned and resided in a single-family house in San
13  Francisco (the Residence).  In May 2003, he was in default on his
14  mortgage payments and looking for help, when he met Jeffrey
15  Hoffman.  Lloyd sold the Residence to Hoffman in a transaction that
16  Lloyd hoped would enable him ultimately to keep the Residence.

17  1.  The Sale of the Residence

18  On May 28, 2003, Lloyd and Hoffman signed three related
19  contracts regarding the Residence: the Purchase-Sale Agreement; the
20  Lease; and the Option.  The Purchase-Sale Agreement provided for
21  Hoffman to purchase the Residence from Lloyd for $900,000.  The
22  Lease provided for Lloyd to rent back the Residence from Hoffman on
23  a month-to-month basis.  The Option permitted Lloyd to repurchase
24  the Residence from Hoffman on or before June 30, 2005.[1]

25  Of great importance to the present action, the Purchase-Sale
26  Agreement did not contain a notice of the right to cancel next to

27

28  [1]  The Option does not state the price at which Lloyd could
    repurchase the Residence.

-2-

Plaintiff's EOR-368

1  the line for Lloyd's signature.  Through the Home Equity Sales

2  Contracts Act[2] (HESCA), the California Legislature closely regulates

3  sales of residences that occur after foreclosure proceedings have

4  begun, to protect "homeowners in financial distress" against "the

5  importunities of equity purchasers who induce homeowners to sell

6  their homes for a small fraction of their fair market values. . .

7  ."  § 1695(a).  Under HESCA, the Purchase-Sale Agreement should

8  have contained notice of the right to cancel next to the line for

9  Lloyd's signature, and Lloyd had a right to cancel the sale up to

10  five calendar days after he was accorded proper notice of that

11  right.

12      The sale of the Residence to Hoffman closed on August 25,

13  2003.  On that date, Lloyd executed a grant deed, and Hoffman paid

14  the purchase price by taking out a new loan against the Residence

15  in the amount of $640,000.  The proceeds of that loan were used to

16  retire Lloyd's existing loans ($591,738) and to pay Lloyd

17  approximately $20,000.  Lloyd remained on the premises under the

18  Lease.  Hoffman transferred his interest in the Residence to H&B

19  Properties, an LLC in which he was the sole member.

20  2.    Settlement of the Unlawful Detainer Action

21      Lloyd soon fell behind in the rent payments due under the

22  Lease.  H&B Properties filed an unlawful detainer action on June 2,

23  2004.  This action was settled before trial via an agreement

24  executed on August 3, 2004 (the Settlement Agreement).  The

25  Settlement Agreement allowed Lloyd 90 days either: (a) to find a

26

27      [2]  HESCA is codified in sections 1695 through 1695.17 of the

28  California Civil Code.  Unless otherwise noted, all statutory
    references in this decision are to sections of the California Civil
    Code.

-3-

Plaintiff's EOR-369

1  buyer for the Residence; or (b) to repurchase the Residence
2  himself.  If Lloyd failed to perform either alternative, the Option
3  and Lease would be terminated, and judgment would be entered
4  against Lloyd for unpaid rent and attorneys fees.

5       Shortly after the parties executed the Settlement Agreement,
6  H&B Properties further encumbered the Residence by obtaining a
7  $110,000 loan from Norcal Financial, secured by a second deed of
8  trust.  Norcal Financial is another entity controlled by Hoffman.

9       Of importance to this case, the Settlement Agreement contained
10 broad mutual releases.  Those releases apply to claims unknown at
11 the time of the release, because the parties expressly waived the
12 protections of California Civil Code section 1452.  The Settlement
13 Agreement did not expressly address any rights under HESCA.

14      Lloyd was unable to perform under the Settlement Agreement and
15 filed a chapter 11 petition in this court on October 15, 2004.
16 3.   The Notice of Rescission

17      On October 18, 2004, Lloyd recorded a document entitled Notice
18 of Rescission of Grant Deed Recorded Pursuant to Home Equity Sales
19 Contract (the Notice of Rescission).  In that Notice, Lloyd
20 asserted the right under HESCA to rescind both the grant deed to
21 Hoffman and the Purchase-Sale Agreement.

22      Hoffman initially sought to litigate the validity of the
23 Notice of Rescission in the California state courts.  He filed a
24 motion seeking relief from the automatic stay to permit him to file
25 a state-court action against Lloyd.  Noting that the validity of
26 the Notice of Rescission turned upon California law, this court
27 granted the requested relief from stay.  Hoffman filed an action
28 against Lloyd in the San Francisco County Superior Court seeking

-4-

1 | cancellation of the Notice of Rescission and damages resulting from
2 | the slander of title that the Notice created. Lloyd answered and
3 | asserted a cross complaint against Hoffman seeking an accounting,
4 | quiet title to the Residence, and other relief. On September 14,
5 | 2005, Lloyd removed the Superior Court action to this court. At
6 | this juncture, Hoffman did not file a motion to remand, but instead
7 | sought to have this court summarily grant relief in his favor.

8 | **4.    The Settlement Agreement Does Not Bar Rescission**

9 | Hoffman filed a motion to have this court cancel the Notice of
10 | Rescission on the ground that it was barred by the general release
11 | in the Settlement Agreement. In opposing that motion, Lloyd argued
12 | that the release in the Settlement Agreement should not bar
13 | cancellation of the sale, because HESCA expressly provides "[a]ny
14 | waiver of the provisions of this chapter shall be void and
15 | unenforceable as contrary to public policy." § 1695.10.

16 | The court determined that it must hold an evidentiary hearing.
17 | In light of section 1695.10, the general release would be
18 | enforceable, if at all, only if it represented a knowing and
19 | intelligent waiver of Lloyd's rights under HESCA. Lloyd had
20 | submitted a declaration stating that he was unaware of his right to
21 | cancel under HESCA at the time he signed the Settlement Agreement.
22 | There thus existed a genuine issue of material fact regarding the
23 | enforceability of the release.

24 | Before the evidentiary hearing commenced, Hoffman disclosed a
25 | copy of a one-page document entitled "Notice Required by California
26 | Law" (the Signed Separate-Page Notice). This Notice explained the
27 | right to cancel under HESCA, stated the seller could cancel the
28 | sale on or before June 4, 2003, and purported to bear Lloyd's

-5-

Plaintiff's EOR-371

1 undated signature at the bottom. Lloyd's counsel asserted at a
2 pretrial hearing that the signature was a forgery and stated that
3 he would object to introduction of the document at trial.

4      Following the evidentiary hearing, the court determined that
5 the general release in the Settlement Agreement did not bar Lloyd
6 from cancelling the sale of the Residence under HESCA. After
7 hearing testimony from the parties and counsel involved in the
8 negotiation of the Settlement Agreement (during which Hoffman did
9 not attempt to introduce the Signed Separate-Page Notice), this
10 court made the finding of fact that Lloyd was unaware of his rights
11 under HESCA at the time he signed the Settlement Agreement. The
12 court made the conclusion of law that the general release was not
13 applicable to Lloyd's rights under HESCA if he was unaware of those
14 rights at the time he executed that release.[3]

15 _____

16      [3] In an unpublished Decision After Trial filed on March 20,
   2006, this court explained its conclusions of law in the following
17 language.
        I conclude that the release was effective with
18      respect to Lloyd's rights under Section 1695 only if:
        (1) the release occurred in the settlement of a ripe
19      controversy in which the significance of those rights had
        become apparent; and (2) the release constituted a
20      knowing and intelligent waiver of those rights. In so
        concluding, I note the following. First, the California
21      Legislature expressly provided that rights under Section
        1695 cannot be waived. Cal. Civ. Code § 1695.10.
22      Although I do not believe that the Legislature meant to
        bar settlement of ripe claims arising under Section 1695,
23      the anti-waiver provision suggests that any such
        settlement should be attended with adequate safeguards.
24      Second, California courts have held that any waiver of an
        important statutory right must be knowing and
25      intelligent. Cathay Bank v. Lee, 14 Cal.App. 4th 1533,
        1539 (1993); accord In re Acosta, 182 B.R. 561, 566-67
26      (N.D.Cal. 1994). Third, Section 1695 is important
        consumer protection legislation, much like the Federal
27      Truth-in-Lending Act. Thus, I find both persuasive and
        pertinent a decision in which a general release that did
28      not specifically acknowledge the right to rescind under
        TILA was held not to bar the later exercise of that
        right. Mills v. Home Equity Group, Inc., 871 F.Supp.

                              -6-

Plaintiff's EOR-372

5.    Summary Judgment Granted

Following the denial of Hoffman's motion, Lloyd filed a motion for summary judgment. He argued that Hoffman, as the equity purchaser, had the duty to comply with the HESCA requirements regarding notice of the right of cancellation. § 1695.5(a). He argued that the Purchase-Sale Agreement did not comply with those notice requirements because, among other reasons, it failed to provide notice of the right to cancel next to the space for the seller's signature (the Next-to-Signature Notice). § 1695.5(a). He argued that the right to cancel never expired and that the Notice of Rescission was timely, because proper notice of that right had never been given. § 1695.5(d).

In support of the motion for summary judgment, Lloyd submitted a declaration stating that on May 28, 2003, he signed only three documents (the Purchase-Sale Agreement, the Lease, and the Option), and that none contained the Separate-Page Notice.

Hoffman opposed the motion for summary judgment, contending that he had substantially complied with the notice requirements of HESCA. Hoffman argued that the Signed Separate-Page Notice fulfilled the purpose behind the required Next-to-Signature Notice. In support of his argument, Hoffman submitted his own declaration, in which he stated that the Signed Separate-Page Notice was part of his business records.

This court granted summary judgment for Lloyd regarding Hoffman's failure to comply with the notice requirements of HESCA and the timeliness of Lloyd's Notice of Rescission. Hoffman, as

---

1482, 1485-86 (D.D.C. 1994).

-7-

Plaintiff's EOR-373

1 the equity purchaser, had the duty to show compliance with the

2 notice requirements of HESCA.  § 1695.6(a).  To have any hope of

3 showing substantial compliance with the Next-to-Signature Notice

4 requirement, Hoffman had to offer admissible evidence that Lloyd

5 had signed the Separate-Page Notice on the same date he signed the

6 Purchase-Sale Agreement.  Lloyd's purported signature was not

7 dated.  Hoffman's declaration did not state that Hoffman saw Lloyd

8 sign the Notice, and therefore did not constitute admissible

9 evidence that Lloyd signed it at the same time he signed the

10 Purchase-Sale Agreement.  Hoffman had not requested further time

11 under Rule 56(f) to obtain such evidence.  In light of Hoffman's

12 failure to comply with the notice requirements of HESCA, the time

13 to cancel never ran, and the Notice of Rescission was therefore

14 timely.  § 1695.5(d).

15     On the basis of the summary judgment, the court ordered the

16 dismissal of Hoffman's claims for slander of title and for

17 cancellation of the Notice of Rescission.  The court also stated

18 its intent to grant Lloyd's claim to quiet title to the Residence

19 in his name.  The court reserved the issue of whether Lloyd should

20 be required to return any consideration received as a condition of

21 cancelling the sale, and did not immediately enter judgment on any

22 of the claims.

23 **6.   Conditions on Rescission**

24     The parties briefed the question whether any conditions should

25 be imposed on Lloyd's cancellation of the sale.  Hoffman asked that

26 Lloyd be required to pay more than $500,000 to restore Hoffman to

27 his former position.  He sought reimbursement for many categories

28 of expenses he had incurred: mortgage interest, property taxes,

-8-

Plaintiff's EOR-374

1  transfer taxes, maintenance, improvements, insurance, loan fees,
2  management fees, attorneys fees, and unpaid rent.   Lloyd
3  acknowledged that he must return any net value received.   He
4  argued, however, that much of the amount Hoffman sought did not
5  represent value Lloyd received, and that the value Lloyd did
6  receive was fully offset by the increased debt against the property
7  Lloyd would now be required to pay.   The court issued a tentative
8  ruling that no reimbursement would be required, and scheduled a
9  hearing for February 28, 2007 to allow the parties to address the
10  question further.

11  **7.   The Motion to Reopen the Summary Judgment**

12      Hoffman responded to this tentative ruling by attempting to
13  reopen the ruling granting Lloyd's motion for summary judgment.
14  Hoffman first argued that the Signed Separate-Page Notice had been
15  sufficiently authenticated by Hoffman's declaration stating that
16  Notice to be part of his business records, and by the similarity
17  between the signature on the Notice and Lloyd's signatures on the
18  Purchase-Sale Agreement, Lease, and Option.   He also argued that
19  because the Notice itself was dated Mary 28, 2003, it constituted
20  sufficient evidence that Lloyd signed it on that date to create a
21  triable issue of fact.   Hoffman next sought to reopen the summary
22  judgment by offering new evidence.   He submitted a declaration from
23  Asher Robertson, the broker who represented Lloyd in the sale to
24  Hoffman, stating that Hoffman had signed the Separate-Page Notice
25  on the same date he signed the Purchase-Sale Agreement, Lease, and
26  Option.

27      In opposing Hoffman's motion, Lloyd first disputed that
28  summary judgment had been improperly granted.   Even if the Signed

-9-

Plaintiff's EOR-375

1   Separate-Page Notice was dated May 28, 2003, the signature on the

2   Notice was undated, and Hoffman had offered no evidence to

3   controvert Lloyd's declaration that he did not sign the Separate-

4   Page Notice on May 28th.  Lloyd next contended that Hoffman should

5   not be allowed to offer the Robertson declaration at such a late

6   date, because Hoffman had met with Robertson for several hours in

7   January 2006, well before the summary judgment motion.

8       At the February 28, 2007 hearing, it became apparent that

9   there remained two legal questions the court must resolve.  First,

10  the parties agreed that the court should determine whether the

11  Signed Separate-Page Notice would constitute substantial compliance

12  with the HESCA notice requirements, before considering (or

13  reconsidering) the factual question whether Lloyd had signed that

14  notice at the same time he signed the Purchase-Sale Agreement.

15  Second, the court should determine what categories of reimbursement

16  Lloyd must make as a condition to cancellation of the sale.  If the

17  legal standard Lloyd urged was correct, Hoffman would not be

18  entitled to reimbursement, even if Hoffman prevailed regarding the

19  relevant factual disputes.

20  DISCUSSION

21                              I.
                COMPLIANCE WITH HESCA REQUIREMENTS
22           REGARDING NOTICE OF RIGHT TO CANCEL, AND
             THE TIMELINESS OF THE NOTICE OF RESCISSION
23

24  1.   Statutory Framework

25       The California Legislature enacted HESCA in 1979 to protect

26  homeowners in foreclosure from fraudulent schemes by home equity

27  purchasers.  The Legislature found that homeowners in financial

28  distress were often induced to sell their homes for a small

                              -10-

Plaintiff's EOR-376

1  fraction of their market value through various types of pressure
2  and misrepresentation.[4]  HESCA protects homeowners by: (1) requiring
3  home equity sales contracts to be in writing and to contain certain
4  disclosures; (2) providing the equity seller an opportunity to
5  cancel the sale; and (3) prohibiting the equity purchaser from
6  paying consideration, receiving a conveyance, or encumbering the
7  property until the right to cancel has expired.  §§ 1695.2 through
8  1695.6.

9       The protections of HESCA apply to the sales of residential
10  property of 1-4 units that the seller occupies as his or her
11  principal residence, and against which there is an outstanding
12  notice of default under a deed of trust or mortgage.  § 1695.1(b).
13  The statute expressly excludes from its coverage various types of
14  sales posing less opportunity for abuse: foreclosure sales, deeds
15  in lieu of foreclosure, sales directed by court order, sales to a
16  spouse or blood relative, and sales to a person who intends to
17  reside in the property.  § 1695.1(a).

18      HESCA closely regulates the form of home equity sales
19  contracts.  Such contracts must be in writing, must state the total
20  consideration to be paid and the terms of payment, and must state
21  the time at which possession is to be transferred, and the terms of
22  any rental agreement.  §§ 1695.2, 1695.3.  The contract must also
23  contain two types of notices: (1) a notice of the seller's right to
24  cancel, described in more detail below; and (2) a notice that the
25  buyer cannot ask the seller to sign any deed or other document
26  until the right to cancel has expired.  §§ 1695.3(h), 1695.5(a).

27  _____

28  [4] In section 1695, the Legislature made detailed findings and
conclusions, which are set forth in more detail in part II.4,
infra.

-11-

Plaintiff's EOR-377

1    The equity seller's right to cancel is the heart of the

2  statutory scheme.  The equity seller may cancel the contract until

3  the earlier of midnight of the fifth business day after he or she

4  signs a contract "that complies with this chapter," or 8:00 a.m. on

5  the day scheduled for a foreclosure sale.  § 1695.4(a).  The seller

6  may exercise the right to cancel by delivering to the equity

7  purchaser any writing indicating the seller's intention to cancel

8  the contract.  § 1695.4(b), (c).

9    The written contract must contain two separate notices of the

10  right to cancel.  The first of these notices is what I shall call

11  the Next-to-Signature Notice.  The contract

12      shall contain in immediate proximity to the space
          reserved for the equity seller's signature a conspicuous

13      statement . . . as follows: "You may cancel this contract
          for the sale of your house without any penalty or

14      obligation at any time before (date and time of day).
          See the attached notice of cancellation form for an

15      explanation of this right."

16  § 1695.5(a).

17    The second of these notices is what I shall call the Separate-

18  Page Notice.  The contract must be accompanied by a "notice of

19  cancellation" on a separate page attached to the contract that

20  states the deadline for cancellation, explains how the seller may

21  cancel the contract, and contains a space in which the seller may

22  indicate his or her intent to exercise the right to cancel.

23  § 1695.5(b).

24    HESCA states expressly that the right to cancel does not

25  expire before the seller has received the required notices.

26  Section 1695.5(d) states "[u]ntil the equity purchaser has complied

27  with this section [governing notice of the right to cancel], the

28  equity seller may cancel the contract."  Section 1695.4(a) provides

-12-

Plaintiff's EOR-378

1   that the five-day cancellation period begins when "the equity

2   seller signs a contract that complies with this chapter."

3        To make the right to cancel more effective, the equity

4   purchaser may not pay any consideration, accept a deed, record a

5   deed, or transfer or encumber the property until the right to

6   cancel has expired. § 1695.6(b). Thus, the Legislature

7   contemplated that the equity seller would not have to return any

8   consideration, or undo any other aspect of the contemplated sale,

9   as a condition of cancelling the sale contract. The statute also

10   states that the seller's right to cancel is "[i]n addition to any

11   other right of rescission. . . ." § 1694.5(a).

12        The equity seller is not protected against third parties who

13   in good faith and without knowledge "of a violation of this

14   chapter" purchase the property for value from the equity purchaser

15   or who loan money to the equity purchaser secured by the property.

16   § 1695.6(b)(3).

17        HESCA provides that an equity seller may recover damages and

18   attorneys fees if the equity purchaser does not promptly and

19   "without condition" honor a timely notice of cancellation.

20   § 1695.7. The court must treble any actual damages resulting from

21   the equity purchaser encumbering the property before the

22   cancellation period has expired. Id.

23   **2.  Facts Related to Compliance with the Statute**

24        The Purchase-Sale Agreement did not contain the Next-to-

25   Signature Notice required under section 1695.5(a). The parties

26   used a standard-form purchase-sale agreement that did not contain

27   or provide room for such a notice next to the signature line.

28

-13-

Plaintiff's EOR-379

1  Lloyd may, however, have signed the Separate-Page Notice.  As noted
2  above, this is disputed.  For the purpose of the present inquiry, I
3  will assume that Lloyd signed the Separate-Page Notice on the same
4  day he signed the Purchase-Sale Agreement.

5      Whether the equity sale contract contained the required
6  notices of right to cancel determines whether Lloyd timely
7  exercised the right to cancel.  As noted above, HESCA states in two
8  different places that the time limit on the right to cancel does
9  not begin to run until the equity seller signs a contract that
10 provides the required notices of that right.  §§ 1695.4(a),
11 1695.5(d).

12     Lloyd contends that he timely exercised the right to cancel,
13 because the contract he signed did not contain the Next-to-
14 Signature Notice.  Hoffman contends that Lloyd did not timely
15 exercise the right to cancel, because the Purchase-Sale Agreement
16 together with the Signed Separate-Page Notice *substantially*
17 *complied* with the statutory requirements.  Hoffman contends that
18 Lloyd's signature on the Separate-Page Notice brought that notice
19 to Lloyd's attention, thereby fulfilling the statutory
20 purpose behind the Next-to-Signature Notice.[5]

21

22

23

24      [5] The contract also did not contain the notice required by
25 section 1695.3(h), stating that the equity purchaser cannot ask the
   equity seller to sign any deed until the right to cancel has
26 expired.  It appears, however, that the failure to provide this
   notice is immaterial.  If the contract substantially complied with
27 the statutory requirements regarding notice of the right to cancel,
   the right to cancel expired before Lloyd signed any deed.  If the
28 contract did not substantially comply, the right to cancel has
   never expired, without regard to any violation of section
   1695.3(h).

-14-

Plaintiff's EOR-380

3.    The Doctrine of Substantial Compliance

The California Supreme Court defined "substantial compliance" regarding consumer-protection laws in <u>Stasher v. Harger-Haldeman</u>, 58 Cal. 2d 23 (1962).  The statute at issue there required contracts concerning conditional sales of motor vehicles to be in writing and to contain various notices regarding purchase price and payments.  The court set forth the following test for determining whether the notices given satisfied the requirements of the statute.

> Substantial compliance, as the phrase is used in the decisions, means actual compliance in respect to the substance essential to every reasonable objective of the statute.  But when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression by the seller, or such minima as obvious typographical errors, should not be given the stature of non-compliance and thereby transformed into a windfall for an unscrupulous and designing buyer.

<u>Id.</u> at 29.

The California Court of Appeal applied <u>Stasher</u> to a notice requirement similar to the one involved here in <u>Malek v. Blue Cross of California</u>, 121 Cal.App. 4th 44 (2004).  <u>Malek</u> involved Health and Safety Code section 1363.1, which provides that an arbitration agreement in a health care plan is enforceable only if notice of the arbitration provision is prominently displayed "immediately before the signature line" and clearly discloses that the parties are giving up their constitutional right to trial in a court of law. <u>Id.</u> at 50.  The enrollment form at issue disclosed that the parties relinquished their right to trial "in a court of law before a jury." This notice, however, was not displayed immediately before the signature line.  <u>Id.</u> at 61.

-15-

Plaintiff's EOR-381

1    <u>Malek</u> held that the notice provided did not substantially

2    comply with the statute.  The court reasoned that placement of the

3    notice next to the signature line was essential to one of the

4    objectives of the statute.

5         The purpose of section 1363.1 is to disclose the
          requirement to arbitrate *and* to ensure a knowing waiver of
6         the right to a jury trial. . . .  [T]here is no indication
          that the Maleks knowingly waived their right to a jury
7         trial based on the juxtaposition of the signature line.
          The arbitration provision is on the left-hand side of the
8         enrollment form while the signature line is on the lower
          right-hand side of the form.  The signature line appears
9         directly below the authorization to obtain or release
          medical information.  This placement is not a technical
10        defect of form because it leaves in doubt whether the
          Maleks knowingly waived their right to a jury trial.
11        Under these circumstances, the statutory objectives of
          section 1363.1 have not been met.

12
     <u>Id.</u> at 72-73 (emphasis in original).
13

14        <u>Stasher</u> and <u>Malek</u> do not directly resolve the present case.

15   <u>Stasher</u> does tell us, however, that *substantial* compliance means

16   *actual* compliance with every reasonable purpose of the statute.

17   <u>Malek</u> tells us that placement of a notice next to the signature line

18   of a contract may be essential to the purpose of a statute.

19   **4.   Does the Present Contract Substantially Comply with Section
         1695.5?**

20        To determine whether Hoffman substantially complied with

21   section 1695.5, we must determine whether the legislative purpose

22   behind the Next-to-Signature Notice is satisfied by Lloyd's

23   signature on the Separate-Page Notice.

24        The Legislature stated that the right to cancel is intended to

25   help homeowners make sound decisions while they are under the

26   strain of foreclosure proceedings.  The "Legislative findings and

27   declarations" state in relevant part:

28             (a)   The Legislature finds and declares that . . .
          [d]uring the time period between the commencement of

-16-

1      foreclosure proceedings and the scheduled foreclosure
       sale date, homeowners in financial distress, especially
2      the poor, elderly, and financially unsophisticated, are
       vulnerable to the importunities of equity purchasers . .
3      . .

4          (b)  The Legislature declares that it is the express
       policy of the state to preserve and guard the precious
5      asset of home equity, and the social as well as the
       economic value of homeownership.
6           . . .

7          (d)  The intent and purposes of this chapter are the
       following:
8          (1)  To provide each homeowner with information
       necessary to make an informed and intelligent decision
9      regarding the sale of his or her home to an equity
       purchaser [and] . . . to afford homeowners a reasonable
10     and meaningful opportunity to rescind sales to equity
       purchasers . . . .
11         (2) This chapter shall be liberally construed to
       effectuate this intent and to achieve these purposes.
12

13  § 1695.

14     The most important expression of legislative purpose, of

15  course, is the language of the statute itself.  Cal. School

16  Employees Ass'n. v. Governing Bd. of the Marin Cmty. Coll. Dist., 8

17  Cal. 4th 333, 338 (1994) (en banc).  A salient characteristic of

18  HESCA is that it requires two notices of the right to cancel: the

19  Next-to-Signature Notice and the Separate-Page Notice.  Under the

20  oft-cited doctrine that courts must attempt to give effect to all

21  provisions of a statute, I assume that each of the required notices

22  serves a function the other does not.  Cal. Code Civ. Proc. § 1858;

23  Parris v. Zolin, 12 Cal. 4th 839, 845 (1996).  More specifically,

24  because the Separate-Page Notice explains the right to cancel in

25  more detail than the Next-to-Signature Notice, I must assume that

26  the Next-to-Signature Notice provides some separate, additional

27  benefit.

28

Plaintiff's EOR-383

1   It is not hard to discern the benefit to be derived from the
2   Next-to-Signature Notice: the equity seller is more likely to
3   notice it.  People of all degrees of sophistication understand the
4   importance of the *signing* of a written contract.  It is at that
5   stage that the seller should be focused most carefully on the
6   details of the transaction.  I conclude that the Legislature
7   required that notice of the right to cancel be placed "in immediate
8   proximity" to the signature line to increase the likelihood that
9   the equity seller would effectively comprehend that right.  While
10  the Separate-Page Notice provides a full description of the right
11  to cancel, it does not have the same ability to grab the attention
12  of the equity seller by being in the seller's field of vision at
13  the key moment when the seller executes the contract.

14  Does Lloyd's signature[6] on the Separate-Page Notice make up for
15  Hoffman's failure to place a notice next to the signature line on
16  the Purchase-Sale Agreement?

17  The Legislature could have required the equity seller to sign
18  and date the Separate-Page Notice.  By requiring instead that
19  notice be placed next to the signature line of the sale contract,
20  the Legislature determined that the signing of the sale contract
21  provides a unique opportunity to draw the seller's attention to the
22  right to cancel.  Such a determination is not unreasonable.  It is
23  reasonable to assume that most people who sell a home view the
24  signing of the sale contract as the crucial event, and treat the
25  numerous other papers they complete as formalities subsidiary to
26  that event.

27

28  [6] As noted above, for the purpose of this decision, the court
assumes without deciding that Lloyd signed the Separate-Page Notice
on the same date he signed the Purchase-Sale Agreement.

-18-

Plaintiff's EOR-384

1    I determine that actual compliance with the Next-to-Signature
2  Notice requirement is essential to the purpose of HESCA.  This is
3  so because of the Legislature's express finding that homeowners in
4  foreclosure are often pressured to make poor decisions, the central
5  role of the right to cancel in the statutory scheme for helping
6  homeowners to avoid poor decisions, and the existence of a
7  reasonable basis to believe that placing notice of the right to
8  cancel next to the signature line of the sale contract affords a
9  unique opportunity to draw attention to that right.  Thus, the
10 Purchase-Sale Agreement, even with the Signed Separate-Page Notice,
11 does not substantially comply with the requirements of section
12 1695.5, because it is not in "actual compliance in respect to the
13 substance essential to every reasonable objective of the statute."
14 Stasher, supra, 58 Cal 2d. at 29.

15                            II.
                  CONDITIONS UPON CANCELLATION
16
17      Hoffman contends that Lloyd should be permitted to cancel the
18 sale only upon tendering to him more than $500,000, the amount
19 Hoffman contends is necessary to restore him to his former
20 position.  Lloyd concedes that the court may require him to return
21 value he received to prevent unjust enrichment.  Lloyd argues,
22 however, that when all facets of the transaction are properly
23 accounted for, he received no net value.  The most important
24 difference between the parties concerns the viewpoint the court
25 should apply to the question of restitution.  Hoffman argues that
26 he must be restored to the *status quo ante*, even though he is the
27 party responsible for the circumstances justifying cancellation of
28 the contract.  Lloyd argues the contrary.

                               -19-

1  **1.    The Appropriate Legal Standard**

2      California law does not support Hoffman's theory.  The Civil

3  Code instructs the courts to prevent unjust enrichment of the

4  rescinding party whenever possible, but does not require that the

5  party against whom rescission is invoked be restored to the *status*

6  *quo ante*.  Section 1691 states that the party rescinding a contract

7  must offer to "[r]estore to the other party everything of value

8  which he has received from him under the contract. . . ."  Section

9  1692 states in relevant part:

10        If in an action or proceeding a party seeks relief based
          upon rescission, the court may require the party to whom
11        such relief is granted to make any compensation to the
          other which justice may require and may otherwise in its
12        judgment adjust the equities between the parties.

13  Case law confirms that the primary goal is to avoid unjust

14  enrichment when possible, and that the court enjoys broad

15  discretion in setting appropriate conditions upon rescission.  <u>See</u>

16  <u>McCoy v. West</u>, 70 Cal. App. 3d 295, 302 (1977).[7]

17      The Restatement of Restitution provides that even restitution

18  aimed at preventing unjust enrichment should not be ordered when

19  that would frustrate the policy giving rise to the right to

20  rescind.

21        A person who renders performance under an agreement
          that is illegal or otherwise unenforceable for reasons of
22      .  public policy may obtain restitution . . . as necessary
          to prevent unjust enrichment, if the allowance of

23

24  _____

25      [7] Hoffman cites <u>Runyan v. Pacific Air Industries, Inc.</u>, 2 Cal.
    3d 304, 316 (1970) as stating "[i]t is the purpose of rescission
26  'to restore both parties to their former position as far as
    possible.'"  Neither <u>Runyan</u>, nor any other case Hoffman cites
27  actually holds that the party responsible for the circumstances
    justifying rescission must be restored to the *status quo ante* when
28  that would require the rescinding party to restore more than the
    value that party received, and when that would impose a loss on the
    rescinding party for the benefit of the more culpable party.

-20-

1    restitution will not defeat or frustrate the policy of
     the underlying prohibition.
2
     RESTATEMENT (THIRD) OF RESTITUTION § 32 (Tentative Draft No. 3,
3
     2004).[8]
4
5    2.   Accounting for Benefits and Setoffs

6        Viewed against this standard, Hoffman is entitled to no

7    restitution.  Much of the restitution Hoffman seeks does not

8    represent value provided to Lloyd.  Furthermore, as explained in

9    the following paragraphs, the value Hoffman did provide Lloyd is

10   more than offset by the increased debt that Hoffman placed on the

11   Residence and that Lloyd will likely have to pay.

12       Lloyd does not dispute that he received value equal to the

13   cash he received and his prior debt that Hoffman paid.  Upon

14   closing, Hoffman paid Lloyd $20,000 in cash.  Hoffman also paid off

15   the loans Lloyd had previously taken out against the Residence,

16   which had a balance due of approximately $592,000.

17       Improvements to the Residence Hoffman made may also represent

18   value Lloyd received.  The parties differ largely as to how these

19   improvements should be valued.  Hoffman seeks reimbursement of the

20   entire $14,500 he claims he spent on the improvements.  Lloyd

21   contends that the proper measure should be the value of the

22   improvements to him.  For the present analysis, I will use

23   Hoffman's figure.

24       Operating expenses Hoffman paid should be considered value

25   provided to Lloyd only for the period Lloyd had possession of the

26   Residence.  Hoffman seeks reimbursement of $163,000 he paid for

27

28   _____
         [8] The notes accompanying this draft provision provide that it
     reformulates the applicable rules of sections 197-99 of the Second
     Restatement of Contracts without altering specific outcomes.

                                  -21-

1  property taxes, mortgage interest, insurance, and maintenance

2  during the 40 months between the transfer and the end of 2006.

3  Hoffman argues that if he had not purchased the Residence, Lloyd

4  would have had to make these payments.  While this is true, it is

5  also true that if Lloyd had not sold the Residence and had made

6  those payments himself, he also would have enjoyed possession and

7  the other benefits of ownership for the entire 40-month period.  It

8  is undisputed that the Residence is now leased to third parties,

9  and that Lloyd has been denied possession of the Residence for at

10  least 15 of the 40 months since the sale closed.  It is appropriate

11  to make Lloyd responsible for expenses only for the period he had

12  possession of the Residence.  Runyan, supra, 2 Cal. 3d at 315;

13  McCoy, supra, 70 Cal. App. 3d at 301.  Thus, Lloyd is properly

14  charged with no more than $101,875, which represents 25/40 of the

15  $163,000 claimed.[9]

16      Lloyd should not be deemed to have received the rental value

17  of the Residence in addition to the expenses of maintaining the

18  property for the period he had possession of the Residence.  To

19  adjust for both rental value and avoided expenses would constitute

20  double-counting.  Charging Lloyd for the property taxes,

21  maintenance, insurance, and mortgage interest Hoffman paid while

22  Lloyd had possession is sufficient to prevent unjust enrichment,

23  and more accurately measures the benefit Lloyd received.  McCoy,

24  supra, 70 Cal. App. 3d at 302 (monetary adjustment required upon

25

26      [9] Lloyd also contends that Hoffman is not entitled to
    reimbursement for any interest payments made, because any such
27  amounts would represent payment on a loan subject to rescission
    under the Federal Truth-in-Lending Act.  I need not reach this
28  issue because, as noted below, I determine that Lloyd is not
    required to make any reimbursement of Hoffman as a condition to
    cancelling the sale, without regard to the TILA issue.

-22-

Plaintiff's EOR-388

1  rescission of sale of property to take account of post-transfer,

2  pre-rescission possession is not rent, but is merely a means to

3  prevent unjust enrichment).  Lloyd's possession should not be

4  valued under the terms of the Lease, because Hoffman could not have

5  become Lloyd's landlord without violating the statutory prohibition

6  against taking title before the cancellation period expired.

7  § 1696(b).

8      The other amounts Hoffman seeks do not represent value

9  transferred to Lloyd.  Hoffman seeks reimbursement of $26,500 in

10  fees paid in obtaining the loan used to make the purchase, transfer

11  taxes of $6,000 paid on the purchase, and $45,000 in management

12  fees payable to himself for leasing the Residence.  Finally,

13  Hoffman seeks reimbursement of $400,000 in attorneys fees incurred,

14  and to be incurred, in the present action.  None of these amounts

15  represent amounts Lloyd would have had to pay but for the transfer

16  to Hoffman.[10]

17      The total value Lloyd received from Hoffman is more than

18  offset by the corresponding detriment that Lloyd has suffered in

19  the form of increased debt against the Residence.  To effect the

20  purchase, Hoffman obtained a loan from GreenPoint Mortgage in the

21  amount of $640,000, secured by a deed of trust on the Residence.

22  Later H&B Properties took out a second loan from Norcal Financial

23

24      [10] Hoffman appears to seek these attorney fees under the fee
    clause in the Settlement Agreement.  As noted above, this court has
25  determined that the release in the Settlement Agreement does not
    bar Lloyd's right to cancel the sale under HESCA, because of the
26  anti-waiver provisions of section 1695.10.  To the extent that
    Hoffman seeks to enforce the fee clause to require Lloyd to pay
27  fees Hoffman incurred in unsuccessfully contesting Lloyd's exercise
    of the right to cancel under HESCA, the fee clause should also be
28  considered an illegal contract.  Under section 1695.7, Lloyd is
    entitled to recover attorneys fees as the prevailing party.

-23-

Plaintiff's EOR-389

in the amount of $110,000, secured by a junior deed of trust on the Residence. The current combined balance on these loans is approximately $754,000.[11] The debt the Residence is now subject to exceeds by $26,125 the sum of all value Lloyd received from Hoffman.

| | | |
|---|---|---|
| Cash purchase price | $ | 20,000 |
| Prior debt retired | | 592,000 |
| Adjusted operating expenses | | 101,875 |
| Improvements | | 14,500 |
| Sub-total | | 728,375 |
| Less debt Hoffman incurred | | (754,500) |
| Net benefit conveyed | $ | 26,125 |

The rescinding party need not restore value received from the other party where that value has been fully offset by other effects of the transaction. Gatje v. Armstrong, 145 Cal. 370, 374 (1904).

3.  **Additional Policy Considerations**

Finally, I determine that imposing any condition on cancellation of the sale of the Residence would unduly interfere with both the express language and the policies of HESCA. The Legislature designed the equity seller's right to cancel not to require the unwinding of a completed transfer, by expressly prohibiting the equity purchaser from accepting consideration, receiving a deed, or encumbering the property before the right to cancel has expired. § 1695.6(b). Cancellation is more complex

---

[11] It is far from certain that Lloyd will be able to avoid these encumbrances. HESCA affords broad protection to loans extended by lenders unrelated to the purchaser, such as GreenPoint Mortgage. That the transfer to the equity purchaser may be set aside does not mean that a loan placed on the property by that equity purchaser may also be set aside. §§ 1695.6(b)(3), 1695.6(e), 1695.12, 1695.14(c). The holder of the second loan, Norcal Financial, is apparently owned by Hoffman, and Hoffman has at various times stated that he would cause that loan to be released. To date he has not done so. It is not appropriate at this stage for this court to disregard for Hoffman's benefit a loan that Hoffman continues to assert.

-24-

1  here, solely because Hoffman did not take care to ensure that the
2  right to cancel had expired before he completed the purchase.  This
3  is a case where Hoffman and Lloyd cannot both be restored to the
4  *status quo ante*, because some of the reimbursements Hoffman seeks
5  are for transactions costs that do not represent value provided to
6  Lloyd, and because those transaction costs were simply lost when
7  the sale was cancelled.  In such circumstances, it is Hoffman who
8  should bear the loss.  By violating section 1695(b), Hoffman
9  created the circumstances that prevent both parties from being
10  restored to the *status quo ante*.  McCoy, supra, 70 Cal. App. 2d at
11  303.

12      I determine that Lloyd need not tender any sum to Hoffman as a
13  condition to cancelling the sale of his Residence to Hoffman.  I
14  also determine that the policies embodied in HESCA require that the
15  Residence be restored to Lloyd immediately.  § 1695.  This court
16  will therefore order immediate entry of a judgment cancelling the
17  sale, quieting title to the Residence in Lloyd, and dismissing
18  Hoffman's claims.  Fed.R.Bankr.P. 7054(a); Fed.R. Civ.P.54(b).
19  Lloyd's claims for damages and attorneys fees will be determined at
20  a later date.

21  **CONCLUSION**

22      The Purchase-Sale Agreement did not substantially comply with
23  HESCA, because it did not contain the Next-to-Signature Notice of
24  the right to cancel required under section 1695.5(a).  Lloyd's
25  exercise of the right to cancel was timely under section 1695.5(d),
26  because he had not previously been afforded proper notice of that
27  right.  No conditions should be placed on Lloyd's right to cancel,
28

-25-

Plaintiff's EOR-391

1 | because Lloyd received no net benefit from the transaction that he

2 | should be required to return to Hoffman.

-26-

Plaintiff's EOR-392

**DOCUMENT 16**

Signed and Filed: April 30, 2007

THOMAS E. CARLSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 04-32921 TEC |
| THOMAS LLOYD, | |
| | Chapter 11 |
| Debtor. | |
| JEFFREY E. HOFFMAN, | |
| Plaintiff, | |
| vs. | Adv. Proc. No. 05-3328 TC |
| THOMAS R. LLOYD, an individual, EDWARD L. BLUM, an individual, and DOES 1 through 20, inclusive, | |
| Defendants. | |
| THOMAS LLOYD, | |
| Cross-Plaintiff, | |
| vs. | |
| JEFFREY E. HOFFMAN, dba H & B PROPERTIES; H & B PROPERTIES, LLC,; J. EDWARDS INVESTMENT GROUP, INC., and NORCAL FINANCIAL, INC., | |
| Cross-Defendants. | |

JUDGMENT AND RULE 54(b) CERTIFICATION

-1-

Plaintiff's EOR-393

1      On May 15, 2006, the court signed an order granting summary

2  judgment for Defendant Lloyd on the first and second causes of

3  action of Hoffman's complaint (slander of title and cancellation of

4  the notice of rescission), and on the fourth claim for relief in

5  Lloyd's cross-complaint (quiet title).  The court declined at that

6  time to immediately enter judgment on any of the claims under Rule

7  54(b).

8      On February 26, 2007, the court held a hearing on the court's

9  tentative ruling regarding whether any conditions should be imposed

10  on Lloyd's cancellation of the sale of his residence to Hoffman.

11  At the hearing, Jeffrey J. Goodrich appeared for Debtor.  Dennis D.

12  Davis and Stephen D. Pahl appeared for Jeffrey Hoffman.

13      Upon due consideration, for the reasons stated in the

14  accompanying opinion, and it appearing that there is no just reason

15  for delay and that final judgment should be entered against Hoffman

16  on three claims, the court hereby enters judgment as follows.

17      (1) Judgment is entered in favor of Lloyd and against Hoffman

18  on the first and second causes of action of Hoffman's complaint for

19  slander of title and for cancellation of the notice of rescission.

20      (2) Judgment is entered in favor of Lloyd and against Hoffman

21  on the fourth claim for relief of Lloyd's cross-complaint for quiet

22  title to the real property located at and commonly known as 940

23  Elizabeth Street, San Francisco, California (the Residence).

24      (3) Title to the Residence is hereby quieted in the name of

25  Thomas Lloyd, debtor and debtor-in-possession herein, subject to no

26  monetary claims of Hoffman or the other cross-defendants in this

27  adversary proceeding.

28

-2-

Plaintiff's EOR-394

1  (4) Pursuant to Federal Rule of Civil Procedure 54(b),

2 incorporated by Fed. R. Bankr. Proc. 7054(a), the court expressly

3 directs entry of final judgment.

4        **END OF JUDGMENT**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's EOR-395

1   COURT SERVICE LIST

2   Stephen D Pahl, Esq.
    Pahl & Gosselin
3   225 W. Santa Clara St., Suite 1500
    San Jose, CA 95113

4

5   Dennis D. Davis, Esq.
    Goldberg, Stinnett, Meyers and Davis
    44 Montgomery St. #2900
6   San Francisco, CA 94104

7   Jeffrey J. Goodrich, Esq.
    Law Offices of Goodrich and Assoc.
8   336 Bon Air Center #335
    Greenbrae, CA 94904

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

Plaintiff's EOR-396

**DOCUMENT 17**

Entered on Docket
May 07, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



1 GOLDBERG, STINNETT, MEYERS & DAVIS
A Professional Corporation
2 DENNIS D. DAVIS, ESQ. CA Bar #070591
44 Montgomery Street, Suite 2900
3 San Francisco, CA 94104
Telephone: (415) 362-5045
4 Facsimile: (415) 362-2392
Email: ddavis@gsmdlaw.com
5
Attorneys for Jeffrey E. Hoffman, H&B
6 Properties LLC, J. Edwards Investment Group,
Inc. and Norcal Financial, Inc.
7

Signed and Filed: May 07, 2007

THOMAS E. CARLSON
U.S. Bankruptcy Judge

8
9              IN THE UNITED STATES BANKRUPTCY COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                         SAN FRANCISCO DIVISION

12

13 In re:                                    Case No. 04-32921-TEC

14 THOMAS LLOYD,                             Chapter 11

15              Debtor.

16 ─────────────────────────────

17 JEFFREY E. HOFFMAN,                       A.P. No. 05-03328

18              Plaintiff,

19 vs.                                       Date:   May 4, 2007
                                            Time:   9:30 a.m.
20 THOMAS R. LLOYD, an individual, EDWARD L. Place:  Courtroom 23
   BLUM, an individual, and DOES 1 through 20,       235 Pine Street
21 inclusive,,                                       San Francisco, CA
                                            Judge:  The Hon. Thomas E. Carlson
22              Defendants.

23 AND RELATED CROSS-ACTION
   ─────────────────────────────
24
                    **ORDER DENYING STAY PENDING APPEAL**
25
       This matter came on for a status conference in the above-referenced case before The Honorable
26
   Thomas E. Carlson on May 4, 2007. All parties were represented as reflected on the record.
27
       Plaintiff made an oral motion on the record for a stay of the Court's April 30, 2007 Judgment;
28
       FOR THE REASONS STATED ON THE RECORD;

─────────────────────────────────────────────
ORDER DENYING STAY PENDING APPEAL
112030.DOC                                   1

Plaintiff's EOR-397

1    IT IS HEREBY ORDERED that Plaintiff Jeffrey E. Hoffman's and Cross-Defendant's Motion for

2  Stay Pending Appeal is denied.

3

4                              **END OF ORDER**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING STAY PENDING APPEAL
112030.DOC

2

Plaintiff's EOR-398

**COURT SERVICE LIST**

1

2

3  Dennis D. Davis, Esq.
Goldberg, Stinnett, Meyers & Davis
4  44 Montgomery Street, Suite 2900
San Francisco, CA 94104

5

6  Stephen D. Pahl, Esq.
Thomas M. Gosselin, Esq.
7  Pahl & Gosselin
225 W. Santa Clara St., Ste. 1500
8  San Jose, CA 95113-1752

9

10  Jeffrey J Goodrich, Esq
Goodrich & Associates
336 Bon Air Center, #335
11  Greenbrae, CA 94904

12

13  Jerry R. Hauser, Esq.
Phillips, Greenberg & Hauser, LLP
Four Embarcadero Center, 39th Floor
14  San Francisco, CA 94111

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

ORDER DENYING STAY PENDING APPEAL
10329/112030.DOC

Plaintiff's EOR-399

**DOCUMENT 18**

# ORIGINAL

E-FILED ON 2/13/07
DOCUMENT NO: 108
COPY FOR PAPER FILE
INITIAL: PJ

1  GOLDBERG, STINNETT, MEYERS & DAVIS
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   44 Montgomery Street, Suite 2900
3  San Francisco, CA 94104
   Telephone: (415) 362-5045
4  Facsimile: (415) 362-2392

5  Attorneys for Plaintiff Jeffrey E. Hoffman

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

               SAN FRANCISCO DIVISION
10

11

12  In re:                              Chapter 11

13  THOMAS LLOYD,                       Case No. 04-32921-TEC

              Debtor.
14

15  JEFFREY E. HOFFMAN,                 A.P. No. 05-03328

16        Plaintiff,

17  vs.                                 Date:   February 26, 2007
                                        Time:   10:30 a.m.
18  THOMAS R. LLOYD, an individual,     Place:  235 Pine Street
    EDWARD L. BLUM, an individual, and DOES      23rd Floor
19  1 through 20, inclusive,,                    San Francisco, CA

20        Defendants.

21  AND RELATED CROSS-ACTION

22

23

24        **PLAINTIFF'S BRIEF RELATING TO COURT'S**
              **TENTATIVE RULING OF JANUARY 24, 2007**
25

26

27

28

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     PROCEDURAL BACKGROUND..................................................................1

III.    ARGUMENT ................................................................................................4

    A.    AN ISSUE OF FACT EXISTS AS TO WHETHER LLOYD EXECUTED
       THE NOTICE OF RIGHT TO CANCELLATION.................................................4

    B.    THE COURT'S RULING OF JANUARY 24, 2007, GOES BEYOND THE
       ISSUES PRESENTED TO IT AND PROVEN AT THE SUMMARY
       JUDGMENT HEARING ...........................................................................6

IV.     ARGUMENT..............................................................................................10

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct.
2505, 91 L. Ed. 2d 202 (1986)..............................................................................................4

*Driscoll v. United States*, 525 F.2d 136 (9th Cir. 1975) ...............................................7

*Fuller v. City of Oakland, Calif.*, 47 F.3d 1522 (9th Cir. 1995) ....................................8

*Gibbons v. Interbank Funding Group*, 208 F.R.D. 278 (N.D. Cal. 2002)......................4

*Gummo v. Village of Depew, New York*, 75 F.3d 98 (2nd Cir. 1996).............................5

*Pepper v. Tanner, Inc.*, 563 F.2d 391 (9th Cir. 1977) ...................................................6

*Safeco Credit Co., Inc. v. U.S. Bancorp Leasing & Financial, Inc.*,
833 F. Supp. 833 (Dist.Or. 1993) ...................................................................................5

*United States v. Diebold Inc.*, 369 U.S. 654, 82 S. Ct. 993,
8 L. Ed. 2d 176 (1962)....................................................................................................7

*Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1981).........................................5

*Wade v. New York Telephone Co.*, 500 F. Supp. 1170 (D.C.N.Y. 1980) .......................4

**STATUTES**

Fed. R. Civ. P. 56..............................................................................................................4

Evidence Code §901(b)(3) ...............................................................................................6

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

## I.    INTRODUCTION

On January 24, 2007, the Court issued a second Tentative Ruling relating to the issue of "Terms For Cancellation Of Deed" in this case, based upon its statement that it had "previously determined that Lloyd was not provided" the cancellation right provided under Sections 1695.3 and 1695.5, and that therefore, Lloyd's cancellation of the contract was timely. The issue was not before the Court, the Court's observation that it decided the issue is not supported by the record and decision of the issue was not necessary to the Court's determination of the issues before it.

Furthermore, Lloyd withheld evidence in the possession of his agent which reflected that Lloyd had been given notice of his cancellation rights. Furthermore, Lloyd had filed, but not served, new litigation with this Court against Hoffman where the issue of notice of cancellation was raised. Lloyd's skirting of procedural rules in failing to have a summons issued or served, has deprived Hoffman of due process.

## II.    PROCEDURAL BACKGROUND

1.    On April 5, 2005, Jeffrey Hoffman filed a complaint in Superior Court seeking cancellation of Lloyd's Notice of Rescission and for damages.

2.    On June 16, 2005, Lloyd filed a cross-complaint for declaratory relief, avoidance of fraudulent conveyances and other theories. The cross-complaint does not allege that Hoffman failed to give Lloyd notice of a right of cancellation.

3.    On October 15, 2005, Lloyd filed a chapter 11 bankruptcy proceeding. Thereafter, debtor removed the Superior Court case to the Bankruptcy Court, where it was assigned Adversary Proceeding No. 05-03328.

4.    On December 21, 2005, this Court's Trial Scheduling Order was filed, ordering that Phase 1 of trial of the matter "concerning the enforceability of the settlement" commence on January 10, 2006.

5.    On December 29, 2005, Hoffman filed a trial brief. On January 23, 2006, Lloyd filed a trial brief with respect to the Phase 1 trial. Conspicuously absent from either trial brief is any contention that Hoffman had not provided Lloyd with a notice of right to cancellation.

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

1

6.    On January 20, 2006, Lloyd filed a motion for summary judgment, scheduling the hearing for February 17, 2006. A week later, Lloyd filed his supporting legal memorandum. In his supporting declaration, Lloyd admits that he signed the Purchase Agreement, the Lease and the Option Agreement, but asserts that those "were the only documents I signed in connection with the transaction with Mr. Hoffman, other than various closing documents I signed later at the title company." Mr. Lloyd does not specifically deny in his declaration having signed the Notice of Cancellation, nor does define what he meant by "various closing documents."

7.    On February 7 and 10, 2006, Hoffman filed a response to the motion for summary judgment.

8.    On February 21, 2006, the Court entered its Order Denying Motion For Summary Judgment.

9.    On February 28, 2006, a trial was held on the Phase I issue of the enforceability of the settlement agreement.

10.    On March 20, 2006, the Court issued its "Decision After Trial (Phase 1)". The Decision recites that the Phase 1 Trial "concerned the affect of a general release executed by Lloyd upon his claims under Section 1695, *et seq.*, of the California Civil Code" and, the Court determined that the "release does not bar Lloyd's claims for rescission and other relief under section 1695." The Court made no finding with respect to whether Lloyd was provided with a notice of right to cancel the contract, nor does the decision suggest that the issue had been determined.

11.    On March 24, 2006, Lloyd served a notice scheduling his prior motion for summary judgment for another hearing on April 28, 2006. He did not file additional legal arguments or factual support..

12.    On April 13, 2006, Hoffman filed opposition papers to the re-noticed motion for summary judgment, including a declaration of Jeffrey Hoffman, which stated in part that the "Purchase Contract between the parties included a Notice of Cancellation". A copy of the Notice of Cancellation was attached to the declaration.

13.    On May 15, 2006, the Court entered its order granting Lloyd's motion for summary judgment, as modified on the record by Lloyd (i.e., limiting the scope of the motion), dismissing

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

2

1    Hoffman's slander of title and "cancellation of cloud on title" causes of action and entering judgment

2    in favor of Lloyd on his cross-complaint on his quiet title cause of action. Furthermore, the Court

3    quieted title to the Elizabeth Street property to Thomas Lloyd subject to the monetary claims, if any,

4    of Hoffman and the other cross-defendants, "which claims shall be determined at trial in this

5    Adversary Proceeding." The Court's order is silent as to the issue of the Notice of Cancellation.

6        14.    On June 1, 2006, the Court issued a Trial Scheduling Order in Adversary Proceeding

7    05-03328, which provided that trial would commence on October 30, 2006.

8        15.    On October 16, 2006, Lloyd filed a new adversary proceeding (No. 06-03165) against

9    Hoffman and others, alleging a string of intentional torts and a RICO violation arising out of the same

10    set of facts alleged in this adversary proceeding. Lloyd failed to submit a summons with the

11    complaint, and on October 17, the clerk directed Lloyd to file an AP cover sheet and proposed

12    summons "immediately." Nonetheless, Lloyd delayed submitting a summons until early January.

13    On January 10, 2007, a summons was issued by the court, but has not been served on Hoffman.

14    Counsel for Hoffman has left a voice mail message, sent an email and a faxed letter to Mr. Goodrich

15    concerning this matter, but Mr. Goodrich has refused to respond to any of these inquiries.

16        16.    When the parties appeared on October 30, 2005, the matter did not proceed to trial.

17    Instead, the Court decided to first decide the issue of rescission payments. On November 8, 2006, the

18    Court issued a "Tentative Ruling Re Rescission Payment" reciting that it "held a hearing regarding

19    the amount (if any) that Lloyd must return to Hoffman (the "Rescission Payment") as a condition of

20    judicial enforcement of Lloyd's rescission", noting, among other things, that "Lloyd must return any

21    consideration received from Hoffman."

22        17.    On January 17, 2007 Lloyd filed another adversary proceeding against Hoffman (No.

23    07-03004), also naming the three tenants of the subject property as defendants. A summons was

24    issued on January 18, but has not been served on Hoffman. The tenants may have been served, as

25    Hoffman received a copy of an informal answer to the complaint from the tenants.

26        18.    On January 17, 2007, Lloyd filed yet another adversary proceeding against Hoffman

27    (No. 07-03005) seeking a preliminary injunction. No service was ever made on Hoffman. Hoffman

28    did discover the application for TRO on line and filed an opposition to the TRO. He has never been

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

3

1    served, however, with process, nor has he waived service of process.

2        19.    Thereafter, on January 24, 2007, the Court issued an additional Tentative Ruling re

3    terms for cancellation of deed in which it recited that it had "previously determined that Lloyd was

4    not provided the notice of right to cancel the contract" and that because no such notice was given,

5    that Lloyd's right to rescission remained open to the present time.

6

7                              III.    ARGUMENT

8    A.    AN ISSUE OF FACT EXISTS AS TO WHETHER LLOYD
          EXECUTED THE NOTICE OF RIGHT TO CANCELLATION

9        Summary judgment is appropriate when there is no genuine issue of material facts and the

10   moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

11           Material facts are those that might affect the outcome of the case. . . A dispute as to a
12           material fact is "genuine" if there is sufficient evidence for a reasonable jury to return
             a verdict for the nonmoving party. The court may not weigh the evidence, and is
13           required to view the evidence in the light most favorable to the nonmoving party.

14   Gibbons v. Interbank Funding Group, 208 F.R.D. 278, 281 (N.D. Cal. 2002) (citing Anderson v.

15   Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

16   Further,

17           Where the moving party will have the burden of proof at trial, it must affirmatively
             demonstrate that no reasonable trier of fact could find other than for the moving party.
18           On an issue where the nonmoving party will bear the burden of proof at trial, the
             moving party can prevail merely by pointing out to the district court that there is an
19           absence of evidence to support the nonmoving party's case. . . . If the moving party
20           meets its initial burden, the opposing party must then set forth specific facts showing
             that there is some genuine issue for trial in order to defeat the motion. . . . Regardless
21           of whether plaintiff or defendant is the moving party, each party must "establish the
             existence of the elements essential to its case, and on which it will bear the burden of
22           proof at trial."

23   Id. at 281-282 (citations omitted). "In ruling on a motion for summary judgment, it is not the

24   function of the court to resolve existing factual issues through a 'trial by affidavits.'" 586 F.2d 1315,

25   1318 (9th Cir. 1978) (citations omitted). Notably, unsupported allegations of counsel may be

26   disregarded in determining whether genuine issues of act exist to be tried. Wade v. New York

27   Telephone Co., 500 F.Supp. 1170 (D.C.N.Y. 1980).

28       Moreover, "inferences drawn from underlying facts must be viewed in the light most

4

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

1    favorable to the party opposing the motion." *Safeco Credit Co., Inc. v. U.S. Bancorp Leasing &*
2    *Financial, Inc.*, 833 F.Supp. 833, 834 (Dist.Or. 1993) (citing *Valandingham v. Bojorquez*, 866 F.2d
3    1135, 1137 (9th Cir. 1981)). "If, as to the issues on which summary judgment is sought, there is any
4    evidence in the record from which a reasonable inference could be drawn in favor of the opposing
5    party, summary judgment is improper." *Gummo v. Village of Depew, New York*, 75 F.3d 98, 107
6    (2nd Cir. 1996) (citations omitted).

7          On January 20, 2006, defendant Lloyd filed a motion for summary judgment, supported by a
8    declaration of Mr. Lloyd in which he stated that he executed the Purchase Agreement, the Lease and
9    Option Agreement, but asserted that those "were the only documents I signed in connection with the
10   transaction with Mr. Hoffman, other than various closing documents I signed later at the title
11   company." Mr. Lloyd did not identify which documents he signed at the title company.
12   Furthermore, his declaration makes no specific reference to the notice of cancellation document and
13   he (as opposed to his attorney) never specifically denied under oath that he signed it. Lloyd did not
14   deny that his signature appears on the Notice of Cancellation, nor does he explain why the Notice of
15   Cancellation is dated May 28, the same date as the other documents he admits he signed on that date.
16   On the other hand, Mr. Hoffman filed a declaration on January 26, 2006, in which he testified that the
17   "purchase included a Notice of Cancellation" and attached the notice to his declaration, showing
18   Lloyd's signature and a date of May 28, 2003.

19         At the April 28, 2006 hearing on the motion for summary judgment, Mr. Goodrich argued that
20   the Notice of Cancellation was not properly authenticated (transcript page 8) because "Mr. Hoffman
21   could not tell us whose handwriting that was" (transcript page 11). Mr. Goodrich continues that "Mr.
22   Lloyd thinks this is a forgery" (transcript page 13) although no such evidence was offered. Goodrich
23   goes on to state that he "objected to its admissibility, and Mr. Pahl withdrew it" (transcript page 14)
24   although the objection and withdrawal do not appear in the April 28 transcript, and the evidence was
25   offered in a declaration which identifies April 28 as the hearing date.

26         Lloyd's arguments concerning authenticity were wrong as a matter of law. Mr. Lloyd's
27   signature on the Notice of Cancellation **appears** to be the same signature as that on the other
28   Purchase Agreement documents he <u>admits</u> are authentic. One way to authenticate the genuineness of

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

5

1    handwriting is for the trier of fact to compare a contested writing with an authenticated specimen.

2    Evidence Code §901(b)(3). That was sufficient to authenticate the signature of Thomas Lloyd on the

3    Notice of Cancellation. Additionally, Mr. Hoffman's sworn testimony that the Purchase agreement

4    included a notice of cancellation, and that the Notice of Cancellation is part of the packet of

5    documents he submits was, if not the most eloquent or complete evidence, certainly enough to

6    overcome the vague testimony of Mr. Lloyd.

7        As set forth in the Asher Robertson declaration filed herewith, Asher Robertson (Lloyd's

8    broker) has testified that Mr. Lloyd did in fact execute the Notice of Cancellation along with the other

9    purchase documents on May 28, 2003. Furthermore, Robertson explains the delay of about six weeks

10   between the time Lloyd signed the documents and the time escrow closed was a function of Mr.

11   Lloyd's stalling, trying to see if he could get a better deal from another lender (Robertson declaration

12   ¶ 4).

13   **B.    THE COURT'S RULING OF JANUARY 24, 2007, GOES
14         BEYOND THE ISSUES PRESENTED TO IT AND PROVEN AT
         THE SUMMARY JUDGMENT HEARING**

15       It is clear that, "The trial court may not enter a summary judgment which rests on a chain of

16   inferences from subsidiary facts not conclusively established in the record." In *Pepper v. Tanner,*

17   *Inc.*, 563 F.2d 391, 393 (9th Cir. 1977). Applying this principle, the Court in *Pepper* found that the

18   lower court's entry of summary judgment in favor of the defendant was in error where it necessarily

19   implied a determination that the plaintiff was in fact transacting business in the state of Arizona at the

20   time when the contracts at issue were entered into, and also implied a determination that the Arizona

21   statute in question did not violate the commerce clause as applied to the disputed contracts. *Id.*

22       These issues, as stated by the Court, ultimately depended upon a precise and detailed factual

23   inquiry. *Id.* However, on a motion for summary judgment, trial courts are not permitted to weigh the

24   evidence, pass upon credibility, or "speculate as to ultimate findings of fact." *Id.* (quoting *Fortner*

25   *Enterprises, Inc. v. United States Steel*, 394 U.S. 495, 496, 89 S.Ct. 1252, 1260, 22 L.Ed.2d 495

26   (1969)). The Court found that there were not enough facts shown to support the lower court's

27   conclusion that the plaintiff was constantly in Arizona and to conclude from that that the plaintiff was

28   transacting business there. *Id.* at 395. "While suitable inferences may be drawn by the trial in ruling

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

6

1  on a motion for summary judgment, all such inferences are to be drawn against the moving party."

2  *Id.* (citing *United States v. Diebold Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per

3  curiam); *Driscoll v. United States*, 525 F.2d 136 (9th Cir. 1975)).

4          A brief history of Mr. Lloyd's litigation against Mr. Hoffman illustrates the chaotic nature of

5  this litigation, and reflects that the issue of whether Lloyd signed off on the Notice of Cancellation

6  acknowledgement on May 28, 2003, was not raised in Lloyd's motion, nor was it necessary to the

7  Court's decision.  Furthermore, the issue of whether the signature was not authenticated was not

8  established by clear, unequivocal sworn testimony, but by argument and exaggeration of counsel.

9          Mr. Lloyd initiated his barrage of litigation against Mr. Hoffman by the filing of a cross-

10  complaint on June 16, 2005, in which he sought to avoid fraudulent transfers, quiet title, obtain an

11  accounting, for a determination of the validity, extent and priority of liens and to object to Hoffman's

12  claims.  That dispute proceeded to a "Phase I" trial on the limited issue of the enforceability of the

13  settlement agreement between Lloyd and Hoffman.  The trial transcript from February 28, 2006,

14  reflects that no exhibits were placed in evidence (Transcript at page 3), and a careful reading of the

15  transcripts reflects that no one ever formally offered any exhibits into evidence, although both sides

16  freely referred to them.  Presumably, when the Court asked whether the "exhibits are all-agreed

17  upon?" and Mr. Goodrich answered "yes", at the beginning of trial (Transcript at page 4), the court

18  treated this as a stipulation that all exhibits go directly into evidence.  Notwithstanding the vagueness

19  of the record, it is clear that the issue of whether Hoffman gave Lloyd written notice of the right to

20  cancel the contract (the "Cancellation Notice Issue") was not placed before the court or decided by

21  the court in the Phase I trial.

22          Similarly, the record on summary judgment is confusing on the whether the Cancellation

23  Notice Issue was decided by the court.  The issue was not discussed in the motion for summary

24  judgment, and raised only inferentially in the supporting declaration of Mr. Lloyd.

25          After the first hearing on the summary judgment motion, the court entered an order denying

26  the motion on February 21, 2006.  The court's ruling is silent on the Cancellation Notice Issue.

27          On March 24, 2006, Lloyd re-noticed his motion for summary judgment, which had already

28  been denied, for another hearing on April 28, 2006.  Lloyd did not file any other new papers to

GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

7

1 support the motion. In response, Hoffman filed new papers, including a declaration of Jeffrey
2 Hoffman. In that declaration, Hoffman attached a copy of the cancellation notice signed by Mr.
3 Lloyd and dated March 28, 2003. Lloyd did not file a reply brief.

4 The motion for summary judgment was heard on April 28, 2006. At the hearing Mr.
5 Goodrich argued that Lloyd's signature on the cancellation notice was not properly authenticated
6 (page 80), that "Mr. Lloyd thinks this is a forgery" (page 13) and states that "we objected to its
7 admissibility, and Mr. Pahl withdrew it." (page 14). However, no such withdrawal is found in the
8 transcript of the April 28 hearing, and the April 28 hearing was the first and only hearing on the
9 summary judgment motion after Mr. Hoffman's declaration with the cancellation notice was filed.
10 The court observed that "you don't have anybody that said, 'I sent these papers to him on May 28th.
11 This is what I got back and it had a signature on it.'" (page 25) The court also observed that it was
12 "undisputed that he did not sign this paper on May 28th. . ." (page 27.) This observation is not
13 supported by the record. Hoffman never conceded the point, and the issue was disputed based on the
14 declarations. Only if one draws inferences from the Lloyd declaration in a light most favorable to
15 Lloyd, could such a conclusion be drawn.

16 On May 15, 2006, the court entered its Order Granting Defendant Thomas Lloyd's Motion
17 For Summary Judgment" as "modified at the time of hearing", dismissing Hoffman's Slander of
18 Title and Cancellation of Cloud of Title claims, and quieting title to the subject property in Lloyd,
19 "subject to the monetary claims, if any, of Hoffman and the other cross-defendants."

20 On January 24, 2007, the Court issued a second Tentative Ruling Re Terms For Cancellation
21 Of Deed in which it recited that it had "previously determined that Lloyd was not provided the notice
22 of right to cancel the contract" prior to the time he "cancelled that contract."

23 While courts have the power to grant summary judgment *sua sponte*, it is "proper only when
24 1) no material dispute of fact exists, and 2) the losing party has had an adequate opportunity to
25 address the issues involved, including adequate time to develop any facts necessary to oppose
26 summary judgment." *Fuller v. City of Oakland, Calif.*, 47 F.3d 1522, 1533 (9th Cir. 1995) (citations
27 omitted). Accordingly, in *Fuller*, the Ninth Circuit held that the district court erred in granting
28 summary judgment *sua sponte* against the plaintiff on her sexual discrimination claim in connection

LAW OFFICES
GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

8

1  with the conduct of a police internal affairs investigation upon completion of a bench trial on her

2  Title VII sexual harassment claim. *Id.* at 1535. Viewing the record in the light most favorable to the

3  plaintiff, the Court found it conceivable that a jury could reasonably infer that the underlying internal

4  affairs investigation was performed in a sexually-biased manner. *Id.* at 1535. Moreover, the Court

5  found that the record was not fully developed on the issue because the district court had made clear

6  that the issue being tried was sexual harassment, and not the conduct of the internal affairs

7  investigation, and consequently, questioning of one of the chief witnesses at trial focused on issues

8  unrelated to the investigation. *Id.*

9          Here, the issues that were being presented on the summary judgment motion appeared to be a

10  moving target. Lloyd's original notice of motion for summary judgment, dated January 20, 2006,

11  although generally stating that it sought summary judgment on all claims, did not give notice that

12  Lloyd alternatively sought specification of any factual issues. The recitation of facts, although going

13  into detail about the events surrounding the settlement agreement, does not articulate Lloyd's

14  argument that he did not sign the Notice of Cancellation on May 28.

15          The legal discussion in Lloyd's memorandum ignored the existence of the Notice of

16  Cancellation and pretended that none existed. Then, in his reply brief, Mr. Goodrich refers to the

17  document as a "crude forgery" based on nothing more than the fact that Mr. Pahl "miraculously"

18  produced the document in response to the motion for summary judgment and because the signature

19  appears underneath the printed line. Mr. Goodrich jumps to the conclusion that it must be a "cut and

20  paste" forgery because the signature appears below the line (ignoring the fact that a forger, spending

21  more time to make a document look correct, would be **less** likely to put the signature out of place).

22  Lloyd argued generically in the brief that the document is "inadmissible under Rule 901", ignoring

23  that Rule 901 allows the trier of fact to compare the challenged signature with authenticated

24  specimens.

25          Yet it now appears that there was nothing at all miraculous about the existence of the signed

26  acknowledgement of Notice of Cancellation. Lloyd's own real estate agent knew about its existence.

27  Under the rules of discovery, Lloyd was obligated to turn over all his records, including the records in

28  his agent's possession. Lloyd did not turn over his real estate agent's files. Instead, counsel for

LAW OFFICES
GOLDBERG, STINNETT, MEYERS & DAVIS
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

9

1  Lloyd simply resorted to sophistry. Giving Mr. Goodrich the benefit of the doubt, one can only

2  assume that he never even made inquiry of Mr. Robertson (or how could he have made the

3  representations he did in court?) to find out what his client had been given or when he signed the

4  transactional documents.

5       To make matters worse, it appears that Lloyd was skirting procedure to obtain an element of

6  surprise. Before the Phase II trial date, he had filed a new adversary proceeding against Hoffman,

7  charging (in a 30-page complaint) a laundry list of alleged fraudulent conduct without asserting

8  specific facts necessary to such a complaint. The clerk's record reflects that Lloyd failed to have

9  process issued in this proceeding. Had process been served, Hoffman would have requested a

10  continuance to conduct discovery on the panoply of new theories being raised on the common set of

11  facts.

## IV.    ARGUMENT

12       The Court should not confirm its proposed findings. The hearing on this matter should be

13  treated as a status conference in the adversary proceeding to determine what Mr. Lloyd intends to do

14  with all his new, unserved adversary proceedings, and to obtain a coordination of issues and

15  discovery in all these cases.

DATED: February 13, 2007

GOLDBERG, STINNETT, MEYERS & DAVIS
A Professional Corporation

By   /s/ Dennis D. Davis
    Attorneys for Plaintiff Jeffrey E. Hoffman

GOLDBERG, STINNETT, MEYERS & DAVIS
LAW OFFICES
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

PLAINTIFF'S BRIEF RELATING TO COURT'S
TENTATIVE RULING OF JANUARY 24, 2007
10329 110302.DOC

Plaintiff's EOR-412

CANB Live Database                                        Page 1 of 2

**Miscellaneous:**

05-03328 Hoffman v. Lloyd et al

Type: ap                    Chapter: v                Office: 3 (San Francisco)
Lead Case: 04-32921         Judge: TEC                Case Flag: PreAct, APPEAL

### U.S. Bankruptcy Court

### Northern District of California

Notice of Electronic Filing

The following transaction was received from Davis, Dennis D. entered on 2/13/2007 at 2:59 PM PST
and filed on 2/13/2007
**Case Name:**        Hoffman v. Lloyd et al
**Case Number:**      05-03328
**Document Number:** 108

**Docket Text:**
Brief/Memorandum in support of (RE: related document(s)[104] Opposition Brief/Memorandum, ).
Filed by Plaintiff Jeffrey E. Hoffman (Attachments: # (1) Declaration of Asher Robertson# (2) Exhibit s
"A" through "D" to Declaration of Asher Robertson# (3) Certificate of Service) (Davis, Dennis)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\pjoakimson\Desktop\Lloyd Brief.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=2/13/2007] [FileNumber=5778324-0
] [32c32ac4db305bcdcbf00625be0a392467bbcf0fe78c1dfb3d5b6deb88189ad7d41
a467d907ba2fa8c67197c4450b7ab6be73fe4559e3df92e3f681c2eb513cb]]
**Document description:**Declaration of Asher Robertson
**Original filename:**C:\Documents and Settings\pjoakimson\Desktop\Dec Asher Robertson.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=2/13/2007] [FileNumber=5778324-1
] [545fd042e2a0a4f4405d812da41bb84767fe0f7f600e8b3ce4e01b86128f0295125
8e80bab60ca78c9f74d4df87a218ce5cb9bc998c704034bb5e25b6bdd00eb]]
**Document description:**Exhibit s "A" through "D" to Declaration of Asher Robertson
**Original filename:**C:\Documents and Settings\pjoakimson\Desktop\Exs to Dec.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=2/13/2007] [FileNumber=5778324-2
] [2a10d4259e76e850cea833bae42822bad152cd1119ea7ea47a9f929c8e23d1f2101
fbb59f6f2d1249000b30b67a44d964b4b03a404fa421b6fdb3f9560c56fe6]]
**Document description:**Certificate of Service
**Original filename:**C:\Documents and Settings\pjoakimson\Desktop\POS.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=2/13/2007] [FileNumber=5778324-3
] [71eb8d45495570f2de3e91ff42c389bad6aeaa05dca323435f910d501580d492e0b

**Plaintiff's EOR-413**
2/13/2007

40be9d8eaef202a398d565bf02e649c9ee84bcf7235ecac41ab1d959f3c39]]

**05-03328 Notice will be electronically mailed to:**

Dennis D. Davis     ddavis@gsmdlaw.com

Jeffrey J. Goodrich     endstay@hotmail.com

Jerry R. Hauser     jhauser@pghllp.com

Catherine Schlomann Robertson     crobertson@pahl-gosselin.com

Ginger L. Sotelo     gsotelo@pahl-gosselin.com

**05-03328 Notice will not be electronically mailed to:**

Thomas M. Gosselin
Law Offices of Pahl and Gosselin
160 W Santa Clara St. 14th Fl.
San Jose, CA 95113-1700

Stephen D Pahl
Pahl & Gosselin
225 W. Santa Clara St., Suite 1500
San Jose, CA 95113

Stephen D. Pahl
Law Offices of Pahl and Gosselin
225 W Santa Clara St. #1500
San Jose, CA 95113

Plaintiff's EOR-414

**DOCUMENT 19**

1  **PAHL & GOSSELIN**
A Professional Corporation
2  **Stephen D. Pahl, Esq.** (State Bar No. 95900)
**Thomas M. Gosselin, Esq.** (State Bar No. 104470)
3  225 West Santa Clara Street
Fourteenth Floor
4  San Jose, California 95113-1700
Telephone No.: (408) 286-5100
5  Facsimile No.: (408) 286-5722
Email:  spahl@pahl-gosselin.com
6        tgosselin@pahl-gosselin.com

7  **BINDER & MALTER**
**Michael W. Malter, Esq.** (State Bar No. 96533)
8  2775 Park Avenue
Santa Clara, California 95050
9  Telephone No.: (408) 295-1700
Facsimile No.: (408) 295-1531
10  Email:  michael@bindermalter.com

11  Attorneys for Plaintiffs and Cross-Defendants
JEFFREY E. HOFFMAN, H&B PROPERTIES, LLC,
12  J. EDWARDS INVESTMENT GROUP, INC. and
NORCAL FINANCIAL, INC.

13

14            **UNITED STATES BANKRUPTCY COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

16               **SAN FRANCISCO DIVISION**

17  In re:                        )  Case No. 04-32921 TEC
                                  )
18    THOMAS LLOYD,               )  Adversary No. 05-03328
                                  )
19       Debtor.                  )  Chapter 11
                                  )
20  _____      )  **DECLARATION OF JEFFREY E.**
                                  )  **HOFFMAN IN SUPPORT OF**
21  JEFFREY E. HOFFMAN,           )  **PLAINTIFF'S OPPOSITION TO**
                                  )  **DEFENDANT LLOYD'S MOTION**
22       Plaintiff,               )  **FOR SUMMARY JUDGMENT**
                                  )
    v.                            )
23  THOMAS R. LLOYD, et al.,      )
                                  )  Date:  April 28, 2006
24       Defendants.              )  Time:  9:30 a.m.
                                  )  Dept:  23
25  _____      )  Honorable Thomas E. Carlson
                                  )
26  AND RELATED CROSS-ACTION.     )
    _____      )

27       I, Jeffrey E. Hoffman, declare as follows:

28       1.    The matters set forth herein are based upon my own personal knowledge

                              1
**DECLARATION OF JEFFREY E. HOFFMAN . . .**          (Case No. 04-32921 TEC; Adv. No. 05-03328)

Pahl & Gosselin
A Professional Corp.
225 W. Santa Clara St.
Suite 1500
San Jose, CA 95113
(408) 286-5100

3125/002
00064407.WPD

Plaintiff's EOR-415

E-FILED
4/13/06

1  and observation, except as to those matters which are stated to be based upon

2  information and belief. If called to testify herein, I can and would competently testify

3  thereto.

4          2.      I am the President of Defendant J. EDWARDS CO. INVESTMENT

5  GROUP, INC. ("J. EDWARDS"). J. EDWARDS, in turn, is a managing member of

6  Defendants H&B PROPERTIES ("H&B"). In my capacity as President of J.

7  EDWARDS, I am personally familiar with the transaction involved in this matter and

8  have personal knowledge of all documents related thereto.

9          3.      In May 2003, LLOYD requested that I purchase LLOYD's real property

10  located at 940 Elizabeth Street, San Francisco, California ("Subject Property"). In

11  accordance with LLOYD's request, I purchased the Subject Property from LLOYD

12  utilizing a PRDS ("Peninsula Regional Data Service") Real Estate Contract dated May 28,

13  2003 ("Purchase Contract") for $900,000. A true and correct copy of the Purchase

14  Contract is attached hereto and incorporated herein as Exhibit A.

15          4.      The Purchase Contract between the parties included an Option Agreement.

16  A true and correct copy of the Option Agreement is attached hereto and incorporated

17  herein as Exhibit B.

18          5.      The Purchase included a Notice of Cancellation. A true and correct copy

19  of the Notice of Cancellation is attached hereto and incorporated herein as Exhibit C.

20  The Notice of Cancellation was a part of the records submitted to purchasers with whom

21  I do business deals, and thereafter maintain regularly as business records in the course of

22  my real estate transactions.

23          6.      The Purchase Contract included a Residential Lease After Sale ("Lease").

24  A true and correct copy of the Lease is attached hereto and incorporated herein as Exhibit

25  D. Pursuant to this written Lease, I leased to LLOYD the property identified in the

26  Purchase Contract. Pursuant to the terms of the Lease, LLOYD was required to pay

27  me the sum of $3,595.64 per month as rent. LLOYD failed to pay to me any installment

28  of rent due under the Lease.

Pahl & Gosselin
A Professional Corp.
225 W. Santa Clara St
Suite 1500
San Jose, CA 95113
(408) 286-5100

2

**DECLARATION OF JEFFREY E. HOFFMAN ...**    (Case No. 04-32921 TEC; Adv. No. 05-03328)

3125/002
00064407.WPD

Plaintiff's EOR-416

8.    On or about August 25, 2003, following the close of escrow, a Grant Deed transferring the Subject Property from LLOYD to me was recorded with the County of San Francisco.

9.    Following the transfer of the Subject Property from LLOYD to me, I conveyed the Subject Property to my single member limited liability company, H&B PROPERTIES, LLC ("H & B"), by Grant Deed recorded on August 5, 2004. H&B has subsequently reconveyed the Subject Property to me via Grant Deed dated November 24, 2004, and recorded on January 4, 2005.

10.    LLOYD failed to pay any installment of rent due under the Lease during the entire tenure of his occupancy. On June 2, 2004, H&B, as assignee for HOFFMAN, filed a Complaint for Unlawful Detainer against LLOYD in the Superior Court of California, County of San Francisco (the "Unlawful Detainer Action"). A true and correct copy of the Complaint for Unlawful Detainer that I authorized to be filed is attached herein and incorporated herein as Exhibit E. In connection with the Unlawful Detainer Action, LLOYD was represented by LLOYD BLUM ("BLUM").

11.    Following LLOYD's filing of an Answer in the Unlawful Detainer Action, and prior to trial, settlement discussions commenced between the parties. On August 3, 2004, LLOYD and I executed a Settlement Agreement, which waived all claims against HOFFMAN by executing a general release pursuant to California Civil Code Section §1542. A true and correct copy of the Settlement Agreement is attached hereto and incorporated herein as Exhibit F. LLOYD did not expressly preserve any claims, under Civil Code §1695 or otherwise under the terms of the Settlement Agreement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on April __ 2006, at Fresno, California.

Jeffrey E. Hoffman

Pabi & Gosselin
A Professional Corp.
725 W. Santa Clara St.
Suite 1500
San Jose, CA 95113
(408) 286-5100

3125/002
00064407.WPD

3

**DECLARATION OF JEFFREY E. HOFFMAN . . .**    (Case No. 04-32921 TEC; Adv. No. 05-03328)




# PRDS® REAL ESTATE PURCHASE CONTRACT

**(THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT, READ IT CAREFULLY.)**

The undersigned _____ JE Hoffman _____ ("Buyer") hereby offers to purchase, for the sum

of $ _900,000.00_ , the real property located at _____ 940 Elizabeth St _____ ,

City of _San Francisco_ , County of _San Francisco_ , California, ("Property") on the terms contained

in this Real Estate Purchase Contract ("Contract"), dated _05/28/2003_ (for reference purposes only):

## 1. FINANCING TERMS:

~~A. $ 0.00~~    ~~DEPOSIT, by personal check, shall be held uncashed until mutual execution ("Acceptance") of this~~ Contract, then deposited in Escrow Holder's account (see Para. 15.A.) [or ☐ Broker's Trust account] on or before _____

B. $ _0.00_    **ADDITIONAL DEPOSIT**, by personal check, shall be deposited in Escrow Holder's account (see Para. 15.A.) [or ☐ Broker's Trust account] on or before _____ . If Liquidated Damages (Para. 5) is initialed, Seller and Buyer shall sign a Receipt for Increased Deposit (RID-11) upon deposit increase.

C. $ _250,000.00_    **BALANCE OF DOWN PAYMENT** shall be deposited in Escrow in time to close escrow. Buyer's ability to obtain the down payment *is not* a contingency of this Contract.

D. $ _650,000.00_    **LOAN:** This Contract ☒ *is* ☐ *is not* contingent upon Buyer's obtaining a loan secured by a First Deed of Trust payable to Lender at approximately $ _3,595.00_ per month to include: ☒ *principal and interest* ☐ *interest only* at not more than _5 1/8_ % ☒ *fixed* ☐ *adjustable* per annum for no fewer than _30_ years with a lifetime maximum rate of _N/A_ % and an origination fee not to exceed _2_ % of this loan. If this Contract is contingent upon Buyer's obtaining a loan, Buyer shall, within 5 or ☐ _____ days of Acceptance, provide Lender's written confirmation that Buyer has submitted a completed loan application, or this Contract may be cancelled at Seller's option.

E. $ _0.00_    **SELLER OR ADDITIONAL FINANCING:** See attached PRDS® Seller and Other Financing Addendum.

F. $ _900,000.00_    **TOTAL PURCHASE PRICE ("Purchase Price")**, not including closing costs.

2. **SOURCE OF FUNDS:** Buyer represents that the funds required for the initial deposit, additional deposit, cash balance, and closing costs are readily available. Obtaining these funds is not a contingency of this Contract.

3. **INTENT TO OCCUPY:** Buyer ☒ *does* ☐ *does not* intend to occupy the Property as Buyer's residence.

4. **FIXTURES AND PERSONAL PROPERTY:** ALL EXISTING fixtures and fittings that are attached to the Property are (if owned by Seller and unless excluded below) INCLUDED IN THE PURCHASE PRICE and shall be transferred free of liens. These shall be deemed to include, but are not limited to, the following: existing electrical, lighting, plumbing and heating fixtures, fireplace inserts and attached fireplace equipment, solar systems, built-in appliances, screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes and related equipment, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, water softeners, security systems/alarms, keys to all exterior locks, garage door openers/remote controls, mailbox, and in-ground landscaping.

   **A. ITEMS EXCLUDED:** _____

   **B. ITEMS INCLUDED:** The following items of personal property, free of liens and without warranty of condition (unless so provided in Para.12):

5. **LIQUIDATED DAMAGES:** By placing their initials here, Buyer ( _____ / _____ ) and Seller ( _____ / _____ ) agree that, in the event failure to complete this purchase is due to Buyer's breach of the Contract and not by reason of a default by Seller, (a) Seller is released from the obligation to sell to Buyer, (b) Seller shall retain Buyer's deposit paid *as Seller's only recourse*, and (c) if the Property contains one to four units, one of which Buyer intends to occupy, then any deposit retained by Seller shall not exceed 3% of the Purchase Price, with any excess promptly returned to Buyer.

6. **MEDIATION OF DISPUTES:** Buyer and Seller (collectively "Parties") agree to mediate any dispute between them arising out of this transaction prior to any court action or arbitration. Mediation is a non-binding process in which Parties meet with a neutral mediator (selected by the Parties) who will try to work out a mutually acceptable resolution. The mediator does not impose a settlement on the Parties. If the Parties cannot agree on a mediator, the Superior Court shall appoint a mediator. The mediator may conduct more than one session and mediation fees shall be paid equally by participating Parties. Matters excluded from arbitration (Para. 7) are also excluded from mediation. A buyer or seller who refuses or resists mediation shall not be entitled to recover prevailing party attorneys' fees (Para. 17.C.).

7. **ARBITRATION OF DISPUTES:**

   **A. Explanation:** Arbitration is a private dispute resolution process in which Parties (by themselves or through their attorneys) submit disputes to a neutral arbitrator who is charged with rendering a fair and im[partial decision is pre]sented. When arbitration is selected, the Parties give up their rights to trial by judge or jury and to [certain] discovery rights (e.g., depositions, document production) are provided for under California law. Rule[s ...]s rigid than in trial court. Arbitration fees are typically on an hourly basis. The decision of the arbit[rator ...] rties to the arbitration agreement (Para. 7.B.). The arbitrator can award compensatory damages, pun[itive ...] performance, injunctive [...]

Buyer's Initials ( _____ ) ( _____ )        Seller's Initials _____ ( _____ ) ( _____ )

Plaintiff's EOR-418

Subject Property Address: 940 Elizabeth St San Francisco CA 94114     Date: 05/28/2003

relief and declaratory relief. No trial or other court process is available to re-try the case or to appeal the merits of the arbitrator's ruling. This means that even when a party claims the arbitrator made a clearly wrong decision, based on a misunderstanding of fact or of law or an unwillingness to follow the law, that decision nevertheless remains final and unappealable. Only in cases of actual fraud in the arbitration process, corruption, bias, lack of due process or jurisdiction, or arbitrator's computation error, can an award be vacated or modified. The Parties are advised to confer with legal counsel for advice before committing to binding arbitration.

B.   Arbitration Process, Election to Arbitrate: Any dispute arising out of this transaction shall be decided by neutral binding arbitration (in accordance with Chapter 3, Title 9 of the California Code of Civil Procedure (CCP §1283.05) including, but not limited to, the right of discovery), and not by court action, except as provided by California law for judicial review of arbitration proceedings. The arbitrator shall be a retired Superior Court judge or a licensed California attorney with at least 5 years real estate experience. If the Parties cannot agree on an arbitrator, the Superior Court shall appoint the arbitrator. The filing of an action in a court of competent jurisdiction to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies shall not constitute a waiver of the right to mediation or arbitration under this Contract, regardless of whether the said complaint includes causes of action not necessary to the recordation of the notice of pending action. The Parties agree that, in the event of such court filing, it would be appropriate for the court to issue an order staying proceedings therein, pending the completion of mediation or arbitration under this Contract. The filing of such judicial action shall not constitute a waiver of mediation or arbitration rights or the prevailing party's right to receive attorney's fees and costs. The losing party shall pay the arbitrator's fees. Exclusions from arbitration: unlawful detainer, foreclosure-related actions, matters within Small Claims Court jurisdiction and matters to which CCP §§337.1 or 337.15 apply. By electing arbitration, Buyer and Seller also agree to submit to mediation and binding arbitration such claims as they intend to make against the brokers or agents related to or arising out of this transaction, so long as, within 10 days after receipt of such claims, the brokers and agents responding thereto shall have committed to participation in such mediation and arbitration. An election by brokers or agents to mediate or arbitrate as provided herein shall not be deemed to make them Parties to this Contract.

"NOTICE: BY INITIALING IN THE SPACE BELOW, YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW, YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THIS 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials (_____) (_____).                Seller's Initials (_____) (_____)

8.   REAL ESTATE TRANSFER DISCLOSURE STATEMENT ("TDS"), LEAD BASED-PAINT HAZARD DISCLOSURE ("Lead Disclosure"), PRDS® SUPPLEMENTAL SELLER CHECKLIST DISCLOSURE ("SSC"); NATURAL HAZARD DISCLOSURE STATEMENT ("NHDS"): Unless the transaction is exempt by law, Seller, Listing Agent (if any) and Selling Agent (if any, and if such signature is required by law) shall duly complete a TDS, a Lead Disclosure and an NHDS, and Seller shall duly complete an SSC. *Buyer has, prior to Acceptance, received, read and acknowledged in writing Buyer's receipt of the following:* ☒ *TDS,* ☒ *Lead Disclosure,* ☒ *SSC and* ☒ *NHDS; and/or Seller shall, within 5 or* ☐ ____ *days of Acceptance, deliver to Buyer the following:* ☐ *TDS,* ☐ *Lead Disclosure,* ☐ *SSC and* ☐ *NHDS.* If the TDS, Lead Disclosure and/or NHDS are delivered to Buyer after Acceptance, Buyer shall have the right to terminate the Contract by giving written notice to Seller within 3 days after such delivery (if delivery has been made in person) or 5 days after such delivery (if delivery has been made by mail). Lead Disclosures sent by mail must be sent certified mail or registered mail, with return receipt requested. Unless Buyer elects to terminate the Contract based thereon, Buyer shall sign and return the TDS, Lead Disclosure, NHDS and SSC to Seller within 5 or ☐ ____ days after delivery thereof to Buyer. If Buyer fails to sign and return the foregoing disclosure documents within the times required, Seller shall have the right to terminate the Contract. ALTERATIONS: Seller is obligated to disclose any property additions or alterations made by or known to Seller and whether permits and final approvals have been obtained. Where Buyer has been given timely and sufficient notice that improvements on the Property have been made without necessary permits or approvals, Buyer shall assume all risk, liability and expense for bringing such improvements into legal compliance.

9.   PROPERTY DISCLOSURES: Seller shall pay for and provide to Buyer the following: Earthquake Safety and Environmental Hazard (including lead) booklet, Natural Hazards Disclosure report, Mello-Roos disclosure, environmental disclosure report (limited to filed governmental reports), smoke detector and water heater compliance statements, FIRPTA and California non-resident withholding disclosures, and _____

10.  PROPERTY CONDITION, LEAD DISCLOSURE, INSURANCE CONTINGENCIES: Unless said contingencies are otherwise waived, this Contract is contingent upon Buyer's approval of the condition of the Property and of other factors, including, but not limited to, Lead Inspection (if legally required), that may affect its value and desirability, and on Buyer's ability to obtain property insurance. (Even where not legally required, Buyer shall have the right to make this Contract contingent on Lead Inspection by so designating in Para. 16.B.) If Buyer finds any conditions that are unacceptable to Buyer, then Buyer shall be entitled to cancel this Contract. Buyer has a duty to inspect the Property thoroughly for its present or planned use and shall have the right to hire, at Buyer's expense, qualified professionals to conduct such inspections. Buyer's failure to exercise this right of inspection is against the advice of the real estate licensees and Buyer acknowledges that the consequences of such failure are at Buyer's own peril. Seller shall make the Property reasonably available for such inspections. No inspections may be made by any building department inspector or government employee without the prior written consent of Seller. Upon receipt, Buyer shall furnish to Seller, at no cost, copies of all reports. Buyer shall repair all damage to the Property arising out of Buyer's inspections and shall keep the Property free of liens and indemnify Seller from and against any liability, claim or damage arising out of the inspections.

Buyer's Initials (_____) (~~signature~~)                                  Seller's Initials (~~signature~~) (_____)

Plaintiff's EOR-419

Subject Property Address: 940 Elizabeth St San Francisco CA 94114 _____ Date: 05/28/2003

**STRUCTURAL PEST CONTROL ("SPC") CERTIFICATION:**

A. ☐ *Buyer* ☐ *Seller* shall, within 10 or ☐ ____ days of Acceptance, provide, at ☐ *Buyer's* ☐ *Seller's* expense, a current inspection report ("Report") by a licensed SPC operator of the main building and ☐ *decks (attached or otherwise)*, ☐ *detached garage(s)/carport(s)* and ☐ *the following other structures on the Property:* _____

B. Seller shall pay for Section 1 work as described in the Report and shall, prior to Close of Escrow (defined in Para. 19.A.), provide a certification from a licensed SPC operator that the Property is free from active infestation or infection as described in the Report, which certification complies with the SPC Board requirements. Seller shall not be responsible for (1) Section 1 items that are the responsibility of the Homeowner's Association pursuant to Covenants, Conditions and Restrictions ("CC&Rs") and/or rules and regulations (see Common Interest Development documentation) or (2) Section 2 items, which may be otherwise required elsewhere in this Contract.

C. If inspection of inaccessible areas is recommended in the Report, Buyer shall have the right to such inspections if requested within 5 or ____ days from receipt of the Report. Buyer's failure to request such additional inspections shall constitute a waiver of this right. If additional inspections reveal no further Section 1 findings, the supplemental report and entry and closure costs shall be paid by Buyer.

D. If Seller's personal property renders such areas inaccessible, then Seller shall make such areas accessible and shall pay for any recommended supplemental repairs and for additional Section 1 repairs, if any.

E. If fumigation is required, Seller shall comply with fumigation guidelines, including those relating to landscape preservation. Buyer acknowledges that there may be damage caused to landscaping due to tenting of the house and Buyer agrees to take Property subject to any such damage. Upon completion of fumigation, Seller shall ensure that all utilities and services (e.g., electric, gas and water) on the Property are fully restored and rendered operational.

12. **SELLER'S REPAIR/MAINTENANCE OBLIGATIONS:** Seller's repair obligations pursuant to this Para. 12 are limited to deficiencies known or discovered before Close of Escrow. Unless otherwise agreed, Seller shall not be required to repair or replace items not covered by this Paragraph. TDS and other disclosures do not eliminate Seller's repair obligations unless otherwise agreed in writing. Seller shall deliver the Property at Close of Escrow as follows: A: (1) Roof/skylights (not including gutters) shall be water tight; (2) Built-in appliances, plumbing, heating, air conditioning, electrical, solar, security/alarm, water, sprinkler, sewer/septic and pool/spa systems, if any, shall be operative ("operative" shall not necessarily mean in compliance with building codes); (3) Plumbing systems, shower pans, and shower enclosures shall be free of leaks; (4) Structural defects in chimneys and fireplace (including dampers, shall be repaired by Seller; (5) All broken or cracked glass (not including partial failure of thermopane windows/skylights) shall be replaced. B: (1) The remainder of the Property shall be maintained in the same general condition as of Acceptance; (2) Debris and personal property not included in the sale shall be removed by Seller prior to Close of Escrow. C: RISK OF LOSS: If the land or improvements are materially damaged prior to Close of Escrow, Buyer shall have the right to terminate this Contract, recover the full deposit and obtain from Seller reimbursement for inspection and financing fees incurred. If Buyer elects to complete the purchase, Buyer shall be entitled to an assignment from Seller of all insurance proceeds covering the loss.

13. **REPAIRS/WALK-THROUGH INSPECTION:** All repairs shall be made prior to Close of Escrow by a licensed contractor, using materials of comparable quality, done in a workmanlike manner and in compliance with all applicable building codes and permit requirements. Buyer shall be entitled to a "walk-through" inspection of the Property prior to Close of Escrow, not as a contingency of sale, but solely to confirm that all repairs have been completed and that the Property, including landscaping, is in the same general condition as of the date of Acceptance.

14. **HOME PROTECTION PLAN:** A home protection plan shall be ordered by ☒ *Buyer* ☐ *Seller or* ☐ *is waived.* Such plan shall be at a cost not to exceed $ 525.00 _____ and shall be paid for by ☐ *Buyer* ☒ *Seller* ☐ *Buyer (50%) / Seller (50%).* Options shall be selected by persons ordering the plan, or ☐ *options shall include:* _____

15. **CONDITIONS RELATING TO TITLE:**

A. TITLE: ☐ *Buyer* ☒ *Seller* shall pay escrow fees and the cost of an ALTA homeowners or CLTA homeowners policy of title insurance issued by or through _New Century Title_____ ("Escrow Holder"). If a lender's policy is required, Buyer shall pay its cost. Title shall be clear and marketable, subject only to assumed liens, CC&Rs and easements of record, and current taxes. This Contract is contingent upon Buyer's approval of a current preliminary report and CC&Rs (if any). (A preliminary report is only an offer of title insurance coverage and may not identify every exception affecting title.)

B. PUBLIC IMPROVEMENT BONDS & ASSESSMENTS: Such bonds and assessments of special assessment districts (including Mello-Roos bonds) that are now a lien shall be paid current by Seller at Close of Escrow. Payments not yet due shall be assumed by Buyer.

C. PROPERTY TAXES: The Property shall be reassessed upon change of ownership. Upon Buyer's request, Seller shall provide a current tax bill. Supplemental taxes shall be paid as follows: (1) for periods after Close of Escrow, by Buyer, and (2) for periods prior to Close of Escrow, by Seller.

16. **CONTINGENCY REMOVAL: FAILURE TO REMOVE ALL CONTINGENCIES IN WRITING WITHIN THE TIME PERIODS SPECIFIED BELOW SHALL MAKE THIS CONTRACT SUBJECT TO CANCELLATION, AT SELLER'S OPTION. IF THE TIME PERIOD SPECIFIED IS "0" DAYS, THEN THE CONTINGENCY IS DEEMED WAIVED.**

A. FINANCING CONTINGENCY: If financing is a contingency (Paragraphs 1.D. and/or 1.E.), such contingency shall be removed on or before N/A_ days from Acceptance. Buyer agrees to verify all loan terms directly with Lender prior to removing contingency.

B. LEAD INSPECTION CONTINGENCY: If a Lead Disclosure is legally required, Buyer's Lead Inspection contingency shall be removed within 10 or ☐ _____ days of Acceptance. *If a required Lead Disclosure is not delivered to Buyer until after Acceptance, the time within which Buyer may exercise termination rights shall not be less than 3 days from personal delivery thereof (5 days for delivery by mail).*

C. The following contingencies shall be removed on or before _0___ days from Acceptance, unless extended by Para. 16.E.

| | |
|---|---|
| 1) Property Disclosures (Para. 9) | 4) _____ |
| 2) Property Condition & Insurance (Para. 10) | 5) _____ |
| 3) Title Documents (Para. 15.A.) | 6) _____ |

Buyer's Initials ( _____ ) ( _____ )        Seller's Initials ( _____ ) ( _____ )

Copyright © 2000 Advanced Real Estate Solutions, Inc.        Page 3 of 6        Form RDS   Revised 10/20/00

Plaintiff's EOR-420

Subject Property Address: 940 Elizabeth St San Francisco CA 94114 _____ Date: 05/28/2003 _____

D. Documents to be provided by Seller necessary to remove Buyer's contingencies in Paragraphs 16.A., 16.B., and/or 16.C. shall be delivered to Buyer within 5 or ☐ _____ days of Acceptance.

E. If Buyer requests that Seller make repairs or corrections not otherwise required by this Contract, then Buyer shall, within the respective time frames in Para. 16.C., deliver to Seller written notice of such items and Seller shall have 5 or ☐ _____ days from receipt of such notice within which to respond in writing. If Seller agrees in writing to Buyer's requests, Buyer shall thereupon remove the Property Condition contingency. If Seller's response indicates that Seller is unwilling or unable to repair or correct such items, or if Seller does not respond within the time frame in this Para. 16, Buyer shall have 3 or ☐ _____ days (after receipt of Seller's response, or after the expiration of the time for Seller to respond, whichever occurs first) to remove these contingencies or cancel this Contract. If Buyer does not give such written notice of cancellation or fails to remove the contingency within the time frame in this Para. 16, Seller shall have the right to cancel this Contract by giving written notice of such cancellation to Buyer.

F. If Buyer properly exercises a right of cancellation under this Contract, Buyer shall be entitled to a refund of Buyer's deposit, less any non-reimbursable fees and costs, and the Parties agree to sign mutual escrow instructions to this effect.

## 17. LEGAL NATURE OF AGREEMENT:

A. ENTIRE AGREEMENT: This Contract is intended by the Parties to be the full and final expression of their agreement. It shall not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. The captions in this Contract are for reference only. This Contract may not be amended, modified, altered or changed in any respect whatsoever except by a further agreement in writing executed by Buyer and Seller. Unless otherwise agreed or required by Escrow Holder, all documents transmitted by facsimile shall be regarded as valid substitutes for original documents. Buyer and Seller understand that real estate licensees are not Parties to this Contract and are not responsible or liable for any inability or failure by Buyer or Seller to perform fully the terms hereof.

B. BINDING AGREEMENT; ASSIGNMENT: This Contract is binding upon the heirs, executors, administrators, successors and assigns of Buyer and Seller and shall survive Close of Escrow. Buyer may not assign any rights hereunder without the prior written consent of Seller. Buyer assigns to Buyer all of Seller's rights of action against providers of materials or services relating to the Property.

C. ATTORNEYS' FEES: In event of any legal action, arbitration, or other proceeding between Buyer and Seller arising out of this Contract, the prevailing Buyer or Seller shall be awarded reasonable attorneys' fees and court or arbitration costs in addition to any other judgment or award.

D. DISSEMINATION OF INFORMATION: Both Parties authorize brokers to disseminate information concerning sales price, terms, and financing of this transaction after recordation.

E. LEGAL, TAX AND OTHER ADVICE: Buyer and Seller understand that real estate licensees are providing real estate advice only in this transaction. If the Parties desire legal, tax or other advice, they must consult an attorney, accountant, or other appropriate professional.

F. GOVERNING LAW: This Agreement and all other instruments referred to herein shall be governed by, and shall be construed according to, the laws of the state of California. For the purpose of all disputes arising out of or under this Agreement, the Parties agree that the venue for any judicial or arbitration proceedings shall rest in the county in which the Property is located.

## 18. DEFAULT AND REMEDIES:

A. BUYER'S DEFAULT: Should escrow not close due to a default by Buyer, Seller's entitlement to damages shall be limited pursuant to Para. 5 (if such provision has been initialed by both Parties). If such provision is not initialed by both Parties, Buyer may be liable to Seller for additional damages including, but not limited to, consequential damages (e.g., PITI, etc.). In either case, the defaulting Buyer may be liable for payment of the brokerage fee.

B. SELLER'S DEFAULT: Should escrow not close due to a default by Seller, or if Seller does not otherwise perform under this Contract, Seller may be liable for Buyer's damages including, but not limited, to consequential damages (e.g., temporary housing arrangements, storage costs, etc.) and for payment of the brokerage fee.

C. OTHER NON-PERFORMANCE: If either Buyer or Seller fails to perform pursuant to this Contract, the defaulting party may be liable for the other party's damages (e.g., consequential damages, including but not limited to, "PITI", etc.).

## 19. ESCROW CONDITIONS AND INSTRUCTIONS:

A. CLOSE OF ESCROW: Recordation of the transfer of title ("Close of Escrow") and delivery of keys shall occur on 06/30/2003 _____ (Date). Possession shall be no later than 5 PM or ☒ 12: AM/PM on the same date or ☐ _____ (possession date), subject to provisions of an executed residential lease after sale agreement (or equivalent). If Seller retains possession after Close of Escrow, a minimum of one set of keys shall be given to Buyer at Close of Escrow.

B. PRORATIONS and TRANSFER TAX: Property taxes for the fiscal year, interest on any loan assumed by Buyer, Homeowners Association dues, rents, and premiums on insurance assumed by Buyer shall be prorated as of the Close of Escrow. Seller shall pay the cost of county real property transfer tax. XXXXXXX Seller shall XXXXXX XXXXXX pay the cost of any city transfer tax and transfer fee.

C. ESCROW INSTRUCTIONS: This Para. 27, together with any additional escrow instructions, shall constitute joint escrow instructions to Escrow Holder. The Parties shall execute such additional escrow instructions requested by Escrow Holder that are not inconsistent with the provisions of this Contract. In the event of any alleged failure of performance of either Buyer or Seller, nothing in this Paragraph 19 shall impose any duty on Escrow Holder to concern itself with other provisions of this Contract or to make any determination as to the ownership of, or interest in, any funds deposited. Funds placed in the Escrow/Trust account will not be released unless agreed to in writing by both Parties or pursuant to court or arbitrator's order.

Buyer's Initials ( _____ ) ( _____ )                                  Seller's Initials ( _____ ) ( _____ )

Plaintiff's EOR-421

bject Property Address: 940 Elizabeth St San Francisco CA 94114 _____   Date: 05/28/2003

20. **ADDITIONAL CONTRACT DOCUMENTS:** The PRDS® Advisory Disclosure (Page 6), along with the following addenda, if checked below and submitted herewith, are made part of this Contract.

  ☐ A. PRDS® Seller and Other Financing Addendum        ☐ E. Sale of Property Contingency
  ☐ B. PRDS® Common Interest Development Addendum     ☒ F. "AS-IS" Addendum
  ☐ C. Interim Occupancy Agreement (Buyer in possession)     ☐ G. Other: _____
  ☐ D. Residential Lease After Sale (Seller in possession)      ☐ H. Other: _____

21. **OTHER TERMS AND CONDITIONS:**
    1) Seller shall pay all cost/fees associated with this transaction.

22. AGENCY DISCLOSURE AND CONFIRMATION: BUYER AND SELLER ACKNOWLEDGE THEIR PRIOR RECEIPT OF AGENCY DISCLOSURE FORMS. AGENCY CONFIRMATION: The following agency relationships are hereby confirmed for this transaction:
Listing Agent: N/A _____ (Print Company Name) is the agent of (check one): ☐ Seller exclusively; or ☐ both Buyer and Seller
Selling Agent: Asher Robertson _____ (Print Company Name) (if not the same as the Listing Agent) is the agent of (check one): ☒ Buyer exclusively; or ☐ Seller exclusively; or ☐ both Buyer and Seller

23. **TIME: TIME IS OF THE ESSENCE IN THIS CONTRACT.** Extensions, if any, must be agreed to in writing by both Parties.

24. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state, and local anti-discrimination laws.

25. **BUYER'S DUTY OF CARE:** Buyer has, and acknowledges, a duty to exercise reasonable care to protect himself or herself, including those facts that are known to or within the diligent attention or observation of a buyer or prospective buyer.

26. **OFFER:** This is an offer to purchase the Property. Unless this offer is accepted by Seller and a signed copy personally received by Buyer or by _____, who is authorized to receive it, by _____ at _____ AM/PM, this offer shall be deemed revoked and the deposit shall be returned. Buyer has read and acknowledges receipt of a copy of this offer. This Contract may be signed in counterparts.

  Date: _____ Time: _____ Buyer: JE Hoffman _____ Signature: _____
                                             (Print Name)
  Date: _____ Time: _____ Buyer: _____ Signature: _____
                                             (Print Name)
  Date: _____ Selling Office: _____ by: _____
  Address: _____
  TEL: _____ FAX: _____ Email: _____

27. **BROKERAGE FEE:** Seller agrees to pay Listing Agent a brokerage fee pursuant to the listing or commission agreement. Listing Agent hereby assigns to Selling Agent _____ % of the sales price (or the amount of $ _____ ) from said brokerage fee and instructs Escrow Holder to disburse said amount to Selling Agent. From the proceeds of the sale herein, Seller irrevocably assigns to Listing Agent the entirety of the brokerage fees provided in this transaction, and irrevocably instructs Escrow Holder to disburse said fees to the respective Agents at the Close of Escrow.

28. **COUNTER OFFER:** When Seller's initials are placed here ( _____ / _____ ), Seller's acceptance is made conditional upon Buyer's written acceptance of the attached Counter Offer.

29. **ACCEPTANCE:** Seller accepts the foregoing offer and agrees to sell the Property to Buyer based on and subject to the terms and conditions set forth and referenced herein. Seller acknowledges receipt of a copy hereof and authorizes Broker to deliver a signed copy to Buyer. All paragraphs with spaces provided for initials by Buyer and Seller are incorporated herein only if the spaces are initialed by both Parties. If one party initials and the other party does not, no contract is formed between the Parties unless and until a counter offer resolving the inconsistency is executed by both Parties.

  Date: _____ Time: _____ Seller: Thomas R. Lloyd _____ Signature: _____
                                             (Print Name)
  Date: _____ Time: _____ Seller: _____ Signature: _____
                                             (Print Name)
  Date: _____ Listing Office: _____ by: _____
  Address: _____
  TEL: _____ FAX: _____ Email: _____

ESCROW RECEIPT: Escrow agent acknowledges receipt of this page as additional escrow instructions.
Date: _____ Escrow Company: _____
By: _____ Title: _____

Advanced Real Estate Solutions, Inc. makes no representations as to the legal validity or adequacy of any provision of this form or any deletions, additions, or modifications thereof, nor of their use in a particular transaction.

┌─────────────────────────────────────┐
│ — OFFICE USE ONLY — │
│ Reviewed by Broker _____ Date _____ │
└─────────────────────────────────────┘

Copyright© 2000 Advanced Real Estate Solutions, Inc.      Page 5 of 6        Form RDS · Revised 10/20/00

Plaintiff's EOR-422

Subject Property Address: 940 Elizabeth St San Francisco CA 94114 _____    Date: 05/28/2003

## RDS®ADVISORY DISCLOSURE

INVESTIGATION OF PROPERTY CONDITION: The purchase of a home is one of the most important decisions a buyer will make, and demands careful investigation of all aspects of the Property that affect its value and desirability. Correction of some conditions may be required by law and may involve extensive costs. The TDS, SSC, NHDS and Lead Disclosure are not intended to, and do not, substitute for securing inspection reports and other required disclosures. Buyer is encouraged to attend the inspections so as to enable Buyer to discuss property condition issues directly with the inspectors. Buyer is urged to carefully consider ordering such additional reports and investigations as are recommended by inspectors. Consistent with Buyer's legal duty to exercise reasonable care to protect himself or herself regarding facts that are known to or within the diligent attention or observation of a buyer, Buyer is urged to investigate, without limitation, the following:

A.  CONDITION OF SYSTEMS: Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, energy efficiency, security, appliances/personal property, pool/spa, and all other systems and components should be investigated.

B.  SIZE AND AGE: Any square footage, room dimension, age of Property improvements or lot size figures provided have not been and will not be verified, may not be accurate and should not be relied upon.

C.  PROPERTY LINES AND BOUNDARIES: Fences, hedges, walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. Property lines may be verified only by survey.

D.  SEWER AND SEPTIC SYSTEM: Type, size, adequacy, capacity, conditions and components should be inspected for present and future use, and for any eventual expansion of structure. Property may not be connected to sewer and applicable fees may not have been paid. Septic tank may need to be pumped and leach field should be inspected.

E.  BUILDING PERMITS/NON-PERMITTED CONSTRUCTION: There are risks in purchasing property on which unpermitted work has been done. These risks include, without limitation: (1) the risk that a city or County may require, at Buyer's expense, the remediation or removal of the unpermitted work, may prohibit its use as "habitable living space," or may deny permits for other, unrelated building projects at the Property; (2) the risk that the Property may be in violation of zoning, use and/or occupancy limit ordinances (e.g., by existence of an illegal "in-law" unit), requiring removal or discontinued use; (3) the risk that a possible hazardous condition could be caused by a non-conforming or unpermitted construction; (4) the risk that a lender's appraisal of the Property and the decision to extend financing could be adversely affected; and (5) the risk that Homeowner's Insurance coverage may not be available or that, even if coverage is obtained, homeowner claims might be denied and/or coverage cancelled. Buyer understands that many homes do not comply with all current building codes (which are subject to periodic amendment). *Buyer should analyze the Property's building permit file*, the contents of which may indicate whether structural modifications and other items of construction were done with benefit of properly issued building permits, including written final inspection by an appropriate City or County official. *Buyer is strongly advised not to give up this right*. Since permit documentation and requirements vary among cities and counties, entries made in building files are subject to interpretation. Buyer should rely only on a construction professional and not on the real estate licensees for analysis of the permit file's contents. Buyer understands that some building permit file documentation may be incomplete, illegible, incorrect or missing. Permit history or status is often impossible to establish.

BUILDING RESTRICTIONS: Buyer is alerted that all cities, counties and certain other governmental agencies (e.g., FEMA) continually impose limitations and restrictions regarding house size, configuration, design, materials and other matters affecting home construction. If Buyer intends ever to expand or alter the Property, Buyer should consult with the appropriate professionals and governmental agencies.

G.  RENT AND OCCUPANCY CONTROL: Governmental agencies may impose restrictions limiting the amount of rent that can be charged, specifying a minimal lease term and/or the maximum number of persons who can occupy the Property.

H.  WATER AND WELL SYSTEMS: Buyer should check water source regarding the quantity and quality of water. Well systems and components should be inspected. The Property is subject to water rationing at times of drought.

I.  TOXIC HAZARDS: The Property should be inspected for such toxic hazards as asbestos, formaldehyde, radon, methane, other gases, lead-based paint, fuel tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields and other substances, materials, products or conditions. Remediation costs may be extensive.

J.  SOILS: Soils native to the greater Bay Area are historically expensive in nature and inconsistent and unreliable in behavior and performance. Property may be subject to earth movement, drainage, and structural/foundation problems not visible upon inspection by Buyer or real estate licensees. Moreover, a general physical inspection of Property will not suffice as a current soils report (old soils reports may not account for current soils conditions).

K.  NEIGHBORHOOD CONDITIONS: Buyer should investigate the neighborhood or area conditions including, but not limited to, schools, proximity and adequacy of law enforcement, fire protection and other governmental services, proximity to major entertainment venues (e.g., Shoreline Amphitheater), commercial, industrial, or agricultural activities; criminal activity; transportation issues; construction and development that may affect view or increase traffic; noise or odor from any source; wild and domestic animals; and conditions and influences significant to certain cultures/religions.

L.  IMPACTED PUBLIC SCHOOLS: Due to burgeoning enrollments in Bay Area public schools, many local districts are unable to guarantee that incoming students will be admitted to the schools closest to their family homes. Buyer is advised to consult directly with local school districts for information regarding available classroom space.

M.  NOISE: The Bay Area is served by three international airports, several municipal airports and Moffett Field. Virtually all residential areas are overflown by jet and propeller aircraft at noise and frequency levels that vary depending on aircraft size, route and altitude, on weather and on the Property's proximity to flight paths and airports. Similarly, noise produced by train, bus, light rail, freeways and other causes can be an annoyance or intrusion, depending on the individual. Buyer should inquire of transportation agencies and visit the Property and vicinity at various times to witness noise levels first hand and determine whether they are acceptable.

N.  MEGAN'S LAW (Sex Offender Database): Notice: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a database of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The database is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

O.  FURTHER INQUIRIES: Buyer is advised to make further inquiries and inspections and to consult government agencies, lenders, insurance agents, architects and other appropriate persons and entities concerning the use of the Property under applicable building, energy, electrical, plumbing, mechanical, zoning, fire, health and safety codes and for evaluation of potential hazards.

VERIFICATION: Brokers have not verified and will not personally verify any of the items above, unless otherwise agreed in writing.

Buyer's Initials (_____) (_____)                                                    Seller's Initials _____ (_____)

Copyright© 2000 Advanced Real Estate Solutions, Inc.          Page 6 of 6                    Form RDS   Revised 10/20/00

Plaintiff's EOR-423



## PRDS® AS-IS ADDENDUM

 

THIS "AS-IS" ADDENDUM is hereby made part of the Real Estate Purchase Contract ("Contract") dated 05/28/2003 _____ made by the Buyer: JE Hoffman _____ for the purchase of 940 Elizabeth St _____ City of San Francisco _____ County of San Francisco _____, CA ("Property").

1.  In further consideration of the price and terms of the sale of the Property, Buyer agrees that Buyer is purchasing the Property in its present, existing condition, "AS-IS" and "WHERE-IS," without any obligation of Seller to make any repairs or changes, and without any warranties or representations, expressed or implied, regarding its condition.

2.  Buyer and Seller agree that this ADDENDUM shall supersede and render without force or effect (a) any and all provisions in the Contract that would otherwise make Seller responsible to make repairs or for inspections, certifications or work relating to Structural Pest Control and (b) any and all provisions in the Contract under which Seller warrants that the Property's components, systems and appliances are operative, in working order, and free of damage or defect.

3.  Buyer acknowledges the importance of making a thorough inspection of the Property, including both the land and all improvements located thereon. Buyer acknowledges that Buyer has been provided the opportunity to perform such inspections as well as to obtain information regarding zoning regulations, other governmental requirements, site and physical conditions, and other matters affecting the use and condition of the Property. Buyer takes responsibility for obtaining full and comprehensive inspections of the Property by competent, professional contractors, inspectors and other experts.

4.  Seller agrees to permit Buyer and Buyer's representatives reasonable access to the Property to complete Buyer's inspections; provided, however, that no inspections may be made by any building department inspector or other government employee without the prior written consent of Seller, which shall not be unreasonably withheld or delayed.

5.  Buyer warrants and represents that, with respect to the condition of the Property, Buyer will rely entirely on Buyer's own investigation and information, if any, and not on any information or representations made by Seller or anyone acting on Seller's behalf.

6.  Unless otherwise provided to the contrary in the Contract, (a) Buyer shall retain all contingency rights (including those of physical inspection of the Property) provided in the Contract; (b) Seller shall keep and maintain the Property and its improvements in substantially the same condition they were in as of the date of "Acceptance" (as defined in the Contract); and (c) Seller shall remove all Seller's personal property and debris from the Property prior to close of escrow and shall leave the Property in broom clean condition.

7.  Nothing contained in this ADDENDUM shall relieve or be deemed to relieve Seller of the duty to disclose or otherwise notify Buyer of conditions known by Seller to exist on or about the Property as required pursuant to applicable law, or to relieve Seller of Seller's obligations with respect to smoke detectors and the water heater.

8.  Buyer and Seller agree there are ☒ *no exceptions* ☐ *following exceptions:*

Upon its execution by both parties, the above terms are made an integral part of the aforementioned agreement:

Date: _____      Date: _____
Buyer: _____      Seller: _____
Buyer: _____      Seller: _____

Copyright© 2000 Advanced Real Estate Solutions, Inc.          Form RA1A    Revised 4/00

Plaintiff's EOR-424



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**ADDENDUM**

(C.A.R. Form ADM, Revised 10/01)

No. 1

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Residential Purchase Agreement, ☐ Manufactured Home Purchase Agreement, ☐ Business Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Vacant Land Purchase Agreement, ☐ Residential Income Property Purchase Agreement, ☐ Commercial Property Purchase Agreement, ☐ other _____

dated _____May 28, 2003_____ , on property known as _940 Elizabeth St._____

in which _____Thomas R. Lloyd_____ is referred to as ("Buyer/Tenant") and _____J E Hoffman_____ is referred to as ("Seller/Landlord").

1) Tenant agrees to pay any and all expenses associated with said property including but not limited to property taxes, repairs of any nature, property insurance, etc.

2) The property taxes will be billed out to tenant upon receipt. Tenant must pay taxes to JE Hoffman 15 days prior to due date. Property insurance must be paid by tenant to JE Hoffman upon billing. If tenant does not pay taxes and insurance as billed by the specified due dates, the amount due will accrue interest at the rate of 1% per month. Not paying either taxes or insurance by specified due date shall constitute a default.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _____
Buyer/Tenant _____Thomas R. Lloyd_____

Buyer/Tenant _____

Date _____
Seller/Landlord _____J E Hoffman_____

Seller/Landlord _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1986-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
ADM-11 REVISED 10/01 (PAGE 1 OF 1)

| Reviewed by _____ |
| Broker or Designee _____ Date _____ |



ADDENDUM (ADM-11 PAGE 1 OF 1)

Keller Williams-Silicon Valley 2542 S. Bascom Avenue    , Campbell    CA 95008
Phone:(408)3235800    Fax: (408)5401770    Lisa Grisalin

T6108929.ZFX






**OPTION AGREEMENT**

To be used with a purchase agreement. May
also be used with a lease.

CALIFORNIA
ASSOCIATION
OF REALTORS®

Date __May 28, 2003__ , at __Fresno__ , California
__JE Hoffman__ , ("Optionor"), grants to
__Thomas R. Lloyd__ , ("Optionee"),
an option ("Agreement") to purchase the real property and improvements situated in (city) __San Francisco__ ,
_____ , County of __San Francisco__ ,
California, described as __940 Elizabeth St.__ ("Property") as specified in the
attached: ☐ Real Estate Purchase Agreement ☐ Other _____ , which is incorporated
by this reference as a part of this Agreement, on the following terms and conditions.

1. **OPTION CONSIDERATION:**

   A. __Fifteen Thousand Dollars and 00/99__ Dollars $ __15,000.00__ .
      ☐ (if checked) and/or (circle one); the amount specified in paragraph 6B.
   B. By ☐ cash, ☐ cashier's check, ☐ personal check, or ☒ __To be paid in Escrow__

      made payable to __JE Hoffman__
   C. ☐ Payable upon execution of this Agreement.
   OR ☐ Payable within _____ days after acceptance of this Agreement, by which time Optionee shall have completed a
      due diligence investigation and accepted the condition of the Property. At least 5 (or _____) days before expiration of this time
      period, Optionor shall provide to Optionee (i) any mandatory disclosures (such as those required by paragraph 7), (ii) a
      preliminary title report, and (iii) _____
   OR ☒ __All Disclosures provided w/in 10 days of Optionee exercising Option__
   D. If payment is not made by the time specified in paragraph 1C above, this Agreement shall become immediately null and void.
   E. If this Option is exercised, ☐ all, or ☒ $ __0__ , of the Option Consideration shall be applied toward
      Optionee's down payment obligations under the terms of the attached purchase agreement, upon close of escrow of that
      agreement. Optionee is advised that the full amount of the option consideration applied toward any down payment may not be
      counted by a lender for financing purposes.

2. **OPTION PERIOD:** The Option shall begin on (date) __June 30, 2003__ , and shall end at 11:59 p.m
   (or at ☐ _____ ), on (date) __June 30, 2005__ .

3. **MANNER OF EXERCISE:** Optionee may exercise the Option only by delivering a written unconditional notice of exercise, signed
   by Optionee, to Optionor, or __JE Hoffman__ , who is authorized to receive it, no earlier than
   _____ and no later than __April 15, 2005__
   A copy of the unconditional notice of exercise shall be delivered to the Brokers identified in this Agreement.

4. **EFFECT OF DEFAULT ON OPTION:** Optionee shall have no right to exercise this Option if Optionee has not performed any
   obligation imposed by, or is in default of, any obligation of this Agreement, any addenda, or any document incorporated by
   reference.

5. **NON-EXERCISE:** If the Option is not exercised in the manner specified, within the option period or any written extension thereof, or
   if it is terminated under any provision of this Agreement, then:
   A. The Option and all rights of Optionee to purchase the Property shall immediately terminate without notice; and
   B. All Option Consideration paid, rent paid, services rendered to Optionor, and improvements made to the Property, if any, by
      Optionee, shall be retained by Optionor in consideration of the granting of the Option; and
   C. Optionee shall execute, acknowledge, and deliver to Option or, within 5 (or _____) calendar days of Optionor's request, a
      release, quitclaim deed, or any other document reasonably required by Optionor or a title insurance company to verify the
      termination of the Option.

      Optionee and Optionor acknowledge receipt of copy of this page, which constitutes Page 1 of 3 Pages.
      Optionee's Initials ( _____ ) ( _____ )    Optionor's Initials ( _____ ) ( _____ )

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR
ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means,
including facsimile or computerized formats. Copyright© 1998, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

REVISED 10/98

OFFICE USE ONLY
Reviewed by Broker
or Designee
Date _____

**OPTION AGREEMENT (OA-11 PAGE 1 OF 3)**

Lisa Grimsley
Keller Williams-Silicon Valley 2542 S. Bascom Avenue    Campbell    CA 95008
JH    Fax (408)3401770

EXHIBIT B

134

Plaintiff's EOR-426

Property Address: _940 Elizabeth St., San Francisco, CA  94114_ _____ Date: _May 28, 2003_

6. ☑ **LEASE (If checked):**
The attached lease agreement, dated _____ _May 28, 2003_ _____ , between Optionee as Tenant and Optionor as Landlord, is incorporated by reference as part of this Agreement.

   B. $ _____ _0_ _____ per month of rent actually paid by Optionee shall be treated as Option Consideration pursuant to paragraph 1.

   C. The lease obligations shall continue until termination of the lease. If the Option is exercised, the lease shall continue until the earliest of (i) the date scheduled for close of escrow under the purchase agreement, or as extended in writing, (ii) the close of escrow of the purchase agreement, or (iii) mutual cancellation of the purchase agreement.

   D. ~~In addition to the reason stated in paragraph 4, Optionee shall have no right to exercise this Option if Optionor, as landlord, has given to Optionee, as tenant, two or more notices to cure any default or non-performance under the terms of the lease.~~

7. ~~**DISCLOSURE STATEMENTS:** Unless exempt, if the Property contains one-to-four residential dwelling units, Optionor must comply with Civil Code §1102 et seq., by providing Optionee with a Real Estate Transfer Disclosure Statement and Natural Hazard Disclosure Statement.~~

8. **RECORDING:** Optionor or Optionee shall, upon request, execute, acknowledge, and deliver to the other a memorandum of this Agreement for recording purposes. All resulting fees and taxes shall be paid by the party requesting recordation.

9. **DAMAGE OR DESTRUCTION:** If, prior to exercise of this Option, by no fault of Optionee, the Property is totally or partially damaged or destroyed by fire, earthquake, accident or other casualty, Optionee may cancel this Agreement by giving written notice to Optionor, and is entitled to the return of all Option Consideration paid. However, if, prior to Optionee giving notice of cancellation to Optionor, the Property has been repaired or replaced so that it is in substantially the same condition as of the date of acceptance of this Agreement, Optionee shall not have the right to cancel this Agreement.

10. **PURCHASE AGREEMENT:** All of the time limits contained in the attached purchase agreement, which begin on the date of Acceptance of the purchase agreement, shall instead begin to run on the date the Option is exercised. After exercise of this Option, if any contingency in the attached purchase agreement, including but not limited to any right of inspection or financing provision, is not satisfied or is disapproved by Optionee at any time, all option consideration paid, rent paid, services rendered to Optionor, and improvements to the Property, if any, by Optionee, shall be retained by Optionor in consideration of the granting of the Option.

11. **NOTICES:** Unless otherwise provided in this Agreement, any notice, tender, or delivery to be given by either party to the other may be performed by personal delivery or by registered or certified mail, postage prepaid, return receipt requested, and shall be deemed delivered when mailed (except for acceptance of the offer to enter into this Agreement, which must be done in the manner specified in paragraph 16). Mailed notices shall be addressed as shown below, but each party may designate a new address by giving written notice to the other.

12. **DISPUTE RESOLUTION:** Optionee and Optionor agree that any dispute or claim arising between them out of this Agreement shall be decided by the same method agreed to for resolving disputes in the attached purchase agreement.

13. **OTHER TERMS AND CONDITIONS,** including attached supplements: _____

_1) Residential Lease After Sale Agreement_

_2) Option shall remain in full force unless the terms and conditions set forth in the "Residential Lease After Sale Agreement" is in breach. Any breach under the terms of the "Residential Lease After Sale Agreement" shall make the Option null and void._

14. **ATTORNEY'S FEES:** In any action, proceeding, or arbitration between Optionee and Optionor arising out of this Agreement, the prevailing Optionee or Optionor shall be entitled to reasonable attorney's fees and costs from the non-prevailing Optionee or Optionor.

Optionee and Optionor acknowledge receipt of copy of this page, which constitutes Page 2 of __3__ Pages.
Optionee's Initials ( ____ )( ____ )   Optionor's Initials ( ____ )( ____ )

┌─ OFFICE USE ONLY ─┐
Reviewed by Broker
or Designee _____
Date _____

**REVISED 10/98**
**OPTION AGREEMENT (OA-11 PAGE 2 OF 3)**

JH

Plaintiff's EOR-427

Property Address: 940 Elizabeth St., San Francisco, CA  94114                    Date: May 28, 2003

15. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete, and exclusive expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement may not be extended, amended, modified, altered, or changed, except in writing signed by Optionee and Optionor.

16. **OFFER:** This is an offer for an Option to purchase Property on the above terms and conditions. Unless Acceptance of Offer is signed by Optionor, and a signed copy delivered in person, by mail, or facsimile, and personally received by Optionee, or by ___Asher Robertson___ , who is authorized to receive it, by (date) ___June 30, 2003___ , at , ___5:00___ . ☐ AM ☒ PM , the offer shall be deemed revoked. Optionee has read and acknowledges receipt of a copy of the offer. This Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

OPTIONEE _____

OPTIONEE
Address _____

Telephone _____ Fax _____

17. **BROKER COMPENSATION:** Optionor agrees to pay compensation for services as follows:
_____ , to _____ , Broker, and
_____ , to _____ , Broker,
payable upon execution of this Agreement.

18. **ACCEPTANCE OF OPTION:** Optionor warrants that Optionor is the owner of the Property or has the authority to execute this Agreement. Optionor accepts and agrees to grant an Option to purchase the Property on the above terms and conditions.

Checked: ☐ SUBJECT TO ATTACHED COUNTER OFFER, DATED _____ .

OPTIONOR _____

OPTIONOR
Address _____

Telephone _____ Fax _____

Real Estate Brokers are not parties to the Agreement between Optionee and Optionor.

Broker _____ By _____ Date _____

Address _____

Telephone _____ Fax _____

Broker _____ By _____ Date _____

Address _____

Telephone _____ Fax _____

This form is available for use by the entire real estate industry. It is intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its code of Ethics.

Page 3 of __3__ Pages.

OFFICE USE ONLY
Reviewed by Broker
or Designee _____
Date _____

**OPTION AGREEMENT (OA-11 PAGE 3 OF 3)**

T3791891
136

JH

Plaintiff's EOR-428

# NOTICE REQUIRED BY CALIFORNIA LAW

## UNTIL YOUR RIGHT TO CANCEL THIS CONTRACT HAS ENDED, H & B PROPERTIES, LLC OR ANYONE WORKING FOR H & B PROPERTIES, LLC CANNOT ASK YOU TO SIGN OR HAVE YOU SIGN ANY DEED OR ANY OTHER DOCUMENT.

### NOTICE OF CANCELLATION

DATE: *May 28, 2003*

YOU MAY CANCEL THIS CONTRACT FOR THE SALE OF YOUR HOUSE WITHOUT PENALTY OR OBLIGATION AT ANY TIME BEFORE _6 - 4 - 03_ TIME _12:01 AM_

Seller has the right to cancel until midnight of the 5th business day following the day on which Seller signs contract. ("Business Day" means any day except Sunday/holidays) or until 8:00 A.M. on day of foreclosure sale, whichever occurs first.

TO CANCEL THIS TRANSACTION, PERSONALLY DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR SEND A TELEGRAM TO:

BUYER _Jeff Hoffman_ ADDRESS _5132 N. Palm Ave # 103_

_Fresno, CA 93704_

NOT LATER THAN: DATE _6/4/03_ TIME _12:01 am_

I HEREBY CANCEL THIS TRANSACTION

Seller_____ Date_____

Seller_____ Date_____

I HAVE RECEIVED THIS NOITCE TO CANCEL.

Buyer_____ Date_____

*Thomas H. Lloyd*

EXHIBIT C

JH

137

Plaintiff's EOR-429



**CALIFORNIA
ASSOCIATION
OF REALTORS®**



## RESIDENTIAL LEASE AFTER SALE
### Seller in Possession After Close of Escrow

_____ JE Hoffman _____ ("Landlord") an
Thomas R. Lloyd _____ ("Tenant") agree as follow

1. **PROPERTY:**
   A. Landlord rents to Tenant and Tenant rents from Landlord, the real property and improvements described as _____
      _____ 940 Elizabeth St., San Francisco, CA  94114 _____ ("Premises
   B. The following personal property is included _None_ _____

2. **SALE AGREEMENT:** Landlord as Buyer, and Tenant as Seller, have entered into a purchase and sale agreement for the real property describ
   above. Close of escrow for that agreement is scheduled to occur on (date) _____June 30, 2003_____ .
3. **TERM:** The term begins on the date that escrow closes on the purchase and sale agreement ("Commencement Date") (Check A or B):
   ☒ A. Month-to-month and continues as a month-to-month tenancy. Either party may terminate the tenancy by giving written notice to the other
        least 30 days prior to the intended termination date, subject to any applicable local laws. Such notice may be given on any date.
   ☐ B. Lease and shall terminate on (date) _____ at _____ ☐ AM ☐ PM.
        Any holding over after the term of this Agreement expires, with Landlord's consent, shall create a week-to-week tenancy that either party m
        terminate on 7 days written notice. Rent shall be at a rate equal to the prorated rent for the immediately preceding period and unless otherw
        notified by Landlord is payable in advance. All other terms and conditions of this Agreement shall remain in full force and effect.
4. **RENT:**
   A. Tenant agrees to pay rent at the rate of $ 3,595.64 per month for the term of the Agreement.
   B. Rent is payable in advance on the 1st or ☐ _____ day of each calendar month, (or if checked ☐ in full for the entire rental period at cl
      of escrow on the purchase and sale agreement) and is delinquent on the next day.
   C. If Commencement Date falls on any day other than the 1st of the month, rent shall be prorated based on a 30-day period. If Tenant has paid o
      full month's rent in advance of Commencement Date, rent for the second calendar month shall be prorated based on a 30-day period.
   D. **PAYMENT:** The rent shall be paid to (name) _____ JE Hoffman _____ , at (address) _____5332 N. Palm Ave._____
      _____Suite 103  Fresno, CA 93704_____ , or at any other location specified by Landlord in writing to Tena
5. **SECURITY DEPOSIT:**
   A. Tenant agrees to pay $ _____ as a security deposit. Security deposit will be: ☐ given to the Landlord of the Premises; ☐ held
      Landlord's Broker's trust account; or ☐ held in escrow to be used for the purchase and sale agreement and released to Landlord upon the cl
      of escrow under the purchase and sale agreement.
   B. All or any portion of the security deposit may be used, as reasonably necessary, to: (1) cure Tenant's default in payment of rent, Late Charg
      non-sufficient funds (" NSF") fees, or other sums due; (2) repair damage, excluding ordinary wear and tear, caused by Tenant or by a guest
      licensee of Tenant; (3) clean Premises, if necessary, upon termination of tenancy; and (4) replace or return personal property or appurtenanc
      SECURITY DEPOSIT SHALL NOT BE USED BY TENANT IN LIEU OF PAYMENT OF LAST MONTH'S RENT. If all or any portion of the
      security deposit is used during tenancy, Tenant agrees to reinstate the total security deposit within five days after written notice is delivered
      Tenant. Within three weeks after Tenant vacates the Premises, or immediately upon cancellation of the purchase and sale agreement, Land
      shall: (1) furnish Tenant with an itemized statement indicating the amount of any security deposit received and the basis for its disposition, and
      return any remaining portion of security deposit to Tenant.
   C. No interest will be paid on security deposit unless required by local ordinance.
   D. If security deposit is held by Owner, Tenant agrees not to hold Broker responsible for its return. If security deposit is held in Owner's Broker's tr
      account, and Broker's authority is terminated before expiration of this Agreement, and security deposits are released to someone other th
      Tenant, then Broker shall notify Tenant, in writing, where or to whom security deposit has been released. Once Tenant has been provided su
      notice, Tenant agrees not to hold Broker responsible for security deposit.
   E. Landlord and Tenant are advised that release of funds from escrow requires separate written instructions.

The copyright laws of the United States (Title 17 U.S. Code) forbid the
unauthorized reproduction of this form, or any portion thereof, by
photocopy machine or any other means, including facsimile or
computerized formats. Copyright© 1995-2000, CALIFORNIA
ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Landlord and Tenant acknowledge receipt of copy of this page.
Landlord's Initials ( ___ ) ( ___ )
Tenant's Initials ( _JH_ ) ( ___ )

**REVISION DATE 10/2000**
**RLAS-11 (PAGE 1 OF 4)**

Reviewed by
Broker or Designee _____ Date _____

### RESIDENTIAL LEASE AFTER SALE (RLAS-11 PAGE 1 OF 4)

Lisa Grindin
Keller Williams-Silicon Valley 2542 S. Bascom Avenue    , Campbell      CA 95008          Phone:



73791899

JH

130

Premises: _940 Elizabeth St., San Francisco, CA  94114_                           Date: _May 28, 2003_

**6. MOVE-IN COSTS RECEIVED/DUE:**

| Category | Total Due | Payment Received | Balance Due | Date Due |
|---|---|---|---|---|
| Rent from _06/30/2003_ to _07/31/2003_ (date) | $3,715.49 | | $3,715.49 | 06/30/2003 |
| *Security Deposit | | | | |
| Other | | | | |
| Other | | | | |
| Total | $3,715.49 | | $3,715.49 | |

*The maximum amount that Landlord may receive as security deposit, however designated, cannot exceed two month's rent for an unfurnished premises, and three month's rent for a furnished premises.

**7. PARKING: (Check A or B)**

☒ A. Parking is permitted as follows: _As per city and county ordinances_

OR ☐ B. Parking is not permitted on the Premises.

**8. STORAGE: (Check A or B)**

☒ A. Storage is permitted as follows: _As per city and county ordinances_

The right to storage space ☐ is, ☐ is not, included in the rent charged pursuant to paragraph 3. If not included in rent, storage space shall be an additional $ _____ per month. Tenant shall store only personal property that Tenant owns, and shall not store property that is claimed by another or in which another has any right, title, or interest. Tenant shall not store any improperly packaged food or perishable goods, flammable materials, explosives, or other inherently dangerous material.

OR ☐ B. Storage is not permitted on the Premises.

**9. LATE CHARGE/NSF CHECKS:** Tenant acknowledges that either late payment of rent or issuance of a non-sufficient funds ("NSF") check may cause Landlord to incur costs and expenses, the exact amount of which are extremely difficult and impractical to determine. These costs may include, but are not limited to, processing, enforcement and accounting expenses, and late charges imposed on Landlord. If any installment of rent due from Tenant is not received by Landlord within 5 (or ☐ _____) calendar days after date due, or if a check is returned NSF, Tenant shall pay Landlord, respectively, an additional sum of $ _215.74_ as a Late Charge and $25.00 as a NSF fee, either or both of which shall be deemed additional rent. Landlord and Tenant agree that these charges represent a fair and reasonable estimate of the costs Landlord may incur by reason of Tenant's late or NSF payment. Any Late Charge or NSF fee due shall be paid with the current installment of rent. Landlord's acceptance of any Late Charge or NSF fee shall not constitute a waiver as to any default of Tenant. Landlord's right to collect a Late Charge or NSF fee shall not be deemed an extension of the date rent due under paragraph 3, or prevent Landlord from exercising any other rights and remedies under this Agreement, and as provided by law.

**10. CONDITION OF PREMISES:** Tenant has examined Premises, all furniture, furnishings, appliances, landscaping, if any, and fixtures, including smoke detector(s) and acknowledges that these items are clean and in operative condition, with the following exception _____ _No Exceptions_

**11. UTILITIES:** Tenant agrees to pay for all utilities and services, and the following charges: _____ except _____ _No Exceptions_ _____, which shall be paid for by Landlord. If any utilities are not separately metered, Tenant shall pay Tenant's proportional share, as reasonably determined by Landlord.

**12. OCCUPANTS:** The Premises are for the sole use as a personal residence by the following named persons only: _Thomas R. Lloyd_

**13. PETS:** No animal or pet shall be kept on or about the Premises without Landlord's prior written consent, except _____

**14. RULES/REGULATIONS:** Tenant agrees to comply with all rules and regulations of Landlord that are at any time posted on the Premises or delivered to Tenant. Tenant shall not, and shall ensure that guests and licensees of Tenant shall not, disturb, annoy, endanger, or interfere with other tenants of the building or neighbors, or use the Premises for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing, transporting illicit drugs or other contraband, or violate any law or ordinance, or commit a waste or nuisance on or about the Premises.

**15. CONDOMINIUM/PLANNED UNIT DEVELOPMENT:** ☐ (if checked) The Premises is a unit in a condominium, planned unit, or other development governed by an owner's association. The name of the homeowner's association ("HOA") is _____
Tenant agrees to comply with all covenants, conditions and restrictions, bylaws, rules, regulations and decisions of HOA. Landlord shall provide Tenant copies of rules and regulations, if any. Tenant shall reimburse Landlord for any fines or charges imposed by HOA or other authorities, due to any violation by Tenant, or the guests or licensees of Tenant.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1995-2000, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Landlord and Tenant acknowledge receipt of copy of this page.
Landlord's Initials ( _____ ) ( _____ )
Tenant's Initials ( _____ ) ( _____ )

REVISION DATE 10/2000
RLAS-11 (PAGE 2 OF 4)

Reviewed by
Broker or Designee _____ Date _____

**RESIDENTIAL LEASE AFTER SALE (RLAS-11 PAGE 2 OF 4)**

JH

Plaintiff's EOR-431

Premises: _940 Elizabeth St., San Franc.  o, CA  94114_                                Date: May 28, 2003

16. MAINTENANCE:

A. Tenant shall properly use, operate and safeguard Premises, including if applicable, any landscaping, furniture, furnishings, and appliances, and all mechanical, electrical, gas and plumbing fixtures, and keep them clean and sanitary. Tenant shall immediately notify Landlord, in writing, of any problem, malfunction or damage. Tenant shall pay for all repairs or replacements caused by Tenant, or guests or licensees of Tenant, excluding ordinary wear and tear. Tenant shall pay for all damage to Premises as a result of failure to report a problem in a timely manner. Tenant shall pay for repair of drain blockages or stoppages, unless caused by defective plumbing parts or tree roots invading sewer lines.

B. ☐ Landlord, ☒ Tenant, shall water the garden, landscaping, trees and shrubs, except _No Exceptions_

C. ☐ Landlord, ☒ Tenant shall maintain the garden, landscaping, trees and shrubs, except _No Exceptions_

17. ALTERATIONS: Tenant shall not make any alterations in or about the Premises without Landlord's prior written consent, including painting wallpapering, adding or changing locks, installing antenna or satellite dish, placing signs, displays or exhibits, or using screws, fastening devices large nails or adhesive materials.

18. KEYS/LOCKS:

A. Tenant acknowledges possession of: ____ key(s) to Premises; _____ remote control device(s) for garage door/gate opener(s); _____ key(s) to mailbox; ___ key(s) to common area(s); and _All Keys / Openers tenant currently possesses_

B. If Tenant rekeys existing locks or opening devices, Tenant shall immediately deliver copies of all keys to Landlord. Tenant shall pay all costs and charges related to loss of any keys or opening devices. Tenant may not remove locks, even if installed by Tenant.

19. ENTRY: Tenant shall make Premises available to Landlord or representative for the purpose of entering to make necessary or agreed repairs decorations, alterations, or improvements, or to supply necessary or agreed services, or to show Premises to prospective or actual purchasers tenants, mortgagees, lenders, appraisers, or contractors. Landlord and Tenant agree that 24 hours notice (oral or written) shall be reasonable and sufficient notice. In an emergency, Landlord or representative may enter Premises at any time without prior notice.

20. SIGNS: Tenant authorizes Landlord to place For Sale/Lease signs on the Premises.

21. ASSIGNMENT/SUBLETTING: Tenant shall not sublet all or any part of Premises, or assign or transfer this Agreement or any interest in it, without prior written consent of Landlord. Unless such consent is obtained, any assignment, transfer or subletting of Premises or this Agreement or tenancy by voluntary act of Tenant, operation of law or otherwise, shall be null and void, and at the option of Landlord, terminate this Agreement. Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval, and, if approved sign a separate written agreement with Landlord and Tenant. Landlord's consent to any one assignment, transfer or sublease, shall not be construed as consent to any subsequent assignment, transfer or sublease, and does not release Tenant of Tenant's obligation under this Agreement.

22. ☐ LEAD PAINT (CHECK IF APPLICABLE): Premises was constructed prior to 1978. In accordance with federal law, Landlord gives and Tenant acknowledges receipt of the disclosures on the attached form (such as C.A.R. Form FLD-14) and a federally approved lead pamphlet.

23. TENANT'S OBLIGATIONS UPON VACATING PREMISES: Upon termination of Agreement, Tenant shall: (a) give Landlord all copies of all keys opening devices to Premises, including any common areas; (b) vacate Premises and surrender it to Landlord empty of all persons; (c) vacate any/ parking and/or storage space; (d) deliver Premises to Landlord in the same condition as referenced in paragraph 10; (e) clean Premises, including professional cleaning of carpet and drapes; (f) give written notice to Landlord of Tenant's forwarding address; and (g) _____

All improvements installed by Tenant, with or without Landlord's consent, become the property of Landlord upon termination.

24. BREACH OF CONTRACT/EARLY TERMINATION: In addition to any obligations established by paragraph 23, in event of termination by Tenant prior to completion of the original term of Agreement, Tenant shall also be responsible for lost rent, rental commissions, advertising expenses, and painting costs necessary to ready Premises for re-rental.

25. DAMAGE TO PREMISES: If, by no fault of Tenant, Premises are totally or partially damaged or destroyed by fire, earthquake, accident or other casualty, which render Premises uninhabitable, either Landlord or Tenant may terminate Agreement by giving the other written notice. Rent shall abated as of date of damage. The abated amount shall be the current monthly rent prorated on a 30-day basis. If Agreement is not terminated Landlord shall promptly repair the damage, and rent shall be reduced based on the extent to which the damage interferes with Tenant's reasonal use of Premises. If damage occurs as a result of an act of Tenant or Tenant's guests, only Landlord shall have the right of termination, and no reduction in rent shall be made.

26. ~~INSURANCE: Tenant's personal property and vehicles are not insured by Landlord or, if applicable, HOA, against loss or damage due to fire, theft, vandalism, rain, water, criminal or negligent acts of others, or any other cause. Tenant is to carry Tenant's own insurance (renter's insurance) to protect Tenant from any such loss.~~

27. ~~WATERBEDS: Tenant shall not use or have waterbeds on the Premises unless: (a) Tenant obtains a valid waterbed insurance policy; (b) Tenant increases the security deposit in an amount equal to one-half of one month's rent; and (c) the bed conforms to the floor load capacity of Premises.~~

28. WAIVER: The waiver of any breach shall not be construed as a continuing waiver of the same or any subsequent breach.

29. NOTICE: Notices may be served at the following address, or at any other location subsequently designated:

| Landlord: | JE Hoffman | Tenant: | Thomas R. Lloyd |
| | 5132 N. Palm Ave. Suite 103 | | 940 Elizabeth St. |
| | Fresno, CA 93704 | | San Francisco, CA  94114 |

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright© 1995-2000, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Landlord and Tenant acknowledge receipt of copy of this page.
Landlord's initials ( ____ )( ____ )
Tenant's initials ( ____ )( ____ )

Reviewed by
Broker or Designee _____ Date _____

REVISION DATE 10/2000
RLAS-11 (PAGE 3 OF 4)

RESIDENTIAL LEASE AFTER SALE (RLAS-11 PAGE 3 OF 4)

JH

Plaintiff's EOR-432

Premises: 940 Elizabeth St., San Fran___ co, CA 94114                     Date: May 28, 2003

30. **TENANCY STATEMENT (ESTOPPEL CERTIFICATE):** Tenant shall execute and return a tenancy statement (estoppel certificate) delivered to Tenant by Landlord or Landlord's agent within 3 days after its receipt. The tenancy statement acknowledges that this Agreement is unmodified and in full force, or in full force as modified, and states the modifications. Failure to comply with this requirement shall be deemed Tenant's acknowledgment that the tenancy statement is true and correct, and may be relied upon by a lender or purchaser.

31. **JOINT AND INDIVIDUAL OBLIGATIONS:** If there is more than one Tenant, each one shall be individually and completely responsible for the performance of all obligations of Tenant under this Agreement, jointly with every other Tenant, and individually, whether or not in possession.

32. ☐ **MILITARY ORDNANCE DISCLOSURE:** (if applicable and known to Landlord) Premises is located within one mile of an area once used for military training, and such area may contain potentially explosive munitions.

33. **OTHER TERMS AND CONDITIONS/SUPPLEMENTS:** See Addendum #1

The following ATTACHED supplements are incorporated in this Agreement: _____

34. **ATTORNEY'S FEES:** In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney's fees and costs.

35. **ENTIRE CONTRACT:** Time is of the essence. All prior agreements between Landlord and Tenant are incorporated in this Agreement whic constitutes the entire contract. It is intended as a final expression of the parties' agreement, and may not be contradicted by evidence of any pri agreement or contemporaneous oral agreement. The parties further intend this Agreement to constitute the complete and exclusive statement of i terms, and that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving this Agreement. An provision of this Agreement that is held to be invalid shall not affect the validity or enforceability of any other provision in this Agreement.

36. **AGENCY:**

A. **Confirmation:** The following agency relationship(s) are hereby confirmed for this transaction:

Listing Agent: (Print firm name) _____ is the agent

(check one): ☐ the Tenant exclusively; or ☐ the Landlord exclusively; or ☐ both the Tenant and Landlord.

Selling Agent: (Print firm name) _____ (if not same as Listing Agent) is the agent

(check one): ☐ the Landlord exclusively; or ☐ both the Landlord and Tenant.

B. **Disclosure:** ☐ (if checked): The term of this lease exceeds one year. An agency disclosure form has been provided to Landlord and Tena who each acknowledge its receipt.

Landlord and Tenant acknowledge and agree that Brokers: (a) do not guarantee the condition of the Premises; (b) cannot verify representations made by others; (c) cannot provide legal or tax advice; (d) will not provide other advice or information that exceeds the knowledge, education or experience required to obtain a real estate license. Furthermore, if Brokers are not also acting as Landlord in this Agreement, Brokers: (e) do not decide what rental rate a Tenant should pay or Landlord should accept; and (f) do not decide upon the length or other terms of tenancy. Landlord and Tenant agree that they will seek legal, tax, insurance, and other desired assistance from appropriate professionals.

Tenant _____ *Thomas R. Lloyd* _____ Date _____

Tenant _____ Date _____

Landlord _____ Date _____
(owner or agent with authority to enter into this lease)

Landlord _____ Date _____
(owner or agent with authority to enter into this lease)

Agency relationships are confirmed as above. Real estate brokers not acting as Landlord in this Agreement are not a party to the Agreement betwe Landlord and Tenant.

Real Estate Broker _____ By _____ Date _____
(Selling Firm Name)

Address _____ Telephone _____ Fax _____

Real Estate Broker _____ By _____ Date _____
(Listing Firm Name)

Address _____ Telephone _____ Fax _____

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL EST. TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership i which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

REVISION DATE 10/2000
RLAS-11 (PAGE 4 OF 4)

Reviewed by _____
Broker or Designee _____ Date _____

**RESIDENTIAL LEASE AFTER SALE (RLAS-11 PAGE 4 OF 4)**

JH

Plaintiff's EOR-433

1  TODD ROTHBARD
   ATTORNEY AT LAW #67351
2  4261 Norwalk Drive, #107
   San Jose, California 95129
3  Tel. : (408)244-4200

4  Attorney for the Plaintiff

ENDORSED
F I L E D
San Francisco County Superior Court

JUN 0 2 2004

GORDON PARK-LI, Clerk
BY: _____
        Deputy Clerk
DE LA VEGA-NAVARRO, Rossaly

5

6

7

8      SUPERIOR COURT FOR THE SAN FRANCISCO JUDICIAL DISTRICT
              UNLIMITED CIVIL JURISDICTION
9         COUNTY OF    San Francisco      , STATE OF CALIFORNIA

10  H & B PROPERTIES, LLC                    )      CUD-04-610594
11                        Plaintiff,         )      No.
                                             )
        vs.                                  )
12  THOMAS R. LLOYD,                         )      COMPLAINT FOR
                                             )      UNLAWFUL DETAINER
13                                           )
    DOES I through V, inclusive              )        *The total damages sought
1                                            )        in this case are  $41,829.29
4                       Defendant(s).        )        plus $119.85 per day
15      Plaintiff alleges:                          beginning June 1, 2004.

16                                    I

17     At all times herein mentioned, plaintiff was, and now is, a limited liability corporation

1   licensed to do business in the State of California and doing business in the
8
19  above entitled County and Judicial District.

20                                    II

21     The real property owned by plaintiff, possession of which is sought

22  in this action,  is situated at  940 Elizabeth Street, San Francisco, 94114,

23                        San Francisco County, California , in the above named

24  Judicial District.

25  ////////////

26  ////////////

27  ////////////

28  ////////////

                                    -1-
                        UNLAWFUL DETAINER              ELB-550



EXHIBIT E
Plaintiff's EOR-434

### III

The true names and capacities, whether individual corporate, associate, or otherwise, of defendant(s) herein named as DOES I through V inclusive, are unknown to plaintiff, who therefore sues said defendant(s) by such fictitious names and prays leave to amend this complaint to show the true names and capacities as they become known.

### IV

On or about June 30, 2003                                , plaintiff leased to defendant(s) the above described premises on a month to          month basis pursuant to a written rental agreement. A copy of said agreement is attached hereto, marked "EXHIBIT A", and made a part hereof.

### V

By the terms of said agreement, defendant(s) were required to pay to plaintiff the sum of $ 3595.64        each month as and for the rental of said premises; said sum becomes payable each month in full as of the first      day of each month.

### VI

Defendant(s) have not paid the following rent installments required by the terms of said agreement: $ 41,829.29        being the total rent due and unpaid as of May 31, 2004.        All of said amount accrued within the twelve month period immediately prior to the date of service of the 3-day notice. VII

On May 27, 2004                      , plaintiff caused to be served on defendant(s) a written notice stating the amount of rent due and requiring defendant(s) to pay the whole thereof or deliver up possession of the premises within the three days after service of the notice. A copy of said notice is attached hereto, marked "EXHIBIT B", and made a part hereof.
"To the extent applicable, plaintiff has complied with all requirements of the San    Rent Stabilization Ordinance."
        Francisco

-2-

UNLAWFUL DETAINER

ELB-551

VIII

More than three days have elapsed since the service of said notice, but no part of said rent has been paid. Defendant(s) remain in possession of said premises without plaintiff's consent, plaintiff is entitled to possession of said premises.

IX

The reasonable rental value of said premises is the sum of $ 119.85 per day, and damages to plaintiff caused by defendant's unlawful detention will accrue at said rate from June 1, 2004 and will continue to accrue at said rate as long as defendant(s) remain in possession.

X

Said agreement provided for the payment of attorney's fees, costs, etc. to the prevailing party in the event of litigation to enforce its terms. Plaintiff has been compelled to commence litigation and hence is entitled to recover the sum of $ 2400.00 as attorney's fees or such larger sum as may prove justified pending proof at time of trial or hearing herein.

WHEREFORE, plaintiff prays judgment as follows:

1.  For restitution of possession of said premises.

2.  For unpaid rent in the total sum of $ 41,829.29.

3.  For damages at the rate of $ 119.85 per day from June 1, 2004 for each day defendant(s) continue in possession of said premises.

4.  For attorney's fees of at least $ 2400.00.

5.  For costs herein, and for such other and further relief as to the Court may seem just.

Dated: June 2, 2004

TODD ROTHBARD
Attorney for the Plaintiff

-3-
UNLAWFUL DETAINER

ELP-552

Plaintiff's EOR-436

## VERIFICATION

I, TODD ROTHBARD, hereby declare:

I am the attorney for the plaintiff in the above entitled action, and as such make this VERIFICATION for and on behalf of said plaintiff.

I have read the foregoing COMPLAINT FOR UNLAWFUL DETAINER and know the contents thereof. Based upon information and/or belief, I believe the facts stated therein to be true.

The reason that the foregoing COMPLAINT is verified by me and not by a representative of the plaintiff is that such representative is absent from the county where I have my office.

I declare, under penalty of perjury, that the foregoing is true and correct, and that this VERIFICATION is executed on JUN 0 2 2004 at San Jose, Santa Clara County, California.

TODD ROTHBARD
Attorney for Plaintiff

ELB-553

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement ("the Agreement") is entered into by the following parties:

1.    THOMAS R. LLOYD, his assigns, successors, representatives, agents, attorneys and employees of any of them, hereinafter referred to as "LLOYD";

2.    H & B PROPERTIES, L.L.C., its assigns, successors, representatives, partners, members, agents, attorneys and employees of any of them, hereinafter referred to as "H & B";

4.    J. EDWARDS COMPANY INVESTMENT GROUP, INC., its assigns, successors, representatives, shareholders, officers, directors, agents, attorneys and employees of any of them, hereinafter referred to as "J. EDWARDS"; and

3.    JEFFREY E. HOFFMAN, his assigns, successors, representatives, agents, attorneys and employees of any of them, hereinafter referred to as "HOFFMAN".

This Agreement is entered into by the parties with reference to the following facts:

### RECITALS

A.  WHEREAS, LLOYD was the owner of real property commonly known as 940 Elizabeth Street, San Francisco, California ("the Property"); and

B.  WHEREAS, LLOYD came in contact with HOFFMAN at J. EDWARDS in his efforts to remedy a personal financial situation; and

C.  WHEREAS, HOFFMAN is a member of H & B, which is in the business of investing in real property; and

D.  WHEREAS, H & B purchased the Property from LLOYD, giving LLOYD a one-year lease ("the Lease") and an option to repurchase the Property ("the Option" and the Repurchase Agreement") within one year following the purchase by H & B; and

E.  WHEREAS, LLOYD fell behind in his lease payments, and

-1-



Plaintiff's EOR-438

F.   WHEREAS, H & B served on LLOYD a Three-Day Notice to Pay Rent or Quit, which was followed by the filing of an unlawful detainer complaint in San Francisco County Superior Court, identified as Case No. CUD04-610594 ("the Action"); and

G.   WHEREAS, LLOYD filed an Answer claiming, inter alia, that the sales transaction was a disguised security device and thereby unenforceable;

The parties now desire to resolve their differences on the terms and conditions set forth hereinbelow.

## AGREEMENT AND MUTUAL GENERAL RELEASE

1.a.   In consideration of the foregoing, and the promises and conditions set forth hereinbelow, LLOYD, H & B, HOFFMAN and J. EDWARDS hereby mutually release and forever discharge each other and their respective heirs, officers, directors, trustees, shareholders, members, agents, assigns, successors, servants, employees, attorneys, subsidiaries, heirs, executors and administrators of and from any and all debts, demands, actions, causes of action, judgments, liabilities, liens and claims of every kind and nature whatsoever, whether known or unknown, liquidated or contingent, arising from the Action or arising from or related to the Property, the purchase by H & B, the Lease, the Option or the Repurchase Agreement, except as set forth hereinbelow.

b.   It is understood and agreed that this is a full and final release applying to all unknown and unanticipated injuries, or other damages to the parties arising from the matters asserted in the Action, or in any way related to the Property. LLOYD, H & B, HOFFMAN and J. EDWARDS, and each of them, expressly waive the provisions of California Civil Code Section 1542 which provides as follows:

A general release does not extend to claims which the creditor does not know or suspect to exists in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

-2

Plaintiff's EOR-439

2.    The purpose of this Agreement is to resolve claims which are disputed, and to reach a compromise. Nothing contained herein shall be deemed as an admission by any party to this Agreement of any liability and/or wrongdoing of any kind, all such liability and/or wrongdoing being expressly denied.

3.    Upon execution of this Agreement by H & B, H & B shall forebear continuance of prosecution of the Action, as well as forbearance of any other forms of enforcement of H & B's rights under the Lease Agreement or Option Agreement for a period of 90 days commencing on July 12, 2004.

4.    LLOYD and H & B shall execute within one week following execution of this Agreement, a Stipulation for Entry of Judgment ("the Stipulation") in the Action. The Stipulation shall be for entry of a money judgment in the amount of $ 60,886.17, plus attorneys; fees and court costs in the amount of $3,500, as well as for immediate possession of the Property. The Stipulation shall be held by H & B, without filing for at least 90 days from the July 12, 2004, the date of the oral agreement between LLOYD, HOFFMAN and H & B ("the forbearance period"), allowing LLOYD that amount of time to dispose of or repurchase the Property. A copy of the Stipulation is attached hereto as Exhibit "A".

5.    During the 90-day forbearance period, LLOYD may do either of the following: a) find a buyer willing to complete a purchase of the Property within the 90 days; or b) repurchase the Property, himself, by paying all monies now due H & B as well as those which will come due during the 90-day forbearance period as a result of LLOYD'S status as a holdover tenant, and paying off all existing debt within the 90-day period.

6.    In the event that LLOYD does not perform either under paragraph 5(a) or 5(b), above, then, at the end of the 90-day forbearance period, H & B shall have the right to file the Stipulation with the Court and obtain a court Judgment in the Action, and may proceed with a Writ of Possession as provided by California law. Upon obtaining possession, H & B shall immediately

-3-

Plaintiff's EOR-440

list the Property for fair market value. Upon the sale of the Property, all secured debt and H & B's demand amount shall first be satisfied and all remaining monies shall be paid to LLOYD.

7.      In the event that LLOYD does perform under either 5(a) or 5(b), and the default under the lease agreement is cured, H & B shall cause to be filed a Request for Dismissal of the Unlawful Detainer action in its entirety, and the Stipulation shall be null and void.

8.      The parties acknowledge and agree that they have been represented in the negotiation and review of this Agreement by counsel of their own choosing, or have had the opportunity to do so, that they have read this Agreement or had it read to them by counsel, that they understood the Agreement and are fully aware of the contents and legal effect of the Agreement.

9.      This Agreement is freely and voluntarily entered into by each party. LLOYD, HOFFMAN, H & B and J. EDWARDS represent and warrant to each other that they have not assigned or transferred any of their rights or interest in the matters being released hereunder, and they will indemnify and hold harmless each other against any and all costs, damages or expenses, including attorneys' fees, arising from any such assignment or transfer.

10.     The parties acknowledge and agree that no promises or inducements have been made or offered to them except as set forth in this Agreement and further this Agreement is being executed by the LLOYD, H & B, HOFFMAN and J. EDWARDS without any reliance on any statement or representation by any employee or agent of the other party except as may be set forth herein.

11.     In the event it shall become necessary to consult with an attorney or to commence a suit or bring a motion in connection with the enforcement of any provision of this Agreement, or any right granted herein, the prevailing parties shall be entitled to recover from the other party attorneys' fees and costs incurred therein.

12.     This writing constitutes the entire Agreement between the parties respecting the subject matter herein, and any and all prior discussions that have taken place, negotiations and

-4

understandings are merged herein. No party shall be bound by any representation, warranty, promise, statement or information, made by any party or the representatives of any party unless it is specifically set forth herein. No modification or waiver of this Agreement is binding unless it is in writing and signed by each of the parties.

13.    This Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assigns of the parties.

14.    This Agreement may be executed in counterparts.

IN WITNESS HEREOF the parties hereto have caused this Agreement to be duly executed.

DATED: _07/3/04_                         _____
                                        Thomas Lloyd

Approved as to form:

                                        LAW OFFICES OF EDWARD L. BLUM, P.C.
                                        By _____
                                        Edward L. Blum, attorneys for Thomas Lloyd

                                        H & B PROPERTIES
DATED: _____                By _____
                                        Jeffrey E. Hoffman, Member

                                        J. EDWARDS COMPANY
                                        INVESTMENT GROUP, INC.
DATED: _____                By _____
                                        Jeffrey E. Hoffman, President

DATED: _____                _____
                                        Jeffrey E. Hoffman, Individually

Approved as to Form:

                                        LAW OFFICE OF JULIE B. GUSTAVSON
                                        By _____
                                        Julie B. Gustavson, Attorneys for H & B
                                        Properties, J. Edwards Company Investment
                                        Group, Inc., and Jeffrey E. Hoffman

-5-

Plaintiff's EOR-442

CANB Live Database

## Miscellaneous:
05-03328 Hoffman v. Lloyd et al

### U.S. Bankruptcy Court

### Northern District of California

Notice of Electronic Filing

The following transaction was received from Robertson, Catherine Schlomann entered on 4/13/2006 at 2:43 PM PDT and filed on 4/13/2006

| | |
|---|---|
| **Case Name:** | Hoffman v. Lloyd et al |
| **Case Number:** | 05-03328 |
| **Document Number:** | 75 |

**Docket Text:**
Declaration of Jeffrey Hoffman in opposition of *Motion for Summary Judgment* (RE: related document (s)[40] Motion for Summary Judgment/Adjudication). Filed by Plaintiff Jeffrey E. Hoffman (Attachments: # (1) Exhibit A-C to Dec. of Hoffman in Opposition to MSJ# (2) Exhibit D-F to Dec. of J. Hoffman in Opposition to MSJ) (Robertson, Catherine)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**c:\docume~1\tamara.000\locals~1\temp\worldox\open\0001\dec of j hoffman in opp to msj (00064801).pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=4/13/2006] [FileNumber=4698417-0
] [28aff71e0cc86ee93315e62c1049d7f575242801570222ab0b515fd5e269bb9cae4
26dfabc4a9f7e99a20a7b442aa96d26db075c717b156a9d84db6a7f57970e]]
**Document description:**Exhibit A-C to Dec. of Hoffman in Opposition to MSJ
**Original filename:**c:\docume~1\tamara.000\locals~1\temp\worldox\open\0001\exhibits a - c to dec. of j. hoffman - opp to msj (00064802).pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=4/13/2006] [FileNumber=4698417-1
] [bc7a6d7836da917c8d25de39df806296cb0461bb28cd899498c90b82f0aea0c55ce
5ec03a965a673d078eb28c7fecc7bd94a543eabf581c3b432d837f6d0c194]]
**Document description:**Exhibit D-F to Dec. of J. Hoffman in Opposition to MSJ
**Original filename:**c:\docume~1\tamara.000\locals~1\temp\worldox\open\0001\exhibits d - f of dec. of j. hoffman - opp to msj (00064803).pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=4/13/2006] [FileNumber=4698417-2
] [bef9c77dd9a42dd7da8b0aeb67d7138b0584be7445804e6b9affae6d2fb9deb129e
4b84130b5f36c1cd595e4e9ed8feba6de683d04227799dcb13f8f7db0ae53]]

**05-03328 Notice will be electronically mailed to:**

Jeffrey J. Goodrich    endstay@hotmail.com

Plaintiff's EOR-443

CANB Live Database                                                              Page 2 of 2

Jerry R. Hauser    jhauser@pghllp.com

Catherine Schlomann Robertson    crobertson@pahl-gosselin.com

**05-03328 Notice will not be electronically mailed to:**

Norcal Financial, Inc.

,

Stephen D Pahl
Pahl & Gosselin
225 W. Santa Clara St., Suite 1500
San Jose, CA 95113

Stephen D. Pahl
Law Offices of Pahl and Gosselin
225 W Santa Clara St. #1500
San Jose, CA 95113

Plaintiff's EOR-444