GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation
DENNIS D. DAVIS, ESQ. CA Bar #070591
44 Montgomery Street, Suite 2900
San Francisco, CA 94104
Telephone: (415) 362-5045
Facsimile: (415) 362-2392

Attorneys for Appellant, Jeffrey E. Hoffman

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY E. HOFFMAN,<br><br>                    Plaintiff,<br><br>vs.<br><br>THOMAS R. LLOYD, an individual, EDWARD L. BLUM, an individual, and DOES 1 through 20, inclusive,,<br><br>                    Defendants. | No. 3:07-CV-2417 MHP |
| THOMAS LLOYD,<br><br>                    Cross-Plaintiff,<br><br>vs.<br><br>JEFFREY E. HOFFMAN, dba H&B PROPERTIES; H&B PROPERTIES, LLC; J. EDWARDS INVESTMENT GROUP, INC., and NORCAL FINANCIAL, INC.,<br><br>                    Cross-Defendants. | |

### APPELLANT'S EXCERPTS OF RECORD ON APPEAL

### VOLUME V

| | | Bktcy Ct Docket No. | Pages |
|---|---|---|---|
| 1. | Answer – Unlawful Detainer (Trial Exhibit 10) | | 1-4 |
| 2. | Settlement and Mutual Release Agreement (Trial Exhibit G) | | 5-9 |
| 3. | Complaint for Damages and to Cancel Instrument (filed April 5, 2005) | | 10-29 |
| 4. | Cross-Complaint for (1) Declaratory Relief: (2) Avoidance of Fraudulent Conveyances and/or Obligations; (3) Transferee Liability; (4) Quiet title; (5) an Accounting; (6) Determination of Validity, Extent and Priority of Liens; and (7) Objection to Claim (filed June 16, 2005) | | 30-60 |
| 5. | Declaration of Thomas Lloyd in Support of Motion for Summary Judgment (filed 1/20/06) | 39 | 61-82 |
| 6. | Tentative Ruling Re Plaintiff's Motion for Summary Judgment (filed February 16, 2006) | 55 | 83-85 |
| 7. | Order Denying Motion for Summary Judgment (filed February 21, 2006) | 57 | 86-89 |
| 8. | Trial Transcript (filed February 28, 2006) | | 90-294 |
| 9. | Decision After Trial (Phase One) (filed March 20, 2006) | 59 | 295-297 |
| 10. | Hearing Transcript of Defendant's Motion for Summary Judgment (filed April 28, 2006) | | 298-330 |
| 11. | Order Granting Defendant Thomas Lloyd's Motion for Summary Judgment (filed May 15, 2006) | 83 | 331-338 |
| 12. | Tentative Ruling Re Rescission Payment (filed November 9, 2006) | 95 | 339-344 |
| 13. | Tentative Ruling Re Terms for Cancellation of Deed (filed 1/24/07) | | 345-347 |
| 14. | Declaration of Asher Robertson (filed 2/13/07) | 108 | 348-366 |

APPELLANTS' OPENING BRIEF
10329.705/113210.DOC

| 15. | Opinion (filed April 30, 2007) | 116 | 367-392 |
|---|---|---|---|
| 16. | Judgment and Rule 54(b) Certification (filed April 30, 2007) | 117 | 393-396 |
| 17. | Order Denying Stay Pending Appeal (filed May 7, 2007) | 125 | 397-399 |
| 18. | Plaintiff's Brief Relating to Court's Tentative Ruling of January 24, 2007 | 108 | 400-414 |
| 19. | Declaration of Jeffrey E. Hoffman in Support of Plaintiff's Opposition to Defendant Lloyd's Motion for Summary Judgment. | 75 | 415-444 |
| 20. | Trial Scheduling Order. | 29 | 445-448 |
| 21. | Memorandum of Points and Authorities in Support of Defendant Thomas Lloyd's Motion for Summary Judgment. | 42 | 449-472 |
| 22. | Reply Memorandum of Points and Authorities in Support of Defendant Thomas Lloyd's Motion for Summary Judgment. | 78 | 473-485 |
| 23. | Declaration of Jeffrey Goodrich in Reply to Plaintiff's Opposition to Defendant Thomas Lloyd's Motion for Summary Judgment. | 80 | 486-510 |

DATED: July 13, 2007

GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation


By:    /s/ Dennis D. Davis
         Attorneys for Appellant Jeffrey E. Hoffman

APPELLANTS' OPENING BRIEF
10329.705/113210.DOC

**DOCUMENT 20**

3DC-002



Entered on Docke
December 22, 200c.
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: December 21, 2005

THOMAS E. CARLSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re                                    ) Case No: 04-32921 TEC
                                         )
THOMAS LLOYD,                            )
                                         ) Chapter 11
            Debtor.                      )
                                         )
_____)
JEFFREY E. HOFFMAN,                      )
                                         ) Adv. Proc. No. 05-3328 TC
            Plaintiff,                    )
                                         )
v.                                       )
                                         ) **TRIAL SCHEDULING ORDER**
THOMAS R. LLOYD, an individual,          ) B.R. 7016
EDWARD L. BLUM, an individual, and       ) Fed. R. Civ. P. 16
DOES 1 through 20, inclusive,            )
                                         )
            Defendants.                  )
                                         )
_____)
THOMAS LLOYD,                            )
                                         )
            Cross-Plaintiff,             )
                                         )
v.                                       )
                                         )
JEFFREY E. HOFFMAN, an individual        )
doing business as H & B PROPERTIES;      )
H & B PROPERTIES, LLC, a California       )
limited liability company,               )
J. EDWARDS INVESTMENT GROUP, INC.,       )
a California corporation, and            )
NORCAL FINANCIAL, INC., a Nevada         )
corporation,                             )
                                         )
            Cross-Defendants.            )
_____)

        A status conference in the above-entitled matter was held

TRIAL SCHEDULING ORDER                    -1-

Plaintiff's EOR-445

1  on December 15, 2005.  Cheri L. MacArthur appeared for Plaintiff.

2  Jeffrey J. Goodrich appeared for Defendant.  Upon due

3  consideration, the court hereby establishes the following schedule:

4       (1)  Phase I of the trial, concerning the enforcability of the

5  settlement, will commence on January 10, 2006 at 9:30 a.m., at the

6  United States Bankruptcy Court, 235 Pine Street, Twenty-Third

7  Floor, San Francisco, CA.  <u>Seven calendar days before the trial</u>

8  <u>date, counsel shall inform the courtroom deputy (Gordon Hom (415)</u>

9  <u>268-2362) whether the parties have settled and, if not, how much</u>

10 <u>time the trial will require.</u>  During the week prior to the trial

11 date the court may reschedule the trial to a later day during the

12 week of the trial date.  <u>Counsel should be prepared to go to trial</u>

13 <u>at any time during the week of the trial date.</u>

14      (2)  Seven calendar days before the scheduled trial date,

15 counsel shall: (a) serve and file trial briefs (briefs shall not

16 exceed twenty-five pages without **prior** permission of the court);

17 (b) exchange copies of all exhibits to be offered, other than those

18 to be used for impeachment or rebuttal; (c) serve and file

19 statements designating excerpts from depositions, answers to

20 interrogatories and requests for admission, other than those to be

21 used for impeachment or rebuttal; and (d) exchange a list of

22 expected witnesses, other than those to be called for impeachment

23 or rebuttal, including a brief summary of each witness' expected

24 testimony.

25      (3)  Counsel shall also:  (a) premark all exhibits **before**

26 trial (Debtor's exhibits should be marked by number, Creditor's

27 exhibits should be marked by letter); (b) bring sufficient copies

28 of exhibits for all counsel, the witness, and the court; (c) in

   any case in which the party expects to offer more than ten

TRIAL SCHEDULING ORDER              -2-

Plaintiff's EOR-446

1 exhibits, place the exhibits in a three-ring binder with an
2 appropriate tab attached to each exhibit; (d) number the pages of
3 any exhibit that has more than one page; (e) promptly advise the
4 opposing party of any objections to the introduction of the
5 opposing party's proposed testimony or exhibits; and (f) meet
6 <u>before</u> trial to attempt to reach agreement regarding the
7 admissibility of testimony and exhibits.

8      <u>The court may exclude evidence, postpone trial, or impose</u>
9 <u>monetary sanctions for failure to comply with this order</u>.

10      IT IS SO ORDERED.

11                    **END OF ORDER**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TRIAL SCHEDULING ORDER               -3-

Plaintiff's EOR-447

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COURT SERVICE LIST

Thomas Lloyd
940 Elizabeth Street
San Francisco, CA 94114

Jeffrey J. Goodrich, Esq.
Law Offices of Goodrich and Associates
336 Bon Air Center, Suite 335
Greenbrae, CA 94904

Cheri L. MacArthur, Esq.
Stephen D. Pahl, Esq.
Law Offices of Pahl and Gosselin
160 W Santa Clara Street, 14th Floor
San Jose, CA 95113-1700

Office of the United States Trustee
235 Pine Street
Suite 700
San Francisco, CA 94104

Jerry R. Hauser, Esq.
Phillips, Greenberg and Hauser
4 Embarcadero Center, 39th Floor
San Francisco, CA 94111

**DOCUMENT 21**

1   Jeffrey J. Goodrich (SBN 107577)
    GOODRICH & ASSOCIATES
2   336 Bon Air Center, Suite 335
    Greenbrae, CA 94904
3   (415) 925-8630  VOICE
    (415) 925-9242  FAX
4
5   Attorneys for Debtor and
6   Debtor in Possession
7
8                   UNITED STATES BANKRUPTCY COURT
9                   NORTHERN DISTRICT OF CALIFORNIA
10                      SAN FRANCISCO DIVISION
11
12
13                                          CHAPTER 11
                                            Case No. Case No. 04-32921-TEC
14  In re:
15  THOMAS LLOYD,
16          Debtor
                                            Adv. No. 05-03328
17  JEFFREY E. HOFFMAN,
18          Plaintiff,                      MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT OF
19  v.                                      DEFENDANT THOMAS LLOYD'S
                                            MOTION FOR SUMMARY JUDGMENT
20  THOMAS R. LLOYD, an individual, EDWARD
    L. BLUM, an individual, and DOES 1 through
21  20, inclusive,
22          Defendants
23  AND RELATED CROSS-ACTION,              DATE:  February 24, 2006
                                           TIME:  9:30 a.m.
24                                         COURT: 23rd Floor, 235 Pine Street, S.F.
25          Cross-Defendants
26
27
28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT
                                    1

# TABLE OF CONTENTS

I.      Introduction                                                                          4

II.     Statement of Facts                                                                    5

III.    Argument                                                                              9

        A.    Civil Code §1695 Governs Hoffman's Purchase of the Residence           9

        B.    Hoffman Violated Several Provisions of §1695                            10

              1.    Hoffman Violated §1695.2                                          10

              2.    Hoffman Violated §1695.3                                          10

              3.    Hoffman Violated §1695.5(a)                                       11

              4.    Hoffman Had a Duty to Prepare a Valid Contract                    11

        C.    Hoffman's Violations Gave Lloyd the Absolute Right to Cancel
              Hoffman's Purchase                                                      11

              1.    Civil Code §1695.4 Gives Lloyd an Absolute Right to Cancel the Sale    11

              2.    Civil Code §1695.5 Gives Lloyd an Absolute Right to Cancel the Sale    11

        D.    As a Matter of Law, the Settlement Release is Unenforceable            12

              1.    The Plain Language of Civil Code §1695.10 Makes the Waiver Void   12

                    a) The word "any" is not ambiguous                               13

                    b) The word "waiver" is not ambiguous                            14

              2.    §1695.10 Also Makes Any Release Void                             17

              3.    §1695.10 Should Be Construed to Make the Settlement Unenforceable  18

                    a) Lloyd's interpretation is consistent with the statute's policies   18

                    b) Hoffman's interpretation is inconsistent with §1695.16        20

                    c) Only Lloyd's interpretation is consistent with
                       other California law                                          21

              4.    Civil Code §1542 Does Not Trump Civil Code §1695.10              23

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

Plaintiff's EOR-450

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

3

Plaintiff's EOR-451

# I.

## INTRODUCTION

This Adversary Proceeding involves a real estate transaction between Plaintiff Jeffrey Hoffman ("Hoffman") and Defendant Thomas R. Lloyd ("Lloyd"). The transaction involved Lloyd's home at 940 Elizabeth Street, San Francisco. The transaction was documented as a sale from Lloyd to Hoffman, but Lloyd retained possession of the home under a two year lease. He also retained an option to repurchase the home for an unstated price, but only if he was not in default under his "lease".

Because Lloyd's home was in foreclosure at the time of the transaction, Hoffman's written contract with Lloyd had to comply with the Home Equity Sales Contract law (Cal. Civ. Code §1695 et seq., hereinafter "1695"). It is undisputed that Lloyd never signed a 1695-compliant contract and that Hoffman violated 1695 when he closed escrow and recorded his Grant Deed.

Nevertheless, Hoffman attempted to evict Lloyd from his home. On the eve of his unlawful detainer trial, Lloyd and Hoffman entered into a written settlement agreement that contained a mutual release of all claims "known and unknown" and a waiver of Civil Code §1542. The settlement agreement makes no mention of 1695, did not restore title to Lloyd, and gave Lloyd no right to rescind the original transaction. Rather, it gave Lloyd three months to repurchase the home for the sum of the existing mortgage and a stipulated judgment in favor of Hoffman's wholly owned company, H & B Properties ("H & B").

**After** Lloyd signed the settlement agreement, Hoffman borrowed $110,000 secured by a lien against the home. Then, when Lloyd attempted to repurchase the home within the three month period, Hoffman demanded that Lloyd also pay Hoffman's post-settlement loan, even though the

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

4

settlement agreement obviously did not require him to do so. Lloyd refused. Instead, he exercised his rights under 1695 and recorded a Notice of Rescission against the property.

Hoffman responded by suing Lloyd and his attorney, Edward Blum, for slander of title, cancellation of the Notice of Rescission, and breach of the settlement agreement. Lloyd cross-complained for declaratory relief and quiet title, among other claims for relief. Based upon Hoffman's recent admissions in deposition, Lloyd brings this motion for summary judgment as to Hoffman's entire complaint and for judgment in favor of Lloyd on his declaratory relief and quiet title claims for relief.

## II.

## STATEMENT OF FACTS

In May 2003, Lloyd's home at 940 Elizabeth Street ("Residence") was in foreclosure. Declaration of Thomas Lloyd in Support of Motion for Summary Judgment ("Lloyd Dec"), ¶2. While Lloyd was in foreclosure, Hoffman and Lloyd entered into three written agreements each dated May 28, 2003. Lloyd Dec, ¶3. One agreement is a standard form Real Estate Purchase Contract ("Purchase Contract"). Lloyd Dec, Exhibit "A". Another agreement is a Residential Lease After Sale ("Lease"). Lloyd Dec, Exhbit "B". The last agreement is an Option Agreement. Lloyd Dec, Exhibit "C".

Under the Purchase Agreement, Hoffman agreed to purchase the Residence for the sum of $900,000. Lloyd Dec, Exhibit "A". Lloyd believes that the home was worth at least that much at that time. Lloyd Dec, ¶5. Contrary to the terms of the Purchase Agreement, Lloyd did not actually receive, either directly or indirectly, more than $635,000 from the "sale" of his home.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

5

Plaintiff's EOR-453

1  Hoffman did not purchase the Residence for the purpose of using the property as a personal

2  residence. Lloyd Dec, Exhibit "B". Rather, he leased it to Lloyd and gave Lloyd the right to buy

3  back the Residence during the term of the Lease. Lloyd Dec, Exhibits "B" and "C". The Option

4  does not specify a strike price nor sets forth any of the terms on which Lloyd, as holder of the

5  Option, could elect to buy back the Residence. Lloyd Dec, Exhibit "C". Lloyd believed that the

6  amount he needed to pay Hoffman to buy back his home was less than $650,000 at the time Lloyd

7  signed the Purchase Agreement, Lease and Option. Lloyd Dec, ¶6.

8

9  In 2004, Hoffman transferred title to the Residence to H & B Properties. Hoffman's

10  Complaint, ¶14. H & B Properties ("H & B") is wholly owned by Hoffman. In June 2004, H & B

11  filed an eviction action against Lloyd. Lloyd Dec, ¶6. Lloyd employed an attorney, Edward Blum

12  ("Blum") to defend the action. Id. The trial was set for July 19, 2004. Id.

13

14  On or about July 12, 2004, Lloyd traveled to Fresno, California to meet with Mr. Hoffman.

15  Lloyd Dec, ¶7. He was afraid he was going to lose the unlawful detainer trial and his home. Id. At

16  that time, he knew nothing about any rights he had under Civil Code §1695. Id. He did not know

17  that he had a right to cancel the Purchase Agreement even though he had already transferred title to

18  Hoffman. Id. He did not know that he had a right, independent of his right in the Option, to require

19  Hoffman to transfer the title back to him. Id. He did not know he had a right to require Hoffman to

20  pay Lloyd's fees in the event he was forced to bring suit to enforce his rights. Id.

21

22  Rather, Lloyd assumed that because he had transferred title to Hoffman and he did not have

23  the amount of unpaid rent that the Lease and Option required him to pay, there was no way he could

24  recover his home unless Hoffman agreed. Lloyd Dec, ¶8. So he met with Hoffman to try and settle

25  with him on terms that would allow him an opportunity to buy back his home. Id. The settlement

26  they reached was thereafter memorialized in writing. Id.

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

6

On or before August 3, 2004, Hoffman, Lloyd and H & B executed the writing, entitled Settlement and Mutual Release Agreement ("Settlement") Lloyd Dec, ¶9. The Settlement contains no reference to Civil Code §1695 or to any right Lloyd had to rescind the sale of the Residence to Hoffman. Lloyd Dec, Exhibit "D". The Settlement also does not contain any opportunity for Lloyd to rescind the Settlement. Id. Under the Settlement, Hoffman retained title to the Residence. Id.

The Settlement contains a mutual release of all claims, known and unknown, "arising from the Action, arising from or related to the Property, the purchase by H & B, the Lease, or the Option…, except as set forth hereinbelow." Id. The only relevant claims "set forth hereinbelow" in the Settlement, other than Lloyd's right to repurchase or sell the Residence, are: 1) a Stipulated Judgment in favor of H & B in the amount of $60,886.17 plus $3,500 for attorneys fees and court costs, and 2) any amounts owing to H & B during the 90 day forbearance period as a result of Lloyd's status as a holdover tenant. Id. The Settlement does not identify any other claims that either Hoffman or H & B reserved.

At the time Lloyd executed the Settlement, he still knew nothing about any rights he had under Civil Code §1695. Lloyd Dec, ¶9. He did not know that he had a right to cancel the Purchase Agreement even though he had already transferred title to Hoffman. Id. He did not know that he had a right, independent of his right in the Option, to require Hoffman to transfer the title back to him. Id. He did not know he had a right to require Hoffman to pay Lloyd's fees in the event he was forced to bring suit to enforce his rights. Id.

After execution of the Settlement Agreement, Lloyd attempted to perform his obligations under the agreement by listing the property for sale with a broker and, alternatively, finding a buyer himself. Lloyd Dec, ¶10. When he attempted to list the property for sale, he was told he needed to obtain the consent of Hoffman because he was the only person on title. Id. He called Hoffman to ask

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

7

Plaintiff's EOR-455

him to list the property. Id  Hoffman did not return Lloyd's call for some time, and when he did he

told Lloyd he had a buyer and could save Lloyd a commission if Lloyd sold it to Hoffman's buyer.

Id  By then, Lloyd had two potential buyers who would not require the payment of a commission,

but Lloyd needed Hoffman to tell Lloyd how much he would need to pay him to buy back Lloyd's

home. Id.  Hoffman told Lloyd he would get back to Lloyd with that information, but he never did.

Id  Lloyd called him several times after that, but Hoffman never returned those calls. Id.

On August 9, 2004, after the complete execution of the Settlement, H & B executed a

Promissory Note in favor of Norcal in the amount of $110,000 and secured that obligation with a

Deed of Trust recorded against the Residence.  On October 13, 2005, Hoffman's counsel demanded

that Lloyd pay Norcal's claim in full as a condition to exercising Lloyd's rights under the Settlement

Agreement. Lloyd Dec, ¶11.  At no time has Lloyd ever borrowed any money from Norcal Financial

secured by his home and Lloyd never agreed that Hoffman could encumber title to his home in favor

of any lender other than Greenpoint Mortgage. Lloyd Dec, ¶12.

On October 15, 2005, Lloyd filed for relief under Chapter 11 of the Bankruptcy Code.  On

October 18, 2005, he recorded against the Residence a Notice of Rescission of Grant Deed Recorded

Pursuant to Home Equity Sales Contract (See, Hoffman's Complaint herein, Exhibit "C").  The

Notice demanded that Hoffman and H & B transfer title of the Residence back to Lloyd. Id

Hoffman thereafter filed suit against Lloyd and Blum for slander of title, cancellation of the Notice

of Rescission, and damages for breach of the Settlement. Hoffman's Complaint herein.  Lloyd

cross-claimed for declaratory relief, quiet title and other related claims, and removed the entire

action to this court. See, Lloyd's Notice of Removal, filed herein.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

8

1      This Court thereafter bifurcated the issues and set for trial the issue of whether the Settlement

2  is enforceable.  Lloyd hereby moves for summary judgment as to all causes of action in Hoffman's

3  Complaint and the First and Fourth Causes of Action in Lloyd's Cross-Complaint

4

5

6  <center>**III.**</center>

·7  <center>**ARGUMENT**</center>

8  **A.    Civil Code §1695 Governs Hoffman's Purchase of the Residence**

9      Under Civ. Code §1695.1(b), a "residence in foreclosure" is defined as residential property

10  consisting of one- to four-family dwelling units, one of which the owner occupies as his or her

11  principal place of residence, and against which there is an outstanding notice of default. Lloyd's

12  Residence clearly qualifies as a "residence in foreclosure." It is residential real property consisting

13  of two dwelling units, one of which Lloyd occupied during all of 2003. As of May 28, 2003, the

14  date of the Purchase Contract, Lease and Option, there were two "outstanding notice[s] of default"

15  recorded against the Residence.

16      Under Civ. Code §1695.1(a), an "equity purchaser" is any person who acquires title to a

17  residence in foreclosure. Although the subdivision lists several exceptions to this general rule,

18  Hoffman qualifies for none of them. See, §1695.1(a)(1) – (6). He did not purchase the Residence

19  for the purpose of using it as a personal residence and he is not at all related to Lloyd.

20      Similarly, Lloyd was an "equity seller" under Civ. Code §1695.1(c), as he was clearly the

21  seller of a residence in foreclosure. He was also a "property owner" under Civ. Code §1695.1(f)

22  because he held record title of the Residence on the date the two notices of default were recorded.

23      Finally, Civ. Code §1695.1(e) defines "contract" as any agreement, or any term thereof,

24  between an equity purchaser and equity seller incident to the sale of a residence in foreclosure.

Under that definition, the Purchase Agreement, Lease and Option all constitute a "contract" under the provisions of §1695.

In sum, there is no triable issue of fact as to Hoffman's obligations under §1695. As the "equity purchaser" of a "residence in foreclosure", he was clearly required to comply with all applicable provisions of the law.

**B.    Hoffman Violated Several Provisions of §1695**

    1.    Hoffman Violated §1695.2

Civil Code §1695.2 requires that "every contract" be written in letters of a size equal to 10-point bold type. None of the three documents memorializing Hoffman's purchase of the Residence meets this requirement. See, Purchase Agreement, Lease and Option ("Lloyd Dec., Exhibits A -C.

    2.    Hoffman Violated §1695.3

Civil Code §1695.3 requires that "every contract" shall contain the entire agreement of the parties and shall include a Notice of Cancellation in 12-point type, as provided in §1695.5(b). Civ. Code §1695.3(g). In addition, the contract must include, in at least 14-point boldface type, a specific form of "Notice Required By California Law" Civ. Code §1695.3(h).

Here, the "contract", as defined by Civil Code §1695.1(e), is at least the Purchase Agreement, but probably also includes the Lease and Option as "incident to the sale of a residence in foreclosure". But regardless of whether one or all three documents constitute the "contract" in this case, the contract includes neither the statutory Notice of Cancellation nor the Notice Required By California Law. Indeed, the contract makes no reference at all to any right of rescission, any "cooling off period" or any other rights Lloyd was entitled to have explained to him in at the time of the transaction.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

Plaintiff's EOR-458

3.     Hoffman Violated §1695.5(a)

Civil Code §1695.5(a) requires that Hoffman's contract contain in immediate proximity to

the space reserved for Lloyd's signature the following statement in 12-point bold type:

**"You may cancel this contract for the sale of your house without any penalty
or obligation at any time before [insert date and time rescission right ends].
See attached notice of cancellation form for an explanation of this right."**

Hoffman's contract contains no such statement. Again, it fails to disclose any

information whatsoever about Lloyd's rescission rights under §1695.

4.     Hoffman Had a Duty to Prepare a Valid Contract

Civil Code §1695.6(a) states that the contract required by the foregoing provisions

(§§1695.2, 1695.3 and 1695.5) "shall be provided and completed in conformity with

those sections by the equity purchaser." Here, that was Hoffman.

**C.     Hoffman's Violations Gave Lloyd the Absolute Right to Cancel Hoffman's Purchase**

1.     Civil Code §1695.4 Gives Lloyd an Absolute Right to Cancel the Sale

Civil Code §1695.4(a) grants to an equity seller the absolute right to cancel any contract with

an equity purchaser "until midnight of the fifth business day following the day on which the equity

seller signs a contract that complies with this chapter …." Because Lloyd, the equity seller in this

case, has never "sign[ed] a contract that complies with [1695]", his right to cancel has never expired.

2.     Civil Code §1695.5 Gives Lloyd an Absolute Right to Cancel the Sale

Civil Code §1695.5(d) expressly authorizes Lloyd to cancel the contract "until the equity

purchaser has complied with [§1695.5]…." There is no time limit to this right of cancellation until

the notice required by §1695.5 has been given. Miller & Starr, Cal. Real Estate 3rd, Deeds of Trust,

§10:144, p. 437. Therefore, because Hoffman has never complied with §1695.5, Lloyd has an

absolute right to cancel the contract under §1695.5(d). Moreover, because Civil Code §1695.3(h)

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

11

provides that a home equity sales contract "shall survive delivery of any instrument of conveyance of the residence in foreclosure", Lloyd's right to cancel the contract survived Lloyd's grant deed to Hoffman.

In sum, the only defense Hoffman has to Lloyd's absolute right of cancellation is the effect, if any, of the Settlement.

**D.    As a Matter of Law, the Settlement Release is Unenforceable**

Hoffman argues that Lloyd relinquished all of his rights and remedies under §1695 when he executed the Settlement and Release Agreement ("Settlement"). Lloyd does not dispute Hoffman's characterization of the effect of the Settlement. Rather, Lloyd argues that the Settlement is not enforceable as it is contrary to law and public policy.

1.    The Plain Language of Civil Code §1695.10 Makes Lloyd's Release Waiver Void

A victim of predatory lending practices <u>can</u> <u>never</u> waive the rights and remedies he has under Civil Code §1695. This is because the statute unequivocally mandates that <u>**any**</u> waiver of the provisions of §1695 "is void and unenforceable as contrary to public policy."  Cal. Civ. Code §1695.10.

Generally, the words of California's statutes are to be given their plain and common sense meaning. <u>Hughes v. Board of Architectural Examiners</u> (1998) 17 Cal. 4th 763, 775 (1998). Put another way, if the words of a statute are clear and unambiguous, the plain meaning of the statute governs (<u>Estate of Griswold</u>, 25 Cal. 4th 904 (2001)  and there is no need for judicial construction. <u>People v. Howard</u>, 100 Cal. App. 4th 94 ( 2002).

> Thus, where no ambiguity exists, and the language permits only one construction, the intent of the legislature in enacting a statute is to be gathered from the words and language employed, read as a whole, according to the usual and ordinary import of the language employed, and in context with the nature and obvious purpose of the statute, without further judicial construction.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

Plaintiff's EOR-460

58 Cal Jur 3d (2004), Statutes §117, p. 525-526.  A statute if regarded as ambiguous if it is capable of two constructions, both of which are reasonable.  Hughes v. Board of Architectural Examiners, supra, 17 Cal. 4th at p. 776.

Here, the statute is not ambiguous.  It states that any waiver is unenforceable.  There are no exceptions, qualifications or conditions.  Unless the word "any" or the word "waiver" has more than one meaning, the Court may simply enforce the statute's plain meaning without further inquiry.

**a) The word "any" is not ambiguous.**

The word "any" means "one, no matter what one."  Webster's Third New Int'l Dictionary (3rd ed. 1986).  A synonym for "any" is "all".  Id.  Thus, the plain meaning of §1695.10 is that **all** waivers, no matter which ones or what types, are void and unenforceable as contrary to public policy.

Two Ninth Circuit cases illustrate the point.  In U.S. Ex Rel Barajas v. U.S., 258 F. 3d 1004 (9th Cir. 2001), the Court needed to construe the phrase "any alternative remedy."  After concluding that "the term 'any' is generally used to indicate lack of restrictions or limitations on the term modified", the Court held that the phrase was to be construed broadly and without conditions or exceptions.  Id., at p. 1011.  Similarly, in Turner v. McMahon, 830 F. 2d 1003 (9th Cir. 1987), the Court needed to construe a statute containing the phrase "any overpayment".  In determining that the word "any" was extremely broad and allowed no exceptions, the Court held that the "use of the adjective 'any' indicates that Congress intended that overpayments must be recouped without restriction."  Id., at p. 1007

Thus, use of the adjective "any" in §1695.10 indicates that the California legislature intended that waivers of the statutory protections under §1695 are void and unenforceable, without restriction.  In other words, there can be no waivers of the provisions of §1695 et seq. that are enforceable under

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

13

Plaintiff's EOR-461

California law. <u>Any</u> waiver is void. There are no exceptions. As the Ninth Circuit has noted with approval: "'This broad language is not tempered or constricted by any limitation whatsoever.' (citation omitted)" <u>Turner v. McMahon, supra,</u> 830 R. 2d at p. 1007.

Hence, it does not matter who executed the waiver, under what circumstances the waiver was executed, or whether the person executing the waiver had the advice of counsel. It does not even matter that counsel advised against signing the waiver --- <u>any</u> waiver, even one made in the presence of a lawyer, a video camera and three nuns --- is void and unenforceable.

### b) The word "waiver" is not ambiguous

Generally, words which have acquired a particular meaning in law are to be so construed. Cal. Jur. 3d, Statutes, §141, p. 565. In particular, a word or phrase having a well-known and definite legal meaning will be construed to have the same meaning when used in a statute, unless it appears to have been used in a different sense. <u>Id.</u>

Black's Law Dictionary (8th ed. 1990) defines "waiver" as "the voluntary relinquishment . . . of a legal right or advantage." Under California law, "waiver" is legally defined as "the intentional relinquishment of a known right." <u>Richfield Oil v. Security-First Nat. Bank,</u> 159 Cal. App. 2d 184, 194 (1958). Lloyd has found no cases suggesting that the word has any other meaning when used as it is used in §1695.10. In other words, the unambiguous meaning of §1695.10 is that it makes void and unenforceable all "intentional relinquishments" of the rights afforded homeowners under §1695.

As set forth above, Hoffman's many violations of §1695 gave Lloyd an absolute right to cancel the sale of his Residence. Hoffman's sole defense is that Lloyd "intentionally relinquished" that right. Given the unambiguous language of §1695.10, such a defense simply does not exist <u>as a matter of law.</u> In short, defendants in a §1695 case can <u>never</u> raise as a defense the allegation that plaintiff intentionally relinquished such statutory protections.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

14

1    Hoffman attempts to skirt the plain meaning of "waiver" by concocting a definition of his

2    own. Citing no authority for this definition, he argues that the word "waiver" in §1695.10 means

3    only "contractual waivers of §1695 protections at the time a home equity sales contract is entered."

4    Hoffman's Trial Brief, P. 6:18-19. Hoffman concludes, again without any citation to authority, that

5    

6    §1695.10 therefore "does not preclude a party alleging a violation of the chapter and thereafter

7    agreeing to settle and release claims arising thereunder." Id., at p. 6:20-22. Hoffman calls the latter

8    type of waiver a "post-transaction release" to distinguish it from a "contractual waiver". Id, at p. 19.

9    
     Hoffman's argument is without merit. First, statutes using words or phrases having a settled

10   common law meaning are not ambiguous merely because through a strained construction some

11   

12   ambiguity might arise. 58 Cal. Jur. 3d (2004), Statutes, §95, p. 489, citing Pacific Coast Dairy v.

13   Police Court of City and County of San Francisco, 214 Cal. 668 (1932). Here, the term "waiver" has

14   a settled common law meaning: it means the intentional relinquishment of a known right. The

15   

16   common law meaning is not limited to time or place. One can intentionally relinquish known rights

17   at the time the rights arise, after the rights have been violated, or after suit is filed to vindicate the

18   rights. Hoffman is suggesting a much more limited meaning. He is suggesting that the California

19   legislature meant to limit the term "waiver" in §1695.10 to only those relinquishments that occur at

20   

21   the time the rights arise, i.e, at the time the defective contract is signed. Hoffman's interpretation is

22   that once a defective contract is signed and the equity seller has a right to rescind the contract, any

23   intentional relinquishment of that right is allowed because it is now a "post-transaction release", not

24   a "waiver". Hoffman's Trial Brief, p. 6:17-18. In short, Hoffman's argues that a "release" is not a

25   "waiver".

26   

27   
     Such an interpretation of §1695.10 is truly strained and finds no support in either common

28   usage or legal precedent. Black's Law Dictionary (8th ed 1990) defines a "release" as "[t]he

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

15

Plaintiff's EOR-463

relinquishment . . . of a right, title or claim." As noted above, this definition is almost identical to that of "waiver", which is defined as "The voluntary relinquishment . . . of a legal right or advantage. Moreover, one California court has found no real distinction between the two concepts. Commerical Ins. Co. v. Copeland, 248 Cal. App. 2d 561, 565 (1967) ["It is thus evident that the legal effect of a release is also the relinquishment of rights; in this sense a release is clearly a waiver."]. And the Seventh Circuit has also used the two concepts interchangeably. Fleming v. Warshawsky & Co., 123 Fed. 2d 622, 626 (7th Cir. 1941).

In Fleming, the Department of Labor attempted to enforce a consent decree of restitution against an employer who had violated certain labor laws. The employer argued that because the affected employees had signed post-violation releases of the employer, the consent decree could no longer be enforced. In framing the question, the Court stated:

> We shall now consider defendants' contention . . . that the defendants . . . had a *right to take releases* from their employees, or, to put the position another way, that the employees entitled to restitution had *a right to waive* the same so as to protect the defendants and relieve them from the obligation imposed by the Act and judgment.

Id., at p. 626 (emphasis supplied). In other words, "release" and "waiver" are merely two sides of the same coin. If an equity seller cannot waive the provisions of §1695, then certainly no equity purchaser can be released from complying with those same provisions.

In sum, Hoffman's feeble attempt to create an ambiguity where none exists should not distract this Court from the plain mandate of §1695.10. It prohibits any "relinquishments of known rights" arising under the provisions of 1695. As noted above, the legislature's use of the word "any" means that all relinquishments are void, regardless of when they occur or the form they take. A relinquishment of rights "post-transaction" is no less void than a relinquishment of rights in the

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

Plaintiff's EOR-464

1    defective contract itself.  Therefore, Lloyd has an absolute right to cancel the sale of his Residence

2    and summary judgment should be entered accordingly.

3        2.    §1695.10 Also Makes Any Release Void

4

5        Assuming, arguendo, that the Court finds some ambiguity in the language of §1695.10, it is

6    appropriately resolved by deferring to the only reported state court decision interpreting §1695.10.

7    Boquilon v. Beckwith, 49 Cal. App. 4th 1697.  In Boquilon, the equity purchaser argued that the

8    equity sellers had signed a *post-transaction release*, the very type of release Hoffman argues

9    §1695.10 does not prohibit.  Id., at p. 1709, fn. 12.  Although the court determined that the signed

10   document did not constitute an intentional relinquishment by plaintiffs of any rights or claims they

11   held against the equity purchaser, the Court went on to hold that even if the document constituted a

12   waiver of their rights under §1695, such a waiver was void and unenforceable under the express

13   provision of §1695.10.  In other words, the Court did not restrict the phrase "any waiver" in

14   §1695.10 to mean only those waivers given at or before the equity contract is signed, as Hoffman

15   urges this Court to do.  To the contrary, the court in Boquilon applied §1695.10 to a *post-transaction*

16   *release* (to use Hoffman's words).

17

18       As the only decision by a state court on an issue of state law, the Boquilon court's holding

19   cannot be ignored.  Yet that is precisely what Hoffman is urging this Court to do when he argues that

20   a "post-transaction release" is not barred by §1695.10.  Lloyd respectfully submits that this court

21   should follow the Boquilon court's reasoning and apply §1695.10 to the post-transaction release in

22   this case.  For this reason alone, the Settlement should be declared unenforceable and Lloyd's

23   motion for summary judgment should be granted.

24

25

26

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

17

Plaintiff's EOR-465

3. §1695.10 Should Be Construed to Make the Settlement Unenforceable

In the event the Court remains doubtful about the meaning of §1695.10 and does not find the Boquilon decision controlling, the Court may apply settled rules of statutory interpretation to reach the same result.

**a) Lloyd's interpretation is consistent with the statute's stated policies**

The fundamental goal of statutory construction is to determine the legislature's intent. Hughes v. Board of Architectural Examiners, supra, 17 Cal. 4th at p. 775. All other rules of statutory construction are subject to this controlling principle. 58 Cal. Jur. 3d (2004), Statutes, §91, p. 482. Therefore, when the legislature describes its intent in the statute to be interpreted, the Court is obligated to accept that description. Tyrone v. Kelly (1973) 9 Cal. 3d 1, 11.

Here, the legislature states the purpose and intent of §1695 to be, among other things:

> To provide each homeowner with information necessary to make an informed and intelligent decision regarding the sale of his or her home to an equity purchaser. . . to prohibit or restrict unfair contract terms; to afford homeowners a reasonable and meaningful opportunity to rescind sales to equity purchasers [and] to preserve and protect home equities for the homeowners of this state.

Civ. Code §1695(d)(1). Moreover, the legislature specifically directs courts to construe the statute liberally to effect these purposes. Civ. Code §1695(d)(2).

Lloyd's interpretation of §1695.10 is that a victim of the specific predatory lending practices barred by §1695 can never be allowed to relinquish the protections of the statute. Hoffman's interpretation is that victims can relinquish their rights at any time after a transaction in violation of the statute has occurred. Even if the statute is susceptible of either interpretation, is there any doubt which interpretation will further the above legislative intent?

Hoffman's interpretation would allow equity purchasers, as Hoffman did here, to completely ignore the law so long as they obtain a release of liability, and regardless of how the release is obtained. Moreover, under Hoffman's interpretation, there is no requirement that the homeowner even understand that he has rescission rights under §1695 before he waives them; merely a general release, such as that contained in the Settlement, is sufficient under Hoffman's interpretation to waive all statutory protections. Such an interpretation certainly does not afford the homeowner **any** "opportunity to rescind sales to equity purchasers", much less a "reasonable and meaningful" opportunity. Indeed, such an interpretation would allow homeowners to lose all of their equity without **ever** being advised of their rescission rights. Nor does the enforcement of a post-transaction release further the statute's goal of "preserv[ing] and protect[ing] home equities for the homeowners of [California]. Allowing predatory lenders to take a homeowner's title in violation of the law and to evict him if he refuses to sign a release is not likely to discourage the predatory practices that §1695 was intended to prevent. See, Civ. Code §1695(a) ("...homeowners in distress...are vulnerable to the importunities of equity purchasers who induce homeowners to sell their homes for a small fraction of their fair market values through the use of schemes which often involve oral and written misrepresentations, deceit, intimidation and other unreasonable commercial practices"). The legislature that expressed such concerns most certainly intended that all waivers of the statute's protections --- whether pre- or post-transaction --- would be considered void and unenforceable by the courts.

Lloyd's interpretation, on the other hand, is entirely consistent with the legislature's stated intent. Lloyd's interpretation ensures that homeowners are actually informed of their rescission rights, and have an actual opportunity to exercise them, **before** executing a release. After all, the protections of the statute are fairly modest and easily provided: a five-day notice to cancel and a

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

19

right to rescind if the transaction until such notice is given and expires.  Here, Hoffman could have

provided that notice, waited five days, and then settled the dispute if Lloyd elected not to rescind.

Alternatively, Hoffman could have allowed Lloyd to rescind without conditions, are required by Civ.

Cide §1695(c).  In either event, Hoffman would have complied with the law, and any subsequent

release of claims would be enforceable.  More importantly, the statute's stated goal of providing

homeowners such as Lloyd with a "reasonable and meaningful" rescission right, as well as its goal

of preserving such homeowners' equities, would be served, not thwarted.

It is well settled law that the interpretation of a statute should be consistent with and not

antagonistic toward the purpose and intent of the legislation, with a view toward promoting rather

than defeating the statute's general purpose.  58 Cal. Jur. 3d (2004), Statutes, §113, p. 516.  Here,

the enforcement of a post-transaction release would clearly defeat the statute's purpose and intent.

On the other hand, Lloyd's interpretation of §1695 furthers the statute's stated purpose and the

legislature's stated intent.  On this ground alone, the statute must be construed as Lloyd suggests.

### b)  Hoffman's interpretation is inconsistent with §1695.16

It is also settled law that legislative intent should be gathered from the whole act rather than

from isolated parts or words.  58 Cal. Jur. 3d. (2004), Statutes, §119, p. 529.  Further, all of the

separate provisions of a statute should, whenever possible, be construed so as to harmonize the

various parts or sections.  Id., §120, p. 531.  Similarly, statutes should not be construed so as to

render related provisions nugatory.  Id., at p. 531-532.  A construction that makes sense of an

apparent inconsistency is to be preferred to one that renders statutory language useless or

meaningless.  Id.

Hoffman argues that §1695.10 only precludes "contractual waivers", i.e., a waiver in the

home equity sales contract itself.  But Hoffman completely ignores that fact that a separate provision

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

20

Plaintiff's EOR-468

of the Home Equity Sales Contracts Law specifically prohibits such "contractual waivers." That

provision is §1695.16, which states:

> "Any provision of a contract which attempts or purports to limit the liability of the equity
> purchaser under §1695.15 shall be void and shall at the option of the equity seller render the
> equity purchase contract void."

In short, §1695.16 by its express terms prohibits contractual releases. Therefore, completely

different language in §1695.10 must mean something different. To harmonize §1695.16 with

§1695.10, the court cannot construe the very different words in those statutes as meaning the same

thing. Rather, the court should interpret §1695.16 as a prohibition of contractual releases and

§1695.10 as a prohibition of any intentional relinquishment of a known rights, i.e, exactly the post-

transaction release that Hoffman is attempting to enforce in this case. Such an interpretation

harmonizes the statute's differently worded sections and does not, as Hoffman's interpretation,

render one section surplusage.

### c) Only Lloyd's interpretation is consistent with other California law

Under California law, laws designed to protect the public cannot be ignored or modified by

private agreement. Cal. Civ. Code §3513 (laws established for a public reason cannot be

contravened by private agreement). Examples of such laws are laws against usury and contracts

with unlicensed persons. Because such laws were enacted to further a public policy, persons may

not agree privately to waive those protections, even in otherwise enforceable settlement agreements.

U.S. v. Northrop Corp. (9th Cir. 1995) 59 F. 3rd 953.

In the Northrop case, a litigant sued Northrop, alleging wrongful termination after he

uncovered evidence that Northrop had "double charged" the U.S. Air Force. He settled the suit with

a complete and general release of all claims. He then filed a second suit against Northrop under the

*qui tam* provisions of the False Claims Act. The trial court ruled that the release was enforceable,

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

21

Plaintiff's EOR-469

but the Ninth Circuit reversed after finding that the release was unenforceable as a matter of public policy. Notably, the Court so ruled even though it found that the statute in question expressed no intent to make such releases enforceable or unenforceable. Id., at p. 960. Rather, the Court applied "federal common law" to fill in a perceived "gap" in the statutory scheme. Id. In doing so, the Court rendered a thorough analysis, concluding that the purposes of the act would be thwarted by enforcing such releases. Id., at pp. 960-969.

Here, no such analysis is necessary. The California legislature as expressly stated that any waivers of the statutory provisions are unenforceable "as contrary to the public policy". Civ. Code §1695.10. Under settled law, this explicit expression of legislative intent means that Lloyd had no legal power to waive the protections of §1695. Rest.2d, Contracts §178(1) ["A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable ...."] and §179 ["A public policy against the enforcement of promises or other terms may be derived by the court from legislation relevant to such a policy...."]. Here, the California Legislature has specifically directed this court not to enforce "any waiver of the provisions of [1695 et seq.]" More importantly, the Legislature has prohibited such enforcement as a matter of public policy. Accordingly, there can be no doubt that such waivers, even in a settlement agreement and with a general release, are void and unenforceable under the Northrop court's holding.

Lloyd's interpretation is also the only one that is consistent with the provisions of Civil Code §1607 and 1667. Civil Code §1607 provides that the consideration of a contract must be lawful within the meaning of Civil Code §1667. Consideration which is either contrary to the express provision of law, or contrary to the policy of express law, is not lawful. Kallen v. Delug (1984) 157 Cal.App.3d 940. This principle was applied to void otherwise valid releases of employment claims in Fleming v. Warshawsky & Co., supra, 123 F. 2d. 622, 626. After noting that it did not matter

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

22

whether the releases were voluntary and uncoerced, the Court held that the employees had no right

to bargain away rights that were protected as a matter of public policy. That is precisely the case at

bar. Because Lloyd's rights under §1695 have been created to further public policy and promote the

public welfare (Civ. Code §1695(c)), no private agreement can release them.

Here, the only consideration Lloyd gave under the Settlement Agreement was to release his

valuable claims against Hoffman. Even if such a release is not contrary to the express provisions of

Civil Code §1695.10, it is clearly contrary to the policy of express law, as set forth in §1695 et seq.

Otherwise, any home equity purchaser could do indirectly what the law prohibits him from doing

directly. Instead of preparing the purchase contract in conformity with §1695 et seq and giving the

homeowner the right of rescission, the home equity purchaser could simply prepare a "Settlement

Agreement and Release" at the first sign of any trouble. Given the Legislature's findings in §1695,

it would not be long before every predatory lender in California prepared forms that would enable

them to "two-step" dance around the Home Equity Sales Contract law. Such an obvious loophole

cannot have been intended by the Legislature.

4.    <u>Civil Code §1542 Does not Trump Civil Code §1695.10</u>

Hoffman has suggested that Lloyd's interpretation of §1695.10 is inconsistent with, and

therefore overridden by, the general release authority under Civil Code §1542. Of course, any

superficial inconsistency is easily resolved by applying the usual rule of statutory construction in

which the specific statute takes priority over a more general provision. Here, such a rule of statutory

construction would allow releases of unknown claims except claims arising under statutory

provisions that the Legislature has expressly declared to be unwaivable, such as Civil Code

§1695.10. But a more fatal flaw to Hoffman's argument is that it assumes a false choice: if all

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

23

1  claims arising under Civil Code §1695 et seq. are not releasable, then every §1695 case must go to

2  trial because the claims can never be settled.

3       Lloyd is not saying that §1695 claims can never be settled. Indeed, here is how Hoffman

4  could have settled with Lloyd and obtained a valid and enforceable release:

6       "Mr. Lloyd, I have determined that our arrangement is in violation of §1695 and
        so I hereby deliver to you my grant deed without condition or demand. Of course,
7       you owe me the money I lent you to pay off your creditors, and if you cannot
        repay me I intend to commence foreclosure proceedings. If, after consulting with
8       counsel you wish to proceed with our arrangement anyway, I am willing to
9       document it correctly this time to make sure that it complies with state law."

11 Instead, Hoffman ignored the law, refused to acknowledge the law's requirements, and retained all

12 the economic power that came with legal title. Rather than solve a problem of his own making, he is

13 now asking this Court to solve it for him by twisting the Legislature's words and ignoring its clear

14 intent. The Court should decline to do so.

15 DATED: January 27, 2006                    Goodrich & Associates

16

17                                           ___/S/_____
18                                           Jeffrey Goodrich

19

20

21

22

23

24

25

26

27

28

Plaintiff's EOR-472

**DOCUMENT 22**



1  Jeffrey J. Goodrich (SBN 107577)
2  GOODRICH & ASSOCIATES
   336 Bon Air Center, Suite 335
3  Greenbrae, CA 94904
   (415) 925-8630  VOICE
4  (415) 925-9242  FAX

5
   Attorneys for Debtor and
6  Debtor in Possession

7
8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12

13                                   | CHAPTER 11
                                     |
14  In re:                           | Case No. Case No. 04-32921-TEC
                                     |
15  THOMAS LLOYD,                    |
                                     |
16         Debtor                    |
                                     | Adv. No. 05-03328
17  JEFFREY E. HOFFMAN,              |
                                     |
18         Plaintiff,                | REPLY MEMORANDUM OF POINTS AND
                                     | AUTHORITIES IN SUPPORT OF
19  v.                               | DEFENDANT THOMAS LLOYD'S
                                     | MOTION FOR SUMMARY JUDGMENT
20  THOMAS R. LLOYD, an individual, EDWARD
    L. BLUM, an individual, and DOES 1 through
21  20, inclusive,

22         Defendants

23  AND RELATED CROSS-ACTION,        | DATE:  April 28, 2006
                                     | TIME:  9:30 a.m.
24                                   | COURT: 23rd Floor, 235 Pine Street, S.F.

25         Cross-Defendants

26

27

28

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                       1

Plaintiff's EOR-473

# TABLE OF CONTENTS

I.      Introduction                                                                    4

II.     Statement of Facts                                                         5

III.    Argument                                                                       6

    A.     Hoffman Must Submit Admissible Evidence in Opposition to        6
Lloyd's Motion

    B.     Hoffman's Failure to Authenticate the Notice Makes it Inadmissible   8

    C.     The Notice Fails to Raise a Genuine Issue of Material Fact.         9

        1.     §1695 Does Not Allow For Substantial Compliance.              11

        2.     Hoffman Did Not Substantially Comply With §1695.          13

Plaintiff's EOR-474

## TABLE OF AUTHORITIES

**Case Citations:**                                                                                 **Page:**

Bsharah v. Eltra Corp., 394 F.2d 502 (6th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250 (9th Cir. 1982) . . . . . , . . . . . . . . . .    7

Harris v. Siegel, 438 F. Supp. 510 (D.C. Fla. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

Johns Hopkins Univ. v. Hutton, 297 F. Supp. 1165, 1207-1208 (D.C. Md. 1968) . . . . .    7

Johns Hopkins Univ. v. Hutton, 422 F.2d 1124 (4th Cir. 1970) . . . . . . . . . . . . . . . . . . .    7

Orr v. Bank of America NT & SA, 285 F.3d 764 . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7, 8

Smith v. Mack Trucks, Inc., 505 F.2d 1248 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . .    7

Urbina v. Gilfilen, 411 F.2d 546 (9th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

Walker v. Hoffman, 583 F.2d 1073, 1075 (9TH Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . .    7

**Statutory Citations:**

Civil Code Section 1695 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

Civil Code Section 1695(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Civil Code Section 1695(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Civil Code Section 1695.1(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

Civil Code Section 1695.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 8, 10, 11, 13

Civil Code Section 1695.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 8, 11, 13

Civil Code Section 1695.3(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

Civil Code Section 1695.3(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

Civil Code Section 1695.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 8, 11, 13

Civil Code Section 1695.5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5, 9, 11

Civil Code Section 1695.5(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

Civil Code Section 1695.5(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

Civil Code Section 1695.5(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

Civil Code Section 1695.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

**Other Authority:**

Federal Rules of Civil Procedure 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

10B Wright & Miller, Federal Practice and Procedure, §2739, p. 388-389 . . . . . . . . . . . . .    7

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                    3

Plaintiff's EOR-475

# I.

## INTRODUCTION

The Debtor, Thomas Lloyd ("Lloyd"), first raised claims under Civil Code §1695 in October 2004 by recording and serving Jeffrey Hoffman ("Hoffman") with a Notice of Rescission. See, Hoffman's Complaint herein, Exhibit C. Soon thereafter, Hoffman hired an attorney, Stephen Pahl, who had prior experience with the provisions of §1695 in an unrelated case before this Court. See, Transcript of Hearing on Plaintiff's Motion to Cancel Notice of Rescission ("Transcript"), filed herein January 15, 2006, p. 4:14-20.

The Court can therefore safely assume that Hoffman long ago understood the importance of showing compliance with the notice provisions of §1695. Yet as recently as last August, in response to Lloyd's claims under §1695, Mr. Pahl represented to this Court that his client had no knowledge of the provisions of §1695 at the time he purchased Lloyd's home. Transcript, p. 6:7-13, p. 11:13 to p. 12:11.

Now, in response to Lloyd's motion for summary judgment, Mr. Pahl's client has miraculously produced a document to show that he not only knew about §1695, but that he substantially complied with all of its provisions. Given Mr. Pahl's previous representations and the suspicious appearance of Mr. Lloyd's alleged signature (it crosses no printing or lines on the document, thus suggesting that the signature was "cut and pasted" on the document), the document is probably a forgery. Even if the document is what Mr. Hoffman claims it is, to wit, a Notice of Cancellation that he provided to Lloyd as part of the purchase, then how could Mr. Pahl be so mistaken about such a key issue five months into the case? Did Hoffman conceal the document from his attorney until after August? Or is the document a crude forgery by Hoffman in a desperate attempt to prove compliance after his first gambit, the Settlement Agreement, failed?

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                    4

Plaintiff's EOR-476

1  Lloyd is quite eager to present these questions to the court at the punitive damages phase in

2  this case. But the questions need not be answered now to establish Hoffman's liability as a matter of

3  law because the document does not raise a genuine issue of material fact. First, the document is

4  inadmissible under Rule 901 of the Federal Rules of Evidence. Second, even if the document is

5  admissible evidence, it does not contradict Lloyd's evidence that Hoffman violated §1695.2, §1695.3

6  and §1695.5(a). Accordingly, Lloyd's motion must be granted.

## II.

## STATEMENT OF FACTS

Before the Court can determine the admissibility of the Notice of Cancellation (Exhibit C to the Declaration of Jeffrey E. Hoffman in Support of Plaintiff's Opposition to Defendant Lloyd's Motion for Summary Judgment ("Hoffman Declaration")), it must consider the following facts that Hoffman has admitted under oath:

1.  In November 2004, Lloyd demanded in writing that Hoffman produce at Hoffman's deposition the original of the Notice of Cancellation. Declaration of Jeffrey Goodrich in Reply to Plaintiff's Opposition to Thomas Lloyd's Motion for Summary Judgment ("Goodrich Dec."), ¶2, Exhibit A.

2.  Hoffman admitted under oath that he does not have the original Notice of Cancellation, only a copy. Goodrich Dec, ¶4, Exhibit B, p. 4-24:6-10.

3.  Hoffman admitted under oath that he did not see Lloyd sign the Notice of Cancellation (Id. ¶5, Exhibit B at p. 4-24:11-12), nor does he know who was present when Lloyd allegedly signed it. Id., ¶5, Exhibit B at p. 5-43:9-13.

4.  Hoffman admitted under oath that he did not recognize the handwritten notations on the Notice of Cancellation. Id. ¶6, Exhibit B at p. 5-43:5-7.

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                    5

Plaintiff's EOR-477

5.    Hoffman produced his copy of the Notice of Cancellation as a separate document unattached to any other document (Goodrich Dec., ¶7)

6.    Hoffman admitted under oath that he had no personal knowledge of whether the Notice of Cancellation was attached to anything. Id., ¶8, Exhibit B at p. 6-38:17-23.

7.    Hoffman has admitted under oath that he did not know Lloyd prior to the subject transaction. Id., ¶9, Exhibit B p. 6-39 to 6-40.

8.    Hoffman has admitted under oath that <u>the Notice of Cancellation was not attached to the Purchase Contract, Option Agreement or Lease</u>. See, Hoffman's Proof of Claim filed herein February 11, 2005, as Claim No. 6 and admitted into evidence at trial (Phase I) in this Adversary Proceeding, p.18.2, lines18-22 ("A true and correct copy of the PRDS Real Estate Purchase Contract <u>with all amendments and addenda thereto</u> between Creditor Jeffrey Hoffman and Debtor is attached hereto as Exhibit "A" and is incorporated herein by reference…." (Emphasis supplied). The contract Hoffman attached to his Proof of Claim does not include the Notice of Cancellation.

## III.

## ARGUMENT

**A.**   **Hoffman Must Submit Admissible Evidence in Opposition to Lloyd's Motion.**

Hoffman does not deny that Lloyd's motion for summary judgment is adequately supported by admissible evidence establishing Hoffman's violations of Civil Code §§1695.2, 1695.3 and 1695.5(a).  Accordingly, the following provision of Federal Rule of Civil Procedure 56(e) applies:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Plaintiff's EOR-478

Rule 56(e), Fed. Rules Civ. Proc. Moreover, the adverse party to a motion for summary judgment cannot withhold evidence until trial (Walker v. Hoffman (9th Cir. 1978) 583 F.2d 1073, 1075) and cannot demand a trial because of the speculative possibility that a material issue of fact may appear at that time. 10B Wright & Miller, Federal Practice and Procedure, §2739, p. 388-389.

When declarations are used to oppose a motion for summary judgment, such declarations "shall set forth such facts as would be admissible in evidence." Rule 56(e), Fed. Rules of Civ. Proc. This means that the information contained in the declarations, as opposed to the declarations themselves, must be of a type that would be admissible at trial. Coca-Cola co. v. Overland, Inc. (9th Cir. 1982), 692 F.2d 1250, 1255. The declarations should follow substantially the same form as though the declarant were giving testimony in court. For example, an unauthenticated document attached as an exhibit cannot be used to support or oppose a motion for summary judgment. Orr v. Bank of America N.T. & S.A., (9th Cir. 2002) 285 F.3d 764, 773. Similarly, self-serving statements in a party's brief are not evidence admissible to defeat a motion for summary judgment. Smith v. Mack Trucks, Inc. (9th Cir. 1974) 505 F.2d 1248, 1249. Nor is parole evidence admissible to create an issue of fact. Harris v. Siegel (D.C.Fla. 1977) 438 F.Supp. 510, 512.

Most importantly, the evidence offered must be based upon the declarant's personal knowledge. Urbina v. Gilfilen (9th Cir. 1969) 411 F.2d 546, 547-548. Conclusory statements not based upon personal knowledge are insufficient to avoid summary judgment. Where the record discloses that a declarant has no personal knowledge of a fact set forth in his declaration, his general statement that he is familiar with the matters stated in the declaration will be treated as argument, not evidence of competence. Johns Hopkins Univ. v. Hutton (D.C.Md. 1968) 297 F.Sup. 1165, 1207-1208 n. 24, affirmed in part, reversed in part on other grounds, (4th Cir. 1970) 422 F.2d 1124.

Based upon the forgoing, and for the reasons set forth in greater detail below, Lloyd hereby objects to the admissibility of the Notice of Cancellation and moves to strike paragraph 5 in its entirety from the Hoffman Declaration.

**B.    Hoffman's Failure to Authenticate the Notice Makes it Inadmissible.**

The Notice of Cancellation is not self-authenticating under Rule 902 of the Federal Rules of Evidence. Therefore, Hoffman was required to submit evidence that the Notice is what it purports to be, i.e., a document signed by Thomas Lloyd. A document is authenticated under Rule 901(b)(1) of the Federal Rules of Evidence by a witness who wrote it, signed it, used it or saw others do so. Orr v. Bank of America N.T. & S.A., supra, 285 F.3d at p. 774, n.8. Because Hoffman failed to submit such evidence, the Notice is not admissible to show that Hoffman complied with the relevant provisions of §1695.

Hoffman admits that he did not see Lloyd sign the Notice and does not know who witnessed Lloyd's signature. Nor can he identify the handwritten notations on the Notice. Notably, he does not testify that he delivered the Notice to Lloyd or that Lloyd received the Notice. Rather, he merely states that "the Purchase included a Notice of Cancellation" and that "a true and correct copy of the Notice of Cancellation is attached . . . as Exhibit C [to Hoffman's Declaration]." Hoffman Declaration, p. 2:18-19. The Court should take particular notice of Hoffman's parsing of the term "Purchase Contract". Although he states that the "Purchase Contract" included the Option and the Lease, he carefully avoids that allegation when testifying about the Notice. He testifies that the Notice was a part of the "Purchase", not that it was part of the "Purchase Contract."

As a matter of law, Hoffman's declaration does not raise a genuine issue of fact. Unless Hoffman submits admissible evidence that Lloyd received the Notice, there is no evidence that Hoffman ever provided Lloyd any of the information required by the provisions of §§1695.2, 1695.3

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                    8

Plaintiff's EOR-480

or 1695.5(a). Hoffman could have raised a factual issue by submitting evidence that Lloyd either signed the Notice or received it. Here, Hoffman has done neither. He did not witness Lloyd's purported signature, and does not even know who did; therefore, he does not know whether Lloyd signed the Notice. Nor does he testify from personal knowledge that Lloyd received the Notice. His conclusory statement that the Notice was "part of the Purchase" is an ultimate fact and is inadmissible argument. See, Bsharah v. Eltra Corp. (6th Cir. 1968) 394 F2d 502. And his statement that the Notice was kept in the ordinary course of his business is not only conclusory but also entirely irrelevant, since the Notice is only relevant if it was delivered to Lloyd.

Hoffman's failure to authenticate the Notice is no mere oversight. Rather, he purposely avoided testifying that the Notice was part of the Purchase Contract. This is because he has already sworn in writing under oath that the Purchase Contract (Exhibit A) did not include the Notice as an attachment or addendum (See, Hoffman's Proof of Claim, Trial Exhibit 18, p. 18.2:18-21 and Exhibit "A" thereto). He also produced the Purchase Contract in pretrial discovery without the Notice of Cancellation attached. Goodrich Dec, ¶7. Thus, he testifies that the Notice was part of the "Purchase" without further explaining what that capitalized term means. Such a transparent ruse certainly raises no genuine issue of fact.

**C.    The Notice Fails to Raise a Genuine Issue of Material Fact.**

Even if the Court denies Lloyd's motion to strike the Notice as inadmissible, the Notice does not raise a genuine issue of material fact. At best, the Notice suggests that Lloyd at some point signed the Notice, thereby acknowledging its receipt. There is still no evidence that the Notice was ever attached to the Purchase Contract as required by §1695.5(b) or that Hoffman ever provided Lloyd with "a copy of the contract and the attached Notice of Cancellation." More importantly, Hoffman's testimony fails to rebut Lloyd's evidence, now uncontroverted, that Hoffman violated the

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                    9

provisions of §1695.2 (the Purchase Agreement, Option and Lease are not in 10 point bold type),

§1695.3(h) (the Purchase Agreement does not contain the specified notice of cancellation rights), or

§1695.5(a), which requires that the contract contain in immediate proximity to the space reserved for

Lloyd's signature the following statement in 12-point bold type:

> "You may cancel this contract for the sale of your house without any penalty or
> obligation at any time before [insert date and time rescission right ends]. See
> attached notice of cancellation form for an explanation of this right."

Hoffman's **contract**, as opposed to the separate and unattached Notice, contains no such statement.

Again, it fails to disclose any information whatsoever about Lloyd's rescission rights under §1695.

Accordingly, §1695.5(d) allows Lloyd, as a matter of law, to cancel the contract.

Hoffman tries to avoid this result by suggesting that the Notice should be considered part of

the purchase contract. His argument appears to be this: if the Notice is part of the "contract", then

the "contract" contained substantially all the required notices, albeit in the wrong places, with the

wrong language and in the wrong font.

This argument, however, is entirely without merit. Civil Code §1695.1(e) defines "contract"

as any offer or any contract, agreement, or arrangement, or any term thereof, between an equity

purchaser and equity seller incident to the sale of a residence in foreclosure. A review of the Notice

reveals that it is not an offer, a contract, an agreement or an arrangement between Hoffman and

Lloyd. Nor is it a term of an offer, contract, agreement or arrangement between Hoffman and Lloyd.

Rather, it is a statutorily required notice of Lloyd's rights, together with a form and instructions with

which Lloyd may exercise those rights.

Any doubt about Hoffman's argument is laid to rest by the language of §1695.5(c), which

required Hoffman to provide Lloyd with "a copy of the contract **and** the attached notice of

cancellation." (emphasis supplied). Obviously, if the Legislature intended that the term "contract"

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                10

includes the notice of cancellation, it would not have identified them as two distinct documents.

Similarly, §1695.5(b) requires that "the contract shall be accompanied by [the notice of cancellation]" and that "[the notice of cancellation] shall be attached to the contract." Clearly, the Legislature intended that the term "contract" does not include the notice of cancellation.

Finally, the Legislature made clear that the **required notices must appear both in the contract and in the attached notice of cancellation.** §1695.3 requires that every contract contain a notice of cancellation as provided in §1695.5(b) (i.e., as an attachment) **and** a separate, in-contract notice in 14-point bold type. Compare, §1695.3(g) and (h). The notice required by subdivision (g) need only be in 12-point bold type and shall be attached to the contract pursuant to §1695.5(b). The notice required by subdivision (h), on the other hand, must be in 14-point boldface type and appear immediately above the statement required by §1695.5(a) (which, in turn, must be in the contract, not in the attachment, and be in "immediate proximity" to the equity seller's signature§1695.3). Again, Hoffman admits this was not done.

In sum, because the contract between Hoffman and Lloyd, by Hoffman's own admission, did not contain any of the required notices "in immediate proximity to the space reserved for [Lloyd's signature], was not prepared by Hoffman in 10 point bold type, and failed to include the notice specified by 1695.3(h), Lloyd may rescind the contract even if he received the Notice of Cancellation. Accordingly, Lloyd's Motion for Summary Judgment should be granted.

1.      **§1695 Does Not Allow For Substantial Compliance.**

Civil Code §1695.6 requires that the contract "as required by Sections 1695.2, 1695.3 and 1695.5 shall be provided and completed in **conformity** with those sections by the equity purchaser." The law requires conformity, not substantial compliance. As this Court has already determined, the Home Equity Sales Contract Act ("Act") is important consumer protection legislation which must be

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                     11

Plaintiff's EOR-483

1  liberally construed to effectuate its stated purposes. The stated purposes include providing the

2  homeowner with information necessary to make an informed and intelligent decision, to safeguard

3  the public against deceit, and to afford homeowners a reasonable and meaningful opportunity to

4  rescind sales covered by the Act. §1695(d)(1). The Act specifically targets predatory lending tactics

5  such as oral and written misrepresentations, deceit and other unreasonable commercial practices.

6  §1695(a). Allowing an equity purchaser such as Hoffman to place all required disclosures and

7  notices in a separate, unattached document, could not possibly protect consumers from the predatory

8  lending tactics the Legislature describes in §1695(a), nor further the legislative intent expressed in

9  §1695(d). In fact, allowing the delivery of such an unattached document to satisfy the specific and

10  detailed notice requirements under §1695 would subvert the statute's purpose.

11        As just one example of the mischief Hoffman's interpretation could cause, an equity

12  purchaser could induce a homeowner to sign a purchase agreement without any of the required

13  notices. Then, at the close of escrow, when a blizzard of papers are customarily dumped upon the

14  distressed seller in a title company office on the eve of a trustee's sale, the equity purchaser slips the

15  required "notice" into the pile as a separate document. The Legislature's findings in §1695(a)

16  suggest that the distressed seller would likely sign such a "notice" without hesitation or thought. But

17  even if the seller reads and understands the notice before acknowledging it, he is no longer in a

18  position to exercise his rights. The trustee's sale is the next day, the escrow officer is saying that

19  there is no more time, and the homeowner has no opportunity to have the documents reviewed by

20  knowledgeable counsel. Obviously, such disclosure would not constitute "substantial compliance."

21        Hoffman may counter such concerns by suggesting that a separate notice is "substantial

22  compliance" only when it is attached to the contract at the time the seller signs the contract. But that

23  is not this case. **Hoffman has submitted no evidence whatsoever that the notice was ever**

Plaintiff's EOR-484

attached to the contract, much less at the time Lloyd signed the contract. Although Hoffman's counsel in his Memorandum asserts that the Notice was signed by Lloyd on the same day as the other documents (Plaintiff's Memorandum, p. 4:21-22) and that the Notice was attached to the contract (Id., p. 6:26), **Hoffman has submitted no evidence to support such allegations.** To the contrary, Hoffman admits under oath in his Proof of Claim, again under oath in his document response, and a third time in his Declaration in opposition to Lloyd's motion, that the notice was not attached to the contract. Moreover, as there is no date next to Lloyd's alleged signature, the Court cannot even reasonably infer that it was signed at the same time as the other documents. Accordingly, Hoffman is arguing that a separate notice, whether or not attached and whether or not signed at the time the purchase contract is signed, "substantially complies" with §1695 et seq. The argument is without merit.

### 2.    Hoffman Did Not Substantially Comply With §1695.

Even assuming that something less than exact compliance could absolve an equity purchaser from liability under §1695, Hoffman's alleged compliance falls far short of any reasonable standard. First, the contract contains none of the required disclosures and fails to follow any of the statute's explicit requirements for font size. Second, the contract does not include an attached Notice of Cancellation. In short, the contract does not conform to the requirements of §1695.2, 1695.3 and 1695.5 in any material way. Accordingly, Lloyd's motion should be granted.

DATED: April 21, 2006                         Goodrich & Associates

                                              ___/S/_____
                                              Jeffrey Goodrich

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT                    13

**DOCUMENT 23**

1   Jeffrey J. Goodrich (SBN 107577)
2   GOODRICH & ASSOCIATES
    336 Bon Air Center, Suite 335
3   Greenbrae, CA 94904
    (415) 925-8630  VOICE
4   (415) 925-9242  FAX

5
    Attorneys for Debtor and
6   Debtor in Possession

7

8                  UNITED STATES BANKRUPTCY COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12
                                        | CHAPTER 11
13
                                        | Case No. Case No. 04-32921-TEC
14  In re:

15  THOMAS LLOYD,

16        Debtor
                                        | Adv. No. 05-03328
17  JEFFREY E. HOFFMAN,

18        Plaintiff,                      DECLARATION OF JEFFREY GOODRICH
                                          IN REPLY TO PLAINTIFF'S OPPOSITION
19  v.                                    TO DEFENDANT THOMAS LLOYD'S
                                          MOTION FOR SUMMARY JUDGMENT
20  THOMAS R. LLOYD, an individual, EDWARD
    L. BLUM, an individual, and DOES 1 through   [WITH EXHIBITS]
21  20, inclusive,

22        Defendants

23  AND RELATED CROSS-ACTION,           DATE:  April 28, 2006
                                        TIME:  9:30 a.m.
24                                      COURT: 23rd Floor, 235 Pine Street, S.F.
25        Cross-Defendants

26

27

28

    DECLARATION OF JEFFREY GOODRICH IN
    REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT
    THOMAS LLOYD'S MOTION FOR SUMMARY JUDGMENT
                                                1

Plaintiff's EOR-486

I, Jeffrey J. Goodrich, declare:

1.     I have personal knowledge of the facts set forth in this declaration, except as to matters stated upon information and belief, and as to those matters I believe my information to be true. If called as a witness, I could competently testify to the facts set forth herein.

2.     On December 1, 2005, I caused to be served upon Plaintiff's counsel in this Adversary Proceeding an Amended Notice of Deposition of Jeffrey E. Hoffman, a true and correct copy of which is attached hereto as Exhibit "A" and made a part hereof. In that Notice, I demanded that Mr. Hoffman produce an original of the Notice of Cancellation that he has submitted as Exhibit "C" to his Declaration in opposition to Thomas Lloyd's Motion for Summary Judgment in this Adversary Proceeding.

3.     On December 7, 2005, I took Mr. Hoffman's deposition in Gilroy, California. Attached hereto as Exhibit "B" and made a part hereof, is a true and correct copy of excerpts of the reporter's transcript of Mr. Hoffman's deposition. The original of the entire transcript, together with the reporter's Certification, is in the possession of the Court after Mr. Hoffman's counsel requested that it be so lodged with the Court at Phase I of the trial in this Proceeding.

4.     In his deposition, Mr. Hoffman admitted that he does not have the original Notice of Cancellation, only a copy. See, Exhibit B hereto, p. 4-24:6-10.

5.     In his deposition, Mr. Hoffman admitted that he did not see Lloyd sign the Notice of Cancellation, nor does he know who was present when Lloyd allegedly signed it. See, Exhibit B, p. 4-24:11-12 and p. 5-43:9-13.

6.     In his deposition, Mr. Hoffman admitted that he did not recognize the handwritten notations on the Notice of Cancellation. See, Exhibit B, p. 5-43:5-7.

7.     Prior to his deposition and in response to my written Request for Production of Documents, Set One, Mr. Hoffman provided a written response, a true and correct copy of which is attached hereto as Exhibit "C" and made a part hereof. In his verified responses to Requests Nos. 1 and 2, Mr. Hoffman agreed to produce all documents in his possession, custody or control that referred to, related to, or concerned his ownership of the Elizabeth Street Property (including any purchase and sale agreements) or referred to, related to or concerned the transaction with Lloyd

DECLARATION OF JEFFREY GOODRICH IN
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT
THOMAS LLOYD'S MOTION FOR SUMMARY JUDGMENT

2

Plaintiff's EOR-487

1   whereby he acquired title to the Elizabeth Street Property.  Notwithstanding that verified response,

2   the documents I received from Mr. Hoffman in response to my Request for Production of

3   Documents did not include a copy of the PRDS Real Estate Purchase Contract that Mr. Hoffman has

4   identified in his Declaration as Exhibit "A".  He did, however, produce a copy of the Notice of

5   Cancellation that he has attached as Exhibit C to his declaration.  The copy I received from Mr.

6   Hoffman was not attached to any other document.

7         8.      In his deposition, Mr. Hoffman admitted that he had no personal knowledge of

8   whether the Notice of Cancellation was attached to anything.  See, Exhibit "B", p. 6-38:17-23.

9         9.      In his deposition, Mr. Hoffman admitted that he did not know Lloyd prior to the

10  subject transaction.  See, Exhibit "B", p. 6-39 to 6-40.

11        I declare under penalty of perjury under the laws of the State of California that this

12  declaration is true and correct and that it was executed on April 21, 2006, at Greenbrae, California.

13  DATED:  April 21, 2206

14

15                                              /s/ Jeffrey J. Goodrich
16                                           Jeffrey J. Goodrich

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JEFFREY GOODRICH IN
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT
THOMAS LLOYD'S MOTION FOR SUMMARY JUDGMENT

3

Plaintiff's EOR-488

Jeffrey J. Goodrich (SBN 107577)
GOODRICH & ASSOCIATES
336 Bon Air Center, Suite 535
Greenbrae, CA 94904
(415) 925-8630  VOICE
(415) 925-9242  FAX

Attorneys for Debtor and
Debtor in Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHAPTER 11

Case No. Case No. 04-32921-TEC

In re:

THOMAS LLOYD,

            Debtor

JEFFREY E. HOFFMAN,                          Adv. No. 05-03328

        Plaintiff,                           AMENDED NOTICE OF DEPOSTION OF
                                             JEFFREY E. HOFFMAN

THOMAS LLOYD, et al,

        Defendants

AND RELATED CROSS-ACTION

TO ALL PARTIES HEREIN AND THEIR COUNSEL OF RECORD:

        PLEASE TAKE NOTICE that on December 7, 2005, pursuant to Rules 7030 and 7032 of the

Federal Rules of Bankruptcy Procedure and the stipulation of the parties herein, Defendant Thomas

Lloyd ("Defendant"), through his attorney of record, will take the deposition of Jeffrey E. Hoffman

by oral examination before a notary public or any other person authorized to administer oaths.  Said

AMENDED NOTICE OF DEPOSITION                            1

EXHIBIT "A"

Plaintiff's EOR-489

deposition shall commence at 9:00 a.m. at the Hilton Garden Inn, 6070 Monterey Road, Gilroy, CA 95020, and continue day to day, Sundays and holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that Defendant hereby demands that deponent bring to said deposition the ORIGINAL of the attached document recently produced by deponent as document number JH-137.

Dated: December 1, 2005                        Goodrich & Associates


                                               /s/ Jeffrey Goodrich
                                               Jeffrey Goodrich

AMENDED NOTICE OF DEPOSITION
                                        2

A-2

Plaintiff's EOR-490

### PROOF OF SERVICE BY MAIL

I, Jeffrey J. Goodrich, declare:

1.     I am over the age of eighteen years and am not a party to the within action.  My business address is 350 Bon Air Center, Suite 220, and my mailing address is 336 Bon Air Center, #335, Greenbrae, California 94904.

2.     On December 1, 2005, I caused to be served the pleading entitled AMENDED NOTICE OF DEPOSITION OF JEFFREY E. HOFFMAN on the following persons by United States mail, postage prepaid:


**PLAINTIFF AND ALL CROSS-DEFENDANTS:**

Stephen D. Pahl, Esq.
160 West Santa Clara Street
Fourteenth Floor
San Jose, CA 95113-1700

**DEFENDANT EDWARD L. BLUM:**

Jerry R. Hauser, Esq.
Phillips, Greenberg & Hauser, LLP
Four Embarcadero Center, 39th Floor
San Francisco, CA 94111

On the same day, I also faxed a complete copy to Stephen D. Pahl at (408) 286-5722 and emailed a pdf file to spahl@pahl-gosselin.com.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


December 1, 2005                               ___/S/ Jeffrey J. Goodrich_____
                                                         Jeffrey J. Goodrich


AMENDED NOTICE OF DEPOSITION

3

A-3

**Plaintiff's EOR-491**

NOTICE REQUIRED BY CALIFORNIA LAW

UNTIL YOUR RIGHT TO CANCEL THIS CONTRACT HAS
ENDED, H & B PROPERTIES, LLC OR ANYONE WORKING FOR
H & B PROPERTIES, LLC CANNOT ASK YOU TO SIGN OR HAVE
YOU SIGN ANY DEED OR ANY OTHER DOCUMENT.

NOTICE OF CANCELLATION

DATE ___*May 28    #003*___

YOU MAY CANCEL THIS CONTRACT FOR THE SALE OF YOUR HOUSE
WITHOUT PENALTY OR OBLIGATION AT ANY TIME
BEFORE ___*6 – 4 – 03*___     TIME ___*9:00 A.M.*___

Seller has the right to cancel until the last of the 5th business day following the day on
which Seller signs contract. "Business Day" means any day except Sunday holidays) or
until 8:00 A.M. on day of foreclosure sale, whichever occurs first.

TO CANCEL THIS TRANSACTION, PERSONALLY DELIVER A SIGNED AND
DATED COPY OF THIS CANCELLATION NOTICE OR SEND A TELEGRAM TO

BUYER ___*Jeff Hoffman*___ ADDRESS ___*9122  N. Palm Ave # 103*___

___*Fresno  CA  93704*___

NOT LATER THAN:     DATE ___*6 / 4/03*___  TIME ___*12:12 am*___

I HEREBY CANCEL THIS TRANSACTION.

Seller_____     Date_____

Seller_____     Date_____

I HAVE RECEIVED THIS NOTICE TO CANCEL.

Buyer_____     Date_____

*Thomas A. Floyd*

157

A-4

Plaintiff's EOR-492

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

IN RE

THOMAS LLOYD,

      Debtor.

CASE NO. 04-32 921TEC

AND RELATED CROSS-ACTIONS.

### DEPOSITION OF JEFF HOFFMAN
#### Volume I (Page 1 - 122)

Date:        December 7, 2005

Time:        9:00 a.m.

Location:    375 Leavesley Road
             Gilroy, California

Reported by:  JAN SERRA
              CSR # 8207

7689
19992

## Bell & Myers

CERTIFIED SHORTHAND REPORTERS, INC.

50 AIRPORT PARKWAY, SUITE 205, SAN JOSE, CALIFORNIA 95110, TELEPHONE (408) 287-7500, FAX (408) 294-1211

EXHIBIT B-1
Plaintiff's EOR-493

JEFF HOFFMAN, VOLUME I          DECEMBER 7, 2005

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

IN RE
THOMAS LLOYD,
                        Debtor
                CASE NO. 04-32-92TEC
                        Volume I
AND RELATED CROSS-ACTIONS.    (Page 1 - 122)

DEPOSITION OF JEFF HOFFMAN

Date:     December 7, 2005
Time:     9:00 a.m.
Location:   375 Eavesley Road
            Gilroy, California

Reported by: JAN SERRA
             CSR # 8267

APPEARANCES

For the debtor: GOODRICH & ASSOCIATES
            BY: JEFFREY L. GOODRICH, ESQ.
            336 Lyon Ave. Court
            Suite 338
            Greenbrae, California 94904
            415-925-9670

For the Witness: PAUL & GOSSELIN
            BY: STEPHEN D. PAIR, ESQ.
            160 West Santa Clara Street
            Fourteenth Floor
            San Jose, California 95113
            408-290-3800

For the Defendant PHILLIPS, BELL SPURGEA, HAUSER, LLP
Mr. Blum:      BY: JERRY R. HAUSER, ESQ.
            Embarcadero Center
            38th Floor
            San Francisco, California 94111
            415-348-8700

The Reporter:    BELL & MYERS, CSR, INC.
            BY: JAN SERRA,
            CSR # 8267
            By August Parkway
            Suite 205
            San Jose, California 95110
            408-287-7500

Also Present:    Tom Lloyd

INDEX OF EXAMINATIONS
                                         Page
By Mr. Goodrich...........................    5
            --oOo--

INDEX OF EXHIBITS
 1 - Amended notice of deposition         23
 2 - Request for production of documents    30
 3 - Response to request for production of   33
     Documents
 4 - Verification to response to request for  34
     production of documents
 5 - Residential lease                    48
 6 - Grant deed                           58
 7 - Option agreement                     60
 8 - Final settlement statement           63
 9 - Proof of Claim                       65
10 - File-endorsed copy of the superior    78
     Court's trial setting notice

11 - Document production 313 through 317    84
12 - Document produced by Mr. Hoffman,     92
     Pages 36 through 48

13 - Greenpoint Mortgage Funding Inc.      91
     Broker Funds Disbursement Instructions

14 - Borrowers Closing Affidavit          96
15 - Note secured by a deed of trust      98

16 - Deed of trust                        107
17 - Letter dated October 5th, 2004       110
     Addressed to Julie B. Gustavson

18 - Mr. Blum's production number 350      114
     And 351

19 - Ed Blum documents 297, 298, 299 and   115
     300

Witness instructed not to answer:

        Page      Line
        31        25
        53        12, 19
        90        4
        104       10
        113       6
        116       17

BELL & MYERS, CERTIFIED SHORTHAND REPORTER, INC.   (408) 287-7500

B-2

Plaintiff's EOR-494

Case 3:07-cv-02417-MHP     Document 11-7     Filed 07/13/2007     Page 58 of 73

1  JEFF HOFFMAN,
2  called as a witness, after having been first duly
3  affirmed by the Certified Shorthand Reporter to tell
4  the truth, the whole truth, and nothing but the truth,
5  testified as follows.
6
7  EXAMINATION BY MR. GOODRICH
8
9  Q   Mr. Hoffman, we just met this morning; you've
10  not met me before?
11  A   That's correct.
12  Q   Have you had your deposition taken before?
13  A   Yes.
14  Q   How many occasions?
15  A   I don't know how many.
16  Q   More than ten?
17  A   More than ten.
18  Q   Let me just briefly go through the
19  admonitions since you've got some experience.
20      I'm going to ask you questions, and you're
21  going to provide answers, so wait until the question is
22  done before you answer. It makes better reading for
23  the record and creates less confusion for anyone
24  reading the transcript afterwards. Okay?
25  A   Okay.

1  Q   You need to be audible in your responses so
2  the reporter can take them down. So yes or no instead
3  of a shake of the head is helpful for the record.
4      If your counsel raises an objection, I'm
5  still entitled to get an answer unless he instructs you
6  not to answer. I want your reasonable belief as to
7  events that you think occurred, or testimony you think
8  is accurate. I don't want you guessing, but I'm
9  entitled to your reasonable recollection of events.
10      If you don't understand a question, I want
11  you to ask me to rephrase it or tell me what it is
12  you don't understand about the question so we can
13  get an accurate response.
14      Since all your answers are going to be
15  documented in a transcript, as you're aware, and any
16  changes to that testimony after the fact can be
17  commented on, and sometimes in a negative way if the
18  answers materially change from what the court
19  reporter has put down.
20      Do you understand everything so far?
21  A   Yes, I do.
22  Q   Are you taking any medications that might
23  affect your ability to provide information today or to
24  recollect events involving the subject matter of this
25  dispute?

A   I don't know if I could comment whether they
would or not, but I do take heart medicine.
Q   I'll try not to be too stressful here. I do
appreciate your having accommodated my sciatica. Which
is much better now.
      And if you need any breaks yourself, let me
know, we can certainly accommodate any reasonable
breaks you need, check voicemail, whatever. I know
you're a busy person, as we all are. We will take a
break mid-morning and a break for lunch. It is my
expectation we can be done today, depending what we
hear.
      Let me get your full name for the record.
A   Jeffrey Edward Hoffman.
Q   Do you go by any other names?
A   No.
Q   Do you have any nicknames?
A   No.
Q   What's your educational experience?
A   Schooling?
Q   Yes.
A   Graduate, Cal Poly, architecture.
Q   Any postgraduate?
A   No.
Q   What did you do when you first got your

1  degree at Cal Poly?
2  A   I was already doing
3  Q   What's that?
4  A   I was already developing and doing
5  construction projects at the time of which I graduated,
6  and continued to do so after I graduated.
7  Q   Were you employed by somebody?
8  A   Self.
9  Q   What kind of projects?
10  A   Predominantly housing, anywhere from one to
11  four units.
12  Q   Where was this located?
13  A   San Luis Obispo.
14  Q   How old were you at the time when you
15  graduated?
16  A   I graduated 1976.
17  Q   So that would make you how old then?
18  A   Twenty-five, 26.
19  Q   When you say you were in business for
20  yourself, were you in business with anybody else, or
21  was it just a sole proprietorship?
22  A   Sole proprietorship.
23  Q   What was the name of it?
24  A   I hadn't -- just me.
25  Q   How long did you work in that area of

B-3
Plaintiff's EOR-495

JEFF HOFFMAN, VOLUME I    DECEMBER 7, 2005

Q   Has he ever provided accounting services for
you?
A   No.
Q   How long have you known him?
A   Ten years.
Q   Do you know him socially?
A   No.
Q   You don't consider him a friend?
A   I don't consider him an enemy.
Q   Do you know if he has any interest in Norcal
Financial Lending Services Inc.?
A   I do not.
Q   Does Ms. Gustavson provide legal services to
any entities other than your entities?
A   Again, I would be hazarding a guess, but I
would presume so.
Q   She is not your in-house counsel?
A   It's on a contractual basis.
Q   Where does she operate from?
A   She operates out of our office at 5132.
Q   How often is she in the office?
A   Pretty much daily.
Q   Have you had any discussions with Ms.
Gustavson concerning her role as president of Norcal
Financial Lending Services Inc.?

A   Can you be more specific?
Q   Do you guys ever talk about it?
A   Not her role.
Q   How did she get to be president?
A   Well, I would imagine in the formation, I
would assume.
Q   Do you know who was involved in the
formation?
A   I would say Julie Gustavson was involved in
the formation.
Q   Do you know if she owns any shares in the
company?
A   I answered no. I don't believe she does. I
didn't say she didn't. I said I don't know if she
does.
Q   She has never discussed whose money it is
that Norcal Financial lends?
A   No.
Q   Would it be fair to say that at this point
you're no longer dealing with Norcal Financial Inc. but
you're dealing with Norcal Financial Lending Services
for hard money loans?
A   Could be.
Q   How long has Norcal Financial Lending
Services Inc. been providing hard money loans?

A   I don't know.
Q   Do you know how long they have been in
business?
A   A little over a year.
Q   How many times have you used their Lending
Services since they were formed?
A   More than ten.
Q   Do you receive any compensation, in any form
whatsoever, from Norcal for arranging loans?
    MR. PAHL:  Which Norcal?
BY MR. GOODRICH:
Q   Norcal Financial Lending Services Inc.
A   No.
Q   How about Norcal Financial Inc.?
A   I have.
Q   What kind of compensation have you received?
A   It would usually be in the form of points.
    (Defendants' Exhibit 1 marked for
identification)
BY MR. GOODRICH:
Q   Have you seen that document before?
A   This whole document?
Q   Yes.
A   Yes.
Q   That's the amended notice of your deposition

for today. We asked that you bring an original of a
document that you had produced in response to a
document request.
    Did you bring the original of that
document with you?
A   My comment to that is the original that I
have is as original as the one with which you have, by
one less reduction. One less copy. The only thing
that I have is I have a copy which is the same as this
year. Tom would have the original blue inked copy.
Q   Where were you -- did you see him sign it?
A   No, I did not.
Q   So why do you think he has it?
A   Because that's who would have a five-day
recision is the individual who is involved in such
would sign the acknowledgement that he had it. It
would be set up as it's set right here, and if he so
wanted to decline the deal, he would then sign it above
where it states, and he would send that to me.
Q   How long have you been aware of the need for
a five-day notice of recision in a transaction like the
one involving Elizabeth Street?
A   Certainly from this date forward.
Q   Not any earlier?
A   I would say I was aware of it earlier. It

6 (Pages 21 to 24)

B-4

Plaintiff's EOR-496

JEFF HOFFMAN, VOLUME I          DECEMBER 7, 2005

1   and marked as defendants' 5.
2   BY MR. GOODRICH:
3       Q   Is that the lease you just referred to?
4       A   Correct.
5       Q   That's your signature on the last page?
6       A   Yes.
7       Q   Paragraph number 55, do you see "Other terms
8   and conditions" says, "see addendum one."
9           I'll represent to you that I did not
10  receive anything called an addendum one. That in
11  fact, the next document, No. 134, is an entirely new
12  document, with the caption "Option Agreement."
13          Was there any addendum number one to this
14  document at the time you executed it?
15      A   I believe that would refer to the option.
16      Q   So did you consider this residential lease
17  and option to be a combined document?
18      A   No.
19      Q   So why are you assuming that addendum number
20  one refers to the option?
21      A   I hazard a guess.
22      Q   So it's just speculation?
23      A   Correct.
24      Q   Is there anything you can think of that would
25  refresh your recollection as to what addendum number

                                                    41

1   one referred to in this document?
2       A   Typically, it's an addendum.
3       Q   Wouldn't that be for a purchase agreement as
4   opposed to a lease?
5       A   The uniqueness of this one is the fact that
6   you're leasing back to an individual whom you've
7   purchased from.
8       Q   So you're thinking that addendum number 1 may
9   have been an addendum that you would typically see in a
10  real estate sale transaction?
11      A   I believe so. It's possible.
12      Q   Who prepared this lease? And by that I mean
13  the typewritten portions that are added to the form.
14      A   I can't say.
15      Q   Would it normally be someone in your office?
16      A   Typically.
17      Q   Would it be done at your supervision and
18  instruction?
19      A   I would have certainly seen the document,
20  yes.
21      Q   While I'm thinking of it, let me ask you the
22  same questions with respect to Exhibit 1, the last
23  page. There were some handwritten notations other than
24  Mr. Lloyd's alleged signature. If you could take a
25  look at that and see if you could identify whose

                                                    42

1   handwriting that is.
2       A   (Complying)
3       Q   This stuff here?  Are you referring to this
4   document?
5       A   Yes. There is handwritten notations in the
6   blanks, other than Mr. Lloyd's alleged signature. If
7   you know whose handwriting that is --
8       A   No, I don't.
9       Q   I believe you testified you were not present
10  when Mr. Lloyd signed document No. 137.
11          Do you know who was present when he signed
12  it?
13      A   No, I don't.
14      Q   Do you have any idea where he was when he
15  signed it?
16      A   I would presume a title company.
17      Q   Did you think that getting his signature on
18  document No. 137 was pretty important?
19      A   This one right here?
20      Q   Yes.
21      A   Absolutely.
22      Q   You don't remember having any conversation
23  with anyone about getting him to sign or having him
24  sign document No. 137?
25      A   Specific to that document?

                                                    43

1       Q   Right.
2       A   Nothing in particular.
3       Q   Was it your understanding that if he didn't
4   acknowledge receipt of that document that your
5   transaction might in fact be resaleable at any time?
6       A   Well, you would certainly be in violation of
7   the civil code.
8       Q   Did you think about getting him to notarize
9   the signature?
10      A   I don't think it's a requirement.
11      Q   No. But did you think about it?
12      A   Not in particular.
13      Q   Do you have a notary in-house?
14      A   Yes.
15      Q   If he was at a title company, it would have
16  had a notary there; right?
17      A   Presumably.
18      Q   Did you think about getting a witness to see
19  he signed it?
20      A   No more than so than any of the other
21  documents.
22      Q   Did you think about getting a duplicate
23  original for your own files?
24      A   Typically, I don't think.
25      Q   But did you think about it in this particular

                                                    44

BELL & MYERS, CERTIFIED SHORTHAND REPORTER, INC.   (408) 287-7500

B-5

Plaintiff's EOR-497

JEFF HOFFMAN, VOLUME I    DECEMBER 7, 2005

Page 37

1  BY MR. GOODRICH:
2      Q  Let me put it this way, if what your counsel
3  produced did not include the purchase agreement, does
4  that mean that there was no purchase agreement --
5  written purchase agreement -- between my client and you
6  by which you acquired 940 Elizabeth?
7      A  What it means is I didn't have it in my
8  possession.
9      Q  So where would that be?
10     A  I would only hazard a guess, but if it's not
11  in my file, I presume I do not have a copy of such.
12     Q  Let's explore where it might be.
13     If it wasn't in your file, can you tell me
14  where it might be?
15     A  Only as a pure guess. We don't want you to
16  guess.
17     Q  Well, it wouldn't be on the freeway between
18  here and San Francisco would it?
19     MR. PAHL: That's a good guess.
20     THE WITNESS: Again, that's speculation. I
21  don't know.
22  BY MR. GOODRICH:
23     Q  Do you recall misplacing it?
24     A  No.
25     Q  Do you recall it being destroyed?

Page 38

1  without being attached to anything?
2      A  It's possible.
3      Q  When you produced the documents and it
4  involved a document that had a staple to keep several
5  pages together, did you produce it as a stapled
6  document?
7      A  I don't know.
8      Q  When did you first meet Mr. Lloyd?
9      A  I can tell you the location. I don't know
10  the specific date.
11     Q  What is the location?
12     A  Fresno.
13     Q  What was the occasion of that meeting?
14     A  To hammer out a settlement.
15     Q  Is the settlement that was memorialized by a
16  written settlement agreement that was executed after
17  you sued him to recover possession of 940 Elizabeth
18  Street?
19     A  State that again. Say that again.
20     (Record read Q Is the settlement that was
21  memorialized by a written settlement
22  agreement that was executed after you sued
23  him to recover possession of 940 Elizabeth
24  Street?)
25     THE WITNESS: Yes.

Page 38

1      A  No.
2      Q  Do you recall giving it to somebody?
3      A  No.
4      Q  When was the last time you saw the purchase
5  agreement?
6      A  That would presume that I did see it. And --
7  I'm not trying to be evasive, but I'll be honest with
8  you, I can't recall, specifically, this particular
9  project, seeing a purchase agreement. I would have
10  recalled had I made some copies of it, sent it off. I
11  do not recall that.
12     Q  When you produced document 137, which is the
13  exhibit to Exhibit 1 -- it is called Notice of Right to
14  Rescind -- take a look at that.
15     A  Okay.
16     Q  What's the title of that?
17     A  Notice of Cancellation.
18     Q  When you found that, where was that document?
19     A  Be in the file.
20     Q  Just by itself?
21     A  No, it would be in the file.
22     Q  Was it attached to anything?
23     A  I don't know if it was or not.
24     Q  You produced it by itself without it attached
25  to anything. Does that mean that it was by itself

Page 40

1  BY MR. GOODRICH:
2      Q  Prior to that meeting, you had not met him in
3  person?
4      A  No.
5      Q  Had you spoken with him on the phone?
6      A  Yes.
7      Q  How many occasions?
8      A  More than ten.
9      Q  Do you recall when your first conversation
10  was?
11     A  No, I don't.
12     Q  Do you recall the substance of your first
13  conversation?
14     A  To the best of my recollection, it would be
15  relative to making lease payments.
16     Q  Lease payments for what property?
17     A  That would be Elizabeth.
18     Q  So is it fair to say that that first
19  conversation would have occurred after you entered into
20  a lease with you for 940 Elizabeth?
21     A  Correct.
22     (Defendants' Exhibit 5 marked for
23  identification)
24     MR. GOODRICH: For the record, this is
25  Mr. Hoffman's document 130, through and including, 133.

BELL & MYERS, CERTIFIED SHORTHAND REPORTER, INC.  (408) 287-7500

B-6

Plaintiff's EOR-498

JEFF HOFFMAN, VOLUME I    DECEMBER 7, 2005

1   can recall relative to a settlement agreement that
2   would mirror this.
3     Q  Because I think what you were telling us
4   earlier is that you and Mr. Blum discussed the amount
5   of H and B's claim, and you basically agreed to
6   disagree. So I'm kind of surprised to see that the
7   time Mr. Blum receives a demand about H and B's claim,
8   you don't know anything about it.
9     Can you explain that?
10    A  It appears as though he dealt directly with
11   Julie. It appears he was not going -- he went directly
12   to Julie.
13     Q  Are you aware that an attorney who knows an
14   adverse party is represented by counsel can't talk
15   directly to that adverse party, but in fact must talk
16   to that person if an attorney?
17    A  Yes, I'm aware of that.
18     Q  Did you ever send Mr. Blum any writing
19   authorizing him to talk with you directly?
20    A  Say that again.
21     (Read back: Q. Did you ever send Mr. Blum
22    any writing authorizing him to talk with you
23    directly?)
24    THE WITNESS: No.
25    MR. PATIL: It's after 2 o'clock.

122

1    MR. GOODRICH: Copy.
2
3   (Whereupon, the deposition of JEFF HOFFMAN was
4   adjourned at 2:10 p.m.)
5
6
7       JEFF HOFFMAN
8       Date: _____
9
10    --oOo--
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

122

---

          CERTIFICATE

    I, JAN SERRA, CSR #8207, do hereby
certify:
    That prior to being examined, the witness
named in the foregoing deposition was by me duly
sworn to testify the truth, the whole truth, and
nothing but the truth;
    That said deposition was taken down by me
in shorthand at the time and place therein named, and
thereafter reduced to typewriting under my direction.
    I further certify that I am not interested
in the outcome of the action.
    Witness my hand this ____ day of _____
2005.


         JAN SERRA
         CSR No. 8207

123

31 (Pages 121 to 123)

BELL & MYERS, CERTIFIED SHORTHAND REPORTER, INC.    (408) 287-7500

B-7

Plaintiff's EOR-499

1  PAHL & GOSSELIN
   A Professional Corporation
2  Stephen D. Pahl, Esq. (State Bar No. 82060)
   Cheri L. MacArthur, Esq. (State Bar No. 192742)
3  160 West Santa Clara Street
   Fourteenth Floor
4  San Jose, California 95113-1700
   Telephone No.: (408) 286-5100
5  Facsimile No.: (408) 286-5722

6  Attorneys for Plaintiff and Cross-Defendant
   JEFFREY E. HOFFMAN
7

8               UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11  In re:                          )  Case No. 04-32921 TEC
                                    )
12    THOMAS LLOYD,                 )  Adversary No. 05-03328
                                    )
13        Debtor.                   )  Chapter 11
                                    )
14  _____)  RESPONSE TO REQUEST FOR
                                    )  PRODUCTION OF DOCUMENTS,
15  JEFFREY E. HOFFMAN,             )  SET ONE
                                    )
16        Plaintiff,                )
                                    )
17    v.                            )
                                    )
18  THOMAS R. LLOYD, an individual, )
    EDWARD L. BLUM, an individual, and )
19  DOES 1 through 20, inclusive,   )
                                    )
20        Defendants.               )
                                    )
21  _____)
                                    )
22  AND RELATED ACTIONS.            )
    _____)

23  PROPOUNDING PARTY: Debtor/Defendant/Cross-Complainant THOMAS LLOYD

24  RESPONDING PARTY:  Plaintiff/Cross-Defendant JEFFREY E. HOFFMAN

25  SET NUMBER:        One

26      Plaintiff and Cross-Defendant JEFFREY E. HOFFMAN ("Responding Party") hereby

27  responds to the "Response to Request for Production of Documents, Set One" propounded by

28  Debtor/Defendant/Cross-Complainant THOMAS LLOYD ("Propounding Party").

///

EXHIBIT C

1

RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS

AP 05-0331
LLOYD

Plaintiff's EOR-500   1

## PRELIMINARY STATEMENT

It should be noted that Responding Party has not fully completed investigation of the facts relating to this case, has not fully completed discovery in this action, and has not completed preparation for trial. All of the responses contained herein are based only upon such information and documents which are presently available and specifically known to Responding Party. It is anticipated that further discovery, independent investigation, legal research and analysis may supply additional facts, add meaning to the known facts, as well as establish entirely new factual conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and variations from the responses and contentions hereinafter set forth. The following responses are given without prejudice to Responding Party's right to produce evidence of any subsequently discovered fact or facts which this Responding Party may later recall or discover. Responding Party accordingly reserves the right to change or supplement any and all responses herein as additional facts are ascertained, analysis are made, legal research is completed, and contentions are made. The responses contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known, but should in no way be to the prejudice of Responding Party in relation to further discovery, investigation, research, or analysis.

## RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

Produce all DOCUMENTS that refer to, relate to, or CONCERN YOUR ownership of the ELIZABETH STREET PROPERTY at any time, including but not limited to grant deeds, deeds of trust, purchase and sale agreements, leases and title reports.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Responding Party objects to this request on the grounds that it is overbroad, unduly burdensome and oppressive. Responding Party also objects to this request on the grounds that it seeks documents protected by the attorney-client privilege and/or work product doctrines. Responding Party further objects to this request on the ground that it seeks documents equally

2

Plaintiff's EOR-501

1  available to Propounding Party. Without waiving these objections, Responding Party

2  responds as follows: Responding Party will produce all documents in his possession, custody

3  and control that are responsive to this request.

4  **REQUEST FOR PRODUCTION NO. 2:**

5      Produce all DOCUMENTS that refer to, relate to, or CONCERN the transaction

6  between YOU AND LLOYD whereby YOU acquired title to the ELIZABETH STREET

7  PROPERTY, including but not limited to any option agreement, the lease agreement, grant

8  deeds, escrow documents, title reports and appraisals.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

10      Responding Party objects to this request on the grounds that it is overbroad, unduly

11  burdensome and oppressive. Responding Party also objects to this request on the grounds that

12  it seeks documents protected by the attorney-client privilege and/or work product doctrines.

13  Responding Party further objects to this request on the ground that it seeks documents equally

14  available to Propounding Party. Without waiving these objections, Responding Party

15  responds as follows: Responding Party will produce all documents in his possession, custody

16  and control that are responsive to this request.

17  **REQUEST FOR PRODUCTION NO. 3:**

18      Produce all DOCUMENTS that refer to, relate to, or CONCERN any right of

19  rescission you gave LLOYD, or you agree LLOYD has, in connection with YOUR purchase of

20  the ELIZABETH STREET PROPERTY from LLOYD.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

22      Responding Party objects to this request on the grounds that it seeks documents

23  protected by the attorney-client privilege and/or work product doctrines. Responding Party

24  also objects to this request on the ground that it seeks documents equally available to

25  Propounding Party. Without waiving these objections, Responding Party responds as follows:

26  Responding Party will produce all documents in his possession, custody and control that are

27  responsive to this request.

28  ///

P:
SPA        Gosselin
TFA        l Corp.
180 N.     a Clara St
Fourteenth Floor
San Jose, CA 95113
4098 286-5599

3

C-3

**Plaintiff's EOR-502**

5135.602

1    **REQUEST FOR PRODUCTION NO. 4:**

2        Produce all DOCUMENTS that refer to, relate to, or CONCERN the deed of trust

3    encumbering the ELIZABETH STREET PROPERTY in favor of Norcal Financial, Inc.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

5        Responding Party objects to this request on the grounds that it seeks documents

6    protected by the attorney-client privilege and/or work product doctrines. Responding Party

7    also objects to this request on the ground that it seeks documents equally available to

8    Propounding Party. Without waiving these objections, Responding Party responds as follows:

9    Responding Party will produce all documents in his possession, custody and control that are

10    responsive to this request.

11    **REQUEST FOR PRODUCTION NO. 5:**

12        Produce all DOCUMENTS that refer to, relate to, or CONCERN any obligation

13    secured by the deed of trust encumbering the ELIZABETH STREET PROPERTY in favor of

14    Norcal Financial, Inc.

15    **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

16        Responding Party objects to this request on the grounds that it seeks documents

17    protected by the attorney-client privilege and/or work product doctrines. Responding Party

18    also objects to this request on the ground that it seeks documents equally available to

19    Propounding Party. Without waiving these objections, Responding Party responds as follows:

20    Responding Party will produce all documents in his possession, custody and control that are

21    responsive to this request.

22    **REQUEST FOR PRODUCTION NO. 6:**

23        Produce all DOCUMENTS that refer to, relate to, or CONCERN Norcal Financial,

24    Inc.

25    **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

26        Responding Party objects to this request on the ground that it seeks documents

27    irrelevant to this action and not reasonably calculated to lead to the discovery of admissible

28    evidence. Responding Party objects to this request on the grounds that it is overbroad, unduly

Pa   Gosselin
A Pr.   1 Corp.
155 th   Clara St
Seventeenth Floor
San Jose, CA 95113
(408) 286-5100

3125/002

4

C-4

1  burdensome and oppressive. Responding Party also objects to this request on the ground that

2  it fails to identify any category of documents to be produced with any particularity, rendering

3  it vague and ambiguous. Responding Party further objects to this request on the grounds that

4  it seeks documents protected by the attorney-client privilege and/or work product doctrines.

5  As such, Responding Party cannot produce documents responsive to this request.

6  **REQUEST FOR PRODUCTION NO. 7:**

7      Produce all DOCUMENTS that refer to, relate to, or CONCERN any

8  COMMUNICATIONS with LLOYD about the Settlement Agreement and Mutual Release

9  Agreement dated August 3, 2004.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

11      Responding Party objects to this request on the ground that it seeks documents

12  protected by the attorney-client privilege and/or work product doctrines. Without waiving

13  these objections, Responding Party is unable to produce any documents responsive to this

14  request, because other than privileged documents, Responding Party was unable to locate any

15  documents responsive to this request. Responding Party believes that he was unable to locate

16  such documents because they never existed.

17  **REQUEST FOR PRODUCTION NO. 8:**

18      Produce all DOCUMENTS that refer to, relate to, or CONCERN any consideration

19  you gave LLOYD to purchase his interest in the ELIZABETH STREET PROPERTY.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

21      Responding Party objects to this request on the grounds that it is overbroad, unduly

22  burdensome and oppressive. Responding Party also objects to this request on the grounds that

23  it seeks documents protected by the attorney-client privilege and/or work product doctrines.

24  Responding Party further objects to this request on the ground that it seeks documents equally

25  available to Propounding Party. Without waiving these objections, Responding Party

26  responds as follows: Responding Party will produce all documents in his possession, custody

27  and control that are responsive to this request.

28  ///

5

C-5

Plaintiff's EOR-504

**REQUEST FOR PRODUCTION NO. 9:**

Produce all DOCUMENTS that refer to, relate to, or CONCERN any COMMUNICATIONS with LLOYD about the ELIZABETH STREET PROPERTY.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Responding Party objects to this request on the grounds that it is overbroad, unduly burdensome and oppressive. Responding Party also objects to this request on the grounds that it seeks documents protected by the attorney-client privilege and/or work product doctrines. Responding Party further objects to this request on the ground that it seeks documents equally available to Propounding Party. Without waiving these objections, Responding Party responds as follows: Responding Party will produce all documents in his possession, custody and control that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 10:**

Produce all DOCUMENTS that refer to, relate to, or CONCERN any obligation secured by a deed of trust encumbering the ELIZABETH STREET PROPERTY in favor of Greenpoint Mortgage.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Responding Party objects to this request on the grounds that it is overbroad, unduly burdensome and oppressive. Responding Party also objects to this request on the grounds that it seeks documents protected by the attorney-client privilege and/or work product doctrines. Responding Party further objects to this request on the ground that it seeks documents equally available to Propounding Party. Without waiving these objections, Responding Party responds as follows: Responding Party will produce all documents in his possession, custody and control that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 11:**

Produce all DOCUMENTS that refer to, relate to, or CONCERN any COMMUNICATIONS between HOFFMAN and Greenpoint Mortgage concerning Greenpoints Mortgage's loan secured by the ELIZABETH STREET PROPERTY.

///

6

E-6

**Plaintiff's EOR-505**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

1

2    Responding Party objects to this request on the grounds that it is overbroad, unduly

3    burdensome and oppressive. Responding Party also objects to this request on the grounds that

4    it seeks documents protected by the attorney-client privilege and/or work product doctrines.

5    Responding Party further objects to this request on the ground that it seeks documents equally

6    available to Propounding Party. Without waiving these objections, Responding Party

7    responds as follows: Responding Party will produce all documents in his possession, custody

8    and control that are responsive to this request.

9    **REQUEST FOR PRODUCTION NO. 12:**

10    Produce all DOCUMENTS that refer to, relate to, or CONCERN any obligation that H

11    & B Properties claims that LLOYD owes H & B Properties.

12    **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

13    Responding Party objects to this request on the grounds that it is overbroad, unduly

14    burdensome and oppressive. Responding Party also objects to this request on the grounds that

15    it seeks documents protected by the attorney-client privilege and/or work product doctrines.

16    Responding Party further objects to this request on the ground that it seeks documents equally

17    available to Propounding Party. Responding Party still further objects to this request on the

18    ground that it is vague and ambiguous as to its use of the term "any obligation" and to the

19    extent that it does not specify a relevant period of time. Without waiving these objections,

20    Responding Party responds as follows: Responding Party will produce all documents in his

21    possession, custody and control that are responsive to this request.

22    **REQUEST FOR PRODUCTION NO. 13:**

23    Produce all DOCUMENTS that refer to, relate to, or CONCERN any

24    COMMUNICATIONS with LLOYD about the Norcal Financial, Inc., obligation secured by

25    the ELIZABETH STREET PROPERTY.

26    **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

27    Responding Party objects to this request on the ground that it seeks documents

28    protected by the attorney-client privilege and/or work product doctrines. Without waiving

7

Plaintiff's EOR-506

1   these objections. Responding Party is unable to produce any documents responsive to this

2   request, because other than privileged documents, Responding Party was unable to locate any

3   documents responsive to this request.  Responding Party believes that he was unable to locate

4   such documents because they never existed.

5   AS TO OBJECTIONS ONLY:

6   DATED:  November 28, 2005          PAHL & GOSSELIN
                                       A Professional Corporation
7

8                                      By: _____
9                                          Cheri L. MacArthur

10                                     Attorneys for Plaintiff and Cross-Defendant
                                       JEFFREY E. HOFFMAN
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C-8

Plaintiff's EOR-507

1  In re Thomas Lloyd; Hoffman v. Lloyd
   Case No. 04-32921; Adversary Case No. 05-03328

2

3                           PROOF OF SERVICE

4  State of California              )
                                    ) ss
5  County of Santa Clara            )

6       I am a citizen of the United States and an employee of the County aforesaid.  I am
   over the age of eighteen years and not a party to the within action.  My business address is
7  160 West Santa Clara Street, 14th Floor, San Jose, California 95113-1700.  On the date
   mentioned below, I caused a true copy(ies) of the following document(s) to be served on
8  the parties below using the method(s) checked:

9  *RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE*

10 on the Addressee(s) below named in said action by:

11      [ x ]    First Class Mail.  I am familiar with the regular mail collection and
                 processing practices of the business.  The mail will be deposited with the
12               United States Postal Service on the same day following ordinary business
                 practices.  I enclosed the above-mentioned document(s) in a sealed envelope
13               with postage thereon fully prepaid in the United States Post Office mail box
                 at San Jose, California.

14
        [  ]    Express Mail Delivery.
15
        [  ]    E Filing.
16
        [  ]    By Personal Delivery.
17
        [  ]    By Federal Express.
18

19      Addressee(s):

20
   Jeffrey J. Goodrich                      Jerry R. Hauser
21 Law Offices of Goodrich and Associates   Phillips, Greenberg & Hauser
   336 Bon Air Center, Suite 335            4 Embarcadero Center, 39th Floor
22 Greenbrae, CA 94904                      San Francisco, CA 94111
   T: (415) 925-8630                        T: (415) 981-7777

23

24      I declare under penalty of perjury, under the laws of the State of California, that the
   foregoing is true and correct.  Executed on November 28, 2005 at San Jose, California.

25

26                                      E. Durand
                                        _____
27                                      Elaine Durand

28                                                                  *G-9*

Plaintiff's EOR-508

## VERIFICATION AS TO ANSWERS ONLY

1

2    I, the undersigned, certify and declare that I have read the foregoing "Request for

3    Production of Documents, Set One" and know its contents.

4    I am a party to this action. The matters stated in the document described above are

5    true of my own knowledge and belief except as to those matters stated on information and

6    belief, and to those matters, I believe them to be true.

7    I have read the above and declare under penalty of perjury under the laws of the State

8    of California that the foregoing is true and correct.

9    Executed this 28th day of November, 2005, at Fresno, California.

10

11

12                                              Jeffrey E. Hofman

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Pahl & Gonzalez
A Professional Corp.
185 W. Santa Clara St.
Fourteenth Floor
San Jose, CA 95113
(415) 788-3100

3124/002
00018605.WPD

9

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS**    (Case No. C4529M; TRO Adm No. F

C-10

4

Plaintiff's EOR-509

CANB Live Database

Page 1 of 2

Miscellaneous:
05-03328 Hoffman v. Lloyd et al

U.S. Bankruptcy Court

Northern District of California

Notice of Electronic Filing

The following transaction was received from Goodrich, Jeffrey J. entered on 4/21/2006 at 6:36 PM PDT
and filed on 4/21/2006
**Case Name:**      Hoffman v. Lloyd et al
**Case Number:**    05-03328
**Document Number:**

**Docket Text:**
Declaration of Jeffrey Goodrich in support of *Reply to Plaintiff's Opposition to Lloyd's Motion for
Summary Judgment* (RE: related document(s)[40] Motion for Summary Judgment/Adjudication). Filed
by Defendant Thomas Lloyd (Goodrich, Jeffrey)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** C:\Documents and Settings\Jeffrey Goodrich\My Documents\Goodrich
Law\Lloyd\pleadings\Goodrich Dec Re Reply Brief MSJ.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=4/21/2006] [FileNumber=4729243-0
] [701515ab5adf46e32bb5683dd9be35fe5b12f7a823234271d866847595bed5833fc
9bfd3ba8e994cb037eb1842469d75e9cf8bf56ba0f297b982a3e79eb3af23]]

**05-03328 Notice will be electronically mailed to:**

Jeffrey J. Goodrich    endstay@hotmail.com

Jerry R. Hauser    jhauser@pghllp.com

Catherine Schlomann Robertson    crobertson@pahl-gosselin.com

**05-03328 Notice will not be electronically mailed to:**

Norcal Financial, Inc.

Stephen D Pahl
Pahl & Gosselin
225 W. Santa Clara St., Suite 1500
San Jose, CA 95113

Stephen D. Pahl

https://ecf.canb.uscourts.gov/cgi-bin/Dispatch.pl?658882606124775                    4/21/2006

**Plaintiff's EOR-510**
4/21/2006