GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation
DENNIS D. DAVIS, ESQ. CA Bar #070591
44 Montgomery Street, Suite 2900
San Francisco, CA 94104
Telephone: (415) 362-5045
Facsimile: (415) 362-2392

Attorneys for Appellant, Jeffrey E. Hoffman

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY E. HOFFMAN,<br><br>     Plaintiff,<br><br>vs.<br><br>THOMAS R. LLOYD, an individual, EDWARD L. BLUM, an individual, and DOES 1 through 20, inclusive,,<br><br>     Defendants.<br><hr>THOMAS LLOYD,<br><br>     Cross-Plaintiff,<br><br>vs.<br><br>JEFFREY E. HOFFMAN, dba H&B PROPERTIES; H&B PROPERTIES, LLC; J. EDWARDS INVESTMENT GROUP, INC., and NORCAL FINANCIAL, INC.,<br><br>     Cross-Defendants. | No. 3:07-CV-2417 MHP<br><br><br><br><br><br><br><br><br><br>Date:   September 24, 2007<br>Time:   2:00 p.m.<br>Place:  Courtroom 15<br>        18th Floor<br>        450 Golden Gate Ave.<br>        San Francisco, CA 94102<br>Judge:  The Hon. Marilyn Hall Patel |

## **APPELLANT'S REPLY BRIEF**

### I.     INTRODUCTION

Appellee Lloyd has failed to respond to the central issue addressed in Appellant's Opening Brief. The record establishes that the Bankruptcy Court failed to follow established California and

-1-

APPELLANTS' REPLY BRIEF
10329.705/113677.DOC

Ninth Circuit Federal law concerning the enforceability of settlements and general releases, but instead crafted a new test based on general principles of waiver.

Similarly, Lloyd ignores the fact that the Bankruptcy Court made its summary judgment ruling based, not on undisputed facts, but on a set of disputed facts combined with inferences drawn from remarks of counsel and other incompetent evidence.

## II.   ARGUMENT

### A.   THE BANKRUPTCY COURT ERRED IN FINDING THE GENERAL RELEASE UNENFORCEABLE.

Lloyd argues in his brief that he need not respond to all of appellant's arguments because Hoffman already briefed the issue of the enforceability of a general release in Case No. C-06-02416 MHP (the "Interlocutory Appeal"). However, as Lloyd concedes, the briefing on the Interlocutory Appeal was completed long before the Bankruptcy Court had issued its written opinion articulating the basis for its decision.

The briefing on the Interlocutory Appeal was completed in the middle of 2006. The Interlocutory Appeal began as an Emergency Motion to stay the briefing of a motion for summary judgment before the Bankruptcy Court. The Bankruptcy Court continued making decisions and refining and articulating its findings after all the briefing in the Interlocutory Appeal was completed. Subsequently, the Bankruptcy Court issued its Opinion on April 30, 2007 (EOR 367), articulating in detail its reasons for deciding that the settlement agreement does not bar Lloyd's subsequent litigation claims to rescind the parties' contract.

Lloyd treats the proposition that he need not respond to all issues presented in Appellant's Opening Brief as self evident. Lloyd supplies no legal authority for his position that he can unilaterally decide to ignore legal and factual issues properly raised in an opening brief. However, there is no court order limiting the ability of appellant to address each and every one of the significant legal issues raised by the Bankruptcy Court's Opinion and Judgment.

#### 1.   The Bankruptcy Court Erred As A Matter Of Law In Ruling That The General Release Was Not Enforceable.

Significantly, Lloyd fails to respond to the argument that the Bankruptcy Court failed to apply

-2-

APPELLANTS' REPLY BRIEF
10329.705/113677.DOC

1  applicable California and Ninth Circuit Federal law, by essentially imposing a public interest
2  exception on the well-established law concerning enforceability of general releases and settlement
3  agreements. The Bankruptcy Court drew support for its decision from three cases, none of which
4  involved the interpretation of a settlement agreement general release. None of the authorities cited by
5  the Bankruptcy Court support the proposition that a settlement agreement general release does not
6  release unknown claims where those claims involve, as the Bankruptcy Court stated, an "important
7  statutory right." Lloyd's brief adds nothing to the Bankruptcy Court's citations of authority.

8  In *Cathay Bank v. Lee*, 14 Cal.App. 4th 1533, 18 Cal.Rptr. 2nd 420 (1993), the issue involved
9  was whether waiver of an estoppel defense contained in a guaranty agreement was enforceable.
10 Thus, the case involved neither a settlement agreement nor a release. The sole issue before that court
11 was whether a contractual waiver was specific enough to cover the relevant defense. The court
12 discussed California law as it relates to waiver, but did not touch upon California law as it relates to
13 settlement releases. Nothing in the case suggested that the two concepts were identical.

14 In *In Re Acosta* 182 B. R. 561 (N.D. Cal. 1994), debtor had litigated and lost a claim that his
15 interest in two pension plans was exempt from inclusion in his bankruptcy estate. He then entered
16 into a settlement agreement with his bankruptcy trustee, pursuant to which he withdraw with
17 prejudice his motion to reconsider the Bankruptcy Court's decision disallowing his exemption claims.
18 After signing the settlement agreement, but before getting court approval of the agreement, a
19 Supreme Court decision (in another case) was reported that Acosta believed would have made his
20 settlement position stronger. He then objected to court approval of his own settlement. The
21 Bankruptcy Court approved the settlement over the debtor's objection and the District Court upheld
22 that decision. The District Court found that Acosta was aware of the rights he was waiving and
23 knowingly waived those rights. However, *In re Acosta* did <u>not</u> involve a general release of unknown
24 claims under California law.

25 In *Mills v. Home Equity Group, Inc.*, 871 F.Supp. 1482 (D. D.C 1994), the court construed the
26 release provision contained in a settlement agreement which had no general release. Thus, the issue
27 of whether unknown claims were being released was not before that Court.

28 Relying only on these three decisions, and without discussing the body of well established

-3-
APPELLANTS' REPLY BRIEF
10329.705/113677.DOC

California law to the contrary, the Bankruptcy Court imposed a limitation on the enforceability of the general release of unknown claims executed by Lloyd. The Bankruptcy Court found that where the public interest was involved, a general release is not effective unless the settling party was fully aware of the rights being waived. Thus, the Bankruptcy Court imported legal concepts from the law of waiver into the ruling on the effect of a general release. No legal authority supports this legal application.

The Bankruptcy Court found that a general release of unknown claims does not release claims a party is not "fully aware" of, where those rights are protected by statute for public policy reasons. Obviously, requiring that the party be "fully aware" of specific rights being released is antithetical to the concept of a general release of unknown claims. Furthermore, there is no Ninth Circuit or California legal authority supporting the Bankruptcy Court's decision.

On the contrary, Hoffman cited and discussed two cases involving courts upholding broad general release provisions of unknown claims involving consumer protection and public health and safety statutes. In *Pardee v. Kaiser Foundations Hospital*, 389 F.3d 840 (9th Cir. 2004), the Ninth Circuit Court of Appeals upheld a general release provision of unknown claims involving the protected activity of discrimination under the Americans With Disabilities Act. Furthermore, in *San Diego Hospice v. County of San Diego*, 31 Cal.App. 4th 1048, 37 Cal.Rptr. 2nd 501 (1995), the court upheld settlement of unknown claims relating to damages from hazardous waste activity, a clearly protected public policy issue.

As set forth by the Ninth Circuit Court of Appeal in *Pardee*, the test is not whether the trial court wishes to trump the parties' settlement because of public policy considerations, but whether the settlement was obtained by fraud or duress. Lloyd, in his brief, concedes by his silence that nothing about the settlement agreement involved fraud or duress.

**2. The Court Erred As A Matter Of Fact In Finding That Lloyd Was Not Aware Of His Claims.**

The fact of Lloyd's knowledge of his claims against Hoffman was well established. The Bankruptcy Court found that there was no "knowing intelligent" waiver of Lloyd's rights under HESCA, because Lloyd was not "aware" of his rights when he released them. Yet, the trial record

-4-
APPELLANTS' REPLY BRIEF
10329.705/113677.DOC

clearly showed that Lloyd had responded to an unlawful detainer action by raising the very rights that he claims to have been ignorant of. While his attorney did not cite the specific statute he sought relief under, he admitted that he was seeking the remedy provided by that statute.

An unlawful detainer action is a "form" complaint in the state court and must be responded to by filling in the blanks on a court form. Notwithstanding the limitations of the pleading system, Lloyd's attorney responded to the complaint by complaining that "Lloyd continues to be the owner of the subject property" and that "Hoffman sought title to defendant's Property as a form of disguised security interest" and that the "transaction by which plaintiff claims to have become owner of record title is void and illegal, and Plaintiff is not entitled to possession of the subject property; rather Defendant is entitled to remain in possession." Furthermore, Lloyd's attorney Blum testified that "I knew the concepts that apparently are in – stated in that act [HESCA] as I indicated in the answer. But I had not [sic] familiarity with the act." (See, Opening Brief at 1:26-2:19).[1] Furthermore, Blum admitted that he had formed the impression that Hoffman was conducting himself in a manner that he did not believe conformed with the law. He told Hoffman "I don't understand how you are allowed to stay in business doing what you're doing." (See, Opening Brief at 1:26-2:19).

In other words, the defense that Lloyd asserted at the partial trial was that either he or his attorney did not have a sufficient legal education to fully appreciate HESCA and to constitute a knowing waiver of Lloyd's rights. Yet, Mr. Blum appeared to be sufficiently knowledgeable to understand that the law gave him a right to seek rescission and a right to brow-beat Hoffman over his failure to comply with the law.

Even if there were no general release involved, and this was merely an issue of whether Lloyd knowingly waived his rights to seek the remedy of rescission, the record establishes beyond doubt that Lloyd and his attorney sufficiently appreciated the waiver.

/ / / /

/ / / /

/ / / /

---

[1] Lloyd's attorney's testimony that he did not directly discuss specific HESCA claims with Hoffman's counsel was directly contradicted (EOR 224).

### B. LLOYD HAS NOT RESPONDED TO APPELLANT'S ARGUMENT THAT THE BANKRUPTCY COURT DECIDED ISSUES NOT BEFORE IT AND WITHOUT PROVIDING DUE PROCESS

In Hoffman's opening brief, Hoffman argued that the Bankruptcy Court erred in determining issues without a full record, because the issue of whether Hoffman's Notice of right to cancel was not raised in a fashion to allow Hoffman to present evidence. The Phase I portion of the trial involved only the enforceability of the settlement agreement, and the issue of whether Hoffman gave Lloyd a notice of right to cancel under HESCA was never raised in the pleadings or placed before the Court, until the re-noticing of a motion for summary judgment. Lloyd ignores this portion of the appellate brief and focuses only on whether the evidence produced by Lloyd, taken in isolation, would support a summary judgment on that issue.

Lloyd argues that there was no evidence presented to the Bankruptcy Court by Hoffman that the purchase agreement included a notice of cancellation.[2] In fact, Mr. Hoffman's declaration, filed in support of the opposition to Lloyd's motion for summary judgment, attaches a copy of the written Notice of Cancellation as Exhibit C (EOR 416-429). Lloyd makes the absurd argument that what appears to be a typographical error in the declaration of Mr. Hoffman where the word "contract" was left out means that the declaration does not support the argument that the purchase agreement included a notice of cancellation. This argument is contradicted by the terms of the Notice of Cancellation itself, which identifies itself as a part of the contract. The Notice of Cancellation states that "until your right to cancel **this contract** has ended, H&B Properties, LLC, or anyone working for H&B Properties, LLC, cannot ask you to sign or have you sign any deed or any other document." (emphasis supplied.) The Notice of Cancellation goes on to state that "you may cancel **this contract for the sale of your house** without penalty or obligation at any time before 6-04-03 time 12:01 a.m." (emphasis supplied.) The Notice of Cancellation by its own language imbeds itself as part of the purchase contract. It recites on its face that it is part of the purchase contract documentation.

The only real issue raised is whether the Notice of Cancellation complied with California law,

---

[2] Mr. Goodrich argues that counsel preparing the appellate's brief "doctored his copy of a relevant exhibit to support his fraudulent argument," without any evidence of his claim. Someone has written, the word "contract?" on the face of the document. As set forth in the accompanying declaration of Dennis Davis, appellant's counsel made no revisions or changes to this document, but simply used the copy supplied to them by Pahl & Gosselin from their files.

-6-

APPELLANTS' REPLY BRIEF
10329.705/113677.DOC

because it was printed on a separate piece of paper, and that the text of the Notice of Cancellation was not repeated in the body of the sale agreement. As described hereafter, the issue of whether the Notice of Cancellation failed to substantially comply with HESCA was never raised by Lloyd. It was decided on an *ad hoc* basis without being properly raised and without giving Hoffman an opportunity to present evidence on the issue.

### C. HOFFMAN DID SUBSTANTIALLY COMPLY WITH HESCA

Lloyd argues that the issue of whether conflicting facts were presented relating to the Notice of Cancellation did not matter, because the Bankruptcy Court found that Hoffman did not substantially comply with HESCA. The Court found that "actual compliance with the Next-to-Signature Notice requirement is essential to the purpose of HESCA." (EOR 385:1-2.) In other words, the Bankruptcy Court found that the doctrine of substantial compliance did not apply to HESCA. This was a decision of first impression, and neither the Court's Opinion nor Lloyd's brief cites any case directly on point.

The Bankruptcy Court conceded that under certain circumstances, strict adherence to a statute is not required if there is a finding that there has been substantial compliance. The Court cited *Stasher v. Harger-Haldeman*, 58 Cal.2d 23, 372 P.2nd 649 (1962) for this proposition. In *Stasher*, the California Supreme Court found that "when there is such actual compliance as to all matters of substance than mere technical imperfections of form or variations in mode of expression . . . should not be given the stature of noncompliance and thereby transformed into a windfall for an unscrupulous and designing buyer." 58 Cal.2d at 29. The court used a balancing test to determine whether, and to what extent, substantial compliance applies. The court noted that it was not suggesting "that imperfections in either the form or substance of motor vehicle contracts are to be encouraged" and noted that the requirements of that legislation "is intended to be rigid and exacting." 58 Cal.2d at 33-34. However, the Court looked at the overall transaction and concluded that in some cases unscrupulous buyers seek to take advantage of technical violations and found that this was the situation in the *Stasher* case.

The Bankruptcy Court also cited the case of *Malek v. Blue Cross of California*, 121 Cal.App.

4th 44 (2004) and stated that the California Court of Appeal applied *Stasher* to a notice requirement similar to the notice requirement in this case (EOR 381:17-19). While it is true that the notice requirement in the *Malek* case bears similarities to the one involved herein, The Bankruptcy Court was in error when it found that the *Malek* court had applied the *Stasher* decision. The *Malek* court does not cite *Stasher*. While the Court of Appeal in *Malek* did briefly discuss the substantial compliance doctrine, it found a lack of substantial compliance in that particular case on almost opposite grounds from those applicable to our situation. In this case, Lloyd complains that the statute requires that the Notice Of Cancellation technically must be contained in the body of the purchase contract and that substantial compliance did not occur here, because the notice of cancellation was on a separate sheet of paper. In *Malek*, the Court of Appeal found that because the notice requirement <u>was</u> contained in the body of the underlying contract, it was unclear whether there was a knowing waiver, because the person signing the agreement may not have connected his signature at the end of the contract to the paragraphs relating to waiver of a right to a jury trial. The Court of Appeal did <u>not</u> find, like the Bankruptcy Court, that where notice provisions are mandatory, only <u>actual</u> compliance will suffice ("...we do not rule that doctrine out in the appropriate case. We find, however that this is not such a case ..." 121 Cal.App. 4th at 72).

Here, there was no trial on the issue of substantial compliance. The substantial compliance defense was first considered in the summary judgment proceeding after all the evidence had closed. The issue was not discussed in Lloyd's Summary Judgment Motion (EOR-449). The motion does argue that Hoffman did not strictly comply with HESCA (EOR 458-459) but never discusses substantial compliance. Nor did the Court rule on the issue at the summary judgment stage. In its Tentative Ruling of February 16, 2006 (EOR-083) no mention of the issue is made. The Bankruptcy Court indicated that issues of fact remained to be tried. Substantial Compliance was not mentioned in the Court's Order (EOR-086). As late as November 8, 2006, long after the summary judgment motion was concluded, the Court was still indicating that trial must be held to determine the amount of rescission payment Lloyd needed to make to get the property back (EOR-339). The concept of substantial compliance first crept into the proceedings with the Bankruptcy Court's revised tentative ruling of January 24, 2007, where the Court reversed its earlier tentative ruling. Without uttering the

phrase "substantial compliance" the Bankruptcy Court decided that Hoffman's failure to strictly comply with HESCA cut off his right to recover rescission payments (EOR-345).

The Court made this decision by ruling that <u>only</u> actual compliance would suffice. The Court did not make a *Stasher* finding that strict compliance was necessary to protect Lloyd from an unscrupulous buyer. No legal authority supports this decision. The Court did not weigh or analyze the factors considered by other courts reflecting on substantial compliance issues. Had these issues been raised, Hoffman could have presented evidence that Lloyd was not taken advantage of and that Lloyd was conducting himself in an unscrupulous manner, evidence that was unnecessary to the issues in the Phase I trial or the summary judgment motion until raised by the Court in its revised ruling.

### III.  CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Judgment should be reversed and the transfer of the Elizabeth Street property to Lloyd should be voided.

DATED: August 24, 2007

GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation


By:    /s/ Dennis D. Davis
Attorneys for Jeffrey E. Hoffman