UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY E. HOFFMAN, H&B PROPERTIES, LLC, J. EDWARDS INVESTMENT GROUP, INC., and NORCAL FINANCIAL, INC.,<br><br>    Plaintiffs/Cross-Defendants and Appellants,<br><br>    v.<br><br>THOMAS R. LLOYD and EDWARD L. BLUM.,<br><br>    Defendants/Cross-Complainants and Appellees.<br>_____ | No. C 06-2416 MHP<br>No. C 07-2417   MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Bankruptcy Appeal** |

    Appellants Jeffrey E. Hoffman ("Hoffman") et al., appeal a bankruptcy court decision holding that Hoffman, when purchasing the foreclosed home of appellee Thomas R. Lloyd ("Lloyd") in a sale and lease-back transaction, failed to provide Lloyd with notice of his right to cancel the sale as required under the Home Equity Sales Contract Act ("HESCA"), Cal. Civ. Code §1695 et seq. As a result, the time to cancel the sale contract never expired. Id. § 1695.5(d). Lloyd's Notice of Rescission, filed approximately 18 months after the sale closed, was therefore timely and effective to cancel the sale contract and the grant deed to Hoffman. Furthermore, the bankruptcy court held that

Lloyd did not relinquish his right to rescind the contract when, in the context of settling an unlawful detainer action brought against him by Hoffman, he signed a general release of all known and unknown claims including a specific waiver of California Civil Code section 1542. Having considered the parties' arguments and submissions, and for the reasons set forth below, this court affirms the bankruptcy court's holdings and enters the following memorandum and order.

BACKGROUND

I.      Factual Background

This action involves a real estate transaction between defendant-appellee Lloyd and plaintiff-appellant Hoffman. Lloyd owned and resided in a single-family home in San Francisco, and in May 2003 he was in default on the mortgage payments. Hoffman agreed to purchase the property, but Lloyd retained possession of the home under a month-to-month lease agreement. Lloyd also gave valid consideration for a two-year option to repurchase the home, provided that he was not in default under the lease. These transactions were consummated on May 28, 2003 with a series of three separate contracts—the Purchase-Sale Agreement, the Lease, and the Option. Appellant's Excerpts of Record, Exhs. 8, 9 ,10.

Because Lloyd's home was in foreclosure at the time of the transaction, the Purchase-Sale Agreement was regulated by the Home Equity Sales Contract Act, Cal. Civ. Code § 1695 et seq. (hereinafter "HESCA" or "section 1695"). HESCA is designed to protect sellers whose homes are in foreclosure. It obligates a buyer of such property to provide a purchase contract notifying the seller—in prominent language placed in "immediate proximity" to the space reserved for the seller's signature—of his right to rescind the contract within a given time period. Cal Civ. Code § 1695.5(a). Until the buyer complies with this notice requirement, a seller may cancel the contract of sale. Id. § 1695.5(d). The Purchase-Sale Agreement signed by Lloyd and Hoffman did not contain this necessary disclosure. The sale of Lloyd's residence closed on August 25, 2003. On that date, Lloyd executed a grant deed and Hoffman paid the agreed on purchase price.

Lloyd subsequently defaulted on the rental payments due under the Lease, and in June 2004, Hoffman initiated eviction proceedings. The unlawful detainer action was eventually settled without trial on August 3, 2004. Lloyd and Hoffman, both with the advice of counsel, entered into a written "Settlement and Mutual Release Agreement" (the "Settlement Agreement"). Appellant's Excerpts of Record, Exh. 14. Under the Settlement Agreement, Lloyd had ninety days to either find a third-party buyer for the property or repurchase the property for himself. If Lloyd was unable to perform either alternative, the Lease and Option would be terminated and judgment would be entered against Lloyd for unpaid rent and attorneys' fees. The Settlement Agreement contained a general mutual release of all claims "whether known or unknown . . . arising from the [unlawful detainer] Action or arising from or related to the Property, the purchase by [Hoffman], the Lease, the Option or the Repurchase Agreement." In addition, the Settlement Agreement expressly waived the provisions of California Civil Code section 1542 which provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

II.     Procedural Background

On October 15, 2004, Lloyd filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code. Three days later on October 18, Lloyd recorded a document entitled "Notice of Rescission of Grant Deed Recorded Pursuant to Home Equity Sales Contract" (the "Notice of Rescission"). In that Notice, Lloyd asserted his right under HESCA to rescind the grant deed to Hoffman and the Purchase-Sale Agreement. The bankruptcy court allowed Hoffman to litigate the validity of the Notice of Rescission in California state court, but Lloyd subsequently removed the state court action to the bankruptcy court.

At that point, the bankruptcy court decided and the parties agreed to conduct a trial solely on the issue of whether the general release and waiver of section 1542, given as a mutual compromise in settlement of the unlawful detainer action, relinquished Lloyd's claims under HESCA and in particular his right to rescind the original sale of the property. Judge Carlson conducted an

3

evidentiary hearing in 2006 on the issue and ruled in favor of Lloyd. The court made the finding of fact that Lloyd was unaware of his rights under HESCA at the time he signed the Settlement Agreement. The court also concluded as a matter of law that because Lloyd was unaware of his rights, the general release and waiver of section 1542 did not relinquish Lloyd's HESCA claims including his right to rescind the original sale of the property[1]. Hoffman appealed the ruling to this court which reserved judgment pending further proceedings in the bankruptcy court.

Following the evidentiary hearing, Lloyd moved for summary judgment. He argued that Hoffman, as the equity purchaser, had a duty under HESCA to notify Lloyd of his right to cancel the contract. Lloyd argued that the Purchase-Sale Agreement did not comply with HESCA because, among other reasons, it did not contain a "conspicuous statement" of the right to rescind placed in "immediate proximity to the space reserved for the equity seller's signature." As such, Lloyd's right to cancel the contract never expired. The bankruptcy court granted summary judgment in favor of Lloyd, finding that Hoffman did not comply with HESCA and that Lloyd's Notice of Rescission was timely and effective to cancel the Purchase-Sale Agreement and the grant deed. The bankruptcy court filed its Opinion on April 30, 2007 and certified its judgment for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b). Now before the court are Hoffman's consolidated appeals on the 2007 summary judgment motion and the 2006 evidentiary hearing.

III.    Statutory Framework

The California Legislature enacted the Home Equity Sales Contract Act ("HESCA") in 1979 to "protect homeowners in default against unfair purchases of their home equity." Segura v. McBride, 5 Cal. App. 4th 1028, 1034 (1992). "The Legislature recognized that the equity value of a residence, often a homeowner's most significant financial asset, could be lost to a third party purchaser whenever a homeowner facing foreclosure succumbed to a proposal to sell his or her home for a fraction of its value." Id. at 1034–1035; Cal. Civ. Code §§ 1695(a), 1695(b). The express purposes of the statute include: 1) providing homeowners with "information necessary to make an informed and intelligent decision regarding the sale of his or her home" in foreclosure

4

proceedings; and 2) affording homeowners "a reasonable and meaningful opportunity to rescind sales" of their homes. Cal. Civ. Code § 1695(d)(1). The Legislature also declared that buyers of homes in foreclosure "have a significant impact upon the economy and well-being of this state and its local communities, and therefore [HESCA is] necessary to promote the public welfare." Id. § 1695(c). To effectuate the intent and purposes of the statute, the Legislature stated that it "shall be liberally construed." Id. § 1695(d)(2).

HESCA closely regulates "transactions between an equity purchaser and an equity seller resulting in the sale of residential property in foreclosure." Segura, 5 Cal. App. 4th at 1035. It contains specific, detailed regulations concerning the content and form of contracts for the sale of a home in foreclosure. At the heart of the statutory scheme is a cooling-off period during which the homeowner must have a "reasonable and meaningful opportunity" to weigh the option of rescinding the sale contract. Id.; Cal. Civ. Code §§ 1695(d)(1), 1695.3(g)-(h), 1695.4(a)-(c), 1695.5(a)-(b).

The written contract must contain two separate notices of the homeowner's right to cancel within five business days or until 8 a.m. on the day scheduled for the sale of the property, which ever comes first. Cal. Civ. Code §§ 1695.4(a), 1695.5(a)-(b). The first notice, which the bankruptcy court termed the "Next-to-Signature Notice," must be conspicuously displayed "in immediate proximity to the space reserved for the equity seller's signature." Id. § 1695.5(a). The second notice, which the bankruptcy court termed the "Separate-Page Notice," must be attached as a separate page to the sale contract. Id. § 1695.5(b). HESCA places the burden to provide these notices on the equity purchaser. Id. § 1695.6(a) ("[t]he contract as required by [section 1695.5] shall be provided and completed in conformity with [that] section *by the equity purchaser*") (emphasis added).

HESCA states expressly, in two separate instances, that the time to cancel does not begin to run until the purchaser has provided both the Next-to-Signature and Separate-Page Notices. First, section 1695.5(d) states "[u]ntil the equity purchaser has complied with this section [governing the two notices], the equity seller may cancel the contract." Second, section 1695.4(a) provides that the cancellation period begins to run when "the equity seller signs a contract that complies with this

5

chapter." The legislative intent underlying these provisions was to provide for an indefinite cooling off period in the event that the equity purchaser does not comply with the notice requirements[2].

Finally, section 1695.10 states expressly that "[a]ny waiver of the provisions of this chapter shall be void and unenforceable as contrary to the public policy." Other than section 1695.10, HESCA does not specifically address whether or how a seller's rights under the statute may be compromised or relinquished in the context of a settlement agreement.

LEGAL STANDARD

Under 28 U.S.C. section 158(c)(1), this court has jurisdiction to hear appeals from final judgments of the United States Bankruptcy Court for the Northern District of California. The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. See Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1995). A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a definite conviction that a mistake has been made. Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 729 (B.A.P. 9th Cir. 1999). Findings of fact based on credibility are given particular deference by reviewing courts. Id. at 730. Mixed questions of fact and law are reviewed de novo. Id.

DISCUSSION

The bankruptcy court held that the broad release of all known and unknown claims, given as a negotiated compromise in settlement of the unlawful detainer action, did not relinquish Lloyd's claims under HESCA including his right to rescind the original sale of the property. In a March 20, 2006 unpublished order, the bankruptcy court gave several reasons for its decision. The court will review each of them in turn.

First, the bankruptcy court noted that section 1695.10 states "[a]ny waiver of the provisions of this chapter shall be void and unenforceable as contrary to the public policy." Under section 1695.10, an advance agreement to omit the required notices in the sale contract is unenforceable, as is an advance agreement by the seller to not assert his or her rights under the statute. These types of

1 waivers executed prior to the onset of a bona fide dispute are clearly invalid under section 1695.10.
2 Even when the parties are engaged in an active dispute, an equity seller's unilateral offer to waive
3 his or her rights under HESCA is also unenforceable under section 1695.10. Boquilon v. Beckwith,
4 49 Cal. App. 4th 1697 (1996). In Boquilon, the equity purchaser commenced eviction proceedings
5 against the equity seller after the seller defaulted on the lease payments in a sale and lease-back
6 transaction. The equity seller signed a "sketchy," handwritten statement offering to hold the equity
7 purchaser "harmless" if the purchaser would allow the seller to retain possession of the home. Id. at
8 n12. There was no evidence that this offer was accepted by the purchaser, and in fact, the seller was
9 evicted from the home approximately one month later. Id. at 1707. The Boquilon court correctly
10 held that this statement, even if it could be construed as a waiver, was unenforceable under section
11 1695.10.

12 Although section 1695.10 bars waiver of HESCA rights, the bankruptcy court and the parties
13 acknowledged that section 1695.10 does not necessarily prevent an equity seller from releasing
14 HESCA claims in the context of settling a bona fide, ripe controversy. The Boquilon court did not
15 address this issue because the seller's statement in that case was not a release executed as part of a
16 negotiated settlement agreement. The statute itself contains no express provision governing whether
17 HESCA claims may be released in settlement, and if so, what form the agreement must take and
18 whether any limitations are imposed. In the absence of an express statutory provision, the
19 legislature's intent can be inferred from case law favoring a public policy to encourage settlement
20 over litigation and to promote finality in such settlements. Indeed, the California Legislature stated
21 expressly that any rights under HESCA were "not exclusive and [were] in addition to any other
22 requirements, rights, remedies, and penalties provided by law." Cal. Civ. Code § 1695.9. The
23 ability to execute settlement agreements and to achieve finality in disputes is a right and remedy
24 long recognized by the California courts. See, e.g., Casey v. Proctor, 59 Cal. 2d 97, 111 (1963)
25 ("the policy of the law is to encourage out-of-court settlements"). It may be reasonable to infer that
26 even if the legislature expressly intended waivers of HESCA rights to be unenforceable, the

7

legislature did not intend that bona fide disputes involving HESCA claims could never be released and settled, forcing the parties to resort to trial to resolve their disputes.

However, this court need not squarely answer this question because the bankruptcy court answered a more nuanced one: under what conditions and in the presence of what safeguards will courts enforce such settlements and releases, barring all subsequent assertions of HESCA claims? The bankruptcy court inferred from the section 1695.10 anti-waiver provision that any settlement and release should be attended with "adequate safeguards." Analogizing from California case law requiring waivers to be knowing and intelligent, the bankruptcy court inferred that settlements and releases must also be knowing and intelligent. Cathay Bank v. Lee, 14 Cal. App. 4th 1533 (1993). The bankruptcy court concluded as a matter of law that if Lloyd did not have actual knowledge and awareness of his HESCA rights at the time he signed the Settlement Agreement, his release of all claims against Hoffman was not knowing and intelligent. The Settlement Agreement was therefore unenforceable to bar Lloyd's exercise of his right to rescind under HESCA.

Although this court approves of the bankruptcy court's rationale, there is an alternative line of reasoning that reaches the same result, but is more direct. California courts have squarely addressed the enforceability of broad releases of known and unknown claims executed in the context of settlement agreements. Although there is no bright-line rule, courts have weighed competing considerations. On the one hand, "the law should extend its protection to the stability of [settlements] by holding the parties to the express terms" of any release contained in those settlements. Casey, 59 Cal. 2d at 111; Jefferson v. California Dept. of Youth Authority, 28 Cal. 4th 299, 306 (2002) (enforcement of general releases promotes certainty as to the full extent of liability which is one factor that encourages parties to consider settlement in the first place). On the other hand, courts have recognized that "general releases which purport to extinguish unknown and non-matured claims can no doubt be subject to abusive use." Winet v. Price, 4 Cal. App. 4th 1159, 1172 (1992). Courts will therefore "will seek grounds to avoid literal enforcement" of releases when countervailing concerns arise. Id. Such concerns include 1) whether there are unequal bargaining positions between the parties, 2) factors that make the release doubtful as to whether its terms were

actually understood, or 3) whether its enforcement is otherwise inequitable. Id.  The court will examine each of these factors below.

First, although the bankruptcy court did not make any specific finding of fact regarding whether Hoffman and Lloyd were or were not in unequal bargaining positions, there is little indication in the record that this is so.  Aside from Lloyd's ongoing financial distress, both parties actively negotiated the Settlement Agreement and both were assisted by counsel.  The Agreement itself was drafted for the parties' particular needs and was not a pre-printed take-it-or-leave-it form. Cf. Sumner v. Workers' Compensation Appeals Board, 33 Cal. 3d 965 (1983) (holding that settlement and release of worker's compensation claim, where parties were unrepresented and release was a non-negotiated mandatory form, did not bar a subsequent claim for death benefits).

As to the second countervailing factor weighing against literal enforcement of the release, the bankruptcy court made the specific finding that Lloyd did not have actual understanding of his rights under HESCA at the time he signed the Settlement Agreement.  This finding was supported by Lloyd's declaration.  Hoffman presented contrary evidence that the attorney who represented Lloyd in the unlawful detainer action was aware of HESCA and discussed those claims with opposing counsel.  There was no evidence, however, to indicate that Lloyd's attorney ever discussed such claims with Lloyd himself.  Hoffman also argued that the Settlement Agreement evinced Lloyd's understanding that the Purchase-Sale Agreement was possibly unenforceable, and thus that Lloyd understood he was releasing his right to assert otherwise.  The Agreement stated, "Lloyd claimed [in his answer to the unlawful detainer action] that the sales transaction was a disguised security device and thereby unenforceable."  This evidence, however, shows that Lloyd believed the transaction to be unenforceable because it was a security device, not because it failed to comply with HESCA.  Indeed, in no instance does the Agreement specifically reference either section 1695 or the "Home Equity Sales Contract Act."  After hearing testimony from the parties and counsel involved in the negotiation of the Settlement Agreement, the court made the finding of fact that Lloyd was unaware of his rights under HESCA.  A reviewing court owes particular deference to a trial court's credibility determinations.  As such, this court concludes that the bankruptcy court's finding of fact

was not clearly erroneous.

The bankruptcy court discussed a third countervailing factor that would make literal enforcement of the release inequitable. The bankruptcy court recognized that HESCA is an important consumer protection statute whose primary purpose is to protect homeowners in foreclosure. Cal. Civ. Code § 1695. The statute accomplishes its purpose by ensuring that equity sellers are fully informed of their HESCA rights and in particular, their right to a cooling-off period in which to consider the option of rescinding the sale. Id. §§ 1695.4(a), 1695.5(a)-(b). This burden to notify the seller is placed specifically on the equity purchaser. Id. § 1695.6(a). Until the equity purchaser fulfills his or her obligation to provide the necessary notifications, the equity seller may cancel the contract. Id. § 1695.5(d). The right to cancel is indefinite when the purchaser does not comply with the notice requirements. See, infra n.2. The legislature stated specifically that the statute "shall be liberally construed to effectuate" these purposes. Id. § 1695(d)(2). In this case, literal enforcement of the release would allow an equity purchaser to defeat the seller's right to rescind by first executing a sale contract without the required notices, and then executing a release purporting to extinguish claims including those that are unknown. Thus, an equity purchaser could avoid his obligations under HESCA by never fulfilling them at all. This kind of backdoor loophole is inequitable and frustrates the purposes of HESCA.

After the bankruptcy court concluded that the Settlement Agreement did not bar Lloyd from exercising his rights under HESCA, Lloyd moved for summary judgment. He argued that because the Purchase-Sale Contract did not contain the Next-to-Signature Notice required under section 1695.5(a), Hoffman failed to comply with the statute. Accordingly, Lloyd's right to rescind the contract was never extinguished. Hoffman produced evidence that Lloyd signed the Separate-Page Notice required under section 1695.5(b). Lloyd disputed his signature on the Notice and argued that even if he did sign it, the Notice was not attached to the sale contract as required. The bankruptcy court concluded as a matter of law that compliance with the statute required both notices. Thus, even if factual issues remained regarding whether Lloyd signed a Separate-Page Notice attached to the sale contract, omission of the Next-to-Signature notice was sufficient to grant summary

10

judgment in favor of Lloyd. Reviewing the bankruptcy court's grant of summary judgment de novo, this court affirms the judgment below. The HESCA statute is clear on its face—the sale contract "shall" contain two separate notices of the right to cancel, one in immediate proximity to the signature line and a second on a separate page. Cal Civ. Code §§ 1695.5(a), (b).

In sum, the court holds that where an equity purchaser fails to provide a sale contract containing both the Next-to-Signature and Separate-Page Notices required under sections 1695.5(a) and (b), the equity seller's right to rescind the contract survives and is not extinguished even when the parties, in the context of settling an unlawful detainer action, execute a broad release of all known and unknown claims. In such instances, the court will require evidence that the equity purchaser has notified the equity seller of his right to rescind, and that the seller has actual understanding of the rights he relinquishes under the release. While such evidence can take many forms, the words contained in the settlement agreement itself are highly probative of the purchaser's notification and the seller's corresponding understanding.

Finally, the bankruptcy court also considered whether, as a condition of the rescission, any money should change hands in order to avoid unjust enrichment. The court found that no conditions should be placed on Lloyd's right to cancel because Lloyd received no net benefit from the transaction that he should be required to return to Hoffman. Hoffman's brief for the 2007 appeal states that whether Lloyd received no net benefit is an issue presented to this court for review. However, he presents no further argument on this issue. At any rate, the bankruptcy court conducted a detailed accounting for benefits and setoffs. Under a clear error standard, the bankruptcy court's factual findings are entitled to deference and this court affirms those findings.

11

CONCLUSION

    The court AFFIRMS the judgment of the bankruptcy court.

IT IS SO ORDERED.

Dated: January 31, 2008

                                             MARILYN HALL PATEL
                                             United States District Judge
                                             Northern District of California

**ENDNOTES**

1. The bankruptcy court explained its reasoning in an unpublished opinion dated March 20, 2006. The court stated: "I conclude that the release was effective with respect to Lloyd's rights under Section 1695 only if: (1) the release occurred in the settlement of a ripe controversy in which the significance of those rights had become apparent; and (2) the release constituted a knowing and intelligent waiver of those rights. In so concluding, I note the following. First, the California Legislature expressly provided that rights under Section 1695 cannot be waived. Cal. Civ. Code § 1695.10. Although I do not believe that the Legislature meant to bar settlement of ripe claims arising under Section 1695, the anti-waiver provision suggests that any such settlement should be attended with adequate safeguards. Second, California courts have held that any waiver of an important statutory right must be knowing and intelligent. Cathay Bank v. Lee, 14 Cal.App. 4th 1533, 1539 (1993); accord In re Acosta, 182 B.R. 561, 566-67 (N.D.Cal. 1994). Third, Section 1695 is important consumer protection Legislation, much like the Federal Truth-in-Lending Act. Thus, I find both persuasive and pertinent a decision in which a general release that did not specifically acknowledge the right to rescind under TILA was held not to bar the later exercise of that right. Mills v. Home Equity Group, Inc., 871 F.Supp. 1482, 1485-86 (D.D.C. 1994)."

2. In 1997, the legislature amended HESCA with the stated purpose to abrogate a prior decision in Boquilon v. Beckwith, 49 Cal. App. 4th 1697, 1713-1716 (1996); 1997 Cal. Legis. Serv. Ch. 50 (A.B. 669), Section 6. Over the objections of a vigorous dissent, the majority in Boquilon held that the equity seller's right to cancel did not come into existence and was not triggered until the equity purchaser provided a sale contract in compliance with the notice requirements under section 1695.5. This holding produced the anomalous result that a purchaser could defeat a seller's right to cancel simply by providing a non-compliant contract or by providing no written contract at all. The Legislature acted promptly to overturn this result. In 1997, section 1695.5(d) was added and section 1695.4(a) was amended with the stated intent to allow an indefinite cooling off period that does not begin to expire until the purchaser has complied with the notice requirements. Senate Committee Analysis of AB 669, at 2, (June 17, 1997). The Legislature recognized that under another statute requiring notice of a homeowner's right to cancel a home solicitation contract, there existed an indefinite cooling off period when the contract did not comply with such notice. Cal. Civ. Code § 1689.7. The Legislature stated that a similar provision "would better effectuate the Legislative intent of [HESCA] and address [the Boquilon anomaly]." Id.