GOLDBERG, STINNETT, DAVIS & LINCHEY
A Professional Corporation
DENNIS D. DAVIS, ESQ. CA Bar #070591
44 Montgomery Street, Suite 2900
San Francisco, CA 94104
Telephone: (415) 362-5045
Facsimile: (415) 362-2392



Attorneys for Appellants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY E. HOFFMAN, H&B PROPERTIES, LLC, J. EDWARDS INVESTMENT GROUP, INC. and NORCAL FINANCIAL, INC., <br><br> Appellants, <br><br> vs. <br><br> THOMAS R. LLOYD and EDWARD L. BLUM, <br><br> Appellees. | C 06-02416 MHP <br><br> C 07-02417 MHP |

### CIVIL APPEALS DOCKETING STATEMENT

Appellants, Jeffrey E. Hoffman, H&B Properties, LLC, J. Edwards Investment Group, Inc. and Norcal Financial, Inc. ("Appellants"), hereby submit their Civil Appeals Docketing Statement.

**BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:**

This is an appeal of a decision of the District Court affirming the judgment

-1-

116066.DOC

of the Bankruptcy Court, which held that Appellant's failure to insert certain language into a sale and lease back contract, failed to provide Appellee Lloyd with notice of his right to cancel the sale and allowed Lloyd to cancel the sale indefinitely, and that upon cancellation, Lloyd was not obligated to make Appellants whole.

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**

The principle issues proposed to be raised on appeal are that the Bankruptcy Court and District Court erred in finding that a general release executed by Lloyd was not effective in barring claims by Lloyd against Appellants, holding that the Home Equity Sales Contract Act ("HESCA") precludes general releases of claims arising out of HESCA. Appellant also intends to raise the issue that the Court record did not support summary judgment as to certain factual issues and that the Courts erred in finding that the doctrine of substantial compliance did not apply to claims arising out of HESCA.

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):**

Other legal proceedings that may have a bearing on this case include the underlying Adversary Proceeding still pending in the Bankruptcy Court (Hoffman v. Lloyd, AP No. 04-32921-TEC) and a related proceeding (Thomas Lloyd v. Jeffrey Hoffman, et al., AP No. 06-03165 TEC).

116066.DOC

**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**

## LOWER COURT INFORMATION

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT/ ORDER APPEALED | RELIEF |
| [ ] Federal Questions<br>[ ] Diversity<br>[X] Other (Specify):<br>**Bankruptcy** | [X] Final Decision of District Court<br>[ ] Interlocutory Decision Appealable as of Right<br>[ ] Interlocutory Order Certified by District Judge (Specify):<br>[ ] Other (Specify): | [ ] Default Judgment<br>[ ] Dismissal/Jurisdiction<br>[ ] Dismissal/Merits<br>[X] Summary Judgment<br>[ ] Judgment/Court Decision<br>[ ] Judgment/Jury Verdict<br>[ ] Declaratory Judgment<br>[ ] Judgment as a Matter of Law<br>[ ] Other (Specify): | [ ] Damages:<br>   Sought $_____<br>   Awarded $_____<br><br>[ ] Injunctions:<br>   [ ] Preliminary<br>   [ ] Permanent<br>   [ ] Granted<br>   [ ] Denied<br><br>[ ] Attorney Fees:<br>   Sought $_____<br>   Awarded $_____<br>   [ ] Pending<br>[ ] Costs: $_____ |

## CERTIFICATION OF COUNSEL

I CERTIFY THAT:

1. Copies of Order/Judgment Appealed from are attached.

2. A current service list or representation statement with telephone and fax numbers are attached (see 9th Cir. Rule 302).

3. A copy of this Civil Appeals Docketing Statement was served in compliance with FRAP 25.

4. I understand that failure to comply with these filing requirements may result in sanctions, including dismissal of this appeal.

_____         February 27, 2008
Dennis D. Davis

## COUNSEL WHO COMPLETED THIS FORM

Name:      Dennis D. Davis, Esq.
Firm:      Goldberg, Stinnett, Davis & Linchey
Address:   44 Montgomery Street, Suite 2900
           San Francisco, CA  94104
E-Mail:    ddavis@gsdllaw.com
Telephone: (415) 362-5045
Fax:       (415) 362-2392

- THIS DOCUMENT SHOULD BE FILED IN THE DISTRICT COURT WITH THE NOTICE OF APPEAL
  - IF FILED LATE, IT SHOULD BE FILED WITH THE U.S. COURT OF APPEALS

116066.DOC

UNITED STATES DISTRICT COURT
For the Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY E. HOFFMAN, H&B PROPERTIES, LLC, J. EDWARDS INVESTMENT GROUP, INC., and NORCAL FINANCIAL, INC.,<br><br>　　　Plaintiffs/Cross-Defendants and Appellants,<br><br>　　v.<br><br>THOMAS R. LLOYD and EDWARD L. BLUM.,<br><br>　　　Defendants/Cross-Complainants and Appellees. | No. C 06-2416 MHP<br>No. C 07-2417 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Bankruptcy Appeal** |

　　Appellants Jeffrey E. Hoffman ("Hoffman") et al., appeal a bankruptcy court decision holding that Hoffman, when purchasing the foreclosed home of appellee Thomas R. Lloyd ("Lloyd") in a sale and lease-back transaction, failed to provide Lloyd with notice of his right to cancel the sale as required under the Home Equity Sales Contract Act ("HESCA"), Cal. Civ. Code §1695 et seq. As a result, the time to cancel the sale contract never expired. Id. § 1695.5(d). Lloyd's Notice of Rescission, filed approximately 18 months after the sale closed, was therefore timely and effective to cancel the sale contract and the grant deed to Hoffman. Furthermore, the bankruptcy court held that

1  Lloyd did not relinquish his right to rescind the contract when, in the context of settling an unlawful
2  detainer action brought against him by Hoffman, he signed a general release of all known and
3  unknown claims including a specific waiver of California Civil Code section 1542. Having
4  considered the parties' arguments and submissions, and for the reasons set forth below, this court
5  affirms the bankruptcy court's holdings and enters the following memorandum and order.

BACKGROUND

I.  Factual Background

This action involves a real estate transaction between defendant-appellee Lloyd and plaintiff-appellant Hoffman. Lloyd owned and resided in a single-family home in San Francisco, and in May 2003 he was in default on the mortgage payments. Hoffman agreed to purchase the property, but Lloyd retained possession of the home under a month-to-month lease agreement. Lloyd also gave valid consideration for a two-year option to repurchase the home, provided that he was not in default under the lease. These transactions were consummated on May 28, 2003 with a series of three separate contracts—the Purchase-Sale Agreement, the Lease, and the Option. Appellant's Excerpts of Record, Exhs. 8, 9, 10.

Because Lloyd's home was in foreclosure at the time of the transaction, the Purchase-Sale Agreement was regulated by the Home Equity Sales Contract Act, Cal. Civ. Code § 1695 et seq. (hereinafter "HESCA" or "section 1695"). HESCA is designed to protect sellers whose homes are in foreclosure. It obligates a buyer of such property to provide a purchase contract notifying the seller—in prominent language placed in "immediate proximity" to the space reserved for the seller's signature—of his right to rescind the contract within a given time period. Cal Civ. Code § 1695.5(a). Until the buyer complies with this notice requirement, a seller may cancel the contract of sale. Id. § 1695.5(d). The Purchase-Sale Agreement signed by Lloyd and Hoffman did not contain this necessary disclosure. The sale of Lloyd's residence closed on August 25, 2003. On that date, Lloyd executed a grant deed and Hoffman paid the agreed on purchase price.

2

        Lloyd subsequently defaulted on the rental payments due under the Lease, and in June 2004, Hoffman initiated eviction proceedings. The unlawful detainer action was eventually settled without trial on August 3, 2004. Lloyd and Hoffman, both with the advice of counsel, entered into a written "Settlement and Mutual Release Agreement" (the "Settlement Agreement"). Appellant's Excerpts of Record, Exh. 14. Under the Settlement Agreement, Lloyd had ninety days to either find a third-party buyer for the property or repurchase the property for himself. If Lloyd was unable to perform either alternative, the Lease and Option would be terminated and judgment would be entered against Lloyd for unpaid rent and attorneys' fees. The Settlement Agreement contained a general mutual release of all claims "whether known or unknown . . . arising from the [unlawful detainer] Action or arising from or related to the Property, the purchase by [Hoffman], the Lease, the Option or the Repurchase Agreement." In addition, the Settlement Agreement expressly waived the provisions of California Civil Code section 1542 which provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

II.    Procedural Background

        On October 15, 2004, Lloyd filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code. Three days later on October 18, Lloyd recorded a document entitled "Notice of Rescission of Grant Deed Recorded Pursuant to Home Equity Sales Contract" (the "Notice of Rescission"). In that Notice, Lloyd asserted his right under HESCA to rescind the grant deed to Hoffman and the Purchase-Sale Agreement. The bankruptcy court allowed Hoffman to litigate the validity of the Notice of Rescission in California state court, but Lloyd subsequently removed the state court action to the bankruptcy court.

        At that point, the bankruptcy court decided and the parties agreed to conduct a trial solely on the issue of whether the general release and waiver of section 1542, given as a mutual compromise in settlement of the unlawful detainer action, relinquished Lloyd's claims under HESCA and in particular his right to rescind the original sale of the property. Judge Carlson conducted an

1  evidentiary hearing in 2006 on the issue and ruled in favor of Lloyd. The court made the finding of
2  fact that Lloyd was unaware of his rights under HESCA at the time he signed the Settlement
3  Agreement. The court also concluded as a matter of law that because Lloyd was unaware of his
4  rights, the general release and waiver of section 1542 did not relinquish Lloyd's HESCA claims
5  including his right to rescind the original sale of the property[1]. Hoffman appealed the ruling to this
6  court which reserved judgment pending further proceedings in the bankruptcy court.

7  Following the evidentiary hearing, Lloyd moved for summary judgment. He argued that
8  Hoffman, as the equity purchaser, had a duty under HESCA to notify Lloyd of his right to cancel the
9  contract. Lloyd argued that the Purchase-Sale Agreement did not comply with HESCA because,
10 among other reasons, it did not contain a "conspicuous statement" of the right to rescind placed in
11 "immediate proximity to the space reserved for the equity seller's signature." As such, Lloyd's right
12 to cancel the contract never expired. The bankruptcy court granted summary judgment in favor of
13 Lloyd, finding that Hoffman did not comply with HESCA and that Lloyd's Notice of Rescission was
14 timely and effective to cancel the Purchase-Sale Agreement and the grant deed. The bankruptcy
15 court filed its Opinion on April 30, 2007 and certified its judgment for immediate appeal pursuant to
16 Federal Rule of Civil Procedure 54(b). Now before the court are Hoffman's consolidated appeals on
17 the 2007 summary judgment motion and the 2006 evidentiary hearing.

19 III.   Statutory Framework

20 The California Legislature enacted the Home Equity Sales Contract Act ("HESCA") in 1979
21 to "protect homeowners in default against unfair purchases of their home equity." Segura v.
22 McBride, 5 Cal. App. 4th 1028, 1034 (1992). "The Legislature recognized that the equity value of a
23 residence, often a homeowner's most significant financial asset, could be lost to a third party
24 purchaser whenever a homeowner facing foreclosure succumbed to a proposal to sell his or her
25 home for a fraction of its value." Id. at 1034–1035; Cal. Civ. Code §§ 1695(a), 1695(b). The
26 express purposes of the statute include: 1) providing homeowners with "information necessary to
27 make an informed and intelligent decision regarding the sale of his or her home" in foreclosure

4

proceedings; and 2) affording homeowners "a reasonable and meaningful opportunity to rescind sales" of their homes. Cal. Civ. Code § 1695(d)(1). The Legislature also declared that buyers of homes in foreclosure "have a significant impact upon the economy and well-being of this state and its local communities, and therefore [HESCA is] necessary to promote the public welfare." Id. § 1695(c). To effectuate the intent and purposes of the statute, the Legislature stated that it "shall be liberally construed." Id. § 1695(d)(2).

HESCA closely regulates "transactions between an equity purchaser and an equity seller resulting in the sale of residential property in foreclosure." Segura, 5 Cal. App. 4th at 1035. It contains specific, detailed regulations concerning the content and form of contracts for the sale of a home in foreclosure. At the heart of the statutory scheme is a cooling-off period during which the homeowner must have a "reasonable and meaningful opportunity" to weigh the option of rescinding the sale contract. Id.; Cal. Civ. Code §§ 1695(d)(1), 1695.3(g)-(h), 1695.4(a)-(c), 1695.5(a)-(b).

The written contract must contain two separate notices of the homeowner's right to cancel within five business days or until 8 a.m. on the day scheduled for the sale of the property, which ever comes first. Cal. Civ. Code §§ 1695.4(a), 1695.5(a)-(b). The first notice, which the bankruptcy court termed the "Next-to-Signature Notice," must be conspicuously displayed "in immediate proximity to the space reserved for the equity seller's signature." Id. § 1695.5(a). The second notice, which the bankruptcy court termed the "Separate-Page Notice," must be attached as a separate page to the sale contract. Id. § 1695.5(b). HESCA places the burden to provide these notices on the equity purchaser. Id. § 1695.6(a) ("[t]he contract as required by [section 1695.5] shall be provided and completed in conformity with [that] section *by the equity purchaser*") (emphasis added).

HESCA states expressly, in two separate instances, that the time to cancel does not begin to run until the purchaser has provided both the Next-to-Signature and Separate-Page Notices. First, section 1695.5(d) states "[u]ntil the equity purchaser has complied with this section [governing the two notices], the equity seller may cancel the contract." Second, section 1695.4(a) provides that the cancellation period begins to run when "the equity seller signs a contract that complies with this

5

1 chapter." The legislative intent underlying these provisions was to provide for an indefinite cooling
2 off period in the event that the equity purchaser does not comply with the notice requirements[2].
3     Finally, section 1695.10 states expressly that "[a]ny waiver of the provisions of this chapter
4 shall be void and unenforceable as contrary to the public policy." Other than section 1695.10,
5 HESCA does not specifically address whether or how a seller's rights under the statute may be
6 compromised or relinquished in the context of a settlement agreement.

LEGAL STANDARD

    Under 28 U.S.C. section 158(c)(1), this court has jurisdiction to hear appeals from final judgments of the United States Bankruptcy Court for the Northern District of California. The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. See Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1995). A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a definite conviction that a mistake has been made. Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 729 (B.A.P. 9th Cir. 1999). Findings of fact based on credibility are given particular deference by reviewing courts. Id. at 730. Mixed questions of fact and law are reviewed de novo. Id.

DISCUSSION

    The bankruptcy court held that the broad release of all known and unknown claims, given as a negotiated compromise in settlement of the unlawful detainer action, did not relinquish Lloyd's claims under HESCA including his right to rescind the original sale of the property. In a March 20, 2006 unpublished order, the bankruptcy court gave several reasons for its decision. The court will review each of them in turn.

    First, the bankruptcy court noted that section 1695.10 states "[a]ny waiver of the provisions of this chapter shall be void and unenforceable as contrary to the public policy." Under section 1695.10, an advance agreement to omit the required notices in the sale contract is unenforceable, as is an advance agreement by the seller to not assert his or her rights under the statute. These types of

1   waivers executed prior to the onset of a bona fide dispute are clearly invalid under section 1695.10.
2   Even when the parties are engaged in an active dispute, an equity seller's unilateral offer to waive
3   his or her rights under HESCA is also unenforceable under section 1695.10. <u>Boquilon v. Beckwith</u>,
4   49 Cal. App. 4th 1697 (1996). In <u>Boquilon</u>, the equity purchaser commenced eviction proceedings
5   against the equity seller after the seller defaulted on the lease payments in a sale and lease-back
6   transaction. The equity seller signed a "sketchy," handwritten statement offering to hold the equity
7   purchaser "harmless" if the purchaser would allow the seller to retain possession of the home. <u>Id.</u> at
8   n12. There was no evidence that this offer was accepted by the purchaser, and in fact, the seller was
9   evicted from the home approximately one month later. <u>Id.</u> at 1707. The <u>Boquilon</u> court correctly
10  held that this statement, even if it could be construed as a waiver, was unenforceable under section
11  1695.10.

12       Although section 1695.10 bars waiver of HESCA rights, the bankruptcy court and the parties
13  acknowledged that section 1695.10 does not necessarily prevent an equity seller from releasing
14  HESCA claims in the context of settling a bona fide, ripe controversy. The <u>Boquilon</u> court did not
15  address this issue because the seller's statement in that case was not a release executed as part of a
16  negotiated settlement agreement. The statute itself contains no express provision governing whether
17  HESCA claims may be released in settlement, and if so, what form the agreement must take and
18  whether any limitations are imposed. In the absence of an express statutory provision, the
19  legislature's intent can be inferred from case law favoring a public policy to encourage settlement
20  over litigation and to promote finality in such settlements. Indeed, the California Legislature stated
21  expressly that any rights under HESCA were "not exclusive and [were] in addition to any other
22  requirements, rights, remedies, and penalties provided by law." Cal. Civ. Code § 1695.9. The
23  ability to execute settlement agreements and to achieve finality in disputes is a right and remedy
24  long recognized by the California courts. <u>See, e.g.</u>, <u>Casey v. Proctor</u>, 59 Cal. 2d 97, 111 (1963)
25  ("the policy of the law is to encourage out-of-court settlements"). It may be reasonable to infer that
26  even if the legislature expressly intended waivers of HESCA rights to be unenforceable, the

27
28

7

1 legislature did not intend that bona fide disputes involving HESCA claims could never be released
2 and settled, forcing the parties to resort to trial to resolve their disputes.
3     However, this court need not squarely answer this question because the bankruptcy court
4 answered a more nuanced one: under what conditions and in the presence of what safeguards will
5 courts enforce such settlements and releases, barring all subsequent assertions of HESCA claims?
6 The bankruptcy court inferred from the section 1695.10 anti-waiver provision that any settlement
7 and release should be attended with "adequate safeguards." Analogizing from California case law
8 requiring waivers to be knowing and intelligent, the bankruptcy court inferred that settlements and
9 releases must also be knowing and intelligent. Cathay Bank v. Lee, 14 Cal. App. 4th 1533 (1993).
10 The bankruptcy court concluded as a matter of law that if Lloyd did not have actual knowledge and
11 awareness of his HESCA rights at the time he signed the Settlement Agreement, his release of all
12 claims against Hoffman was not knowing and intelligent. The Settlement Agreement was therefore
13 unenforceable to bar Lloyd's exercise of his right to rescind under HESCA.
14     Although this court approves of the bankruptcy court's rationale, there is an alternative line
15 of reasoning that reaches the same result, but is more direct. California courts have squarely
16 addressed the enforceability of broad releases of known and unknown claims executed in the context
17 of settlement agreements. Although there is no bright-line rule, courts have weighed competing
18 considerations. On the one hand, "the law should extend its protection to the stability of
19 [settlements] by holding the parties to the express terms" of any release contained in those
20 settlements. Casey, 59 Cal. 2d at 111; Jefferson v. California Dept. of Youth Authority, 28 Cal. 4th
21 299, 306 (2002) (enforcement of general releases promotes certainty as to the full extent of liability
22 which is one factor that encourages parties to consider settlement in the first place). On the other
23 hand, courts have recognized that "general releases which purport to extinguish unknown and non-
24 matured claims can no doubt be subject to abusive use." Winet v. Price, 4 Cal. App. 4th 1159, 1172
25 (1992). Courts will therefore "will seek grounds to avoid literal enforcement" of releases when
26 countervailing concerns arise. Id. Such concerns include 1) whether there are unequal bargaining
27 positions between the parties, 2) factors that make the release doubtful as to whether its terms were
28

8

1  actually understood, or 3) whether its enforcement is otherwise inequitable. Id. The court will
2  examine each of these factors below.

3    First, although the bankruptcy court did not make any specific finding of fact regarding
4  whether Hoffman and Lloyd were or were not in unequal bargaining positions, there is little
5  indication in the record that this is so. Aside from Lloyd's ongoing financial distress, both parties
6  actively negotiated the Settlement Agreement and both were assisted by counsel. The Agreement
7  itself was drafted for the parties' particular needs and was not a pre-printed take-it-or-leave-it form.
8  Cf. Sumner v. Workers' Compensation Appeals Board, 33 Cal. 3d 965 (1983) (holding that
9  settlement and release of worker's compensation claim, where parties were unrepresented and
10 release was a non-negotiated mandatory form, did not bar a subsequent claim for death benefits).

11   As to the second countervailing factor weighing against literal enforcement of the release,
12 the bankruptcy court made the specific finding that Lloyd did not have actual understanding of his
13 rights under HESCA at the time he signed the Settlement Agreement. This finding was supported
14 by Lloyd's declaration. Hoffman presented contrary evidence that the attorney who represented
15 Lloyd in the unlawful detainer action was aware of HESCA and discussed those claims with
16 opposing counsel. There was no evidence, however, to indicate that Lloyd's attorney ever discussed
17 such claims with Lloyd himself. Hoffman also argued that the Settlement Agreement evinced
18 Lloyd's understanding that the Purchase-Sale Agreement was possibly unenforceable, and thus that
19 Lloyd understood he was releasing his right to assert otherwise. The Agreement stated, "Lloyd
20 claimed [in his answer to the unlawful detainer action] that the sales transaction was a disguised
21 security device and thereby unenforceable." This evidence, however, shows that Lloyd believed the
22 transaction to be unenforceable because it was a security device, not because it failed to comply with
23 HESCA. Indeed, in no instance does the Agreement specifically reference either section 1695 or the
24 "Home Equity Sales Contract Act." After hearing testimony from the parties and counsel involved
25 in the negotiation of the Settlement Agreement, the court made the finding of fact that Lloyd was
26 unaware of his rights under HESCA. A reviewing court owes particular deference to a trial court's
27 credibility determinations. As such, this court concludes that the bankruptcy court's finding of fact
28

9

1  was not clearly erroneous.

2        The bankruptcy court discussed a third countervailing factor that would make literal
3  enforcement of the release inequitable. The bankruptcy court recognized that HESCA is an
4  important consumer protection statute whose primary purpose is to protect homeowners in
5  foreclosure. Cal. Civ. Code § 1695. The statute accomplishes its purpose by ensuring that equity
6  sellers are fully informed of their HESCA rights and in particular, their right to a cooling-off period
7  in which to consider the option of rescinding the sale. Id. §§ 1695.4(a), 1695.5(a)-(b). This burden
8  to notify the seller is placed specifically on the equity purchaser. Id. § 1695.6(a). Until the equity
9  purchaser fulfills his or her obligation to provide the necessary notifications, the equity seller may
10 cancel the contract. Id. § 1695.5(d). The right to cancel is indefinite when the purchaser does not
11 comply with the notice requirements. See, infra n.2. The legislature stated specifically that the
12 statute "shall be liberally construed to effectuate" these purposes. Id. § 1695(d)(2). In this case,
13 literal enforcement of the release would allow an equity purchaser to defeat the seller's right to
14 rescind by first executing a sale contract without the required notices, and then executing a release
15 purporting to extinguish claims including those that are unknown. Thus, an equity purchaser could
16 avoid his obligations under HESCA by never fulfilling them at all. This kind of backdoor loophole
17 is inequitable and frustrates the purposes of HESCA.

18       After the bankruptcy court concluded that the Settlement Agreement did not bar Lloyd from
19 exercising his rights under HESCA, Lloyd moved for summary judgment. He argued that because
20 the Purchase-Sale Contract did not contain the Next-to-Signature Notice required under section
21 1695.5(a), Hoffman failed to comply with the statute. Accordingly, Lloyd's right to rescind the
22 contract was never extinguished. Hoffman produced evidence that Lloyd signed the Separate-Page
23 Notice required under section 1695.5(b). Lloyd disputed his signature on the Notice and argued that
24 even if he did sign it, the Notice was not attached to the sale contract as required. The bankruptcy
25 court concluded as a matter of law that compliance with the statute required both notices. Thus,
26 even if factual issues remained regarding whether Lloyd signed a Separate-Page Notice attached to
27 the sale contract, omission of the Next-to-Signature notice was sufficient to grant summary
28

10

1  judgment in favor of Lloyd. Reviewing the bankruptcy court's grant of summary judgment de novo,
2  this court affirms the judgment below. The HESCA statute is clear on its face—the sale contract
3  "shall" contain two separate notices of the right to cancel, one in immediate proximity to the
4  signature line and a second on a separate page. Cal Civ. Code §§ 1695.5(a), (b).
5       In sum, the court holds that where an equity purchaser fails to provide a sale contract
6  containing both the Next-to-Signature and Separate-Page Notices required under sections 1695.5(a)
7  and (b), the equity seller's right to rescind the contract survives and is not extinguished even when
8  the parties, in the context of settling an unlawful detainer action, execute a broad release of all
9  known and unknown claims. In such instances, the court will require evidence that the equity
10 purchaser has notified the equity seller of his right to rescind, and that the seller has actual
11 understanding of the rights he relinquishes under the release. While such evidence can take many
12 forms, the words contained in the settlement agreement itself are highly probative of the purchaser's
13 notification and the seller's corresponding understanding.
14      Finally, the bankruptcy court also considered whether, as a condition of the rescission, any
15 money should change hands in order to avoid unjust enrichment. The court found that no conditions
16 should be placed on Lloyd's right to cancel because Lloyd received no net benefit from the
17 transaction that he should be required to return to Hoffman. Hoffman's brief for the 2007 appeal
18 states that whether Lloyd received no net benefit is an issue presented to this court for review.
19 However, he presents no further argument on this issue. At any rate, the bankruptcy court conducted
20 a detailed accounting for benefits and setoffs. Under a clear error standard, the bankruptcy court's
21 factual findings are entitled to deference and this court affirms those findings.

11

CONCLUSION

The court AFFIRMS the judgment of the bankruptcy court.

IT IS SO ORDERED.

Dated: January 31, 2008

_____
MARILYN HALL PATEL
United States District Judge
Northern District of California

## ENDNOTES

1. The bankruptcy court explained its reasoning in an unpublished opinion dated March 20, 2006. The court stated: "I conclude that the release was effective with respect to Lloyd's rights under Section 1695 only if: (1) the release occurred in the settlement of a ripe controversy in which the significance of those rights had become apparent; and (2) the release constituted a knowing and intelligent waiver of those rights. In so concluding, I note the following. First, the California Legislature expressly provided that rights under Section 1695 cannot be waived. Cal. Civ. Code § 1695.10. Although I do not believe that the Legislature meant to bar settlement of ripe claims arising under Section 1695, the anti-waiver provision suggests that any such settlement should be attended with adequate safeguards. Second, California courts have held that any waiver of an important statutory right must be knowing and intelligent. Cathay Bank v. Lee, 14 Cal.App. 4th 1533, 1539 (1993); accord In re Acosta, 182 B.R. 561, 566-67 (N.D.Cal. 1994). Third, Section 1695 is important consumer protection Legislation, much like the Federal Truth-in-Lending Act. Thus, I find both persuasive and pertinent a decision in which a general release that did not specifically acknowledge the right to rescind under TILA was held not to bar the later exercise of that right. Mills v. Home Equity Group, Inc., 871 F.Supp. 1482, 1485-86 (D.D.C. 1994)."

2. In 1997, the legislature amended HESCA with the stated purpose to abrogate a prior decision in Boquilon v. Beckwith, 49 Cal. App. 4th 1697, 1713-1716 (1996); 1997 Cal. Legis. Serv. Ch. 50 (A.B. 669), Section 6. Over the objections of a vigorous dissent, the majority in Boquilon held that the equity seller's right to cancel did not come into existence and was not triggered until the equity purchaser provided a sale contract in compliance with the notice requirements under section 1695.5. This holding produced the anomalous result that a purchaser could defeat a seller's right to cancel simply by providing a non-compliant contract or by providing no written contract at all. The Legislature acted promptly to overturn this result. In 1997, section 1695.5(d) was added and section 1695.4(a) was amended with the stated intent to allow an indefinite cooling off period that does not begin to expire until the purchaser has complied with the notice requirements. Senate Committee Analysis of AB 669, at 2, (June 17, 1997). The Legislature recognized that under another statute requiring notice of a homeowner's right to cancel a home solicitation contract, there existed an indefinite cooling off period when the contract did not comply with such notice. Cal. Civ. Code § 1689.7. The Legislature stated that a similar provision "would better effectuate the Legislative intent of [HESCA] and address [the Boquilon anomaly]." Id.

**SERVICE LIST**
**(9th Cir. Rule 302)**

Dennis D. Davis, Esq.
Goldberg, Stinnett, Davis & Linchey
44 Montgomery Street, Suite 2900
San Francisco, CA 94104
Telephone: (415) 362-5045
Fax: (415) 362-2392
Email: ddavis@gsdllaw.com


Jeffrey J. Goodrich, Esq
Goodrich & Associates
336 Bon Air Center, #335
Greenbrae, CA 94904
Telephone: (415) 925-8630
Fax: (415) 925-9242
Email: goodrich4bk@gmail.com


Stephen D. Pahl, Esq.
Pahl & McCay
225 West Santa Clara St., 14th Fl.
San Jose, CA 95113-1700
Telephone: (408) 286-5100
Fax: (408) 286-5722
Email: mail@pahl-gosselin.com

1

## CERTIFICATE OF SERVICE BY FIRST CLASS MAIL

I, the undersigned, state that I am employed in the City and County of San Francisco, State of California, in the office of a member of the bar of this Court, at whose direction the service was made; that I am over the age of eighteen years and not a party to the within action; that my business address is 44 Montgomery Street, Suite 2900, San Francisco, California 94104-4789; that on the date set out below, I served a copy of the following:

## CIVIL APPEALS DOCKETING STATEMENT

on each party listed below by placing such a copy, enclosed in a sealed envelope with first class postage thereon affixed, in a United States Postal Service mailbox at San Francisco, California, addressed to each party listed below.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, California on February 27, 2008.

_____
Pam Joakimson

Jeffrey J Goodrich, Esq
Goodrich & Associates
336 Bon Air Center, #335
Greenbrae, CA  94904

Stephen D. Pahl, Esq.
Pahl & McCay
225 West Santa Clara St., 14th Fl.
San Jose, CA  95113-1700

Donald F. Drummond, Esq.
Drummond & Associates
One California Street, Suite 300
San Francisco, CA  94111

10329.709/116066.DOC